UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No.  **0 5 - 3 5 9** |
| v. | : | GJO |
| DOUGLAS JEMAL, | : | |
| NORMAN D. JEMAL, | : | Charges: |
| BLAKE ESHERICK, | : | |
| Defendants. | : | 18 U.S.C. § 371 (Conspiracy) |
| | : | 18 U.S.C. § 201 (Bribery) |
| | : | 18 U.S.C. §§ 1341, 1346 (Mail Fraud and Honest Services Fraud) |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| | : | 18 U.S.C. §2 (Aiding and Abetting and Causing an Act to be Done) |
| | : | 22 D.C.C. §§ 3821, 3822(a) (Fraud in the First Degree (felony)) |
| | : | 26 U.S.C. § 7201 (Tax Evasion) |

## INDICTMENT

### COUNT ONE
(Conspiracy)

### I. INTRODUCTION

#### A. The Parties

At all times material to this Count:

1.    Defendant DOUGLAS JEMAL was owner and President of Douglas

-2-

Development Corporation (Douglas Development) with offices at 702 H Street, NW, Washington, D.C. Defendant DOUGLAS JEMAL, by himself and with others, owned numerous parcels of real estate in the District of Columbia metropolitan area.

2.     Douglas Development managed real estate owned by defendant DOUGLAS JEMAL. Douglas Development leased properties owned by Douglas Jemal, collected rents, maintained such properties, supervised and managed development of the properties, and performed other property-management functions.

3.     Defendant NORMAN D. JEMAL was defendant DOUGLAS JEMAL's son and an employee of Douglas Development. Among defendant NORMAN D. JEMAL's responsibilities was that of leasing properties managed by Douglas Development.

4.     Defendant BLAKE C. ESHERICK was an employee of Douglas Development. Among defendant BLAKE C. ESHERICK's responsibilities was that of leasing properties managed by Douglas Development. Defendant ESHERICK's responsibilities included finding tenants for defendant DOUGLAS JEMAL's properties at 4800 Addison Road, Capitol Heights, Maryland, and 77 P Street, NE, Washington, D.C., further described in paragraphs 5 and 6.

5.     "Jemal's Fairfield Farms, LLC" was an entity owned 80% by defendant DOUGLAS JEMAL and 20% by defendant NORMAN D. JEMAL. Jemal's Fairfield Farms, LLC, owned a property at 4800 Addison Road, Capitol Heights, Maryland, which it purchased in 1999 for approximately $1.5 million. The property contained a warehouse and surrounding land, a portion of which was paved and useable as a parking lot.

6.     "Cayre Jemal's Gateway, LLC," also known as "Cayre Jemal's Peoples, LLC," was an entity owned 50% by defendant DOUGLAS JEMAL and 50% by an entity controlled by

-3-

another individual. This individual will be hereafter referred to as JEMAL's partner. Cayre

Jemal's Gateway owned the building and property at 77 P Street, NE, Washington, D.C. (77 P

Street), which it purchased in 1998 for approximately $5 million. In substance, JEMAL and his

partner were each 50% owners of 77 P Street.

7.     Michael A. Lorusso was, from approximately November, 2000, through January,

2003, an employee of the District of Columbia Government (DC Government), holding the

position of Deputy Director, Office of Property Management (OPM). Among his duties was

arranging for the leasing of office and other space for use by agencies of the DC Government and

dealing with landlords or representatives of landlords on matters related to the DC Government's

leasing of space.

B.   The Status of 77 P Street in 2001

8.     In or about 1998, defendant DOUGLAS JEMAL borrowed money from his

partner to purchase JEMAL's share of Cayre Jemal's Gateway, and on other occasions borrowed

money from his partner for other purposes. As of 2001, JEMAL owed his partner approximately

$19 million.

9.     In 1998, 1999 and 2000, Cayre Jemal's Gateway borrowed monies from various

lenders to develop the property, including taking out a "construction loan" of approximately $39

million.

10.     Starting in 1999, defendant DOUGLAS JEMAL, through Douglas Development,

sought to obtain tenants for 77 P Street. It was the intent of defendant DOUGLAS JEMAL that

if and when tenants would sign leases for space in 77 P Street, defendant JEMAL would be able

to obtain a new loan secured by the property and use the loan proceeds to pay off the outstanding

-4-

construction loan, pay off loans to his partner, and have a source of cash for personal purposes.

11.    As of April 2001, no tenants had signed leases to occupy space at 77 P Street.

### C. The Status of 4800 Addison Road in 2001

12.    As of May 2001, Douglas Development, on behalf of Jemal's Fairfield Farms, was making loan payments of approximately $15,000 per month as repayment for the loan to purchase 4800 Addison Road. This amount was in excess of the rental income. No tenant was at that time paying rent to use the paved lot. It was the intent of defendant DOUGLAS JEMAL that if and when tenants would sign leases for space at 4800 Addison Road, defendant JEMAL would obtain new loans secured by the property and obtain cash for personal and business purposes.

### II. THE CONSPIRACY

13.    From in or about January 2001 through April 15, 2004, in the District of Columbia and elsewhere, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK did willfully, unlawfully and knowingly combine, conspire, confederate and agree together with each other and others known and unknown to the grand jury to commit the offense of Bribery of a Public Official, that is, for defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK to corruptly give, offer and promise Michael A. Lorusso things of value to influence official acts of Michael A. Lorusso and to induce Michael A. Lorusso to do and to omit to do acts in violation of Michael A. Lorusso's official duties, in violation of Title 18, United States Code, Sections 201(b)(1)(A) & (C) (Bribery).

### III. GOAL OF THE CONSPIRACY

14.    It was a goal of the conspiracy that the defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK, personally and through Douglas

-5-

Development, would enrich and reward themselves, each other, and entities under their control, by committing criminal offenses against governmental entities, and to conceal the conspiracy and its objects and the acts undertaken in furtherance of it.

## IV. MANNERS AND MEANS

To further the objects and goals of the conspiracy, defendants and others known and unknown to the grand jury would and did use the following manners and means, among others:

15.     On numerous dates from May 2001 through late 2002, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK, personally and through Douglas Development, took a variety of actions to provide things of value to Michael A. Lorusso, including:

a.     In or about May 2001, inviting Michael A. Lorusso to accompany them on a trip to Las Vegas, Nevada, and paying for his hotel accommodations at the Bellagio Hotel;

b.     In or about July or August 2001, giving Michael A. Lorusso cash;

c.     In or about August 2001, giving Michael A. Lorusso a Rolex brand men's wrist watch;

d.     In or about October 2001, giving Michael A. Lorusso cash, a portion of which was divided between Lorusso and defendant BLAKE C. ESHERICK;

e.     In or about October 2001, paying for over $1,000 in repairs for Michael A. Lorusso's personal automobile;

f.     In or about February 2002, offering to take Michael A. Lorusso on

-6-

a trip to Florida and purchasing airline tickets for Michael A. Lorusso for this trip;

g.    In or about May 2002, providing airfare from BWI Airport to Las Vegas, Nevada, and providing hotel accommodations and various meals for Michael A. Lorusso in Las Vegas, in connection with a trip by Douglas Development employees to Las Vegas,

h.    In or about May, 2002, while in Las Vegas, Nevada with Michael A. Lorusso, purchasing two pairs of cowboy boots for him at a cost of over $1,000;

i.    On several dates in 2001 and 2002, providing limousine service for Michael A. Lorusso for local transportation in the District of Columbia area;

j.    On several dates in 2001 and 2002, providing tickets and making tickets available for Washington Wizards and Washington Capitals games to Michael A. Lorusso at Douglas Development's private box at the MCI Center;

k.    In late 2002, at Michael A. Lorusso's request, taking steps to purchase approximately over $600,000 of furniture from an entity known as Global Furniture Resources, Inc.; and

l.    Providing other items of value not specified above.

16.    Said actions were made with the intent of influencing Michael A. Lorusso to use his official position to benefit Douglas Development and defendant DOUGLAS JEMAL, and to obtain Lorusso's services on an "as needed" basis, so that when the opportunity presented itself Lorusso would take action on Douglas Development's and defendant DOUGLAS JEMAL'S behalf, said actions by Lorusso consisting of the following, among others:

-7-

a. Causing the DC Government to lease 4800 Addison Road for use as a vehicle impoundment lot at a cost of approximately $998,000 per year;

b. Attempting to cause the DC Government to purchase 4800 Addison Road for approximately $12.5 million, even after an appraiser informed Lorusso that the fair market value was substantially less than that amount;

c. Attempting to cause the DC Government to sell an abandoned firehouse station at 438 Massachusetts Avenue, N.W., to an entity owned by defendant DOUGLAS JEMAL;

d. Causing the DC Government to enter into leases of a value in excess of $100 million as a tenant in 77 P Street over the approximate ten-year term of the leases and signing lease-related documents on behalf of the DC Government and various of its agencies;

e. Causing the DC Government to make payments to Douglas Development in response to a variety of invoices, including invoices which were fraudulent, excessive, duplicative, irregular and otherwise unsupported, including the following:

  i. Undated, unnumbered and unsigned invoice, submitted approximately in or about July 2001, for $38,000 for "D.O.E.S. Relocation Expenses";

  ii August 8, 2001 invoice for $99,000 for "additional construction management services";

  iii. September 26, 2001 invoice for $66,000 for "77 P Street, NW,

-8-

New Economy, Reimbursement for Telco Room Buildout";

iv.    September 27, 2001 invoice for $100,000 for "Build Out

Reimbursement";

v.    September 28, 2001 invoice for $863,299.28 for "Reimbursement

for Tenant Construction [,] 77 P Street, NW, New Economy";

vi.    February 2002 invoice in the amount of approximately $261,000

for construction at 4800 Addison Road;

f.    Using DC Government funds under the control of a third party to

pay over $377,000 of financial obligations of Douglas Development related to

tenant improvements at 77 P Street, thereby saving Douglas Development that

same amount; and,

g.    Otherwise taking steps of benefit to Douglas Development in

connection with numerous routine issues involving and relating to the DC

Government's leasing of space through Douglas Development.

17.    Defendant BLAKE C. ESHERICK was the Douglas Development employee who

dealt primarily with Michael A. Lorusso on leasing matters on behalf of Douglas Development

and personally provided Lorusso several items mentioned in paragraph 15 above, such as

extending invitations to Las Vegas, providing Lorusso the Rolex watch and providing Lorusso

cash.

18    Defendants DOUGLAS JEMAL and NORMAN D. JEMAL obtained the services

of BLAKE C. ESHERICK, including his commission of dishonest acts on their behalf as

described above, and obtained the personal loyalty of defendant BLAKE C. ESHERICK, by

-9-

rewarding and compensating ESHERICK, and ESHERICK knowingly received such

compensation, in forms which: a) would not be and were not reported to the Internal Revenue

Service; b) would be falsely and deceptively recorded and difficult to detect as income to

ESHERICK in the books and records of Douglas Development; and c) could be characterized as

loans, innocent accounting decisions or accounting mistakes of others, rather than culpable and

concerted attempts by defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C.

ESHERICK to evade ESHERICK's income tax obligations. In particular, the defendants

DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK caused ESHERICK to

be compensated in the following ways:

    a.    By causing payments to be made directly from Douglas

Development to defendant BLAKE C. ESHERICK's ex-wife for the purposes of

paying ESHERICK's personal financial obligations;

    b.    By causing numerous payments to be made directly to defendant

BLAKE C. ESHERICK, apart from the standard Douglas Development payroll

checks;

    c.    By falsely recording numerous checks payable to defendant

BLAKE. C. ESHERICK in Douglas Development's books as loans or advances,

even though there was no written loan agreement between Douglas Development

and ESHERICK, there were few if any repayments, and there was no interest ever

charged to ESHERICK in the books of Douglas Development or paid by

ESHERICK to Douglas Develoment;

    d.    By causing payments to be made for vehicles owned personally by

-10-

defendant BLAKE C. ESHERICK;

     e.     By providing defendant BLAKE C. ESHERICK housing

accommodations in a Bethesda, Maryland house jointly owned by defendants

DOUGLAS JEMAL and NORMAN D. JEMAL and by having Douglas

Development pay for utilities at this house and house-related expenses;

     f.     By having defendant DOUGLAS JEMAL purchase a residential

property selected by defendant BLAKE C. ESHERICK in the District of

Columbia in June of 2003 for $825,000, by making payments on the $625,000

mortgage loan and making payments for certain renovations and repairs, and by

permitting ESHERICK to reside in that residence rent-free; and

     g.     By reporting to the Internal Revenue Service that defendant

BLAKE C. ESHERICK's gross income in each of the calendar years 2001, 2002

and 2003 was $70,200.

## OVERT ACTS

In furtherance of the above-described conspiracy and to carry out the objectives thereof,

the defendants carried out the following acts, among others:

     1.     In or about a date in early May 2001, defendant BLAKE C. ESHERICK

invited Michael A. Lorusso to go to Las Vegas with himself and others from Douglas

Development.

     2.     On or about a day in or about mid-May 2001, a member of the conspiracy

used, or caused defendant NORMAN D. JEMAL's American Express credit card to be

used, to pay for Michael A. Lorusso's room at the Bellagio Hotel in Las Vegas.

-11-

3.    On or about July 9, 2001, defendant NORMAN D. JEMAL caused checks to be prepared, payable to American Express, drawn on a Douglas Development and a personal bank account, to pay for the American Express bill containing the Bellagio Hotel charges, described above. .

4.    In or about July or August 2001, the precise date being unknown, defendant BLAKE C. ESHERICK gave Michael A. Lorusso cash.

5.    On or about August 28, 2001, a member of the conspiracy, the precise identity being unknown, paid or caused to be paid for a Rolex watch by charging the purchase price of the watch to defendant NORMAN D. JEMAL's American Express credit card.

6.    On or about August 28, 2001, defendant BLAKE C. ESHERICK gave Michael A. Lorusso a Rolex brand wrist watch.

7.    On or about a date in late August 2001 or early September 2001, defendant BLAKE C. ESHERICK instructed a Douglas Development employee to send the Rolex brand wrist watch back to the jewelry store so that the watch's wristband could be enlarged.

8.    On or about a date close but prior to October 7, 2001, defendant BLAKE C. ESHERICK gave Michael A. Lorusso cash.

9.    On or about between October 10, 2001 and October 15, 2001, defendant BLAKE C. ESHERICK approved the payment by Douglas Development to American Express of $70 to pay for the wrist band repairs on the Rolex wrist watch.

10.    On or about October 10, 2001, a member of the conspiracy, the precise

-12-

identity being unknown, caused a Douglas Development employee to pick up Michael A.

Lorusso's vehicle for purposes of driving it to an automobile repair establishment in

Virginia and having it repaired.

11.    On or about October 15, 2001, defendant NORMAN D. JEMAL caused to

be prepared and signed check 2321, drawn on his own bank account, in the amount of

$30,158.01, payable to American Express, as payment for the American Express bill

containing the charges for the Rolex watch.

12.    On or about several dates in 2001 and 2002, members of the conspiracy

caused tickets to be provided to Michael A. Lorusso for various events at the MCI Center

as follows:

    a.    December 15, 2001 (Basketball - Washington Wizards vs. Miami

        Heat);

    b.    February 7, 2002 (Basketball - Washington Wizards vs.

        Sacramento Kings); and

    c.    December 26, 2001 (Hockey - Washington Capitals vs.

        Philadelphia Flyers).

13.    On or about February 8, 2002, a member of the conspiracy caused an

airline ticket to be purchased for Michael A. Lorusso for air travel from Baltimore,

Maryland to Fort Lauderdale, Florida, said ticket being charged to NORMAN D.

JEMAL's American Express credit card.

14.    On or about February 22, 2002, a member of the conspiracy, the precise

identity of whom is unknown, caused an airline ticket to be purchased for Michael A.

-13-

Lorusso for air travel from Baltimore, Maryland, to Las Vegas, Nevada, said ticket being

charged to NORMAN D. JEMAL's American Express credit card.

15.     Over the weekend from on or about May 17, 2002, through on or about

May 21, 2002, members of the conspiracy paid for meals and hotel accommodations for

Michael A. Lorusso in Nevada.

16.     On or about May 21, 2002, defendant DOUGLAS JEMAL purchased two

pairs of cowboy boots for Michael A. Lorusso, at a total cost in excess of $1,000.

17.     In or about late 2002, members of the conspiracy agreed to purchase

furniture from International Builders, Inc.

18.     On or about several dates in 2001, 2002 and 2003, defendants BLAKE C.

ESHERICK and DOUGLAS JEMAL caused checks to be prepared, drawn on accounts of

Douglas Development, made payable to ESHERICK's ex-wife.

19.     On or about several dates in 2001, 2002 and 2003, defendants BLAKE C.

ESHERICK and DOUGLAS JEMAL caused checks to be prepared, drawn on accounts of

Douglas Development, made payable to BLAKE C. ESHERICK.

20.     On or about numerous dates in 2001, 2002 and 2003, defendant

NORMAN D. JEMAL caused checks to be prepared, drawn on his personal bank

account, made payable to Fidelity Bank, as payment for the mortgage at 7804 Radnor

Road, Bethesda, Maryland.

(Conspiracy, in violation of Title 18, United States Code,
Section 371)

-14-

## COUNT TWO
(Bribery)

From between in or about May 2001 and December 2002, in the District of Columbia and elsewhere, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK, as principles, aiders and abetters and coconspirators, did corruptly, give, offer and promise Michael A. Lorusso, a public official of the District of Columbia, things of value, as set forth in the following table:

|    | DATE | THING OF VALUE |
|----|------|----------------|
| a. | In or about May 2001 | Hotel accommodations at the Bellagio Hotel, Las Vegas, Nevada; |
| b. | In or about August 2001 | Cash; |
| c. | In or about late August 2001 | Rolex men's wrist watch; |
| d. | In or about September or October 2001 | Cash; |
| e. | In or about October 2001 | Repairs to Lorusso's Audi automobile; |
| f. | In or about February 2002 | Trip to Florida; |
| g. | In or about May 2002 | Air travel, hotels, and several meals in Las Vegas; |
| h. | In or about May 2002 | Cowboy boots; |
| i. | Numerous dates in 2001 and 2002 | Meals and entertainment, specifically including meals at the Capital Grille, Zola's and other District of Columbia restaurants, and tickets to events at the MCI Center; |
| j. | Various unknown dates | Use of Douglas Development's limousine service for local travel in the District of Columbia area; |

-15-

|    | DATE | THING OF VALUE |
|----|------|----------------|
| k. | Unknown date in 2002 | Offer of a custom-made suit; |

to influence official acts of Michael A. Lorusso and to induce Michael A. Lorusso to do and to

omit to do acts in violation of Michael A. Lorusso's official duties, so that when the opportunity

presented itself, Lorusso would take actions on defendant DOUGLAS JEMAL's and Douglas

Development's behalf, to include:

 i)  actions in the nature of causing the DC Government to enter into leases of

    property owned in whole or in part by defendant DOUGLAS JEMAL;

 ii)  actions in the nature of causing the DC Government to attempt to purchase

    property owned by defendants DOUGLAS JEMAL and NORMAN D. JEMAL;

 iii)  actions in the nature of causing the DC Government to pay invoices submitted for

    payment by Douglas Development, including invoices which were false,

    fraudulent, unsupported, duplicate or excessive;

 iv)  actions in the nature of causing DC Government funds to be used to pay for

    financial obligations of Douglas Development; and

 v)  numerous routine actions involving the exercise of discretion in connection with

    the DC Government's relationship with Douglas Development.

(Payment of Bribes to Public Official, in violation of
Title 18, United States Code, Sections 201(b)(1)(A) & (C),
and Aiding and Abetting and Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2)

-16-

## COUNT THREE
Mail Fraud (Money and Honest Services)

### I. Introduction

1.      Paragraphs One through Twelve of Count One of this Indictment are realleged and incorporated by reference as if stated in full.

### II. The Mail Fraud Scheme

2.      From in or about May 2001 and continuing through at least in or about January 2003, in the District of Columbia and elsewhere, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE ESHERICK, as principals, aiders and abettors and coconspirators, knowingly and willfully devised and intended to devise a scheme and artifice: a) to defraud and deprive the DC Government and to obtain money by means of false and fraudulent pretenses and representations; and b) to defraud and deprive the DC Government and the citizens of the District of Columbia of their right to the honest and faithful services of Michael A. Lorusso as an employee of OPM, performed free from deceit, favoritism, bias, self-enrichment, self-dealing and conflict of interest.

### III. Purpose of the Scheme

3.      The purpose of the scheme was for the defendants to provide things of value to Michael A. Lorusso and thereby induce him to take actions as a DC Government official to financially benefit and enrich, directly and indirectly, defendants DOUGLAS JEMAL, NORMAN D. JEMAL, BLAKE C. ESHERICK and companies under their control.

### IV. Description of the Scheme

It was part of the scheme and artifice to defraud that:

-17-

4.    Paragraphs Fifteen and Sixteen of Count One of this Indictment are re-alleged as if set forth in full.

V.  Use of the Mails and Interstate Carrier

5.    On or about the dates set forth below, the defendants, for the purposes of executing the above-described scheme, did knowingly place in any post office and authorized depository for mail matter and knowingly caused to be delivered by mail, the following items:

| | Date On or About | Item mailed | Description of Mailing |
|---|---|---|---|
| 1(a) | June 22, 2001 | American Express statement of NORMAN D. JEMAL, containing Bellagio Hotel charges | American Express statement, addressed to Norman D. Jemal, 702 H Street, NW Washington, D.C. |
| 1(b) | July 17, 2001 | Check drawn on account of Douglas Development in the amount $21,939.37 | check mailed from Washington D.C. to American Express, Newark, NJ |
| 2(a) | September 22, 2001 | American Express statement of NORMAN D. JEMAL, containing charges from Fred Brown Jewelers | American Express statement, addressed to Norman D. Jemal 702 H Street, NW Washington, D.C. |
| 2(b) | October 15, 2001 | Check drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $30,158.01 | check mailed from Washington, D.C. to American Express, Newark, NJ |
| 3(a) | October 1, 2001 | American Express statement of Douglas Development employee, containing charges from Fred Brown Jewelers in the amount of $70 | American Express statement, addressed to Douglas Development employee, 702 H Street, NW Washington, D.C. |
| 3(b) | October 17, 2001 | Check drawn on account of Douglas Development, payable to American Express, in the amount of $5,061.84 | check mailed from Washington, D.C.  to American Express, Newark, NJ |

-18-

| | Date On or About | Item mailed | Description of Mailing |
|---|---|---|---|
| 4(a) | November 1, 2001 | American Express statement of Douglas Development employee, containing charges from auto repair business amount of $1,326.92 | American Express statement, addressed to Douglas Development employee, 702 H Street, NW, Washington, D.C |
| 4(b) | November 16, 2001 | Check drawn on account of Douglas Development, payable to American Express, in the amount of $12,558.56 | check mailed from Washington, D.C. to American Express, Newark, NJ |
| 5(a) | February 22, 2002 | American Express statement of NORMAN D. JEMAL, containing charges for hotel reservations in Las Vegas and payments to a travel agency for airline ticket to Florida for "Lorusso/M" | American Express statement, addressed to Norman D. Jemal, 702 H Street, NW Washington, D.C. |
| 5(b) | March 24, 2002 | Checks drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $3,014.82, and on account of Douglas Development, in the amount of $521.84 | checks mailed from Washington, D.C. to American Express, Newark, NJ. |
| 6(a) | February 28, 2002 | American Express statement of NORMAN D. JEMAL, containing charges for American West airline ticket from Baltimore to Las Vegas for "Lorusso/M" | American Express statement addressed to Norman D. Jemal 702 H Street, NW Washington, D.C. |
| 6(b) | March 16, 2002 | Checks drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $9,115.61, and on account of Douglas Development, in the amount of $5,019.33 | checks mailed from Washington, D.C. to American Express Chicago, Ill. |

-19-

|  | Date On or About | Item mailed | Description of Mailing |
|---|---|---|---|
| 7(a) | May 29, 2002 | American Express statement of NORMAN D. JEMAL, containing charges in Las Vegas | American Express statement, addressed to Norman D. Jemal, 702 H Street, NW Washington, D.C. |
| 7(b) | June 14, 2002 | Check drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $11,209.85. | checks mailed from Washington, D.C. to American Express, Chicago, Ill |
| 8(a) | June 19, 2002 | American Express statement of Douglas Jemal, containing charges in Las Vegas, including the Boot Barn | American Express statement, addressed to Douglas Jemal, 702 H Street, NW Washington, D.C. |
| 8(b) | June 27, 2002 | Check drawn on account of Douglas Jemal, payable to American Express, in the amount of $14,408.34 | checks mailed from Washington, D.C. to American Express, Newark, NJ |

(Mail Fraud, in violation of Title 18, United States Code, Sections 1343 and 1346, and Aiding and Abetting and Causing and Act to be Done, in violation of Title 18, United States Code, Section 2)

## COUNT FOUR
(Fraud in the First Degree)

### I. FRAUD

1.      In or about early July 2001, the precise date being unknown, through July 20, 2001, defendant BLAKE C. ESHERICK did engage in a scheme with intent to defraud the District of Columbia Government and to obtain for Douglas Development Corporation (Douglas Develoment) property of the District of Columbia by means of false and fraudulent pretenses, representations and promises and thereby did obtain property of the District of Columbia and caused the District of Columbia to lose property, said property of a value of $250 and more.

-20-

## II. DESCRIPTION OF THE SCHEME

2.     It was part of the scheme that defendant BLAKE C. ESHERICK would create and submit, and cause to be created and submitted, to the District of Columbia Government, an undated, unsigned, unnumbered false and fraudulent invoice captioned "77 P Street, NE, D.O.E.S. Relocation Expenses" seeking payment to Douglas Develoment of $38,000 related to purported damage resulting from the move of the District of Columbia Department of Employment Services into 77 P Street, NE, Washington, D.C, in late June 2001, said invoice being false and fraudulent as follows:

   a.     Said invoice set forth a claim for "80 man-hours overtime for staff supervision and engineering during move," when, in truth and in fact, the extent of overtime compensation paid by Douglas Development was to a single employee for 16 hours in the total amount of $288.

   b.     Said invoice set forth a total claim for "D.O.E.S. Relocation Expenses" in the amount of $38,000 when, in truth and in fact, Douglas Development incurred actual expenses of approximately less than $10,000 resulting from move damage.

3.     On or about July 20, 2001, the District of Columbia Government issued a check payable to Douglas Development in an amount consisting in part of $38,000 paid in response to the above-described false and fraudulent invoice.

(Fraud in the First Degree (felony), in violation of
Title 22, District of Columbia Code, Sections 3221(a), 3222(a)(1))

-21-

## COUNT FIVE
(Wire Fraud)

### I. Introduction

1.      Paragraphs One through Four of Count One of this Indictment are realleged and incorporated by reference as if stated in full.

2.      Participant #1 was an employee at Douglas Development and a conspirator and aider and abettor in this count. This individual is not charged in this count or named in this Indictment;

3.      Participant #2 was an employee at Douglas Development and a conspirator and an aider and abettor in this count. This individual is not charged in this count or named in this Indictment;

4.      "Cayre Jemal's Gateway, LLC," also known as "Cayre Jemal's Peoples, LLC," was an entity owned 50% by defendant DOUGLAS JEMAL and 50% by an entity controlled by another individual. (This individual will be hereafter referred to as JEMAL's partner.) Cayre Jemal's Gateway owned the building and property at 77 P Street, NE, Washington, D.C. (77 P Street), which it purchased in 1998 for approximately $5 million. In substance, JEMAL and his partner each were 50% owners of 77 P Street.

5.      From 1998 through 2001, Cayre Jemal's Gateway borrowed monies from various lenders to develop 77 P Street, and as of November 2002, Cayre Jemal's Gateway owed approximately $40 million on a construction loan. In addition, Cayre Jemal's Gateway owed money to defendant DOUGLAS JEMAL's partner, and defendant DOUGLAS JEMAL personally owed monies to his partner related to other personal borrowings. As of 2001, JEMAL owed his partner in excess of $19 million.

-22-

6.     An entity called "MTD Real Estate Services, LLC" (occasionally referred to as "MTD") was incorporated in the District of Columbia by the attorneys for Douglas Development in or about August of 2002. The initials MTD correspond to the first initials of sons of defendant DOUGLAS JEMAL, Participant #1 and defendant BLAKE C. ESHERICK.

7.     On or about November 19, 2002, defendant DOUGLAS JEMAL, on behalf of the entities that owned 77 P Street, signed loan documents in relation to a $67 million loan from Morgan Stanley Mortgage Capital, Inc. (Morgan Stanley). The terms of the loan provided that the loan proceeds would be disbursed as follows:

- approximately $41 million was to be distributed to pay off a lender for an outstanding construction loan;

- approximately $7 million was to be held back by the lender and placed in escrow, to be used solely to finance certain construction and related costs; this portion of the loan proceeds was referred to as a "tenant improvement [TI] construction reserve" (tenant improvement reserve);

- approximately $19 million was held back and to be distributed when all the tenants – DC Government agencies – had moved into 77 P Street and were paying rent.

8.     The loan agreement setting forth the terms related to the tenant improvement reserve stated that the tenant improvement reserve funds were to be disbursed "directly to ... third party vendors and/or contractors that provide invoices, receipts and other similar written documents." The term "third party vendor and/or contractor" was not defined. The agreement further stated:

-23-

"In no event shall Agent disburse the [Tenant Improvement] Construction Deposit directly to

Borrower." The term "borrower" was defined in the loan agreement as "Cayre Jemal's Gateway

Holdings, LLC a District of Columbia limited liability corporation."

9.      By means of correspondence between Douglas Development and defendant

DOUGLAS JEMAL's partner prior to the November 19, 2002 loan settlement, it was agreed that

JEMAL's partner would receive nearly all the $19 million that was held back by the lender – the

third category of funds described in paragraph 7 above – as partial repayment for the loans from

the partner to Cayre Jemal's Gateway and from the partner to defendant DOUGLAS JEMAL.

10.      In or about December 2002, defendant DOUGLAS JEMAL had a need for

approximately $400,000 in order to complete the purchase of a property in the District of

Columbia.

## II. Wire Fraud Scheme

11.      From on or about November 1, 2002 through on or about January 31, 2005, in the

District of Columbia, defendants DOUGLAS JEMAL, NORMAN D. JEMAL, BLAKE C.

ESHERICK, Participant #1 and Participant #2, willfully, unlawfully and knowingly devised and

intended to devise a scheme and artifice to defraud Morgan Stanley, JEMAL's partner, and the

Internal Revenue Service (IRS), and to obtain money under the control of Morgan Stanley, by

means of false and fraudulent pretenses and representations.

## III. Purpose of the Fraud Scheme

12.      It was the purposes of the fraud scheme that the defendants and participants would

enrich defendants DOUGLAS JEMAL and NORMAN D. JEMAL by means of a scheme

whereby the defendants and participants would use false and fraudulent documents to obtain

-24-

proceeds from the lender out of the tenant improvement reserve for the personal use of defendants DOUGLAS JEMAL and NORMAN D. JEMAL in such a way as to: a) conceal from defendant DOUGLAS JEMAL's partner that defendants DOUGLAS JEMAL and NORMAN D. JEMAL had obtained a portion of the loan proceeds for their personal use and benefit; b) conceal from Morgan Stanley that defendants DOUGLAS JEMAL and NORMAN D. JEMAL had obtained funds from the TI Construction Reserve for their personal use and benefit; and c) conceal from the IRS that defendants DOUGLAS JEMAL and NORMAN D. JEMAL had obtained funds for their personal use and benefit.

### IV. Description of the Scheme

It was part of the scheme and artifice to defraud that:

13.    On or about November 18, 2002, Participant #2 signed a memo to JEMAL's partner, explaining details of the loan, which stated in part:

> Note that $7 million is being held back to fund the remaining
>
> tenant improvement and leasing commissions (all of these are to
>
> outside brokers). [emphasis supplied]

14.    On or about November 21, 2002, two days after settlement, Douglas Development submitted its first "draw" request to Morgan Stanley for a disbursement of approximately over $3.5 million from the tenant improvement reserve. Among the invoices submitted to justify the draw was an invoice from MTD Real Estates Services (MTD) to Cayre Jemal's Gateway in the amount of $430,039.08. Said invoice was false, fraudulent and misleading as follows:

        a.    The invoice stated that the payment was due for representation of the

                DC Government Department of Transportation, when in fact, MTD had no

-25-

agency relationship with the DC Government Department of
Transportation;

b.   The invoice set forth a commission schedule based on a ten year lease,
when in fact the actual lease was for 8 ½ years;

c.   The invoice represented that MTD had an address at Eastern Avenue, NW,
Washington, D.C., though the defendants BLAKE ESHERICK,
DOUGLAS JEMAL and Participant #1 did not have offices at the Eastern
Avenue address;

d.   Even though the invoice represented that MTD had an address at 6856
Eastern Avenue, NW, the phone number on the invoice was a phone
number of a fax line at Douglas Development;

e.   The invoice bore little or no relationship to the actual lease terms.

15.   This false, fraudulent and misleading invoice was approved for payment by
defendant BLAKE C. ESHERICK.

16.   In response to a request from Morgan Stanley for a "lien release" and wiring
information related to MTD, the defendants and Participants took the following
acts:

a.   They obtained the signature of an acquaintance of defendant DOUGLAS
JEMAL on a "lien release" document, when in truth and in fact, this
individual had no knowledge of the affairs of MTD and no knowledge of
the representations in the document;

-26-

b.    On or about December 10, 2002, defendant DOUGLAS JEMAL signed

documents opening an account at Adams National Bank (Adams) in the

name of MTD; defendant DOUGLAS JEMAL was the only signor on the

MTD Adams account and the address on the account was the address of

Douglas Development;

c.    The defendants and Participants caused a memorandum to be prepared,

purportedly from the acquaintance referenced in paragraph (a), above, to

Douglas Develoment's Controller, setting forth the wiring instructions for

the MTD Adams account, when, in truth and in fact, the acquaintance was

unaware of this memorandum, did not give permission to use his name in

any such memorandum, and was unaware of any such bank account or

wiring instructions;

d.    Participant #1 sent by telefax the lien release and the memorandum

containing wiring instructions described in the preceding paragraph from

the offices of Douglas Develoment, in Washington, D.C. to the offices of

the lender, in New York, NY.

17.    On or about December 12, 2002, the lender authorized the transmission by wire

of $430,039.08 from accounts located outside the District of Columbia to the

MTD Adams account in the District of Columbia, and said funds were in fact

wired.

18.    On or about December 13, 2003, Participant # 2 and defendant NORMAN D.

JEMAL directed that $400,000 be wired out of the MTD Adams account to the

-27-

account of a settlement company, where the funds were used by defendants DOUGLAS JEMAL and NORMAN D. JEMAL to purchase a property in the District of Columbia.

19.     On December 16, 2003, a $30,000 check was written from the MTD Adams account payable to Douglas Develoment, leaving a small balance in the MTD Adams account; thus, nearly the entire $430,039.08 was used for the benefit of defendant DOUGLAS JEMAL, and just a few dollars remained in the possession or control of MTD.

20.     At no time after December 12, 2002 and prior to January of 2005 did the defendants or participants, on behalf of MTD, file a tax return with the IRS reporting MTD's receipt of $430,039.08 income.

21.     At no time after December 12, 2002 and prior to January of 2005, did the defendants or Participants inform the tax preparer for Douglas Development, defendant DOUGLAS JEMAL and defendant NORMAN JEMAL of the details of this transaction, of defendant DOUGLAS JEMAL's and defendant NORMAN D. JEMAL's receipt of funds in the manner described above, and of the existence of MTD.

### V.  Use of Wires

For the purpose of executing the above scheme and artifice to defraud, defendants DOUGLAS JEMAL,  BLAKE C. ESHERICK, and NORMAN D. JEMAL did cause to be transmitted by wire the following writing, signs, signals and sounds:

-28-

1.      On or about November 18, 2002, a telefax from the District of Columbia to

defendant DOUGLAS JEMAL's partner in New York, NY;

2.      December 10, 2002, a telefax from the District of Columbia to Morgan Stanley in

New York, NY;

3.      On or about December 12, 2002, approximately $430,039.08 by wire from a bank

outside the District of Columbia to the MTD Adams account in the District of

Columbia.

(Wire Fraud in violation of Title 18,
United States Code, Section 1343, and Aiding and Abetting and
Causing an Act to be Done, in violation of Title 18, United States Code, Section 2)

## COUNT SIX
(Tax Evasion 2001)

1.      Defendant DOUGLAS JEMAL was owner and President of Douglas

Development Corporation (Douglas Development) with offices on 702 H Street, NW,

Washington, D.C.

2.      Douglas Development managed real estate owned by defendant DOUGLAS

JEMAL.

3.      Norman D. Jemal was defendant DOUGLAS JEMAL's son and an employee of

Douglas Development. He is not charged in this count. Defendant DOUGLAS JEMAL and

Norman D. Jemal jointly owned a property at 7804 Radnor Road, Bethesda, Maryland (the

"Bethesda house").

4.      Defendant BLAKE C. ESHERICK was an employee of Douglas Development.

-29-

5.    During calendar year 2001, defendant BLAKE C. ESHERICK received weekly salary payments from Douglas Development based on an annual salary of $70,200 (less a contribution to his "401K" plan); these salary payments were paid from Douglas Development's payroll account and handled by a company which provided payroll services to Douglas Development.

## II. Tax Evasion

6.    From on or about January 1, 2001 through March 23, 2003, in the District of Columbia and elsewhere, defendants DOUGLAS JEMAL, BLAKE C. ESHERICK and others, as principals, aiders and abettors and coconspirators, did willfully attempt to evade and defeat the payment of a large part of the income taxes due and owing by defendant BLAKE C. ESHERICK to the United States of America for the calendar year 2001, by:

A.    concealing and attempting to conceal from all proper officers of the United States of America the true and correct income of defendant BLAKE C. ESHERICK for calendar year 2001 by the following acts:

1.    causing BLAKE C. ESHERICK to receive the following as part of his compensation in 2001:

i.    payments of $27,100 by check directly from Douglas Development to BLAKE C. ESHERICK's ex-wife; said checks were prepared by Douglas Development personnel and signed by defendant DOUGLAS JEMAL;

ii.    payments in excess of approximately $20,000 by checks directly from Douglas Development to BLAKE C. ESHERICK; said

-30-

checks were prepared by Douglas Development personnel and signed by defendant DOUGLAS JEMAL;

iii.    rent-free housing, to include utilities at the Bethesda house, of a fair market rental value of approximately of $2,000 per month; the checks for the mortgage payment for the house were prepared by Douglas Development personnel and signed by Norman D. Jemal;

iv.    payments in excess of $10,000 in the form of checks directly from Douglas Development as payments for an automobile personally owned by and used by BLAKE C. ESHERICK; said checks were prepared by Douglas Develoment personnel and signed by defendant DOUGLAS JEMAL;

2.    on or about a date in 2002, submitting to the Internal Revenue Service a Form W-2 reporting defendant BLAKE C. ESHERICK's "wages and earning" as $66,000, that is, solely the amount paid to ESHERICK through Douglas Develoment's standard payroll process, based on a salary of approximately $70,200 less a "401K" contribution, and not including the aforesaid items of compensation;

3.    by causing the above income items to be recorded in the books and records of Douglas Development, or, in the case of the Bethesda house, handled through the personal bank account of Norman Jemal, so as to conceal defendant BLAKE C. ESHERICK's true compensation;

-31-

B.   in or about various dates in 2001, causing Douglas Development to withhold and pay to the Internal Revenue Service taxes of $2,842 from defendant BLAKE C. ESHERICK's salary, that is, the amount withheld solely on the $66,000 income that ESHERICK was paid through Douglas Development's standard payroll process with no withholding on the aforesaid income items;

C.   on or about March 23, 2003, causing to be prepared, signed, filed and mailed a false and fraudulent federal income tax return, Form 1040, for calendar year 2001, for defendant BLAKE C. ESHERICK, said return being false and fraudulent in that:

1.   the return represented, at line 22, that BLAKE C. ESHERICK's total income for calendar year 2001 was $70,135, when, in truth and in fact, BLAKE C. ESHERICK's total income for calendar year 2001 was substantially in excess of that amount;

2.   the return represented at line 36, that BLAKE C. ESHERICK had itemized deductions of $47,721, as set forth in Schedule A, consisting in part of home mortgage interest and points of $26,996, as reported on Schedule A, line 10, and real estate taxes of $3,956, as reported on Schedule A, line 6, when in truth and in fact, BLAKE C. ESHERICK did not have itemized deductions of $47,721, did not pay mortgage interest of $26,996 and did not pay real estate taxes of $3,956 in calendar year 2001;

3.   the return represented, at line 58, that BLAKE C. ESHERICK's total income ax due and owing for calendar year 2001 was $1,394 when in

-32-

truth in truth and in fact, BLAKE C. ESHERICK's income tax due was

substantially in excess of that amount.

(Attempt to Evade and Defeat Taxes and Payment Thereof, in violation of Title 26,
United States Code, Section 7201,
and Aiding and Abetting and
Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2) )

## COUNT SEVEN
(Tax Evasion 2002)

1.    Paragraphs One through Four of Count Six are incorporated by reference as if set

out in full.

2.    During calendar year 2002, defendant BLAKE C. ESHERICK received weekly

salary payments from Douglas Development based on an annual salary of $70,200 (less a "401K"

contribution); these salary payments were paid from Douglas Development's payroll account and

handled by a company that provided payroll services for Douglas Develoment.

## II. Tax Evasion

3.    From on or about January 1, 2002 through March 23, 2003, in the District of

Columbia and elsewhere, defendants BLAKE C. ESHERICK, DOUGLAS JEMAL and others, as

principals, aiders and abettors and coconspirators, did willfully attempt to evade and defeat the

payment of a large part of the income taxes due and owing by BLAKE C. ESHERICK to the

United States of America for the calendar year 2002 by:

A.    concealing and attempting to conceal from all proper officers of the United States

of America the true and correct income of defendant BLAKE C. ESHERICK for

calendar year 2002 by the following acts:

-33-

1.      causing defendant BLAKE C. ESHERICK to receive compensation in

2002 in forms not reported to the Internal Revenue Service, including:

i.      payments of $26,950 directly from Douglas Development to

BLAKE C. ESHERICK's ex-wife; said checks were prepared by

Douglas Development personnel and signed by defendant

DOUGLAS JEMAL;

ii.     payments of approximately in excess of $20,000 in the form of

checks directly from Douglas Development to BLAKE C.

ESHERICK; said checks were prepared by Douglas Develoment

personnel and signed by defendant DOUGLAS JEMAL;

iii.    payments of $3000 directly to a credit card account of BLAKE C.

ESHERICK.

iv.     rent-free housing, to include utilities, in the Bethesda house, of a

fair rental value of approximately of $2,000 per month; checks for

the mortgage payment for the house were prepared by Douglas

Development personnel and signed by Norman D. Jemal;

v.      payments in excess of $23,000 in the form of checks directly from

Douglas Development as payments for automobiles personally

owned by BLAKE C. ESHERICK; said checks were prepared by

Douglas Development personnel and signed by defendant

DOUGLAS JEMAL;

-34-

2.    on or about a date in 2003, submitting to the Internal Revenue Service a

Form W-2 reporting defendant BLAKE C. ESHERICK's "wages and

earning" as $66,000, that is, solely the amount paid to ESHERICK through

Douglas Develoment's standard payroll process based on a salary of

$70,200 less a 401K contribution, and not including the aforesaid items of

compensation;

3.    by causing the above income items to be recorded in the books and records

of Douglas Develoment, in the case of the Bethesda house, handled

through the personal bank account of Norman Jemal, so as to conceal

BLAKE C. ESHERICK's true compensation;

B.    in or about various dates in 2002, causing Douglas Development to pay

withholding to the Internal Revenue Service of a total of $3,295, that is, the

amount withheld solely on the $66,000 paid through Douglas Development's

standard payroll process, with no withholding on the aforesaid income items; and,

C.    causing to be prepared, signed, filed and mailed a false and fraudulent federal

income tax return, Form 1040, for calendar year 2002, for defendant BLAKE C.

ESHERICK, said return being false and fraudulent in that:

1.    the return represented, at line 22, that BLAKE C. ESHERICK's

total income for calendar year 2002 was $66,000, when, in truth

and in fact, BLAKE C. ESHERICK's income for calendar year

2002 was substantially in excess of that amount;

-35-

2.      the return represented at line 38 that BLAKE C. ESHERICK had itemized

deductions of $59,899, as set forth in Schedule A, consisting in part of

home mortgage interest and points of $26,078, as reported on Schedule A,

line 10, and real estate taxes of $4,389, as reported on Schedule A, Line 6,

when in truth and in fact, BLAKE C. ESHERICK did not have itemized

deductions of $59,899, did not pay mortgage interest of $26,078 and did

not pay real estate taxes of $4,389 in calendar year 2002;

3.      the return represented, at line 55, that the BLAKE C. ESHERICK's

total tax due for calendar year 2002 was $0 when in truth in truth

and in fact, BLAKE C. ESHERICK's income tax due was

substantially in excess of that amount.

(Attempt to Evade and Defeat Taxes and Payment Thereof, in violation of Title 26,
United States Code, Section 7201,
and Aiding and Abetting and
Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2)

### COUNT EIGHT
(Tax Evasion 2003)

#### Introduction

1.      Paragraphs One through Four of Count Six are incorporated by reference as if set

out in full.

2.      During calendar year 2003, defendant BLAKE C. ESHERICK received weekly

salary payments based on an annual salary of $70,200 less a "401K" contribution; these salary

-36-

payments were paid from Douglas Development's payroll account and handled by a company which provided payroll services.

## II. Tax Evasion

3.      During the calendar year 2003, defendant BLAKE C. ESHERICK had and received gross income of approximately in excess of $150,000, resulting in taxable income in excess of approximately over $140,000; upon said taxable income there was owing to the United States of America an income tax in excess of approximately $40,000; well knowing and believing the foregoing facts, defendants BLAKE C. ESHERICK, DOUGLAS JEMAL and others, as principals and aiders and abettors and coconspirators, did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America and payment thereof for said calendar year by:

A.      on or before April 15, 2004, in the District of Columbia, failing to make an income tax return, as required by law, to any proper officer of the Internal Revenue Service;

B.      on or before April 15, 2004, failing to pay to the Internal Revenue Service said income tax;

C.      concealing and attempting to conceal from all proper officers of the United States of America the true and correct income of defendant BLAKE C. ESHERICK for calendar year 2003 by the following acts:

1.      causing defendant BLAKE C. ESHERICK to receive compensation in 2003 in forms not reported to the Internal Revenue Service, including:

-37-

i.    payments of $22,536 directly from Douglas Development to

BLAKE C. ESHERICK's ex-wife; each of said checks was

prepared by Douglas Development personnel and signed by

defendant DOUGLAS JEMAL;

ii.    payments of approximately in excess of $45,500 in the form of

checks directly from Douglas Development to BLAKE C.

ESHERICK; each of said was checks prepared by Douglas

Development personnel and signed by defendant DOUGLAS

JEMAL;

iii.    a payment in excess of $5000 directly to American Express as

payment for expenses incurred personally by BLAKE C.

ESHERICK;

iv.    from in or about January 2003 through approximately July 2003,

rent-free housing, to include utilities, in the Bethesda house owned

by defendant DOUGLAS JEMAL and Norman D. Jemal, of a fair

rental value of approximately of $2,000 per month; checks for the

mortgage payment for the house were prepared by Douglas

Development personnel and signed by Norman D. Jemal;

v.    from in or about August 2003 through December 2003, rent-free

housing, to include utilities, in a Washington, D.C. house

purchased by defendant DOUGLAS JEMAL for $825,000 in June

2003 at defendant BLAKE C. ESHERICK's request; said property

-38-

had a fair-market value rental value of $3,000 per month and checks for the mortgage payment for the house were prepared by Douglas Development personnel and signed by defendant DOUGLAS JEMAL;

vi.   payments in excess of $3,000 in the form of checks directly from Douglas Development as payments for an automobile personally owned by defendant BLAKE C. ESHERICK; each of said checks was prepared by Douglas Development personnel and signed by defendant DOUGLAS JEMAL;

2.   by causing the above income items to be recorded in the books and records of Douglas Development or, in the case of the Bethesda house and the 6001 Nevada Avenue house, handled through the personal bank accounts of defendant DOUGLAS JEMAL and Norman Jemal, so as to conceal defendant BLAKE C. ESHERICK's true compensation;

3.   in or about Spring 2004, submitting to the Internal Revenue Service a Form W-2 reporting defendant BLAKE C. ESHERICK's "wages and earning" as $66,000, that is, solely the amount paid to ESHERICK through Douglas Develoment's standard payroll process and not including the aforesaid items of compensation;

-39-

D.      in or about various dates in 2003, causing Douglas Development to pay

withholding to the Internal Revenue Service of a total of $1,727, that is, the

amount withheld solely on the $66,000 paid through Douglas Development's

standard payroll process, with no withholding on the aforesaid income items.

(Attempt to Evade and Defeat Taxes and Payment Thereof, in violation of Title 26,
United States Code, Section 7201,
and Aiding and Abetting and
Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2)

A TRUE BILL:


FOREPERSON


Kenneth L. Wainstein JR

ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA