UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) ) ) | |
| v. | ) ) | Crim. No.  05-0359-1, -2, -3 (RMU) |
| DOUGLAS JEMAL, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO SEVER
COUNTS BASED ON IMPROPER JOINDER UNDER
<u>RULE 8(b) AND PREJUDICIAL JOINDER UNDER RULE 14</u>**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby move this Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(D) and 14, to sever (a) Count Five and (b) Counts Six through Eight, paragraph 18 of the Manners and Means Section and paragraphs 18-20 of the Overt Acts Section of Count One from each other and from (c) Counts One through Four of the Indictment on the grounds that (1) joinder of these counts is improper under Federal Rule of Criminal Procedure 8, and (2) severance is necessary under Federal Rule of Criminal Procedure 14 to avoid prejudice to the Defendants.

Defendants respectfully request oral argument on this motion.  A proposed Order is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Erik L. Kitchen (D.C. Bar #292847)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

        Paul Kemp
        Carol Elder Bruce
        Venable LLP
        575 7th Street, N.W.
        Washington, D.C. 20004
        (202) 344-4400

        Counsel for Blake Esherick

Dated:  December 22, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No. 05-0359-1, -2, -3 (RMU) |
| | ) | |
| DOUGLAS JEMAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER COUNTS BASED ON IMPROPER JOINDER
UNDER RULE 8(b) AND PREJUDICIAL JOINDER UNDER RULE 14**

The Court should sever Count Five (the "Wire Fraud Count") and Counts Six through Eight, paragraph 18 of the Manners and Means Section and paragraphs 18-20 of the Overt Acts Section of Count One (the "Tax Evasion Counts") from each other and from Counts One through Four (the "Public Corruption Counts") of the Indictment on the grounds that (1) joinder of the Wire Fraud Count and Tax Evasion Counts with the Public Corruption Counts is improper under Federal Rule of Criminal Procedure 8, and (2) severance is necessary under Federal Rule of Criminal Procedure 14 to avoid prejudice to Defendants.

**I.   INTRODUCTION**

The Indictment alleges three distinct groups of criminal offenses with nothing in common beyond the identities of the Defendants. The Public Corruption Counts are the centerpiece of the Indictment. The Public Corruption Counts allege that Defendants were principals in the Douglas Development Corporation ("DDC), a business that manages, develops and leases commercial real estate owned by Defendant Douglas Jemal, Indictment at 1-2 (¶¶ 1-

2), and that Michael Lorusso ("Lorusso") was the Deputy Director of the District of Columbia's Office of Property Management ("OPM"), who was responsible for, among other things, arranging for the leasing of office space by D.C. government agencies. Id. at 3 (¶ 7). All of the Public Corruption Counts are based on the allegation that over an approximately nineteen-month period, between May 2001 and late-2002, Defendants provided several things of value to Lorusso in return for various official acts, primarily related to (a) the District's lease of and subsequent unconsummated effort to purchase a vehicle impound lot at 4800 Addison Road, Capitol Heights, Maryland, and (b) the District's lease of, and payment of invoices related to tenant improvements at, commercial office space in a building at 77 P Street, N.E., Washington, D.C. See Indictment at 5-8 (¶¶ 15-16) (Count One -- Conspiracy to Commit Bribery), 14-15 (Count Two -- Bribery), and 17 (¶ 4) (Count Three -- Mail and Honest Services Fraud).[1]

The Wire Fraud Count alleges that Defendants devised an unrelated scheme to defraud relating to a commercial loan obtained by the entity that owned the 77 P Street property, in which Defendants allegedly submitted false and fraudulent documents to the lender, Morgan Stanley Mortgage Capital ("Morgan Stanley"), to obtain leasing commissions. Indictment at 23-24 (¶¶ 11-12). The Wire Fraud Count alleges that Defendants defrauded Defendant Douglas Jemal's business partner and Morgan Stanley by obtaining these leasing commissions from a tenant improvement reserve that was part of the loan, allegedly by misrepresenting that the funds were for an outside broker, MTD Real Estate Services ("MTD"), when in fact MTD was allegedly controlled by Defendants. Id. at 24-26 (¶¶ 13-16). The Wire Fraud Count further

---

[1] Count Four is based on a small subset of these allegations. Compare Indictment at 7 (¶ 16(e)(i)) with id. at 19-20 (¶¶ 1-3).

contends that the scheme defrauded the IRS because MTD did not file a tax return reporting these leasing commissions as income. Id. at 27 (¶ 20). These events allegedly took place in less than a month, between November 19, 2002, the date of the loan, and December 16, 2002, the date by which all of the funds at issue had been removed from the MTD bank account. Id. at 22 (¶ 7), 27 (¶ 19). The Wire Fraud Count contains no allegations relating to Lorusso, the District of Columbia government or any public corruption.

The Tax Evasion Counts allege that for each of the tax years 2001, 2002 and 2003, Defendants Douglas Jemal and Esherick (but not Defendant Norman Jemal) willfully evaded income taxes by failing to report as income to Esherick: (a) checks from DDC to Esherick's ex-wife, (b) checks from DDC to Esherick directly, (c) rent-free housing at a Bethesda, Maryland home and subsequently a Washington, D.C. home, (d) checks from DDC for an automobile used by Esherick, and (e) payment of certain of Esherick's credit card expenses. Indictment at 28-39 (Counts Six through Eight). Again, these Tax Evasion Counts contain no allegations about Lorusso, the District of Columbia government or any public corruption, nor do they relate in any way to the scheme alleged in the Wire Fraud Count.[2]

---

[2] Although the Tax Evasion Counts contain no allegations regarding public corruption, the conspiracy to commit bribery alleged in Count One includes allegations relating to the tax evasion. Specifically, paragraph 18 of the Manners and Means Section of Count One alleges that Defendants Douglas and Norman Jemal "obtained the services" and "the personal loyalty" of Defendant Esherick, purportedly to induce him to participate in the bribery conspiracy, by engaging in the same conduct alleged in the Tax Evasion Counts to purportedly assist Esherick in the evasion of income taxes. Indictment at 8-10 (¶ 18); see also id. at 13 (¶¶ 18-20) (alleging overt acts relating to the tax evasion allegations). As set forth below, these "allegations" are a transparent attempt to avoid severance of the otherwise unrelated and improperly joined Public Corruption Counts and Tax Evasion Counts.

## II.   ARGUMENT

### A.   The Public Corruption Counts, Wire Fraud Count and Tax Evasion Counts Have Been Improperly Joined With Each Other Under Rule 8(b)

Federal Rule of Criminal Procedure 8(b) allows joinder of multiple counts against multiple defendants in a single indictment only if the counts are "of the same series of acts or transactions . . . ." Fed. R. Crim. P. 8(b).[3]  See also United States v. Jackson, 562 F.2d 789, 796 (D.C. Cir. 1977) ("Rule 8(b) forbids joinder, even of identical crimes, unless those crimes are part of 'the same series of acts or transactions.'").  The language of Rule 8(b) sets "definite limits [on] what the government can put together in a single indictment." United States v. Nicely, 922 F.2d 850, 853 (D.C. Cir. 1991).  Specifically, "Rule 8(b)'s language 'may not be read to embrace similar or even identical offenses, *unless* those offenses are related . . . . [T]here must be a logical relationship between the acts or transactions within the series.'" Id. (citation omitted) (alterations and emphasis in original); see also Jackson, 562 F.2d at 796 ("the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses").

In evaluating the propriety of joinder, a reviewing court should consider whether the proof to be offered in support of each set of charges overlaps such that a joint trial of the charges serves the interests of judicial economy. See Jackson, 562 F.2d at 795.  Such interests "cannot, however, trample a defendant's right to a fair trial." Nicely, 922 F.2d at 855.  If there

---

[3] The D.C. Circuit has made clear that Rule 8(b), not Rule 8(a), governs joinder of offenses where more than one defendant is involved.  See United States v. Jackson, 562 F.2d 789, 793 (D.C. Cir. 1977) ("Where multiple defendants are involved, Fed. R. Crim. P. 8(b) governs both joinder of offenses and joinder of defendants.").

are "no presumptive benefits from joint proof of facts relevant to all the acts or transactions, there is no 'series,' Rule 8(b) comes to an end, and joinder is impermissible." Jackson, 562 F.2d at 795 (quoting King v. United States, 355 F.2d 700, 704 (1st Cir. 1966) (quotation marks omitted)).

The Wire Fraud Count involves a loan transaction involving Morgan Stanley and allegations relating to Defendants' use of MTD as a vehicle to obtain leasing commissions on a discrete lease transaction. As described in the Indictment, the Wire Fraud Count involves a small universe of documents that otherwise have no relevance to the rest of the case. See Indictment at 21-28 (Count Five). In contrast, the Tax Evasion Counts will require the government to introduce evidence regarding numerous payments from DDC to Defendant Esherick over the course of at least three years. The parties will need to engage in a complicated analysis of Esherick's compensation and tax returns, which will likely entail expert testimony and/or forensic accounting analysis. The Public Corruption Counts will involve another completely distinct presentation of evidence regarding Defendants' relationship with Lorusso and business dealings with the District of Columbia. The government will attempt to prove that Defendants obtained business from the D.C. government through bribes, while Defendants will likely seek to defend the merits of the transactions, demonstrate that the invoices challenged in the Indictment as "fraudulent" in fact reflected real work and services provided to the D.C. government, and refute the claim that any thing of value was provided to Lorusso as a "*quid pro quo*" for any official action. The proof relating to these three sets of counts does not overlap in any meaningful respect, and the events do not constitute the "same series of acts or transactions." Fed. R. Crim. P. 8(b).

The three sets of counts also take place within three different timeframes, another indication that joint proof of facts will not be presented at trial. In <u>Nicely</u>, the D.C. Circuit held that two conspiracies were improperly joined, in part because one of the conspiracies took place over a long period of time whereas the second "scheme had run its course within a couple of weeks." 922 F.2d at 855. The Public Corruption Counts allege a series of acts that took place within a relatively discrete period of approximately nineteen months, between May 2001 and "late-2002." Indictment at 5-8 (¶¶ 15-16). By contrast, the scheme alleged in the Wire Fraud Count had completely run its course within a single month, from November 18, 2002 to December 16, 2002.[4] The Tax Evasion Counts allege a different series of acts over a lengthy period of time, from January 2001 through Spring 2004. These different timeframes further demonstrate that the Public Corruption Counts, Wire Fraud Count and Tax Evasion Counts are all improperly joined in a single indictment.

There is no commonality between the alleged victims of the Public Corruption Counts and the other counts, and only one common victim in the Wire Fraud Count and Tax Evasion Counts, another factor that indicates misjoinder. <u>See</u> <u>Nicely</u>, 922 F.2d at 854 (severance on grounds of misjoinder necessary because there was no "common victimization"). The alleged victims of the Public Corruption Counts are the citizens and government of the District of Columbia, who were purportedly deprived and defrauded of money and Lorusso's honest services. The Wire Fraud Count and Tax Evasion Counts do not relate to these victims in any respect. Instead, the alleged victims of the Wire Fraud Count are Defendant Douglas Jemal's

---

[4] Although paragraphs 18 and 19 of Count Five allege that certain conduct took place in December 2003, it appears from the context of these allegations that this is a typographical error and the actual conduct took place in 2002. <u>See</u> Indictment at 26-27 (¶¶ 17-20).

business partner, Morgan Stanley and the IRS, and the alleged victim of the Tax Evasion Counts is the IRS.

Joinder of the Tax Evasion Counts with the other counts of the Indictment is improper for an additional reason. Joinder of tax evasion counts with non-tax counts is only appropriate if "the revenue on which the tax was evaded resulted from the criminal conduct charged in the non-tax counts." United States v. Singh, 973 F. Supp. 7, 18 (D.D.C. 1997) (citing United States v. Biaggi, 909 F.2d 662, 676 (2d Cir. 1990)); see also United States v. Diaz-Munoz, 632 F.2d 1330, 1335-36 (5th Cir. 1980) (reversing convictions in part based on improper joinder of tax counts with fraud and embezzlement counts); United States v. Lynch, 198 F. Supp. 2d 827, 830-31 (N.D. Tex. 2001) (granting motion to sever tax fraud count from non-tax counts). Here, there is no allegation in the Indictment that the Defendants sought to assist Defendant Esherick in the evasion of taxes on any revenue that resulted from the criminal conduct alleged in the Public Corruption Counts or the Wire Fraud Counts. Rather, the alleged payments from DDC to Defendant Esherick appear to have come from the general treasury of the company and cannot be linked specifically to any of the criminal conduct charged in the non-tax counts.

At bottom, the only commonality between the three distinct sets of counts in the Indictment appears to be that the same defendants participated in the alleged offenses (with the exception of Defendant Norman Jemal who is not charged in the Tax Evasion Counts), and the offenses involved alleged fraud or falsehoods for personal gain. However, the D.C. Circuit has held that these facts alone are insufficient to justify joinder of otherwise unrelated schemes. "[T]he mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one conspiracy, one common plan or scheme." Nicely, 922 F.2d at 853 (quoting United States v. Velasquez, 722 F.2d 1348, 1353 (7th

Cir. 1985) (quotation marks omitted)).  As the court stated in granting a motion for severance of offenses based on misjoinder:

> The government points to nothing in common between the two conspiracies more specific than the common use of falsehoods to make money. . . . Telling lies, even elaborate ones, cannot be the hook for joining otherwise unrelated conspiracies.

Id. at 854.  For the same reasons, the Public Corruption Counts, the Wire Fraud Count and the Tax Evasion Counts are improperly joined in a single indictment, and the Court should sever each set of counts from the others for separate trials.

### B. Even If Joinder Were Proper, The Court Should Grant A Severance Under Rule 14 To Prevent Prejudicial Spill-Over Of Evidence

Even if the Court determines that the Public Corruption Counts, Wire Fraud Count and Tax Evasion Counts were all properly joined in a single indictment under Rule 8, the Court should nonetheless grant a severance pursuant to Rule 14 to avoid prejudice to Defendants.  Under Rule 14, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

As the D.C. Circuit has recognized, the danger of prejudice from failure to grant a severance is as follows:

> (1) [the defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer criminal disposition on the part of the defendant on which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.  A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent

> hostility engendered by the charging of several crimes as distinct from only one.

Drew v. United States, 331 F.2d 85, 88 (D.C. Cir. 1964). The second and third factors are present here, requiring severance.

First, a joint trial of the Public Corruption Counts, the Wire Fraud Count, and the Tax Evasion Counts would prevent Defendants from receiving a fair trial because the jury is likely to infer criminal disposition on the part of the Defendants as a result of the multiple, unrelated charges alleged in the Indictment. The centerpiece of the Indictment is the Public Corruption Counts. The Wire Fraud Count and the Tax Evasion Counts are tacked on to the end of the Indictment, almost as an afterthought. The inclusion of the Wire Fraud Count and Tax Evasion Counts in the Indictment appears to be an attempt by the government to make the jury believe the Defendants have a propensity for fraud and criminal behavior, in the hope of improving the chances of a conviction on the Public Corruption Counts. If the three sets of counts are tried together, the evidence proffered by the government in support of the Wire Fraud Count and Tax Evasion Counts will prejudice the jury and impair the Defendants' ability to fairly defend themselves against the Public Corruption Counts. See, e.g., United States v. Gray, No. 104CR580, 2005 WL 1126733, at *4 (N.D. Ohio May 3, 2005) (evidence relating to tax charges not otherwise admissible at trial on non-tax charges "would cause substantial and compelling prejudice to [defendant's] right to a fair trial on the non-tax charges"). The jury's consideration of the evidence regarding the Public Corruption Counts would be unfairly "tainted" by evidence that the government would seek to introduce relating to the Wire Fraud Count and Tax Evasion Counts.

Second, the jury cannot reasonably be expected to ignore evidence introduced in support of the Wire Fraud Count and the Tax Evasion Counts when considering the Public Corruption Counts. Thus, the danger exists that the jury may convict the Defendants on the Public Corruption Counts by cumulating evidence introduced in support of the other counts. See Gregory v. United States, 369 F.2d 185, 189 (D.C. Cir. 1966) ("where evidence of more than one crime is offered to the jury because more than one crime is charged in the indictment, the evidence as to all crimes tends to cumulate to prove each, thus prejudicing the defendant in his right to a separate consideration of his guilt or innocence on each charge") (citing Drew, 331 F.2d at 91); United States v. Foutz, 540 F.2d 733, 738 (4th Cir. 1976) (when one part of the government's case is weaker than another, a court cannot assume that the jury will properly compartmentalize the evidence into "separate intellectual boxes") (quoting Bruton v. United States, 391 U.S. 123 (1967) (quotation marks omitted)). In sum, the Court should sever the Wire Fraud Count and the Tax Evasion Counts from each other and from the Public Corruption Counts under Rule 14 to avoid prejudice to the Defendants.

Finally, the risk that the jury would unfairly cumulate the evidence against Defendants is heightened in this case by the fact that the evidence supporting the Wire Fraud Count and the Tax Evasion Counts would not be admissible in a separate trial on the Public Corruption Counts. The cross-admissibility of evidence is evaluated under Federal Rule of Evidence 404(b), which provides that "other acts" evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) (emphasis added); see also Huddleston v. United States, 485 U.S. 681, 686 (1988) ("The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."). Thus, the

government may only introduce evidence of other acts when it establishes that the evidence is being offered for specific "purposes such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). The D.C. Circuit "has repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." Nicely, 922 F.2d at 856 (collecting cases).

Evidence relating to the Wire Fraud Count would not be admissible at separate trials of the Public Corruption Counts or the Tax Evasion Counts under any of the exceptions provided in Rule 404(b). The scheme to defraud alleged in the Wire Fraud Count -- relating to a commercial loan obtained by the entity that owned the 77 P Street property, in which Defendants allegedly submitted false and fraudulent documents to the lender, Morgan Stanley, to obtain leasing commissions -- is completely unrelated to the allegations relating to Lorusso and the D.C. government set forth in the Public Corruption Counts, or to the allegations in the Tax Evasion Counts, and therefore is not probative of intent or knowledge. See Nicely, 922 F.2d at 857 ("[W]hen a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance.") (citation and quotation marks omitted); Drew, 331 F.2d at 93 (finding that facts regarding two robberies "do not show such a close similarity in the manner of committing the crimes as would make them admissible in separate trials"). Evidence that would be admissible at a trial on the Wire Fraud Count -- for example, documents submitted to Morgan Stanley by Defendants in connection with a commercial loan -- has no bearing on Defendants' motive, opportunity, or plan to provide things of value to Lorusso or to evade income tax relating to payments to Defendant Esherick,

and therefore would not be admissible at a separate trial on the Public Corruption Counts or the Tax Evasion Counts.

Evidence relating to the Tax Evasion Counts would also be inadmissible at separate trials of the Public Corruption Counts or the Wire Fraud Count. The government will likely argue that the allegations in paragraph 18 of the Manners and Means Section of Count One -- that Defendants Douglas Jemal and Norman Jemal "obtained the services" and "the personal loyalty" of Defendant Esherick, purportedly to induce him to participate in the bribery conspiracy, by helping him evade taxes, Indictment at 8-10 (¶ 18) -- demonstrate that the conduct alleged in the Tax Evasion Counts provided the motive for the conduct alleged in the Public Corruption Counts, at least with respect to Defendant Esherick. However, the "allegation" in paragraph eighteen is sheer speculation and a transparent attempt to avoid severance. Given that Defendants Douglas Jemal, Norman Jemal and Blake Esherick are all defendants in this case, the government has no ability to prove that the alleged payments to Esherick to help him evade income taxes were made for the purpose of obtaining the personal loyalty and services of Esherick so as to induce him to participate in the alleged bribery scheme. Moreover, as the government is aware (as revealed by discovery), the types of payments to Defendant Esherick alleged in the Tax Evasion Counts began at least as early as 1999, more than two years before the Defendants had even met Lorusso, further belying the claim that these payments were intended to obtain the loyalty of Defendant Esherick to bribe Lorusso. The allegation in paragraph eighteen is nothing more than argument by the government and does not provide the Court with a basis to decline to sever the otherwise completely unrelated Tax Evasion Counts from the Public Corruption Counts and the Wire Fraud Count.

**III.    CONCLUSION**

        For the foregoing reasons, the Court should sever (a) the Wire Fraud Count (Count Five) and (b) the Tax Evasion Counts (Counts Six through Eight, paragraph 18 of the Manners and Means Section and paragraphs 18-20 of the Overt Acts Section of Count One) from each other and from (c) the Public Corruption Counts (Counts One through Four) of the Indictment.

                            Respectfully submitted,

                            _____
                            Reid H. Weingarten (D.C. Bar #365893)
                            Erik L. Kitchen (D.C. Bar #292847)
                            Brian M. Heberlig (D.C. Bar #455381)
                            Steptoe & Johnson LLP
                            1330 Connecticut Avenue, N.W.
                            Washington, D.C.  20036-1795
                             (202) 429-3000

                            Michele A. Roberts
                            Akin Gump Strauss Hauer & Feld LLP
                            1333 New Hampshire Avenue, N.W.
                            Washington, D.C.  20036
                            (202) 887-4306

                            Christopher B. Mead
                            London & Mead
                            1225 19th Street, N.W.
                            Suite 320
                            Washington, D.C.  20036
                            (202) 331-3334

                            Counsel for Douglas Jemal

        Stanley M. Brand
        Ross Nabatoff
        The Brand Law Group
        923 Fifteenth Street, N.W.
        Washington, D.C. 20005
        (202) 662-9700

        Counsel for Norman Jemal

        Paul Kemp
        Carol Elder Bruce
        Venable LLP
        575 7th Street, N.W.
        Washington, D.C. 20004
        (202) 344-4400

        Counsel for Blake Esherick

Dated: December 22, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES, | ) <br> ) <br> ) |
| v. | ) Crim. No. 05-0359-1, -2, -3 (RMU) <br> ) |
| DOUGLAS JEMAL, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

## ORDER

Upon consideration of Defendants' Motion To Sever Counts Based On Improper Joinder Under Rule 8(b) And Prejudicial Joinder Under Rule 14, the Government's Opposition and Defendants' Reply thereto, it is HEREBY ORDERED that Defendants' motion is GRANTED, and Count Five and Counts Six through Eight (as well as paragraph 18 of the Manners and Means Section and paragraphs 18-20 of the Overt Acts Section of Count One) are SEVERED from each other and from Counts One through Four for separate trials.

SO ORDERED.

                                                                    _____
                                                                    Ricardo M. Urbina
                                                                    UNITED STATES DISTRICT JUDGE

copies to:

Mark H. Dubester, Esq.
Assistant United States Attorney
U.S. Attorney's Office for the
District of Columbia
555 Fourth Street, N.W.
Room 5917
Washington, D.C. 20001

- 2 -

Reid H. Weingarten
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795

Stan Brand
Brand & Frulla
923 Fifteenth Street, N.W.
Washington, D.C. 20005

Paul Kemp
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004