# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) Crim. No. 05-0359-1, -2, -3 (RMU) |
| | ) |
| DOUGLAS JEMAL, ET AL., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT BLAKE ESHERICK'S MOTION TO SUPPRESS EVIDENCE OBTAINED BY ILLEGAL SEARCH

Defendant Blake Esherick hereby moves this Court to suppress evidence obtained by an illegal search of his residence at 6001 Nevada Avenue, N.W., Washington, D. C.  As set forth more fully in the memorandum in support of this motion, the search was illegal because there was no probable cause for the broad scope of the search warrant and because the search warrant did not describe the items to be seized with particularity, as required by the Fourth Amendment to the Constitution of the United States.

Defendant respectfully requests oral argument on this motion.  A proposed Order is attached.

Respectfully submitted,

Paul Kemp (D.C. Bar # 922773)
Carol Elder Bruce (D.C. Bar # 202200)
Lawrence B. Bernard (D.C. Bar # 181636)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

December 22, 2005                    Counsel for Blake Esherick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No.  05-0359-1, -2, -3 (RMU) |
| | ) | |
| DOUGLAS JEMAL, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BLAKE ESHERICK'S MOTION TO SUPPRESS
EVIDENCE OBTAINED BY ILLEGAL SEARCH**

On February 23, agents from three government agencies appeared at Blake Esherick's residence and at the offices of his employer, and executed search warrants.  The search of Mr. Esherick's residence was conducted with a broad general warrant that contained no specific description of the items to be seized, but instead set forth broad categories of items that far exceeded the scope of the matters under investigation and gave wide discretion to the officers conducting the search, failed to give Mr. Esherick notice of the items covered by the search, and went beyond any reasonable purpose for the search.  The affidavit supporting the warrant also failed to state any basis for believing that there was evidence of any crimes in Mr. Esherick's home.  Because the search warrant was in the nature of a general warrant and not supported by probable cause, it is invalid on its face, and any evidence obtained pursuant to the warrant must be suppressed.  Accordingly, for these reasons and others, Blake Esherick moves to suppress all evidence obtained pursuant to this illegal search, as well as any fruits that were obtained as a result of the illegal search.

## FACTUAL BACKGROUND

On February 22, 2005, Special Agent Andrew Sekela obtained a search warrant from

Magistrate Judge Alan Kay, to search Blake Esherick's residence at 6001 Nevada Avenue, N.W.,

as well as the offices of his employer, the Douglas Development Company.  [*See* Exhibit 1.]  The

warrants purported to be supported by an affidavit from Special Agent Sekela.   [*See* Exhibit 2.]

The affidavit asserted that Mr. Esherick's home contained evidence of bribery of a public official

(18 U.S.C. § 201), conspiracy to commit bribery of a public official (18 U.S.C. § 371), and tax

evasion (26 U.S.C. §7201).  The warrant specified five broad categories of documents as items to

be seized, plus expansive "catch-all" provisions that would permit the seizure of a far broader

selection of documents.  The warrant also included a section on the seizure of

"Documents/records Stored Electronically." [1]  The affidavit noted that Mr. Esherick had lived in

his current home only since the summer of 2003, after the events described in the affidavit, and

had lived in Bethesda before that time.  The warrants failed to contain any reference to any

---

[1] A computer was also seized.  Not only did the warrant fail to adequately describe the particular computer to be searched, but the description of the records to be seized from the computer suffers from the same deficiencies as the rest of the search warrant.  The scope of the search of the records stored in the computer are governed by the search warrant and, as we argue here, the search warrant fails as a general warrant.   According to the language of the Search Procedures for Computers on the last page of the search warrant, the government's investigating agents will examine the computer records and print out records described in paragraphs 1 and 5 of the search warrant.  This motion to suppress expressly applies to any documents that the investigating agents found in the computer and deemed responsive to paragraphs 1 to 5.  In addition, a joint motion for an Order setting forth procedures for handling electronic evidence was filed on March 11, 2005, and signed by Judge Hogan on that same date.  If the government departs from the requirements of that Order or obtains documents from the computer that exceed the scope of the Order, Mr. Esherick will object to any use of such documents at that time.  Pursuant to the terms of the March 11 Order, to the extent that the government seeks e-mails (including their attachments) that were stored on the computer, the government must serve a subpoena on defense counsel to seek to obtain those e-mails, and defense counsel will make appropriate objections if the government serves the subpoena and requests e-mails that are not discoverable.

criminal offenses or to identify specifically any criminal statutes. In addition, the warrant did not incorporate the affidavit.

Agents of the FBI, the IRS, and the District of Columbia Office of Inspector General appeared at Mr. Esherick's residence on February 23, conducted a search and seized a broad variety of items, from day planners, to bank statements and checks, utility bills, envelopes and folders of financial records, and a greeting card "to Blake from Mom and Dad." At the same time, agents appeared at the offices of Mr. Esherick's employer, Douglas Development Corporation ("Douglas Development") and executed a search pursuant to a broad general warrant.

These searches were not the first time the government had obtained records concerning Mr. Esherick or Douglas Development. The search warrants were related to an investigation by a federal grand jury and the office of the United States Attorney for the District of Columbia that had been in progress for several months, if not longer. Pursuant to that investigation, Douglas Development had already produced 45,000 pages of records, including records related to Mr. Esherick and his residence. A number of Douglas Development employees were made available for interviews and to testify before the grand jury. At the time of the application for the warrant, the authorities had a very substantial amount of information about Mr. Esherick and Douglas Development. There was clearly no threat that evidence was likely to be destroyed, and every reason to believe that Douglas Development would continue to cooperate with the investigation.

In fact, according to Special Agent Sekela's affidavit, the genesis of this investigation dates back at least to June 2003, when the law enforcement agencies began an investigation of Michael Lorusso, a former official of the District of Columbia government, for allegedly using his official position to benefit Douglas Development. In connection with Mr. Lorusso's guilty

plea, Lorusso submitted a sworn statement of facts setting forth how he allegedly received

money, gifts and travel in exchange for providing benefits to Douglas Development in its

relationship with the DC government, leading to "enormous profits to and great wealth to

Douglas Development" according to the affidavit.

## ARGUMENT

Despite months of cooperation by Douglas Development in providing documents and

making witnesses available, and after prosecuting the D.C. government official who allegedly

received payments for conferring benefits on Douglas Development, the Government

nevertheless obtained a search warrant that identifies only broad categories of items to be seized

from Mr. Esherick's home.  These broad categories clearly exceeded the scope of documents

relevant to the investigation and lacked the particularity required by the Fourth Amendment.

Such general warrants are prohibited by the Constitution, and all evidence obtained pursuant to

such warrants should be suppressed.

**I.    The Search Warrant Does Not Satisfy the
       Particularity Requirement of the Fourth Amendment.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized."  While the particularity requirement has been recognized as a

prohibition against general warrants, the Supreme Court recently held that the particularity

requirement also "'assures the individual whose property is searched or seized of the lawful

authority of the executing officer, his need to search, and the limits of his power to search.'"

*United States v. Groh*, 540 U.S. 551, 561 (2004) (citations omitted).  Moreover, "warrants are

conclusively invalidated by their substantial failure to specify as nearly as possible the

distinguishing characteristics of the goods to be seized." *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir. 1987).

A sufficiently particular warrant "allows the searcher to reasonably ascertain and identify the things authorized to be seized," leaving "nothing to the officer's discretion as to what is to be seized, so that the officer is prevented from generally rummaging through a person's belongings." *United States v. Guidry*, 199 F.3d 1150, 1154 (10th Cir.1999) (citation omitted). The warrant must be sufficiently specific both in its particularity and its breadth. The warrant must "clearly state what is sought," and "be limited to the probable cause on which the warrant is based. *United States v. Maali*, 346 F. Supp. 2d 1226, 1239 (M. D. Fla. 2004) (citations omitted). In addition to the requirement that the warrant be sufficiently specific to permit the officer and the occupant to identify clearly the items to be seized, there must be probable cause to seize the particular item identified in the warrant. *Id.*

An insufficiently specific warrant is not saved by specificity in the application. The warrant itself must satisfy the Fourth Amendment's particularity requirement. "The fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *United States v. Groh*, 540 U.S. at 557; 124 S. Ct. at 1289. Similarly, the knowledge of the officer executing the warrant does not save an invalid warrant. *Id.*

Somewhat more general warrants are acceptable "when applicants for warrants can either show probable cause to believe that more detailed descriptions are not possible, or by showing probable cause to believe that the entire business is permeated with fraud." *United States v. Singh*, 973 F.Supp. 7, 12 (D.D.C. 1997). If the government claims that this relaxation of the particularity requirement is applicable, the claim must be supported by evidence. Thus, in

*Singh*, the court held that the warrant was invalid because the officer's affidavit did not allege that the company was permeated with fraud or that he was unable to describe the papers to be seized more particularly, and did not provide sufficient information to permit the magistrate judge to assess these factors on his own.[2] *Id.* at 12. (court found warrant invalid but denied motion to suppress based on the good faith exception.)  Furthermore, this relaxation of the particularity requirement is generally applicable only to businesses.  "[I]t would require extraordinary proof to demonstrate that an individual's entire life is consumed by fraud and that all records found in the home were subject to seizure. Without such unusual proof, the broad categories of items that may be seized pursuant to an 'all records' search of a home must be sufficiently linked to the alleged criminal activity so as to distinguish them from innocent, personal materials." *United States v. Falon*,   959 F.2d 1143, 1148 (1st Cir. 1992).

The Fourth Amendment also requires the government to describe the items to be seized with as much specificity as the circumstances allow.  *See United States v. Leary*, 846 F.2d 592, 600 (9th Cir. 1988).  In this case, the government made no attempt to specify the items to be seized.  Considering that it had access to the former Douglas Development controller and Lorusso, it could have specified in great detail the documents it needed to pursue its investigation.  Instead, it proceeded to draft a warrant essentially allowing the agents to seize any documents maintained in Mr. Esherick's home.

Warrants that are similar to the one used for the search of Mr. Esherick's residence have been held invalid.  For example, *United States, v. Dale*, 991 F.2d 819, 301 U.S. App. D.C. 110 (D.C. Cir. 1993), involved a prosecution for tax fraud and conspiracy to commit tax fraud, in part

---

[2] The court denied the motion to compel because the government was able to establish that the search was conducted in a good faith belief that the warrant was sufficient.  No such argument is available to the government with respect to its search of Blake Esherick's home at 6001 Nevada Avenue because the warrant is so general that there could not be such a good faith belief.

by making payments to the defendants that were hidden by taking fraudulent business deductions. The court held that the search warrant that was the subject of the motion to suppress was not sufficiently specific because it identified the items to be seized, as "including, but not limited to," certain specified records, and was therefore open-ended.[3] *See id.* at 846.

In *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982), a tax fraud case against several individuals, the Ninth Circuit held that a warrant that is more particular than the warrant used to search Mr. Esherick's residence was invalid, and that the evidence obtained pursuant to that warrant should be suppressed. The authorities searched the offices where the defendants worked, relying on a warrant that directed the authorities to seize "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules...." *Id.* at 76. The search warrant limited the warrant to documents that were "the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201." *Id.* at 77. In holding that the warrant was invalid, court stated, "In this case even the most specific descriptions (checks, journals, ledgers, etc.) are fairly general. No time or subject matter limitations existed as to these items. Nor does the affidavit, even if properly relied upon to limit the scope of the warrant, provide the information needed to limit the general nature of the warrant." *Id.* at 78- 9.

The search warrant for Mr. Esherick's house is broader and more general than those found invalid in *Singh*, *Dale* and *Cardwell*. Each of the five specifications of items to be seized

---

[3] The court held that the affidavit was sufficient to support the warrant, and because it was not clear that the affidavit was not only incorporated in but attached to the warrant, the court went on to hold that the warrant was valid because the officer who had executed the affidavit also led the search. By holding that an affidavit that was not attached to the warrant should not be considered in determining probable cause, *United States v. Groh* effectively overruled the D.C. Circuit's holding that a defective warrant could be salvaged by the knowledge of the officer. 540 U.S. at 1290. The knowledge of the officer would not provide the notice to the person whose home was being searched of the scope of the search, which, as noted above, is one of the purposes of the warrant requirement. 540 U.S. at 561.

is stated in broad, general terms.  The expansive language would permit neither the authorities

nor the residents to determine what was covered by the warrant and what was not.  The first

specification identifies the items to be seized as "all documents and records whatsoever, related

to all financial affairs and transactions, of Blake C. Esherick, from January 1, 1999 to the

present."  The specification then states that the items seized are to "include, but not limited to" a

long list of examples of types of documents, including bank statements, correspondence, the

financial relationship between Mr. Esherick and his ex-wife, and "all other documents related to

his income, expenditures and financial circumstances from January 1, 1999."  The list is not

limited other than as to time.  For example, there is no statement as to the alleged offenses to

which the documents are to be related.  Thus, the specification is broader than the one rejected in

*Cardwell*, which at least limited the documents sought to those related to tax evasion. The

specification also has two open-ended terms, which was the basis for finding the warrant invalid

in *Dale*.  It authorizes the seizure of the broad category of documents with specific examples, but

expressly "include[s], but is not limited to" the types of documents listed– the language that was

found invalid in *United States v. Dale*, *supra*.  The catch-all for "all other documents related to

his income, expenditures, and financial circumstances" is similarly limitless and vague.

Specification 2 is equally overbroad and general.  The specification directs the seizure of

all documents "in the nature of day planners, calendars, phone directories, address books,

receipts, travel related documents and such records which account for the activities of Blake

Esherick, including entertainment and travel, from January 1, 2000 to the present."  This

specification also has no limitations other than the temporal one.  It expressly is not limited to

any particular activity, but requires the seizure of all documents "which account for the activities

of Blake Esherick, including entertainment and travel…."  It can cover everything from the D.C.

phone book to used tickets for a vacation and ticket stubs from a movie theater. Thus, if there is any document that "accounts for" anything Mr. Esherick did over a six year period, it is apparently covered by the warrant.

The third specification is somewhat more specific but still very broad. It requires the seizure of all documents "related to Blake C. Esherick's relationship with Douglas Development and its officers." While this specification appears to cover any employment agreements between Mr. Esherick and Douglas Development, it would also cover holiday cards sent to any other officer. Since the specification covers documents "related" to the topics mentioned in the specification, the scope of the specification is up to the judgment of the person who does the search as to what is related. In addition to being overbroad as shown above, the description of the items to be seized is not particular as required by the Fourth Amendment.

Specification 4 is somewhat narrower, being limited to "[r]ecords related to all cars owned, used or leased by Blake Esherick." Even this specification is open-ended. Surely there may be records related to cars that Mr. Esherick ever owned, used or leased are not related to the investigation, but the warrant does not say how to limit the scope of the seizure. As noted above, the investigators might come across a receipt for cars that were used in many circumstances that cannot possibly be related to the investigation. The warrant provides no guidance as to which cars are covered, over what time period, in what circumstances, or the type of automotive activity that is relevant to the investigation.

Specification 5 similarly appears not to be as broad as the earlier specifications, but is nevertheless quite broad and general. The specification requires the seizure of all documents "which in any way relate to Michael Lorusso and/or any public official of the District of Columbia Government." The scope of the seizure is not limited to any particular time period,

any particular activities or matters, nor to any clearly identifiable "public official" other than Mr.

Lorusso. Thus, a *Washington Post* article about Mr. Lorusso's arrest appears to be covered, and

fliers in support of a candidate for Mayor that were shoved through the mailbox also appear to be

covered. Even the greeting card from "Mom and Dad" would appear to be covered if Mom or

Dad was employed by the District of Columbia.

The scope of the search and seizure is not limited to the five categories set forth in the

warrant. If the searching agents find documents that they deem to be covered by the warrant,

they may also seize any file/folder in which the documents were found, without any requirement

that the documents be of any particular type, from any particular time, or concern any particular

subject. In addition to physical seizure of the documents, the searching agents were also given

unfettered permission to photograph the residence and items contained in the residence, and to

record "serial numbers and identifying information off any items, such as large screen televisions

and consumer goods."

## II.    THE WARRANT IS FACIALLY OVERBROAD BECAUSE ITS COMMAND SECTIONS EXCEEDED ANY PROBABLE CAUSE CONTAINED IN THE UNDERLYING AFFIDAVIT.

The affidavit focuses on allegations of three crimes, two involving bribery of officials of

the District of Columbia government, and one of tax evasion for failure to report certain benefits

received from Douglas Development as income. The scope of the items that may be seized

pursuant to the search warrant is far broader, encompassing a broad range of documents

regardless of their relevance to the three alleged crimes, or to any of the factual allegations in the

affidavit.

"The Fourth Amendment requires . . . that the scope of the warrant be limited to the

specific areas and things for which there is probable cause to search." *United States v. Leary*,

846 F.2d 592, 605 (10th Cir.1988) (citing *Maryland v. Garrison*, 480 U.S. 79 (1987)); *see also*

*Voss v. Bergsgaard*, 774 F.2d 402, 408 (10th Cir.1985) (Logan, J., concurring)("The breadth of a

warrant must be justified by the breadth of the probable cause.").   By restricting searches "to the

specific areas and things for which there is probable cause to search, the requirement ensures that

the search will be carefully tailored to its justifications, and will not take on the character of the

wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480

U.S. 79, 84 (1987).

"To demonstrate probable cause, an affidavit must set forth facts sufficient to induce a

reasonable prudent person to believe that a search thereof will uncover evidence of a crime."

*United States v. Huggins*, 733 F.Supp. 445, 447 (D.D.C.1990).  As the Ninth Circuit aptly stated,

"the command to search can never include more than is covered by the showing of probable

cause to search." *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir.1980) (*quoting United

States v. Hinton*, 219 F.2d 324, 325 (7th Cir.1955).  Thus, even if an affidavit establishes

probable cause justifying the issuance of a search warrant, the command sections of that warrant

can never, as a matter of law, exceed the probable cause identified in the affidavit.

The Esherick warrant is facially overbroad.  The category allowing for the seizure of all

of Mr. Esherick's records relating to his financial affairs (Category 1) patently exceeds the

probable cause in the affidavit.  According to the affidavit, any irregularities in Mr. Esherick's

financial affairs resulted from his relationship with Douglas Development.[4]  Consequently, the

government lacked any justification to seize Mr. Esherick's records pertaining to financial affairs

with other individuals and entities.  Yet, in direct violation of the Fourth Amendment, Category 1

---

[4] The allegations concerning Lorusso do not even suggest that Mr. Esherick ever personally received
anything that could be regarded as income from Mr. Lorusso and, in fact, do not state that he received anything at all
from Mr. Lorusso.

allowed the government to do. The same rationale applies to the category seeking all records accounting for the activities of Mr. Esherick from 2000 to the present (Category 2). Again, the affidavit fails to establish probable cause that all of Mr. Esherick's activities from 2000 to the present were cloaked in criminality. The fishing expedition continues in Category 3, which seeks all records relating to Mr. Esherick's relationship with Douglas Development. Yet, the affidavit does not establish probable cause that a crime has been committed with respect to the entirety of Mr. Esherick's relationship with Douglas Development. Instead, the affidavit is limited to three types of alleged criminal activity, and the Esherick warrant should have been similarly limited to those three allegations. There simply is no probable cause allowing the government to review the entire relationship between Mr. Esherick and Douglas Development.

The last two categories in the Esherick warrant are also facially overbroad. By seeking all records relating to any vehicles Mr. Esherick used, owned, or leased, the government patently exceeded any probable cause found in the affidavit, which limited the automobile issue to cars that Douglas Development paid for but which Mr. Esherick personally owned or leased and failed to report such payments as taxable income. The search warrant allowed the seizure of all records relating to vehicles Mr. Esherick owned, leased, or used, regardless of whether Douglas Development paid for such cars, whether leased for a weekend or on a long-term lease, or owned before the period, or owned when Mr. Esherick was a teenager. In simple terms, this category exceeded the purported probable cause contained in the affidavit, and consequently, is fatally deficient. Finally, despite the warrant's command, the affidavit did not support the government seizing any records relating to any DC government official other than Lorusso (Category 5), and would cover matters concerning Mr. Lorusso that are clearly unrelated to the allegations of bribery. The affidavit did not contain any probable cause that any other DC government official

was involved in the alleged bribery scheme or any other criminal activity, or that all documents relating to Mr. Lorusso were authorized to be seized regardless of the subject of the document, and consequently, this category blatantly exceeded the alleged probable cause contained in the affidavit and was invalid.

### III. THERE WAS NO PROBABLE CAUSE TO SEARCH MR. ESHERICK'S HOME.

In addition to the problems with the drafting of the search warrant itself, the entire search suffers from the fundamental problem that the affidavit does not support any search of Mr. Esherick's home.  Special Agent Sekela's affidavit provides no support for his conclusion that he believes that there is probable cause to believe that a search of Mr. Esherick's home will turn up evidence of Bribery of a Public Official, Conspiracy to Commit Bribery, or Tax Evasion.

#### A. There Was No Probable Cause To Believe That Evidence Was In Mr. Esherick's Home On Nevada Avenue.

Special Agent Sekela's affidavit provides no reason to believe that evidence would be found in Mr. Esherick's home.  The affidavit does not refer to evidence that evidence was ever found in his home, especially since the allegations in the affidavit relate to events that happened when Mr. Esherick lived in another location.

The affidavit does not refer in any of its 67 paragraphs to the presence of evidence relevant to the matters under investigation in Mr. Esherick's home.  With all of the investigation that had been done before the application for the search warrant and the cooperation it received from Douglas Development, the government had ample opportunity to develop evidence of the location of evidence.

There is also no allegation that any of the allegedly unlawful acts occurred in Mr. Esherick's home.  In fact, the only allegation concerning Mr. Esherick's home is that he lived

there while someone else owned the house and made the payments, yet he allegedly took income tax deductions for the mortgage and real estate tax payments, and did not declare the free use of the house as income. The affidavit refers to acts that allegedly took place in Las Vegas, in Virginia, and in the District of Columbia (although not in a home), but not in Bethesda where Mr. Esherick lived.

All of the allegations in the affidavit concern events that allegedly occurred from 2001 to 2003. The only event that is mentioned after 2002 is the purchase of the house on Nevada Avenue in June 2003. The alleged bribery could not have occurred after January 2003 Michael Lorusso, the former D.C. government official who was allegedly bribed, resigned from the D.C. government in January 2003. Exh. 1 at ¶11. According to the affidavit, Mr. Esherick lived in a house on Radnor Road in Bethesda until the summer of 2003, when he moved to 6001 Nevada Avenue in the District of Columbia, the location that was searched. Exh. 1 at ¶39. Thus, even if Mr. Esherick had maintained documents at home, there is no evidence, nor has the government alleged, that the documents were moved from Bethesda to Nevada Avenue.

"Because the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion stands [a]t the very core of the Fourth Amendment, our cases have firmly established the basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Groh*, 540 U.S. at 549. (citations and internal quotation marks omitted). "To demonstrate probable cause, an affidavit must set forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Huggins*, 733 F.Supp. 445, 447 (D.D.C. 1990). Moreover, the affidavit must establish probable cause not only that criminal conduct occurred but also that the evidence of such illegal activity will be found in

a particular place. "There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Kemper*, 375 F.Supp. 2d 551, 553 (E.D. Ky. 2005) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998)). Indeed, probable cause does not exist to justify a search of a particular location if the affidavit underlying the search warrant fails to identify specific facts that the evidence of criminal activity will be located at the place to be searched. *Carpenter*, 360 F.3d at 594.

Special Agent Sekela's affidavit fails to meet the standards to justify the invasion of Mr. Esherick's home. The affidavit does not provide even an allegation, other than the agent's boilerplate allegation of probable cause, that any evidence ever existed at Mr. Esherick's home in Bethesda. If there were such an allegation, the affidavit fails to allege that the evidence was moved from Bethesda to the residence that was searched on Nevada Avenue. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *see also United States v. Thomas*, 989 F.2d 1252, 1254 (D.C. Cir.1993). Where the government must present evidence sufficient to support probable cause that evidence will be found at the location to be searched, there clearly cannot be probable cause where the affidavit fails even to allege that there is a probability that the evidence will be found in the place to be searched. Because there was no probable cause to believe that evidence was present at Mr. Esherick's home on Nevada Avenue, the evidence seized from that location must be suppressed.

**B.  The Allegations In The Special Agent's Affidavit Were Stale.**

The information contained in the affidavit was stale because the search warrants were issued more than two years after the transactions at issue and did not include facts proving that the documents relating to these transactions remained housed at Mr. Esherick's residence. Although there is no bright line test for staleness, "the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search so that probable cause can be said to exist at the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993); *see also Schoeneman v. United States*, 317 F.2d 173, 177 (D.C.Cir.1977) ("it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause <u>at that time</u>") (emphasis added).  An affidavit must contain information that supports a "determination that certain objects can currently be found at a particularly described place." *See United States v. Huggins*, 733 F.Supp. 445, 447 (D.D.C.1990) ("information that is too old is considered stale and probably no longer exists") (*quoting United States v. Rakowski*, 714 F.Supp. 1324, 1329 (D.Vt. 1979) (*citing Sgro v. United States*, 287 U.S. 206, 210-12 (1932)).

The allegations in the affidavit concerning Mr. Esherick's allegedly criminal conduct all refer to events that allegedly took place from approximately 1999 through early 2003. However, the government did not apply for the search warrants until February 22, 2005, well over two years after the transactions at issue.  The affidavit provided in support of the search warrants failed to include any facts proving that the documents relating to these transactions were still located at Mr. Esherick's residence.  Indeed, the affidavit's staleness is heightened by the fact that Nevada Avenue house searched was not Mr. Esherick's residence at the time the

probable cause allegedly accumulated. *See Schoeneman*, 317 F.2d at 177 (holding that motion to suppress should have been granted and proof supplied did not support a search warrant where government did not allege "that the books had not been moved in the intervening three and one-half months or, indeed, that [subject of search] himself had not moved."). In sum, if the affidavit contained probable cause, such probable cause was stale. It did not establish, under any evidentiary standard, that the documents enumerated in the command sections of the warrants would be found at Mr. Esherick's residence.

## IV.    THE GOOD FAITH EXCEPTION IS NOT APPLICABLE.

The "good faith exception" to the exclusionary rule enunciated in *United States v. Leon* will not save this clearly deficient search warrant. Under *Leon*, if the government conducts a search pursuant to a warrant that is later determined to be invalid, the evidence need not be suppressed if the Court determines that the government's agents acted in good faith reliance on a facially valid warrant. *See United States v. Leon*, 468 U.S. 897, 920, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984). In a recent case, this Court granted a motion to suppress and rejected the prosecutor's "good faith" argument. *United States v. Johnson*, 332 F.Supp.2d 35 (D.D.C. 2004) (Friedman, J.). The *Johnson* decision set forth the four situations as follows:

> (1) where the magistrate issued the warrant based on a deliberately or recklessly false affidavit; (2) where the issuing magistrate failed to act in a neutral and detached manner; (3) where a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid."

*Johnson* at 38 – 39. The *Johnson* decision went on to find that the third situation was applicable, and held that the evidence should be suppressed.

The search warrant for the search of Mr. Esherick's home fails under both the third and fourth situations set forth in *Johnson*. As we have shown, the warrant was based on an affidavit that was completely lacking in indicia that there was probable cause to believe that evidence would be found in Mr. Esherick's home: the Special Agent cited no information suggesting that evidence would be found in Mr. Esherick's home; Mr. Esherick had moved from Bethesda to the District after the alleged criminal acts had occurred and approximately 19 months before the warrant was executed for the search of his new home on Nevada Avenue; and the information in the affidavit was stale.

As we have also shown, the warrant was so facially deficient in its failure to particularize the items to be seized that the executing officers could not have reasonably presumed that the warrant was valid. The warrant contained five very general descriptions of the items to be seized and did not identify the alleged crimes that were being investigated. These general descriptions were backed up with two broad "catch-all" provisions that permitted seizure of items that happened to be in the same files or related in a broad way to Mr. Esherick's financial matters but that were not covered even by the broad language of the five paragraphs in the warrant.

The government's failure to establish probable cause and the failure to describe the items to be seized is especially egregious because the government had an enormous amount of information that would have permitted the drafting of a warrant of appropriate scope and particularity. As we have noted, the government had the benefit of information gathered in the prosecution of Mr. Lorusso, 45,000 pages of documents, interviews of witnesses, grand jury testimony by witnesses offered by the defendants and perhaps other witnesses unknown to the defendants, and was investigating people who were going out of their way to cooperate with the government's investigation. With all of this information available and the facial invalidity of

the warrant, the investigators could not have reasonably relied in good faith on this warrant.

*United States v. Zimmerman*, 277 F.3d 426, 438 (3d Cir. 2002).

## V.    ALL EVIDENCE SEIZED PURSUANT TO WARRANT SHOULD BE SUPPRESSED.

There are multiple bases for total suppression of the evidence seized pursuant to the warrant. The lack of particularity, lack of probable cause for the broad scope of the warrant, and the lack of probable cause for the entire search are all sufficient bases to suppress all evidence seized pursuant to the warrant.

"The exclusionary rule bars the prosecution from using in its case-in-chief evidence obtained during a search that violated the Fourth Amendment." *United States v. Johnson*, 332 F.Supp.2d 35, 38 (D.D.C. 2004). All of the evidence seized in the search of Mr. Esherick's home was seized during a search that violated the Fourth Amendment. There was no probable cause to search at all; but if there had been probable cause, the scope of the warrant exceeded the scope of the matters in the affidavit, and the warrant did not satisfy the particularity requirement of the Fourth Amendment.

Where the entire warrant is stated in general terms, then all of the evidence obtained pursuant to the warrant should be suppressed. "If no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required…. Otherwise the abuses of a general search would not be prevented." *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982)(citation omitted). The entire warrant for the search of Mr. Blake's residence was overbroad and insufficiently particular. Total suppression is the appropriate remedy.

## CONCLUSION

The search warrant authorizing the search of Mr. Esherick's residence was fatally overbroad and lacking in particularity. All of the evidence obtained pursuant to the search should be suppressed.

Respectfully submitted,

Paul Kemp (D.C. Bar # 922773)
Carol Elder Bruce (D.C. Bar # 202200)
Lawrence B. Bernard (D.C. Bar # 181636)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: December 22, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant Blake Esherick's Motion To Suppress Evidence Obtained By Illegal Search, with accompanying Memorandum of Law, was served, via fax or electronic means, this 22nd day of December, 2005 on:

Mark H. Dubester
Assistant United States Attorney
U.S. Attorney's Office for the
District of Columbia
555 Fourth Street, N.W.
Room 5917
Washington, D.C. 20001

Reid H. Weingarten
Erik L. Kitchen
Brian M. Heberlig
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
 (202) 429-3000

Michelle Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


_____
Carol Elder Bruce