UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
| v. | ) | Crim. No. 05-0359-1, -2, -3 (RMU) |
| | ) | |
| **DOUGLAS JEMAL**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO SEVER COUNTS BASED ON IMPROPER
JOINDER UNDER RULE 8(b) AND PREJUDICIAL JOINDER UNDER RULE 14**

**I.   INTRODUCTION**

The Court should sever Count Five (the "Wire Fraud Count") and Counts Six through Eight and paragraph 18 of the Manners and Means Section of Count One[1] (the "Tax Evasion Counts") from each other and from Counts One through Four (the "Public Corruption Counts") for separate trials, pursuant to Federal Rule of Criminal Procedure 8, because there is no logical relationship and no overarching joint set of proof among the acts alleged in the three separate sets of counts in the Indictment. The government claims that the Public Corruption Counts and the Wire Fraud Count are connected by allegations relating to the property at 77 P Street, but this connection is mere happenstance and insufficient to demonstrate a logical relationship under Rule 8(b). The government's additional claim that the compensation

---

[1] The Defendants originally moved to sever paragraphs 18 through 20 of the Overt Acts section of Count One as well, but the government has agreed to strike these allegations. See Government's Opposition To Defendants' Motion To Strike Surplusage at 1.

arrangement between Douglas Jemal and his employee, Blake Esherick, is tantamount to the splitting of proceeds of a criminal conspiracy, and thus establishes the relationship between the Tax Evasion Counts and the Public Corruption Counts and Wire Fraud Count, is wholly without merit.

Alternatively, the Court should sever these counts pursuant to Federal Rule of Criminal Procedure 14 because a joint trial on these three distinct sets of charges would cause substantial prejudice to Defendants. The government incorrectly claims that the evidence supporting each set of charges would be admissible at separate trials under Rule 404(b). In reality, the government's argument that it is entitled ask the jury to infer that a defendant who commits fraud in one context is more likely to commit fraud in another only highlights the fact that the government seeks to establish Defendants' criminal propensity by cumulating the evidence of three separate schemes at one trial. A joint trial of all counts in the current Indictment will result in substantial prejudice to Defendants that cannot be cured by limiting instructions. Accordingly, the Court should sever the Wire Fraud Count and the Tax Evasion Counts from each other and from the Public Corruption Counts for separate trials.

## II. DISCUSSION

### A. The Government Has Failed To Satisfy The Requirements Of Rule 8(b) By Demonstrating A Logical Relationship Among The Public Corruption Counts, Wire Fraud Count and Tax Evasion Counts

The Indictment alleges three distinct groups of criminal offenses with virtually nothing in common beyond the identities of the Defendants. The D.C. Circuit has made clear that "Rule 8(b)'s language 'may not be read to embrace similar or even identical offenses, *unless*

those offenses are related . . . . [T]here must be a logical relationship between the acts or transactions within the series.'" United States v. Nicely, 922 F.2d 850, 853 (D.C. Cir. 1991) (citation omitted) (alteration in original).

The government attempts to demonstrate a relationship between the Wire Fraud Count and the Public Corruption Counts by noting that they both involve allegations regarding the property located at 77 P Street. This connection is tangential to the charges and insufficient to establish the requisite logical relationship. The government portrays the Public Corruption Counts as focusing almost exclusively on Defendants' alleged efforts to provide things of value to Lorusso to induce him to lease office space on behalf of the D.C. government at 77 P Street. See Government's Consolidated Opposition To 1) Defendants' Motion To Sever Counts Based On Improper Joinder Under Rule 8(b) And Prejudicial Joinder Under Rule 14; And 2) Norman D. Jemal's Motion To Sever Counts 6-8 Upon Prejudicial Joinder Under Rule 14 at 2-4 ("Sever Opp'n"). According to the government, Douglas Jemal's motive to bribe Lorusso was the purported need to fully lease 77 P Street in order to obtain permanent financing for the property, which would allow him to repay debts and make a profit. Id. at 7. This permanent financing happened to take the form of the Morgan Stanley loan that is at issue in the Wire Fraud Count. Id. at 8. The government's theory of the purported "logical relationship" between the Public Corruption Counts and the Wire Fraud Count is as follows: "The series of events related to 77 P Street in 2001 and 2002 comprise tightly related aspects of a single financial strategy: to enrich Douglas Jemal (by providing him cash and paying off debts) by leasing 77 P Street, and once having leased it, by refinance [sic] it." Id. That "relationship" is completely insufficient to justify joinder of the counts in a single indictment.

The government ignores the fact that half of the factual allegations in the Public Corruption Counts revolve around another property, 4800 Addison Road, which the government makes no attempt to relate to the Wire Fraud Count.  Moreover, the alleged victims of the Public Corruption Counts are the District of Columbia and its citizenry who were allegedly deprived of Lorusso's honest services.  In contrast, the alleged victims of the Wire Fraud Count are Morgan Stanley, Douglas Jemal's business partner and the IRS.

In any event, there is virtually no overlap in the proof relating to the 77 P Street aspect of the Public Corruption Counts and the Wire Fraud Count.  Even accepting on its face the government's "motive" theory that Douglas Jemal bribed Lorusso to fully lease 77 P Street and obtain permanent financing, the Public Corruption Counts focus on Defendants' alleged bribery and dealings with Lorusso -- not the permanent financing.  The proof supporting the Public Corruption Counts will focus on the various alleged gifts provided to Lorusso, such as meals, entertainment, travel and other hospitality.  See Indictment at 5-6 (¶ 15).  This evidence is irrelevant to the Wire Fraud Count.  At most, the government's theory might make the fact and amount of the Morgan Stanley loan tangentially relevant to the Public Corruption Counts.  However, under no scenario are the terms of the Morgan Stanley loan, such as the tenant improvement reserve at issue in the Wire Fraud Count, or the events related to MTD Real Estate Services ("MTD"), conceivably relevant to the Public Corruption Counts.

Likewise, to prove the scheme to defraud Morgan Stanley, the IRS and Douglas Jemal's business partner alleged in the Wire Fraud Count, the government's case will focus on the terms of the Morgan Stanley loan, Douglas Jemal's relationship with his partner, and the use of the discrete set of documents related to MTD.  The proof will involve any agreements between Douglas Jemal and his partner regarding commissions, the terms and conditions of the

tenant improvement reserve in the Morgan Stanley loan, and corporate formation and tax records of MTD. This evidence is irrelevant to the Public Corruption Counts. The government's opposition misleadingly suggests that it was somehow criminal to refinance 77 P Street. Sever Opp'n at 8. On the contrary, the Public Corruption Counts and the Wire Fraud Count do not allege that Defendants obtained the Morgan Stanley loan through fraud or criminal activity, nor could they.

Joinder of the Tax Evasion Counts with the Public Corruption Counts and the Wire Fraud Count is also improper because of the lack of any logical relationship between these distinct sets of charges. The government argues that the allegations in paragraph 18 of the Manners and Means Section of Count One connect the tax charges with the bribery conspiracy because "allegations concerning the financial understandings of members of a conspiracy with each other and payments among the conspirators are appropriate components of an overall conspiratorial agreement." Sever Opp'n at 10. However, unlike cases in which courts have found that payments among conspirators are part and parcel of the overall conspiracy, the government concedes that in this case, "the financial relationship involves compensation by Douglas Jemal to Esherick . . . and not, as in other cases, a pure 'splitting of proceeds.'" Id. at 12. While the government would have the Court believe that this is a "distinction without a difference," id., in fact this distinction makes all the difference in the world.

Compensation received as the result of lawful employment bears no resemblance to receiving a payoff as the result of an illegal scheme. The compensation paid to Defendant Esherick by Douglas Jemal was the product of their pre-existing employer-employee

relationship, not the result of an illegal conspiratorial agreement.[2]  By contrast, in the cases cited by the government, none of the co-conspirators had a pre-existing relationship outside of the conspiracy that would otherwise explain the flow of funds between them.  In United States v. Dynelectric Co., 859 F.2d 1559 (11th Cir. 1988), and United States v. Walker, 653 F.2d 1343 (9th Cir. 1981), for example, the co-conspirators were business competitors who agreed to split the profits from bid-rigging schemes, while in United States v. Fletcher, 928 F.2d 495 (2d Cir. 1991), and United States v. Knuckles, 581 F.2d 305 (2d Cir. 1978), the co-conspirators were otherwise strangers to each other who agreed to engage in illegal conduct together.

Moreover, in Dynelectric, upon which the government primarily relies, the court found it was clear that the proceeds received by the conspirators were the *profits* of the conspiracy, and that the indictment charged receipt of those profits as within the scope of the conspiracy.  See 859 F.2d at 1565 ("it is clear from the indictment that the scope of the [bid-rigging] conspiratorial agreement specifically encompassed" one conspirator's receipt of payments under a rigged contract and the other conspirator's receipt of a percentage of those profits).  Indeed, in each of the cases cited by the government, the object of the conspiracy was to produce the proceeds that were subsequently split by the conspirators.  Walker, 653 F.2d at 1347 ("There was enough evidence for a jury to conclude that the agreement not to outbid [the defendant] included a promised share in his profits."); Fletcher, 928 F.2d at 500 ("the conspiracy

---

[2] The government does not dispute that the types of payments to Defendant Esherick at issue began years before Defendants even met Lorusso, which further belies the claim that Esherick's compensation was somehow designed to induce him to engage in the bribery scheme. Indeed, in the Government's Notice Of Intent To Introduce 404(b) Evidence, the government seeks to admit evidence of the manner in which Esherick was compensated in the late 1990's -- well before the alleged bribery scheme.

contemplated a division of profits among the co-conspirators"); Knuckles, 581 F.2d at 313 (co-conspirators in drug trafficking case argued over fair split of proceeds). That is not the case here. Defendant Esherick received compensation from Douglas Jemal because he was an employee of DDC -- indisputably a *bona fide* company with substantial business completely unrelated to the D.C. government and the events at issue in the Indictment -- not as a result of the alleged bribery conspiracy. Moreover, the Indictment does not allege that any "proceeds" of the bribery conspiracy were split among the Defendants. Thus, the fact that Defendant Esherick was compensated by Defendant Douglas Jemal cannot form the basis for a logical relationship sufficient to justify joinder of the Tax Evasion Counts to the other counts of the Indictment.

Moreover, the Tax Evasion Counts themselves contain no reference to the alleged bribery conspiracy, and do not allege a connection between the compensation received by Esherick and the conduct alleged in Counts One through Four. The only connection between the Tax Evasion Counts and the Public Corruption Counts is paragraph 18 of the Manners and Means Section of Count One, which alleges that Defendants Douglas and Norman Jemal "obtained the services" and "the personal loyalty" of Defendant Esherick, purportedly to induce him to participate in the bribery conspiracy, by engaging in the same conduct alleged in the Tax Evasion Counts to purportedly assist Esherick in the evasion of income taxes. Indictment at 8-10 (¶ 18). These "allegations" are more akin to argument than factual allegations, and represent a transparent attempt by the government to avoid severance of the otherwise unrelated and improperly joined Public Corruption Counts and Tax Evasion Counts. As set forth in Defendants' Motion to Strike Surplusage, the Court should strike this irrelevant and prejudicial allegation from the Indictment.

The government has also failed to rebut the Defendants' argument that joinder of the Tax Evasion Counts with the other counts of the Indictment is improper because the revenue on which the tax was evaded did not result from the criminal conduct charged in the Public Corruption or Wire Fraud Counts.  See United States v. Singh, 973 F. Supp. 7, 18 (D.D.C. 1997) (joinder of tax evasion counts with non-tax counts is appropriate when "the revenue on which the tax was evaded resulted from the criminal conduct charged in the non-tax counts") (citing United States v. Biaggi, 909 F.2d 662, 676 (2d Cir. 1990)).  The single case cited by the government on this point, United States v. Turoff, 853 F.2d 1037 (2d Cir. 1988), is not to the contrary.  In Turoff, the court noted that "[t]he most direct link possible between non-tax crimes and tax fraud is that the funds derived from non-tax violations either are or produce the unreported income."  Id. at 1043.  However, on the specific facts of that case, in which "the tax fraud hinged on the fraudulent activities taken to advance the [mail fraud] conspiracy" and "proof of one scheme [was] indispensable for a full understanding of the other," the court found that joinder of non-tax and tax charges was proper.  Id. at 1044.  Here, by contrast, proof of the alleged tax evasion scheme is not necessary for a full understanding of the Defendants' alleged bribery of Lorusso.  Indeed, as already discussed, there is no direct connection between the two sets of counts at all.

The government has also failed to demonstrate commonality of proof among the three sets of counts.  If there are "no presumptive benefits from joint proof of facts relevant to all the acts or transactions, there is no 'series,' Rule 8(b) comes to an end, and joinder is impermissible."  United States v. Jackson, 562 F.2d 789, 795 (D.C. Cir. 1977) (quoting King v. United States, 355 F.2d 700, 704 (1st Cir. 1966) (quotation marks omitted)).  In this case, the proof relating to the three sets of counts does not overlap in any meaningful respect, and the

government incorrectly assumes that Rule 404(b) would permit the admission of evidence relating to each of these distinct sets of charges at separate trials of any one set of counts.

The government's theory of Rule 404(b) admissibility is staggeringly broad, incorrect and reveals why these completely unrelated counts should be severed in the first place. The government contends that the Wire Fraud Count evidence would be admissible in a trial of the Public Corruption Counts because:

> [A] jury could be permitted to infer that if Esherick had criminal intent in creating a false or misleading invoice to submit to a large institution (e.g., Morgan Stanley) to obtain funds for Douglas Jemal (and Norman Jemal), then it is more likely than not that he had criminal intent in creating false or misleading invoices which were submitted to a large institution (the DC Government), also to obtain funds for Douglas Jemal and Norman Jemal.

Sever Opp'n at 9. Similarly, the government contends that evidence of Esherick's allegedly false tax returns is relevant to establishing his criminal intent in submitting allegedly false invoices to the D.C. government in connection with the bribery scheme:

> [T]he jury is entitled to conclude that if Esherick had criminal intent in using false documents to advance false claims on a government entity in one context, it is more likely than not that he had such criminal intent involving false documents to advance false claims on a governmental entity in another context.

Id. at 13. These two claims by the government starkly demonstrate why these distinct sets of counts are improperly joined. The government wants to ask the jury to infer that if Defendants submitted false documents in one context, it is more likely that they submitted false documents in another content. This is improper criminal propensity evidence prohibited by Rule 404(b).

The government's theory of admissibility is strikingly similar to the precise theory rejected by the D.C. Circuit in a case (ignored by the government) in which a court granted a severance for improper joinder:

> [T]he government points to nothing in common between the two conspiracies more specific than the common use of falsehoods to make money. . . . Telling lies, even elaborate ones, cannot be the hook for joining otherwise unrelated conspiracies.

Nicely, 922 F.2d at 853. Moreover, "'[w]hen a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance.'" United States v. Foskey, 636 F.2d 517, 524 (D.C. Cir. 1980) (alteration in original). Here, the government points to no similarity between the alleged falsehoods at issue other than the fact that they were allegedly submitted to large institutions or government entities.

For these reasons, the Public Corruption Counts, the Wire Fraud Count and the Tax Evasion Counts are improperly joined in a single indictment, and the Court should sever each set of counts from the others for separate trials.

### B.  The Prejudicial Spill-Over Of Evidence Necessitates Severance In This Case

A joint trial of the Public Corruption Counts, the Wire Fraud Count, and the Tax Evasion Counts would prevent Defendants from receiving a fair trial because (1) the jury is likely to infer criminal disposition on the part of the Defendants as a result of the multiple, unrelated charges alleged in the Indictment; and (2) the jury cannot reasonably be expected not to cumulate the evidence from all three sets of counts. See Drew v. United States, 331 F.2d 85, 88 (D.C. Cir. 1964).

Although the government has attempted to reframe the Indictment as an overarching scheme relating to refinancing the 77 P Street property, the fact remains that the centerpiece of the Indictment is the Public Corruption Counts and Defendants' alleged bribery of Lorusso.  By charging the Defendants with these three separate sets of counts, the government appears to be trying to improve its chances for a conviction on the Public Corruption Counts, by making the jury believe Defendants have a propensity for fraud and criminal behavior.  The government claims that there is no prejudice because the evidence concerning each of the sets of counts would be admissible even if the counts were tried separately.  See Sever Opp'n at 18.  On the contrary, for the reasons already discussed, evidence relating to the Wire Fraud Count and Tax Evasion Counts would not be admissible at a trial on the Public Corruption Counts under Rule 404(b).  Therefore, if the three sets of counts are tried together, the evidence proffered by the government in support of the Wire Fraud Count and Tax Evasion Counts will prejudice the jury and impair the Defendants' ability to fairly defend themselves against the Public Corruption Counts.  See, e.g., United States v. Gray, No. 104CR580, 2005 WL 1126733, at *4 (N.D. Ohio May 3, 2005) (evidence relating to tax charges not otherwise admissible at trial on non-tax charges "would cause substantial and compelling prejudice to [defendant's] right to a fair trial on the non-tax charges").

There is also a real danger that the jury may convict the Defendants on the Public Corruption Counts by cumulating evidence introduced in support of the other counts.  See Gregory v. United States, 369 F.2d 185, 189 (D.C. Cir. 1966) ("where evidence of more than one crime is offered to the jury because more than one crime is charged in the indictment, the evidence as to all crimes charged tends to cumulate to prove each, thus prejudicing the defendant in his right to a separate consideration of his guilt or innocence on each charge") (citing Drew,

331 F.2d at 91); United States v. Foutz, 540 F.2d 733, 738 (4th Cir. 1976) (when one part of the government's case is weaker than another, a court cannot assume that the jury will properly compartmentalize the evidence into "separate intellectual boxes") (quoting Bruton v. United States, 391 U.S. 123, 131 (1967) (quotation marks omitted)).

In this case, the danger of prejudice to the Defendants cannot be cured by limiting instructions to the jury. The D.C. Circuit has recognized that in certain cases, it is "unreasonable to expect that the jury [will] succeed[ ] in compartmentalizing the evidence" introduced at trial, even when properly instructed. United States v. Sampol, 636 F.2d 621, 647 (D.C. Cir. 1980); see also United States v. McCarter, 316 F.3d 536, 539 (5th Cir. 2002) (recognizing that "[a]lthough juries are generally presumed to have followed jury instructions," in certain cases, it is impossible for them to do so); United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994) ("The presumption that a jury will adhere to a limiting instruction evaporates when there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense."). Particularly in a conspiracy case, as here, "the risk of substantial prejudice from the spillover effect of the conspiracy evidence and the documents [can be] too high to be cured by less drastic measures, such as . . . limiting instructions." United States v. Baker, 98 F.3d 330, 335 (8th Cir. 1996). The government seeks to downplay the effect of a joint trial by pointing out that Defendants have not been charged with "heinous or shocking crimes," Sever Opp'n at 20 n.11, but cannot escape the fact that the Indictment contains allegations relating to three completely separate schemes, one of which does not even involve Defendant Norman Jemal. It is unreasonable to think that a jury will not be influenced by the fact that the Defendants have been charged in three sets of counts, rather than merely one, and will be more likely to convict on at least one of those counts. In sum, the likelihood that the jury

will draw impermissible inferences against the Defendants and cumulate the evidence before them is too high to be adequately addressed through limiting instructions.

## III. CONCLUSION

For the foregoing reasons, the Court should sever (a) the Wire Fraud Count (Count Five) and (b) the Tax Evasion Counts (Counts Six through Eight and paragraph 18 of the Manners and Means Section of Count One) from each other and from (c) the Public Corruption Counts (Counts One through Four) of the Indictment.

Respectfully submitted,

/s/

Reid H. Weingarten (D.C. Bar #365893)
Erik L. Kitchen (D.C. Bar #292847)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

       Stanley M. Brand
       Ross Nabatoff
       The Brand Law Group
       923 Fifteenth Street, N.W.
       Washington, D.C. 20005
       (202) 662-9700

       Counsel for Norman Jemal

       Paul Kemp
       Carol Elder Bruce
       Venable LLP
       575 7th Street, N.W.
       Washington, D.C. 20004
       (202) 344-4400

       Counsel for Blake Esherick

Dated: February 1, 2006