UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| v. | ) | Crim. No. 05-359-1, -2, -3 (RMU) |
| DOUGLAS JEMAL, *et al.*, | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR EARLY RETURN SUBPOENAS UNDER RULE 17(c)**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby move this Court for an Order under Federal Rule of Criminal Procedure 17(c) allowing service of early-return subpoenas *duces tecum* to the D.C. government agencies likely to have records relevant to the transactions at issue in the Indictment and admissible in this proceeding.

Defendants respectfully request oral argument on this motion at the hearing scheduled for March 20, 2006, at 9:45 a.m. A proposed Order is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Erik L. Kitchen (D.C. Bar #292847)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

        Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  March 16, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| v. | ) Crim. No. 05-359-1, -2, -3 (RMU) |
| DOUGLAS JEMAL, *et al.*, | ) |
| Defendants. | ) |

MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR EARLY RETURN SUBPOENAS UNDER RULE 17(c)</u>

I.   INTRODUCTION

The government contends that Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants") bribed Michael Lorusso, the former Deputy Director of the D.C. Office of Property Management ("OPM"), in exchange for Lorusso causing the D.C. government to (1) lease office space at 77 P Street, N.E., Washington, D.C. ("77 P Street"), (2) lease an impound lot at 4800 Addison Road, Capitol Heights, Maryland ("4800 Addison Road"), (3) attempt to purchase 4800 Addison Road, (4) attempt to sell a property at 438 Massachusetts Avenue, N.W. to an entity owned by Douglas Jemal, (5) approve fraudulent invoices relating to these properties, and (6) take other unidentified steps of benefit to Douglas Development Corporation ("DDC"). Indictment at 6-8 (¶ 16). Defendants contend that they obtained these transactions on the merits and not as a result of bribery, that many D.C. officials other than Lorusso were involved in negotiating and approving the deals, that the deals were fair and reasonable, and that Douglas Development performed valuable services for the District of Columbia.

At the motions hearing before the Court on March 7, 2006, the government conceded that its case against the Defendants is entirely circumstantial. Specifically, in the course of describing the anticipated testimony from the government's chief witness in the case, Mr. Lorusso, AUSA Mark Dubester indicated that Mr. Lorusso will not testify that he discussed any specific *quid pro quo* with any of the Defendants:

> 17      But it is my believe that Mr. Lorusso will not be
> 18 sitting down saying he had an explicit quid pro quo scheme, not
> 19 even using those terms, which involved me performing the
> 20 following acts for the following gifts. I believe, and this is
> 21 capturing the essence of his testimony as opposed to a specific
> 22 phrase, I believe he would say, I well understood they were
> 23 going to take care of me if I took care of them.

Transcript of March 7, 2006 Hearing at 40. In other words, Mr. Lorusso will not testify that he had any conversation with any of the Defendants in which he promised to perform or alter any official acts in exchange for something of value.

Thus, the government's case will rest entirely on the timing of the alleged gifts to Mr. Lorusso and the alleged "official acts" performed by Mr. Lorusso. Because it has no direct proof of a *quid pro quo*, the government will likely also attempt to prove that the transactions at issue were bad deals for the District -- *i.e.* allegedly involved inflated rents or purchase prices, inferior construction or services, and/or fraudulent invoices. By so doing, the government will attempt to establish that the only way Defendants were able to obtain the lucrative transactions at issue was by bribing Lorusso. Under these circumstances, it is critical for the defense to establish that the transactions at issue were obtained on the merits, that many D.C. government officials beyond Mr. Lorusso were involved in negotiating, approving or authorizing the transactions at issue, and that Defendants and Douglas Development Corporation performed valuable and quality services for the District of Columbia.

To establish this defense, Defendants need access to documents, records, and correspondence of D.C. government officials relating to 77 P Street, 4800 Addison Road and 438 Massachusetts Avenue during 2001 and 2002, the time period covered by the Indictment. Many D.C. government agencies were involved in these real estate transactions with Douglas Development Corporation, including the agencies that leased the office space at 77 P Street and the impound lot at 4800 Addison Road. The majority of those records are not available in discovery in this case because the government did not seek them in its investigation. According to AUSA Dubester, the government only obtained D.C. government records from OPM -- the agency that employed Lorusso.[1]

Finally, Defendants have a good faith basis to believe that relevant, admissible and even exculpatory documents exist in the files of the government agencies at issue. In 2003, the D.C. City Council held a series of public investigatory hearings that addressed some of the transactions at issue in the Indictment. During those hearings, the City Council made public certain exhibits that it had collected during the investigation. As set forth below, several of those exhibits came from the files of D.C. government agencies and contain information highly relevant to this case. It appears highly likely that the subpoenas at issue would result in the production of additional relevant documents material to the defense.

---

[1] And even with respect to the OPM records, the government indicated that while it reviewed OPM's entire files for 77 P Street and 4800 Addison Road, it only copied the documents it deemed relevant. Counsel have had discussions with the government about discovery and believe the government may be willing to facilitate Defendant's access to the OPM records available. If that occurs, that will moot the need for Defendants to subpoena the records from OPM.

## II. ARGUMENT

In order to obtain evidence necessary to the preparation of their defense in this case, the Defendants move for authority to issue early return subpoenas under Rule 17(c), which "governs the issuance of subpoenas *duces tecum* in federal criminal proceedings." United States v. Nixon, 418 U.S. 683, 697-98 (1974). Rule 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).

Unlike Rule 16, which governs discovery between the government and criminal defendants by placing certain limits on the types of materials discoverable by each party, the "plain words of . . . Rule [17] . . . establish[] a liberal policy for the production, inspection and use" of evidentiary materials in federal criminal cases. Bowman v. Dairy Co. v. United States, 341 U.S. 214, 220 (1951). Early return subpoenas under Rule 17(c) are properly issued to third parties possessing relevant materials. As one court has noted, "[i]n cases such as the matter at bar, where evidence relevant to guilt or punishment is in a third party's possession and is too massive for the defendant to adequately review unless obtained prior to trial, pre-trial production through Rule 17(c) is necessary to preserve the defendant's constitutional right to obtain and effectively use such evidence at trial." United States v. Tominson, 969 F. Supp. 587, 593 (E.D. Cal. 1997).

In Nixon, the Supreme Court stated that, to require production prior to trial pursuant to Rule 17(c), the moving party must show:

- 4 -

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699-700. The court in Nixon distilled these showings into the three elements often applied by courts weighing the issuance of Rule 17(c) subpoenas -- relevancy, admissibility and specificity. Id. at 700.

The relevancy prong is satisfied as long as there is a "rational inference that at least part of the [materials] relate to the offenses charged in the indictment." Id.; see also United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992) (holding that a proponent must "giv[e] reasons that permit[] a rational inference of relevance"); United States v. King, 194 F.R.D. 569, 573 (E.D. Va. 2000) (relevance requirement satisfied when the requested items "address[] in detail many of the allegations in the [indictment].").

Admissibility requires merely a "preliminary showing" of the "potential evidentiary uses" of the material. Nixon, 418 U.S. at 702. While Rule 17(c) subpoenas are limited to evidentiary materials, "that is not to say that the materials subpoenaed must actually be used in evidence." In re Martin Marietta Corp., 856 F.2d 619, 621 (4th Cir. 1988). The materials must be produced so long as the 17(c) request constitutes a "good faith effort . . . to obtain evidence." Id.

Only a modest showing of specificity is required, because the proponent has not yet seen the material and because the proponent is not required to be so specific as to disclose his or her defenses to the opposing party. Tominson, 969 F. Supp. at 593; United States v. Mackey, 647 F.2d 898, 901 (9th Cir. 1981). "The test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general fishing expedition that

attempts to use the rule as a discovery device." United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980).

The subpoenas for which the Defendants request early return under Rule 17(c) are aimed at obtaining relevant, admissible records that counsel believe in good faith are necessary to prepare their defense. Attached hereto as Exhibit A are five documents, disclosed as exhibits during the City Council hearings, reflecting email exchanges among D.C. government officials regarding various transactions at issue in the Indictment. These documents are examples of the types of records Defendants expect to obtain through the subpoenas at issue. They are relevant, admissible and material to the preparation of the defense. The sample records at issue reflect the following:

- The first document is a 9/25/01 email exchange between officials of the Office of Deputy Mayor for Planning and Economic Development and Mr. Lorusso. It relates to the $863,299.28 invoice at issue in the Indictment, which the government contends was fraudulent and approved because of bribes to Lorusso. The email shows that representatives of the Deputy Mayor's Office were aware, three days before the date of the invoice, that the funds at issue were to be transferred as "funds deposited" to the landlord for "the proposed space on P Street" [Douglas Development]. This email is relevant because it shows that the funds at issue were not transferred solely at Lorusso's discretion, and that other officials were involved. It also tends to negate the mail fraud theory in the Indictment that Defendants obtained money or property to which they were not entitled.

- The second document is a July 2002 email exchange between Office of Corporation Counsel ("OCC") attorneys, Lorusso and an attorney for Douglas Development, in which an OCC attorney "signs off" as to the legal sufficiency of two of the lease addenda relating to the 77 P Street property. The document shows that D.C. attorney's approved the legal sufficiency of the transactions, that Lorusso did not negotiate these deals in secret or otherwise conceal them from relevant officials, and that D.C. officials other than Lorusso needed to approve the transactions -- negating any possible claim that Lorusso could unilaterally award lease transactions to Defendants in exchange for bribes.

- The third document is an October 2002 email exchange between officials in the Executive Office of the Mayor -- but not including Lorusso -- in which

- 6 -

- various officials express interest in purchasing 4800 Addison Road and explain the circumstances behind the proposed sale of the firehouse at 438 Massachusetts Ave to Douglas Jemal. The document shows that other senior government officials were involved in negotiating both deals, and negates the government's theory that Defendants induced the potential sales through bribery of Lorusso.

- The fourth document is a December 2001 email exchange between Lorusso, a senior official in the Mayor's Office, an OCC attorney, and Lorusso's boss, Tim Dimond, in which the officials discuss the most efficient way for the D.C. government to purchase the impound lot at 4800 Addison Road. This document again shows that many officials other than Lorusso were involved in the negotiations and helps establish that the deal was not a secret transaction procured by bribery.

- The fifth document is a June 2002 email exchange between Lorusso and various officials in the Executive Office of the Mayor in which an official accepts Lorusso's explanation that the proposed lease by DHS [the Department of Human Services] at 77 P Street had been approved by corporation counsel for legal sufficiency, and did not require approval by the City Council because it was an expansion of an existing lease that had already been approved by the City Council. The email also states that the 77 P Street location was selected to accommodate the "tight time frames for DHS." This document again suggests that many officials participated in these negotiations, and refutes the suggestion that Lorusso alone gave City business to Douglas Development as a result of bribery.

Defendants have a good faith basis to believe that additional relevant and admissible documents exist in the files of the D.C. government agencies involved in the transactions at issue. Defendants' requests in the proposed subpoenas, submitted herewith as Exhibit B, seek only records during 2001 and 2002, the time period covered by the Indictment, and do not seek records relating in any way to the Defendants or Douglas Development Corporation, but only those records directly relating to the properties at issue in this case. Without knowledge of the contents of the government agencies' files, Defendants cannot particularize further their requests without creating an excessive number of requests that might call for subjective interpretation and lead to non-compliance.

The Defendants' requests for documents in the proposed subpoenas submitted herewith satisfy the <u>Nixon</u> requirements of relevancy, admissibility, and specificity. Given the breadth of the allegations in this case, the Defendants should be given flexibility to review and analyze prior to trial these records that are almost certainly relevant to the allegations and/or their defenses.

### III.   CONCLUSION

For the foregoing reasons, the Court should issue an Order under Federal Rule of Criminal Procedure 17(c) allowing service of early-return subpoenas *duces tecum* to the D.C. government agencies at issue with a return date of approximately 30 days, or April 19, 2006.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Erik L. Kitchen (D.C. Bar #292847)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

        Stanley M. Brand
        Ross Nabatoff
        The Brand Law Group
        923 Fifteenth Street, N.W.
        Washington, D.C.  20005
        (202) 662-9700

        Counsel for Norman Jemal


        Paul Kemp
        Carol Elder Bruce
        Venable LLP
        575 7th Street, N.W.
        Washington, D.C.  20004
        (202) 344-4400

        Counsel for Blake Esherick

Dated:  March 16, 2006