# Attachment A



U.S. Department of Justice

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

November 22, 2005

Michele Roberts
AkinGump
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Reid H. Weingarten
Brian M. Heberlig
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795

Stan Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 200004

<u>Discovery Letter #3 - Response to Defendants' First Request for Discovery and Brady Material</u>

Counsels:

This letter addresses the letter of Mr. Weingarten dated November 1, 2005, captioned "Defendants' First Request for Discovery and Brady Material." We respond to the various requests in sequence.

<u>Rule 16(a)(1)(E) material</u>. The United States is presently engaged in an ongoing process of providing material that: (1) is material to the preparation of the defense, (2) the Government intends to use in its case-in-chief at trial, or (3) was obtained from, or belongs to, the Defendants. As to categories (1) and (2), the United States is in the ongoing process of copying/scanning

documents and materials which may be evidence in this case and will continue this process. As to category (3), the United States has communicated by email with defense counsels that the Defendants may inspect the seized documentary materials, may have a copy of the seized computer evidence. Moreover, you may inspect documents obtained by grand jury subpoena from Douglas Development Corporation (DDC). As to the documents obtained from DDC by grand jury subpoena – we stress that the United States consented to production of Bates-numbered copies by DDC. (The Government did request some originals, and most of the requested originals have been marked as trial exhibits. These have been copied and provided to the defense.) Thus, the originals of the vast majority of the subpoenaed DDC documents are in the actual possession of your clients, and a set of the Bates-numbered copies appears to be in the possession of counsel. Similarly, the FBI, in the search of DDC's offices, copied DDC's computer server and various of the desktops computers – leaving the "originals" intact. Thus, again, the "originals" of the computer data are in the actual possession of the Defendants. You are of course entitled to see what the Government possesses, but, as a practical matter, to the extent the contents of these documents are material to the preparation of your defense(s), those documents are in your clients' actual possession. As to the specific requests related to the searches, the United States agrees to provide inventories and photographs related to the searches.

Thus, the Government agrees to disclose or make available for inspection nearly all the evidence in the Government's possession apart from witness materials. This includes the subpoenaed materials from DDC, the search materials (documents and computers), and the bulk of the subpoenaed documents from third parties. It is the Government's present intent to provide access to these records as well as other documents and records which relate to the Defendants and the present charges. Many of the pertinent document sets have already been scanned (or have been identified for scanning) and provided to counsel. There are a few additional sets of records obtained during the investigation which the Government has determined it is unlikely to use at trial. Such materials are available for inspection. Accordingly, as far as the physical and documentary evidence related to this Indictment is concerned, we will provide close to "open file" discovery.

Brady material. As a general matter, Brady and its progeny do not establish a right of discovery. Rather, Brady imposes an obligation – one that the Government well-recognizes – to provide certain categories of materials to the defense in time for effective use by the defense at trial.

Your letter treats Brady as if it requires the Government to respond to a series of "civil"-type discovery demands. For example, you request "all documents or information (in whatever form) .... tending to establish [proposition X, Y, or Z]."[1] Indeed, some of the requests are so

---

[1] Indeed, the tenor of the requests appear to track the (so-called) Brady requests which were at issue in United States v. Causey, 356 F.Supp.2d 681 (S.D. Tex. 2005). The trial court in Causey summarized certain of defendant Causey's discovery requests as "seeking disclosure of all (1) evidence that certain transactions were disclosed to and approved by others,

broadly worded in a seeming attempt to be inclusive (akin to a civil-type discovery request) that they fail to provide real notice as to what you are actually seeking.[2] In any event, we decline to accept the proposition implicit in your letter, namely, that the defense can define what is meant by "exculpatory"and by so doing compel the Government to collect evidence or provide information responsive to expansive requests on a limitless range of topics. Such a view of Brady would, in effect, create a general constitutional right to discovery in a criminal case. However, the law is clear that "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Indeed, "[a]n interpretation of Brady to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present systems of criminal justice." United States v. Bagley, 473 U.S. 667, 675, n.7 (1985) (internal citation omitted)).

Furthermore, as noted above, the bulk of the evidence in the Government's possession (absent witness statements) has come from the Defendants and is evidence to which the Defendants have been granted access or which the Defendants actually possess or have actual

---

(2) evidence that certain transactions complied with relevant industry rules or practice, (3) evidence that certain transactions were conducted for reasons other than those alleged in the indictment, and (4) impeachment evidence." Id. at 685, fn.12. These requests are stunningly similar to the requests in your November 1, 2005 letter, such as your request 4 (seeking evidence "indicating or tending to establish ... approval [by others] [of certain acts])," request 14 (for "documents or information (in whatever form) indicating that [certain real estate transactions] ... contained fair and/or customary terms"), and request 16 (for all impeachment evidence, as further defined broadly in six categories).

[2]    As but one example, you seek "documents or information tending to establish that any of the Defendants did not participate in any one or more of the events [alleged in the Indictment]." The Indictment is quite specific as to which Defendants are identified as having committed which acts. The law recognizes theories of vicarious liability, including coconspirator and aiding and abetting liability, and the various Defendants are charged as coconspirators and/or aiders and abetters in the various counts. Accordingly, there are many acts, if not most, which were perpetrated by one or some but not all the Defendants.

In addition, you have sought an abundance of evidentiary detail related to the bribery charges. The material sought, even as you phrase the requests, is not exculpatory within the meaning of Brady. The crime of bribery (by a payor) can be committed if the payer provides value to the recipient with requisite criminal intent: 1) even if the government official, in accepting the things of value, does not intend to take official acts on the payor's behalf; 2) even if the government official does not in fact take official acts on the payor's behalf; 3) even if the government official does not know he/she is being bribed, 4) even if the government received a good deal, paid fair market value, or was not otherwise defrauded; and 5) even if there are no explicit conversation between the briber and the recipient. The information sought does not tend to negate proof of criminal intent of any of the Defendants.

knowledge. As to these materials, "the Government is not required ... to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." United States v. Runyan, 290 F.3d 223, 246 (5th Cir.), cert. denied, 537 U.S. 888 (2002). See United States v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988), cert. denied, 488 U.S. 1040 (1989) ("Brady is designed to 'assure that the defendant will not be denied access to exculpatory evidence only known to the Government.' United States v. LeRoy, 687 F.2d 610, 619 (2 Cir.1982) (emphasis in original), cert. denied, 459 U.S. 1174 (1983). Accordingly, the government ha[s] a duty to disclose only 'information which had been known to the prosecution but unknown to the defense.' United States v. Agurs, 427 U.S. 97, 103 (1976).").[3]

In short, the Government recognizes its ongoing Due Process obligations under Brady and Giglio, and will comply as required by law.

Jencks material. You request Jencks material and, in the same request (indeed, in the very same sentence), a list of the names and addresses of all witnesses. However, "Federal Rule of Criminal Procedure 16(a)(2) prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jencks Act, 18 U.S.C. 3500 (1982). The Jencks Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case." United States v. Tarantino, 846 F.2d 1384, 1414 (D.C. Cir.), cert. denied, 488 U.S. 840 (1988).

The reasons for this limitation on discovery are well-known. The purpose of providing Jencks material to a defendant is to permit effective cross-examination of the witnesses. It is not for the purposes of trial preparation, let alone for the purpose of disclosing witness identities/addresses to the Defendants as your request appears to suggest. See, e.g., In re United States, 834 F.2d 283, 286, n. 2 (2d Cir.1987) ("The Jencks Act is not intended as a general discovery mechanism: '[d]isclosures are required by the Jencks Act only for impeachment purposes.'" (quoting United States v. Polizzi, 500 F.2d 856, 893 (9th Cir.1974))). Indeed, courts

---

[3] "[T]he government is not obliged under Brady to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." United States v. Campagnuolo, 592 F.2d 852, 861 (5th Cir. 1979).

-4-

are uniform in their view that they have no authority to order early production of Jencks material.[4]

Nonetheless, the Government seeks to avoid any unnecessary delays at trial. Accordingly:

- The Government will provide the Jencks material of Lorusso and Fernando Villegas 30 days prior to trial. This will allow ample time for the Defendants to prepare for cross-examination of these two witnesses.

- The Government will provide the Jencks material of its first <u>seven</u> intended witnesses – those who the Government intends to call starting with the first day of trial testimony – on Tuesday, September 5, 2006. (Thus, assuming that a jury would be selected Friday, September 8, 2006 and considering that opening

---

[4]   One District Court judge described the rule as "nearly absolute":

> With respect to the statutory proscriptions upon the discretion of a district court judge under the Jencks Act, the overwhelming majority of cases – including cases from the First Circuit – adhere to a rule that is nearly absolute: district court judges may not, over the government's objection, compel pretrial disclosure of nonexculpatory Jencks Act material earlier than the close of a witness's testimony on direct examination. See <u>United States v. Grandmont</u>, 680 F.2d 867, 874 (1st Cir.1982) ("A court may not compel the disclosure of statements of government witnesses before the conclusion of their direct testimony."); <u>United States v. Neal</u>, 36 F.3d 1190, 1197 (1st Cir.1994); see also <u>United States v. Presser</u>, 844 F.2d 1275, 1283 (6th Cir.1988) ("[T]he government may not be compelled to disclose Jencks Act material before trial." [citations omitted] ), cited in <u>United States v. Hart</u>, 760 F.Supp. 653, 657 (E.D.Mich.1991); <u>United States v. Molt</u>, 772 F.2d 366, 370 (7th Cir.1985), <u>cert. denied</u>, 475 U.S. 1081 (1986); <u>United States v. Percevault</u>, 490 F.2d 126, 129, 131 (2nd Cir.1974) ("[T]he district court did not have the statutory authority to compel disclosure [of Jencks material], over the government's objection, prior to trial."); <u>United States v. Exolon-Esk Co.</u>, No. 94-CR-17S, 1995 WL 46719, at *3 (W.D.N.Y. Sept. 10, 1995) ("[I]t is also uniformly recognized that a district court judge generally lacks authority to order pretrial production of Jencks materials over an objection by the government.").

<u>United States v. Owens</u>, 936 F.Supp. 76, 80 (D.Mass. 1996) (footnote omitted).

statements are likely to consume most or all of Monday, September 11, this would give the defense more than a full week to be ready for cross-examination of the Government's opening witnesses.) The Government will provide these materials upon the representation that the Defendants personally or through agents will not contact the witnesses between the time of the receipt of the Jencks material until the witnesses testify.

- The Government will provide the Jencks material of all its remaining witnesses immediately following the completion of opening statements. In light of the anticipated length of the trial, the defense will have the bulk of the Jencks material days if not weeks prior to needing it. The Government will provide this material upon the representation that the Defendants personally or through agents will not contact the witnesses between the time of the receipt of the Jencks material until the witnesses testify.

The above procedures will permit the defense to have ample opportunity to review the Jencks materials prior to cross-examination. (We note that the Jencks materials for many of the witnesses are minimal, further reducing the likelihood that production on this schedule would occasion delays in the trial.) Indeed, these procedures are more liberal than the production schedules employed in other criminal cases in this District. See, e.g., United States v. Tarantino, 846 F.2d at 1415, n.12 (48 hours prior to witness's testimony); United States v. Hsin-Yung, 97 F.Supp.2d 24, 36 (D.D.C. 2000) (Government agrees to provide Jencks material "no earlier than when a jury has been sworn and the trial is certain to proceed."); United States v. Edelin, 128 F. Supp.2d 23, 49 (D.D.C. 2001) (Jencks provided the Thursday prior to the witness's testimony); United States v. Williams, 1992 WL 35096 (D.D.C. Feb 05, 1992) ("In this regard, the Court accepts as fully adequate the government's representations that it will furnish all Brady information immediately before trial and Jencks Act material pertaining to each government witness at least one day before that witness testifies."); United States v. Nugent, 1992 WL 35139 (D.D.C. Feb 05, 1992) (Jencks material to be provided one day prior to testimony, and, "for an estimated five witnesses expected to testify at length, ... more than one day in advance."); United States v. Powell, 1987 WL 18218 (D.D.C. Sept. 28, 1987) ("[T]he government represents that it will make Jencks material available at the conclusion of defendants' opening statement, if not earlier. This should give defendants ample opportunity to make full use of the Jencks material.").

Statements of Defendants. In response to your request under Rule 16(a)(1)(A), please be aware the Government does not possess oral statements made by the Defendants in response to interrogation by a government agent.

In response to your request under Rule 16(a)(1)(B) relating to written or recorded statements, the Government possesses discs containing the testimony of Douglas Jemal, Blake Esherick and others before the DC City Council. The Government will copy these discs and provide them to you. The Government has already disclosed testimony of Blake Esherick related to his child custody hearings. The Government possesses testimony of Paul Millstein in

connection with the zoning hearing in Prince George's County. (A transcript of a portion of the testimony was provided to the grand jury pursuant to subpoena.) The Government will copy this testimony and provide it to you. The Government will provide any additional statements of the Defendants that are under oath or transcribed that comes into its possession. The Government has attempted to review emails in the possession of the DC Government and locate emails written by the Defendants and will provide these in the near future.

Please be aware, the above representations related to "written statements" are not intended to apply to the documents prepared by the Defendants that have been obtained by the Government by subpoena or search and which are otherwise subject to discovery under Rule 16(a)(1)(E).

Criminal Records. The Government will provide criminal records of the Defendants, Millstein and John Brownell ("Brownell").

Scientific Evidence. The Government does not possess any evidence related to your requests.

Expert Testimony. The Government intends on calling an IRS Revenue Agent to testify to Esherick's tax calculations. The Government will provide information concerning the Revenue Agent's testimony, background and basis for the Revenue Agent's opinions 30 days prior to trial. The Government may call the FBI's computer examiner to describe certain aspects associated with the storage and retrieval of computer files (though it is not anticipated at this time that the witness would be providing an "expert opinion" of the sort contemplated by your request).

The Government also intends on calling various professionals such as accountants and real estate personnel as fact witnesses. Some small portion of their testimonies could involve explaining concepts which are outside the knowledge of lay persons, but, at present, it is not contemplated that they would render expert "opinions" of the sort contemplated by your request.

Rule 403 and 404(b) Evidence. Though not required by Rule 16, the Government represents that it may seek to introduce evidence of the following events in addition to the acts set forth in the Indictment. These acts in addition to the acts that form part of the conspiracy that are mentioned in the letter responding to the Bill of Particulars.

- Douglas Jemal compensated Brownell and Millstein in ways not reported to the IRS and in so doing assisted them in evading personal income taxes. In the course of these tax evasion activities, false entries were placed in DDC's General Ledger.

- The Defendants provided former DC Government Deputy Mayor Eric Price a cellphone, and they provided Faith Scott, a subordinate of Lorusso's, a ticket to an event at the MCI Center;[5]

- The Defendants sought to used MTD Real Estate Services [MTD] to conceal from Joe Cayre the diversion of monies from the Woodies renovation, and, to do so, Defendants prepared an MTD invoice from Mike Rowe related to Woodies.

Rule 801(d)(2) evidence. The Government may seek to introduce some or all of Millstein's testimony in connection with the Addison Road zoning hearing in Prince George's County.

Rule 1006 evidence. The Government is likely to offer charts, summaries and calculations in its case. It is our present intention that all such charts will be based on evidence to be admitted at trial.

Summary. Accordingly, in response to your letter, the Government plans on producing the following pursuant to the following schedule:

1) Evidence it may use in its case-in-chief and other documents that are material to the preparation of the defense - ongoing.

2) Access to inspection of subpoenaed documents – upon request of the Defendants.

3) Access to inspection of seized documents – upon request of the Defendants;

4) Copies of the computer evidence seized in the searches – to be prepared upon provision by the Defendants to the Government of hard drives;

5) Documents related to search inventories - to be produced in near future;

6) Photographs related to searches – to be produced in near future;

7) Testimony of Douglas Jemal and Blake Esherick before the DC City Council; Testimony of Paul Millstein in Prince George's County – to be produced in near future;

8) Brady/Giglio materials – to be produced in a timely and on-going basis;

---

[5] We believe these are acts of the conspiracy and not "other crimes," but we provide notice in this letter as a courtesy.

9) Lorusso/Villegas Jencks material - to be produced August 8, 2006;

10) Summary of IRS Revenue Agent (and any other expert testimony and background of said witness) - August 8, 2006;

11) Initial Jencks production - September 5, 2006;

12) Remaining Jencks production - subsequent to opening statements.

I look forward to a continued dialogue as to these matters.

          Sincerely,

          KENNETH L. WAINSTEIN
          UNITED STATES ATTORNEY

By: *[signature]*
          Mark H. Dubester
          Assistant United States Attorney