UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No.  05-0359-1, -2, -3 (RMU) |
| | ) | |
| DOUGLAS JEMAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF PRIOR RELATED CIVIL LAWSUIT AND SETTLEMENT**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby move this Court, pursuant to Federal Rules of Evidence 403 and 408, to exclude any evidence referencing the False Claims lawsuit filed by the District of Columbia against Defendants Douglas Jemal and Blake Esherick or to the settlement of that lawsuit, because the evidence involves efforts to compromise a civil claim and any probative value it may have is substantially outweighed by its prejudicial effect.

Defendants respectfully request oral argument on this motion.  A proposed Order is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

        Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 5, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,** )<br>)<br>v. )<br>)<br>**DOUGLAS JEMAL, et al.,** )<br>)<br>**Defendants.** )<br>) | Crim. No. 05-0359-1, -2, -3 (RMU) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PRIOR RELATED CIVIL LAWSUIT AND SETTLEMENT**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, respectfully request that the Court, pursuant to Federal Rules of Evidence 403 and 408, prohibit the government from introducing at trial any evidence that refers to: (1) the District of Columbia's ("District" or "City") civil False Claims lawsuit against Defendants Douglas Jemal and Blake Esherick, which involved several of the same matters that are the subject of the Indictment in this case; and/or (2) those Defendants' agreement to settle the lawsuit. Such evidence has no probative value in this case and will, instead, mislead or confuse the jury, unduly delay the trial, and cause substantial prejudice to the Defendants.

**I.   BACKGROUND**

The Indictment alleges, in substantial part, that the Defendants provided various things of value to then Deputy Director of the District's Office of Property Management Michael Lorusso ("Lorusso") in order to influence, or induce Lorusso to perform, a series of official acts. A substantial portion of the official acts at issue relate to the District's lease of, and payment of invoices related to tenant improvements for, commercial office space in a building owned by

Defendant Douglas Jemal at 77 P Street, N.E., Washington, D.C. The Indictment specifically alleges that Lorusso approved certain invoices submitted by Defendants to the District, including invoices for tenant build-out construction in the basement of 77 P Street, which were false, excessive, irregular or otherwise unsupported (see, e.g., Indict. ¶ 16(e)(iii) & (v)). The alleged official acts also include Lorusso's efforts to cause the District to lease an impound lot at 4800 Addison Road (see, e.g., Indict. ¶ 16(a)), to attempt to cause the District to purchase 4800 Addison Road (see, e.g., Indict. ¶ 16(b)), to approve invoices relating to 4800 Addison Road (see, e.g., Indict. ¶ 16(c)(iv)-(v)), and to attempt to cause the District to sell to Defendants a historic firehouse at 438 Massachusetts Avenue (see, e.g., Indict. ¶ 16(c)).

In the Fall of 2002 and Spring of 2003, the District of Columbia City Council held a series of oversight and investigative hearings related to the Office of Property Management, Michael Lorusso, Douglas Jemal, and others. Among the featured topics at the hearings were the invoices related to the tenant build-out construction in the basement of 77 P Street, the alleged overcharges at the impound lot at Addison Road, and the proposed purchase of Addison Road and sale of the firehouse. The City Council also publicly suggested that when the District entered into various lease addenda for additional space at 77 P Street after the City Council approved an initial lease for space there, the subsequent lease addenda were invalid because they were not approved by the City Council.

Ultimately, in July 2003, the Attorney General of the District of Columbia, at the public urging of a City Councilmember, filed in the Superior Court of the District of Columbia a lawsuit against Douglas Jemal, Blake Esherick, and two of Mr. Jemal's companies (Douglas Development Corporation and Cayre Jemal's Gateway) alleging violation of the District's civil False Claims Act. The District's complaint alleged that two invoices submitted for payment by

the defendants for the basement construction at 77 P Street were falsely presented, that the leases at 77 P Street were invalid for lack of City Council approval, and that the District was entitled to treble damages amounting to nearly $2.8 million.  See Complaint, <u>District of Columbia v. Douglas Development Corporation et al.</u>, Civ. Action No. 03-006457 (Sup. Ct. D.C. July 29, 2003) (attached as Exhibit 1).

In September 2003, Mr. Jemal answered the complaint and filed numerous counterclaims for unpaid back rent, unpaid construction costs, unpaid furniture purchases, and other monies owed to him and his companies by the District of Columbia.  See Answer and Counterclaim (Sept. 9, 2003) (attached as Exhibit 2).  Mr. Jemal's counterclaims survived a motion to dismiss.

The parties ultimately agreed to settle the matter.  The negotiated settlement was contingent upon approval by the City Council, which ultimately approved the lease addenda in question and ended its hearings into the matter.  As part of the settlement, Mr. Jemal agreed to forego a substantial amount in certain back rent, unpaid construction costs, the cost of furniture purchased for the City, and other amounts owed to him.  He also agreed to return (with interest) the disputed amount he received from the City relating to the invoices for the basement of 77 P Street.

A summary of the amounts owed and agreed to be paid by both sides (and set off against each other to some degree) along with the disputed lease addenda were presented in January 2004 by the Mayor to the City Council.  By resolution in March 2004, the Council approved the lease addenda.  The net effect of the set-off amounts was that the City paid $800,000 to Mr. Jemal.  The settlement also addressed (and Mr. Jemal agreed to pay) disputed costs associated with the impound lot leased by the City at Addison Road in the approximate

amount of $42,000 and to re-negotiate (at a higher price than originally agreed) his purchase of the historic firehouse from the City.  See Settlement Agreement (attached as Exhibit 3).  Furthermore, the settlement agreement expressly stated that it did not constitute an admission by either Mr. Jemal or the District of any "liability or wrongful action or violation of any statute, regulation, or common law right."  Id. ¶ 12.

Thereafter, as part of the settlement, on March 3, 2004, the District of Columbia, Douglas Jemal, Blake Esherick and the corporate entities entered a Stipulation of Dismissal whereby those parties agreed to dismiss with prejudice all claims and counterclaims against each other.  Two days later, Superior Court Judge Bush approved the dismissal and made a docket entry to reflect it.

In August 2004, some five months later, Mr. Jemal's companies received the first in a series of Grand Jury subpoenas, with which he and his companies cooperated.

## II.   ARGUMENT

### A.   Rule 408 Prohibits The Admission Of Evidence Relating To Settlement Of The False Claims Lawsuit

The Court should prohibit the government from introducing evidence regarding the prior False Claims lawsuit or its settlement because it is precisely the type of settlement contemplated by Federal Rule of Evidence 408, which prohibits the admission of evidence relating to the compromising of a claim "which was disputed as to either validity or amount" in order "to prove liability for or invalidity of the claim or its amount."  Fed. R. Evid. 408.[1]

---

[1] Rule 408 provides in full:

(Continued …)

- 4 -

As the U.S. Court of Appeals for the District of Columbia Circuit has recognized, "[t]he subject of [Rule 408] is the admissibility of evidence (*in a civil or criminal case*) of negotiations undertaken to 'compromise a claim' in a civil action . . . ." United States v. Graham, 91 F.3d 213, 218 (D.C. Cir. 1996) (citation omitted) (emphasis added).[2] The Fifth, Tenth, and Eleventh Circuits have all definitively held that Rule 408 requires the exclusion of civil settlement agreements in criminal cases. See United States v. Hays, 872 F.2d 582, 589 (5th Cir. 1989) (admission of deposition excerpts explaining reasons for defendants entering into civil settlement agreement plain error under Rule 408); United States v. Bailey, 327 F.3d 1131, 1146 (10th Cir. 2003) (written civil settlement agreement between defendant and some of his business partners not admissible under Rule 408); United States v. Arias, 431 F.3d 1327, 1338 (11th Cir. 2005) (Rule 408 bars evidence of statement signed by defendant in response to state

---

(...Continued)
>Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

[2] The Graham court held that Rule 410 rather than Rule 408 "address[es] the admissibility of evidence concerning negotiations to 'compromise' a [prior] *criminal* case," while the instant case involves the admissibility of evidence regarding settlement of a prior *civil* case, to which Rule 408 clearly applies.

administrative complaint brought by Florida Department of Health against defendant's company which admitted liability and permitted the Department to enter a fine and final order).[3] The decisions of these Courts of Appeals make clear that applying Rule 408 to exclude evidence relating to civil settlements in criminal cases is supported by the language of the Rule itself, the policy interests behind it, and the D.C. Circuit's description of the Rule's scope in Graham.

      The plain language of Rule 1101(b) states that each of the Federal Rules of Evidence -- including Rule 408 -- are generally applicable to criminal cases and proceedings. Fed. R. Evid. 1101(b) ("These rules apply generally to civil actions and proceedings, . . . [and] to criminal cases and proceedings . . . ."). The language of Rule 408 itself also does not expressly preclude application in criminal cases. See Arias, 431 F.3d at 1336-37 ("[W]here the drafters of the Rules intended to prevent the application of a particular Rule to criminal cases, they provided so expressly. Where the drafters of Rule 408 did not expressly preclude application of Rule 408 to criminal cases, we are reluctant to construe that decision as inadvertent.") (citation omitted); Bailey, 327 F.3d at 1146 n.6 ("We must assume that the drafters' failure to make any express exclusion in 408 for criminal proceedings was meaningful."). In fact, the last sentence of the Rule specifically states that it "does not require exclusion when the evidence is offered for another purpose, such as . . . proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408. As the Eleventh Circuit has noted, "[i]f the drafters of Rule 408 intended the Rule to apply solely in civil cases, there would be no occasion to carve out an

---

[3] While the Second, Sixth, and Seventh Circuits have held that Rule 408 does not apply to criminal cases, see Manko v. United States, 87 F.3d 50, 54-55 (2d Cir. 1996); United States v. Logan, 250 F.3d 350, 367 (6th Cir. 2001); United States v. Prewitt, 34 F.3d 436, 439 (7th Cir. 1994), we respectfully submit that this view is not supported by the language of the Rule itself or the policy reasons behind it, and is therefore not the more well-reasoned position.

exception for certain circumstances in criminal cases . . . ."  Arias, 431 F.3d at 1337.  See also Bailey, 327 F.3d at 1146 ("the final sentence [of Rule 408] is arguably unnecessary if the Rule does not apply to criminal proceedings at all").

Courts have also recognized that "applying Rule 408 to criminal cases furthers the policy interests that undergird the Rule."  Arias, 431 F.3d at 1337.  On this point the Eleventh Circuit has stated:

> It is self-evident that a defendant in a civil suit is far less likely to offer to settle a claim if evidence of that offer can later be introduced to prove criminal liability for the same conduct.  Limiting Rule 408 to civil proceedings thus undermines the public policy in favor of compromise that the Rule aims to further.  Moreover, while the Second Circuit has found that the interest in accurate determinations in criminal trials outweighs the interest in promoting civil settlements, this rationale overlooks a basic premise underlying Rule 408:  evidence of compromise is not necessarily probative of liability.  Indeed, the advisory committee's notes indicate that evidence of a settlement offer is often irrelevant to liability for the charged conduct, because "the [settlement] offer may be motivated by a desire for peace rather than from any concession of weakness of position."  In this light, permitting the admission of civil settlement offers in subsequent criminal prosecutions actually compromises the accuracy of the jury's determination.

Id. (citation omitted).  The admission of evidence relating to a defendant's willingness to enter into a civil settlement carries with it the great danger of fatally prejudicing the jury against that defendant:

> [A]s the framers of Rule 408 clearly contemplated, the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound.  It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back.

Hays, 872 F.2d at 589. Indeed, "the potential prejudicial effect of the admission of evidence of a settlement can be more devastating to a criminal defendant than to a civil litigant." Bailey, 327 F.3d at 1146.

In the instant criminal prosecution, Defendants seek to exclude precisely what is prohibited by Rule 408: evidence of negotiations relating to and acceptance of a compromise of the claims in a prior civil lawsuit. The validity of the invoices for the basement construction space at 77 P Street were disputed by the District when it filed a False Claims civil lawsuit about them. Similarly, the amount of back rent and other monies owed to Mr. Jemal by the City (as set forth in his counterclaim to the False Claims lawsuit) also was in dispute. When the City and Mr. Jemal agreed to settle the lawsuit and counterclaims, they entered precisely the type of civil agreement contemplated by Rule 408. Thus, evidence of the settlement is not admissible to prove liability for or the invalidity of the 77 P Street basement construction invoices or the disputed Addison Road invoices, both of which the Indictment alleges are false.

**B.   Evidence Of The Settlement With The District Of Columbia Will Be Substantially More Prejudicial Than Probative, And Thus Should Be Excluded At Trial Pursuant To Rule 403**

Even if the Court determines that Rule 408 does not prohibit admission of evidence relating to the settlement of the False Claims lawsuit, the evidence should be excluded under Rule 403. A court may exclude relevant evidence pursuant to Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The fact that Mr. Jemal and his companies agreed to settle the lawsuit with the City is not probative of the charges in this case. The claims and counterclaims in the lawsuit

were settled without ever being presented to a factfinder.  Thus, evidence relating to the lawsuit merely consists of a set of unproven allegations without any final judgment.  Moreover, the settlement agreement itself expressly provides that no party has admitted any liability or wrongdoing.

Furthermore, any minimal probative value the evidence may have is substantially outweighed by the unfair prejudice the Defendants will suffer if it is presented at trial.  The Supreme Court has explained that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997).  "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Id. (quoting Fed. R. Evid. 403 advisory committee's note).  The prior civil settlement and lawsuit with the City involved some of the very same invoices and allegations that appear in the Indictment.  Having no probative value, introduction of either the lawsuit or the settlement could have only one purpose:  to prejudice Defendants in the eyes of the jury.  As already discussed in the context of Rule 408, courts have found that the potentially devastating prejudice to a criminal defendant resulting from the admission of an earlier civil settlement clearly weighs in favor of excluding such evidence.  See Hays, 872 F.2d at 589 ("It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back.").

The fact that Mr. Jemal agreed to forgo a substantial amount of money related to 77 P Street and Addison Road surely will be misread by the jury.  The jury will not necessarily understand that Mr. Jemal made a business decision to settle rather than litigate the case, and to

choose to look forward to future and continued business with the District rather than argue over past disputed amounts. In a criminal case like this, where the government's theory is that Mr. Jemal obtained leases, payment of invoices, or other city business corruptly by providing things of value to a city official, the danger is that the jury will mistakenly believe (on the face of the settlement) that Mr. Jemal "bought" his way out of a lawsuit. See Arias, 431 F.3d at 1337 ("permitting the admission of civil settlement offers in subsequent criminal prosecutions actually compromises the accuracy of the jury's determination"). This is particularly worrisome where the negotiated settlement at issue here included Mr. Jemal's willingness to absorb or forgo a substantial amount of money for the good of his business relationship with the City. That is precisely the type of improper "emotional" conclusion that Rule 403 seeks to prevent.

    Finally, the inevitable delay and confusion of the issues that would result if the government is permitted to mention the civil lawsuit or its settlement at trial also weighs in favor of its exclusion. See, e.g., United States v. Gambler, 662 F.2d 834, 839 (D.C. Cir. 1981) (upholding district court's exclusion of evidence of the damage amount pleaded in a civil complaint offered by the defense on cross-examination of a government witness "[b]ecause we believe that evidence of this type is generally of minimal probative value, resulting inevitably in confusion of the issues and delay"). Defendants would require a significant amount of time and additional witnesses and documentary evidence to explain to the jury how the settlement was negotiated, how the net payment was calculated, why it made good business sense for Mr. Jemal to agree to it, and all of the reasons why the District and the Council concluded that it was a good deal for the City. Not only would this cause an otherwise unnecessary and avoidable delay at trial, but unless Mr. Jemal himself testifies about the settlement it is an effort that may be

impracticable and unfair to the Defendants.[4]  For all of these reasons, therefore, the Court should exclude the evidence under Rule 403.

### III. CONCLUSION

For the foregoing reasons, Defendants request that the Court prohibit the government from mentioning at trial the prior lawsuit (or its settlement) between the District of Columbia and Douglas Jemal, Blake Esherick and two of Mr. Jemal's companies.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

---

[4] Additionally, the fact that the settlement agreement provided for a net payment to Mr. Jemal rather than to the City also will confuse the jury.

- 11 -

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: July 5, 2006