UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :    Crim. No. 05-359-01,-02, -03 (RMU) |
| | : |
| DOUGLAS JEMAL, et al | : |

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE
DEFENDANTS' PROPOSED EXPERT TESTIMONY OF BRUCE G. DUBINSKY**

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully requests this Court preclude the defendants from calling Bruce G. Dubinsky as an expert witness. Pursuant to paragraph nine of the Court's Standing Order for Criminal Cases, the government respectfully submits that there is good cause to submit this motion after the filing of the Joint Pretrial Statement.

A. Introduction – The Legal and Factual Issues Presented by the Tax Evasion Counts

The tax evasion charges, Counts Six through Eight, involve very straight-forward factual issues to be decided by the jury: (1) did defendant Douglas Jemal, personally and through Douglas Development, provide defendant Blake Esherick unreported compensation on which income taxes were not paid, and (2) if so, did the defendants act with criminal intent to evade taxes. The unreported income alleged in the Indictment includes: (1) payments to Esherick reported on the books of Douglas Development as "loans;" (2) payments to Esherick's ex-wife; (3) free housing; and (4) payments on Esherick's automobile loans. Douglas Development prepared W-2s reporting Esherick's actual salary as $66,000, and Esherick filed tax returns reporting $66,000 as his gross income; yet before the investigation commenced, Esherick routinely represented on various credit applications that his income was well over $100,000.

After the investigation began, all the "loans" were "repaid," amended returns were filed, and Douglas Jemal increased Esherick's salary to $300,000.

There are standard definitions in the law as to what is meant by "income." And, because issues associated with employee compensation occur with great frequency, there are well-accepted legal principles that govern the tax treatment of the items of income described above.[1]

At trial, the government intends to call a tax expert – the IRS Revenue Agent – to do an income tax calculation: assuming that certain benefits that Esherick received in 2001, 2002, and 2003 were to be considered income (a factual issue to be decided by the jury), and certain deductions were to be disallowed (again a factual issue to be decided by the jury), how would those assumptions effect the amount of tax due and owing from Esherick to the United States for those years. The government does not intend to elicit expert testimony from the Revenue Agent as to the "law" of what is meant by "income."[2]

> B. The Defendants' Proposed Expert Testimony as to Tax Law is
> Inadmissible and Must be Excluded.

The defendants have provided the government with notice that suggests they intend to call an expert, Bruce G. Dubinsky, to testify as to the law.[3] It appears that the defendants seek the latitude to have their expert create a legal landscape in the courtroom based not on the

---

[1] These very standard definitions have been proposed in the government's jury instructions. We submit the Court should use the government's proposed definitions, so that the jury may have an informed basis as to the law on the tax treatment of compensation paid and received "in kind."

[2] There may be other background questions of a factual nature, such as explaining how a tax form works, or other summary testimony involving the review of records and the adding of numbers which do not require testimony as to the applicable "law" of taxation.

[3] A copy of the Defendants' Expert Disclosure of Bruce G. Dubinsky, MST, CPA, CVA, CVE ("Defendants' Expert Disclosure") is attached as "Attachment I."

Court's view of the law but on Mr. Dubinsky's views. Such testimony has no place in this trial.

The defendants have served notice that Mr. Dubinsky is expected to testify as follows:

a. \* \* \*;

b. The proper tax treatment of specific items referenced in the Indictment pursuant to relevant sections of the Internal Revenue Code of 1986, as amended, and final, temporary and proposed Regulations issued thereunder. **His analysis and testimony may also include discussion of various United States court decisions involving Federal taxation matters, administrative Rulings, Treasury Decisions, General Counsel Memoranda and other authoritative documents as they pertain to relevant issues central to the government's allegations as set forth in the Indictment** (footnote omitted; emphasis supplied);

c \* \* \*;

d. \* \* \*;

e. **Various definitions contained in the Internal Revenue Code as they relate to the relevant issued raised in connection with the government's allegations as set forth in the Indictment**; (emphasis supplied)

f. \* \* \*.

Defendants' Expert Disclosure at 2-3.

Presumably, pursuant to this proffer, Mr. Dubinsky would testify to his understanding of cases, statutes, and regulations in support of his analysis of Esherick's tax situation. Defendants would have Mr. Dubinsky testify, for example, that "<u>United States v. X</u>" holds for a certain legal proposition relating to in-kind payments by an employer on behalf of an employee, and that "<u>United States v. Y</u>" stands for yet a different legal proposition related to an employer's provision of housing benefits to an employee. Mr. Dubinsky would then, presumably, buttress these legal opinions (though he is not a lawyer) by pointing to his own reading of the statutes and

-3-

regulations as interpreted by Treasury Decisions. The government would nave no choice but to seek to cross-examine the witness by confronting him with other cases, statutes, or regulations that it maintains constitute the settled law, debate him as to the fine points of his interpretations, and inquire of him whether he has read certain other cases or treatises that the government would thereafter offer as evidence to establish contrary propositions. Perhaps, thereafter, in its rebuttal case, the government would be permitted to offer its own "expert," say, someone from the Appellate Section of the Department of Justice Criminal Tax Division, to testify to the applicable law and explain why Mr. Dubinsky's views as to the law were in error. Finally, faced with competing principles of law being bandied about in the courtroom – provided by an accountant for the defense and a legal expert for the government – the jury, like a 12-member appellate panel, would be left to make its decision as to the applicable law.

This process is, of course, not the way criminal cases are litigated in this country. Jurors have no way of evaluating Mr. Dubinsky's statements as to the applicable law; they have no way of interpreting cases; they have no knowledge of how different forms of legal authority may be weighed; and, ultimately, they have no way of assessing whether Mr. Dubinsky has interpreted the law accurately. Thus, it is for the <u>Court</u>, and only the <u>Court</u>, to instruct the jury as to what the law is. The jury should not have the law explained to them from the witnesses on the stand.

It is for this reason that the government proposed substantive tax jury instructions to enable the jury to make its proper <u>factual</u> determinations – for their job is to be the judge of the facts and to accept the law as the Court gives it to them. The defendants appear to want instructions on tax law coming from their paid witness rather than from the Court.

Courts routinely bar experts from testifying about the law. The Tenth Circuit, in Specht v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988), cert denied, 488 U.S. 1008 (1989), stressed that "the judge is the sole arbiter of the law and its applicability," Id. at 807 (citations omitted), in holding that "[i]n no instance can a witness be permitted to define the law of the case." Id. at 810. In describing how such testimony "is detrimental to the trial process," the Tenth Circuit stated:

> If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same. Given the proclivity of our brothers and sisters at the bar, it can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court.

Id. at 809 (citations omitted). See also Marx & Co. v Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977) (error to permit securities lawyer to testify as to certain legal standards), cert. denied, 434 U.S. 861 (1977):

> It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. As Professor Wigmore has observed, expert testimony on law is excluded because "the tribunal does not need the witness' judgment . . . . The judge (or the jury as instructed by the judge) can determine equally well . . . ." The special legal knowledge of the judge makes the witness' testimony superfluous.

Id. at 509-10 (citations omitted; emphasis in original); United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984) ("A jury listening to a bankruptcy judge testify as to a question of bankruptcy law would be expected to give special credence to such testimony. It was not proper for the witness to testify as to a legal conclusion; it is the sole function of the trial judge to instruct the jury on the law."); Good Shepherd Manor Found., Inc. v City of Momence, 323 F.3d 557, 564

(7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."); United States v. Weitzenhoff, 35 F.3d 1275, 1287 (9th Cir. 1993) ("The court's admission of expert testimony on contested issues of law in lieu of instructing the jury was manifestly erroneous."), cert. denied, 513. U.S.1128 (1995).

Most recently, in United States v. Rogers, Crim. No. 05-292 (RWR) (D.D.C. July 15, 2006) (Mem. Op.), a mail fraud prosecution against an attorney for swindling his elderly clients, Judge Richard W. Roberts of this Court issued a written opinion that rejected defendant's attempt to call an expert to testify as to "what a power of attorney legally entitles the holder to do, whether the defendant's expenditures were authorized under a power of attorney, whether the Rules of Professional Conduct applied to the defendant, and whether the defendant violated any such rule." Id. at 19-20.[4] In granting the government's motion in limine to preclude such testimony, Judge Roberts noted that "[g]enerally, expert testimony as to a conclusion of law is 'well beyond the bounds of permissible expert testimony,'" Id. at 19 (citing cases), and held that the proposed testimony consisted of "impermissible legal opinions which invade the province of the jury." Id. at 20.

These same principles bar expert "legal" testimony in tax cases. See e.g., United States v. Burton, 737 F.2d 439, 444 (5th Cir. 1984) (affirming trial court's exclusion of expert testimony that defendant's beliefs as to tax obligations were not implausible); United States v. Herzog, 632 F.2d 469, 473 (5th Cir. 1980) (affirming exclusion of expert testimony as to the complexity of

---

[4] A copy of Judge Roberts' Memorandum Opinion and Order is attached to this pleading as "Attachment 2."

tax laws); United States v. Curtis, 782 F.2d 593, 598-600 (6th Cir. 1986) (affirming exclusion of testimony that certain tax laws were confusing or complex).[5]

The government is aware that IRS Special Agents frequently testify as summary witnesses and, if performing certain accounting tasks, testify as expert witnesses. For example, an agent may testify to facts contained in the defendant's financial records to trace a trail of transactions or the movements of money, or testify in a summary fashion as to his review of voluminous bank records to demonstrate the defendant's financial circumstances. Such agent testimony is generally of summary nature, where the <u>factual significance</u> of the transactions or the financial information may properly be considered by the jury against the background of the law as instructed by the Court. See, e.g., United States v. Pree, 408 F.3d 855, 869 (7th Cir. 2005)

---

[5]  In United States v. Garber 607 F.2d 92 (5th Cir. 1979), the Fifth Circuit affirmed the district court's decision to allow expert testimony as to the confused state of the relevant law to prove lack of willfulness, even though defendant did not claim that she was aware of this confusion. Id. at 99. The Fifth Circuit has subsequently limited this case to its facts, see, e.g., United States v. Burton, 737 F.2d 439, 444 (5th Cir. 1984), and one panel has even declined to follow it. See United States v. Herzog, 632 F.2d 469, 473 (5th Cir. 1980). Other circuits have rejected the holding in Garber. See, e.g., United States v. Harris, 942 F.2d 1125, 1132 n.6 (7th 1991); United States v. Curtis, 782 F.2d 593, 598-600 (6th Cir. 1986); United States v. Mallas, 762 F.2d 361, 364 n.4 (4th Cir. 1985); United States v. Ingredient Technology Corp., 698 F.2d 88, 96-97 (2d Cir. 1983), cert. denied, 462 U.S. 1131 (1983). The D.C. Circuit has mentioned Garber in the context of discussing the broader proposition that "uncertainty as to the meaning of the law can be considered in assessing the element of willfulness in a violation of the law." AFL-CIO v. FEC, 628 F.2d 97, 101 (D.C. Cir. 1980). The D.C. Circuit in AFL-CIO v. FEC did not address the admissibility of expert testimony to establish legal "uncertainty."

In any event, the law is clear that testimony purporting to establish an allegedly "uncertain state of the law" has no application in this case, in that: 1) the law is not uncertain, and 2) there can be no contention that Esherick or Douglas Jemal relied on the views of an "expert" that the law was in a confused state. See United States v. Harris, supra at 1132 n.6 ( "Case law on which the defendant did not in fact rely is irrelevant because only the defendant's subjective belief is at issue."). We note that Esherick possesses an accounting degree and had substantial accounting experience, and that both men had regular access to highly paid accountants.

("[W]here an IRS Revenue Agent summarizes the evidence for purposes of establishing the tax consequences, the line between summary testimony and expert testimony is indistinct. Given the assistance such an individual can provide to the jury, it has not been unusual in previous cases for an IRS agent to testify as an "expert summary witness.").[6]

In this case, the government intends to call an IRS Special Agent to testify as a summary fashion as a part of its proof of the dollar amounts constituting the different categories of payments alleged in the Indictment to constitute income, or to identify specific checks contained within the voluminous bank records of Esherick – in other words, testimony of a purely factual nature. The government will not ask the agent to define legal terms for the jury – that job is for the Court. But, consistent with the approved role at trial of a summary law enforcement witness, the IRS Agent will provide certain summary testimony to assist the jury in understanding the facts in light of the law as the Court shall define it.

### C. There is no Basis to Permit any Other Testimony by the Defense Expert Based on the Notice provided to the Government

It is not possible to assess the balance of the proposed expert testimony of Mr. Dubinsky. The defendants' expert notice describes "topics" of his testimony in only the vaguest terms, and

---

[6] See also United States v. Moore, 997 F.2d 55, 58 (5th Cir. 1993) ("Courts have found that IRS agents, in specific, may testify as expert summary witnesses. . . . As a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses. The agent may also explain his analysis of the facts based on his special expertise.")(citations omitted); United States v. Windfelder, 790 F.2d 576, 581 (7th Cir. 1986) ("[e]xpert testimony by an IRS Agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence."). Thus, despite the occasional language that refers to the IRS Agent's expert or summary testimony at trial as encompassing legal topics, the government is unaware of cases holding that an agent may testify as an expert on legal topics over objection by the defense. See, e.g., United States v. Benson, 941 F.2d 598, 604-605 (holding that trial court abused its discretion in admitting IRS agent's testimony that defendant was not entitled to social security benefits).

<u>it is doubtful that he will have anything to say on these topics if he cannot provide his own opinions as to the law</u>. Certainly, nothing that the defendants have proposed as to the remainder of Mr. Dubinsky's testimony appears to be relevant. The rest of his proposed testimony includes:

    a.    Details concerning specific transactions related to the indictment, including the accounting and tax treatment by the Defendants, Douglas Development Corporation ("DDC") and DDC's independent Certified Public Accounting firm, Grossberg Company, LLP;

    b.    [Testimony as to the law, described above];

    c.    The tax effect of each specific item contained in the Indictment for Federal income and gift tax purposes and the resulting net effect taking into consideration any available credits or exclusions or other amounts to offset the tax, interest, penalties, and other adjustments;

    d.    Professional Standards associated with performance of services by Certified Public Accountants as well as the applicable governing rules for tax preparers practicing before the Internal Revenue Service;

    e.    [Testimony as to the law, described above];

    g.    Review of the calculation of taxes allegedly owed as calculated by the Internal Revenue Service and the U.S. Government * * * * .

Defendants' Expert Disclosure at 2-3.

These categories describe the topics of Mr. Dubinsky's testimony in only the most cursory fashion, at a level of generality that is not capable of evaluation on relevance grounds or by any other criteria. The notice is so truly vague as to defy any additional analysis or response at this time. See Fed. R. Crim. P. 16(b)(1)(C) (requiring disclosure of a "written summary" that

"describe[s] the witness's opinions, the bases and reasons for the those opinions, and the witnesses qualifications").[7]

WHEREFORE, the government requests that this Court sign the attached Order: 1) precluding Mr. Dubinsky from testifying as to legal principles; 2) requiring that the defendants provide an additional specific proffer of his potential testimony no less than two weeks prior to trial; and 3) precluding the defense from stating in opening statements, directly or indirectly, that they intend to call expert witnesses as to tax matters without specific leave of the Court.

                                                    RESPECTFULLY SUBMITTED,

                                                    KENNETH L. WAINSTEIN
                                                    DC Bar No. 451058.
                                                    UNITED STATES ATTORNEY

By: _____
       MARK H. DUBESTER
       ASSISTANT UNITED STATES ATTORNEY
       DC Bar No. 339655
       Timothy G. Lynch
       555 Fourth Street, N.W., Room 5917
       Washington, D.C. 20530
       Ph. (202) 514-7986

---

[7] In particular, Mr. Dubinsky's testimony concerning Item (d) – professional standards – appears to be similar in nature to the testimony excluded by Judge Roberts in the Rogers case described infra. Moreover, such testimony appears to be totally irrelevant.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing Motion, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Mark H. Dubester
Assistant United States Attorney