# THE DAILY WASHINGTON
# Law Reporter

Established 1874

## U.S. Court of Appeals for the D.C. Circuit

### ADMINISTRATIVE LAW
#### EXHAUSTION DOCTRINE

Challenge to election of delegates to union convention seeking relief of unseating of national officers was properly dismissed where complainant did not exhaust internal review procedures on the issue of the national officers election.

PETERSEN v. DOLE, U.S.App.D.C. No. 91-5021, February 28, 1992. *Affirmed per curiam* (Mikva, C.J., Edwards and D.H. Ginsburg, JJ. concur). *David J. Bartone* for appellant. *Eric D. Goulian* with *Stuart M. Gerson, Jay B. Stephens* and *Michael J. Singer* for appellee. Trial Court—Gesell, J.

PER CURIAM: Appellant, Einar R. Petersen, a member of the District No. 1-Marine Engineers' Beneficial Association/National Maritime Union Licensed Division, AFL-CIO, challenged an election of delegates chosen to attend the National Union's convention. After unsuccessfully pursuing his challenges under the Union's internal review procedures, Mr. Petersen filed a complaint with the Secretary of Labor under section 402 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §482, alleging that the delegate election violated the Act. The Secretary dismissed the complaint, holding that she lacked jurisdiction to hear petitioner's claims because the delegates were not "officers" as defined in section 3(n) of the Act, and, alternatively, because petitioner never exhausted available remedies with respect to the election of National Union officers. Concluding that the Secretary's statement of reasons was not arbitrary and capricious, the United States District Court for the District of Columbia upheld the decision. We affirm the district court's decision. We find it unnecessary to decide whether the Local Union delegates were "officers" under the LMRDA because Mr. Petersen failed to exhaust internal remedies with respect to the election of National Union officers.

\* \* \*

### II. ANALYSIS
A. *Standard of Review*

We review a grant of summary judgment *de novo*. \* \* \* In so doing, we must determine for ourselves whether the Secretary's stated reasons for refusing to hear Mr. Petersen's complaint were arbitrary and capricious. *Dunlop v. Bachowski*, 421 U.S. 560, 568 (1975). To the extent that the Secretary's decision turns on her interpretation of the LMRDA, we defer to it if it is reasonable and not inconsistent with the clear and unambiguous intent of Congress. *Chevron v. NRDC*, 467 U.S. 837, 842-45 (1984); *see also Shelly v. Brock*, 793 F.2d 1368, 1376 (D.C. Cir. 1986) (upholding, as not unreasonable, the Secretary's interpretation of the LMRDA).

(Cont'd. on p. 635 - Exhaustion Doctrine)

## D.C. Court of Appeals

### WORKERS COMPENSATION
#### THIRD-PARTY SUITS

Time for worker filing third-party suit runs from accepting award of any part of claimed disability including temporary disability award.

CUNNINGHAM v. GEORGE HYMAN CONSTRUCTION CO., ET AL., D.C.App. No. 91-50, February 19, 1992. *Affirmed* per Steadman, J. (Terry and King, JJ. concur). *Alan J. Ackerman* for appellant. *James G. Healy* for appellee Superior Iron Works, Inc. *Edwin A. Sheridan* for appellee George Hyman Construction Co. Trial Court—von Kann, J.

STEADMAN, J.: Under the District of Columbia Workers' Compensation Act of 1979 (the "Act"), an injured worker is not put to an immediate election between receiving compensation under the Act from his or her employer or attempting to recover damages against some third person allegedly liable for the injury. However, once the worker accepts compensation "under an award in a compensation order," he or she must file suit against that third person within six months thereafter or effectively lose the right to do so. D.C. Code §36-335(a), (b) (1988).

The issue in this appeal is precisely when that six-month period begins to run. The trial court held that the triggering point is an award covering any part of the claimed disability, such as the temporary disability award here. Appellant argues that the period should not begin to run until the worker accepts a final and comprehensive award for all disabilities compensable under the Act. However, the controlling statutory language dictates the result reached by the trial court. We therefore affirm the grant of summary judgment against appellant.

I

On October 10, 1984, appellant Theodore Cunningham suffered disabling injuries from a falling brick while he was working as an employee of Superior Iron Works, Inc. ("Superior"), a subcontractor of Hyman Construction Co. ("Hyman"), the general contractor at the work site. Following his injury, Cunningham filed a workers' compensation claim under the 1979 Act when a dispute developed over the computation of Cunningham's "average weekly wage." D.C. Code §36-311(a)(4) (1988 Supp.). On April 17, 1986, the Department of Employment Services (DOES) issued a final order covering Cunningham's temporary total disability for the period October 10, 1984, through June 18, 1985. Subsequently, on October 11, 1988, DOES issued an order approving Cunningham's lump-sum insurance settlement for permanent partial disability, pursuant to D.C. Code §36-308(8).

In the meantime, on September 18, 1987, Cunningham commenced the present negligence action against Hyman, which in

(Cont'd. on p. 637 - Third-Party Suits)

## D.C. Superior Court

### ATTORNEYS
#### CONFLICT OF INTEREST

Attorney is disqualified from representing defendant where he also represents a witness against that defendant.

UNITED STATES v. McKISSICK, Super. Ct.D.C. Crim. No. F6049-90, January 30, 1992. *Opinion* per Kennedy, J. *James W. Robertson* for Defendant McKissick. *Lisa Prager* for U.S.

KENNEDY, J.: The matter presently before the court is the government's motion to disqualify James Robertson, Esq. as counsel for the defendant, Robert B. McKissick, and the defendant's opposition thereto. By order filed December 23, 1991, the court granted the government's motion. The court's reasoning is set forth below.

On October 1, 1991, the court was informed by the United States of a possible conflict of interest of attorney Robertson in his representation of two of his current clients, James Speaks and Robert McKissick. Both Mr. Speaks and Mr. McKissick have been indicted for first degree murder, presumably arising from unrelated events, and have trials scheduled for March 13, 1992, and May 1, 1992, respectively.

On May 25, 1990, Curtis Marshall was fatally wounded by gunfire. In connection with the investigation of his homicide, Mr. James Speaks was subpoenaed to testify before the grand jury where, after waiving any Fifth Amendment privilege he might have, he stated that "about five or ten minutes" before the shooting he witnessed an argument between Mr. McKissick and a man he later learned was Marshall. He testified further that he walked over to the two men and heard Mr. McKissick "arguing and cussing." He "thought they were going to be fighting or something so he [Speaks] just walked away." Mr. McKissick subsequently was indicted on April 18, 1991.

The government characterizes Mr. Speaks' testimony as "going to the heart of its case." This testimony, if true, not only proves that McKissick was close to the scene of the murder but also shows that there was animosity between McKissick and the victim. The prosecutor assigned to prosecute this case indicates that Mr. Speaks will be called to testify at McKissick's trial.

After the government informed the court of Mr. Robertson's possible conflict of interest, Mr. Robertson spoke with Mr. Speaks regarding his testimony before the grand jury. Mr.

(Cont'd. on p. 637 - Conflict of Interest)

### TABLE OF CASES

**U.S. Court of Appeals (D.C. Circuit)**
Petersen v. Dole......................633

**D.C. Court of Appeals**
Cunningham v. George Hyman
  Construction Co., et al..............633

**D.C. Superior Court**
United States v. McKissick............633

convention. Because we hold that the Secretary properly dismissed Mr. Petersen's complaint because he failed to exhaust available union remedies, we need not reach the question whether District No. 1's delegates were "officers" under the LMRDA.

### III. CONCLUSION

Section 402(a) of the LMRDA requires union members to exhaust all available union remedies before filing a complaint with the Secretary of Labor for violations of the Act. By failing to file his challenge to the election of national officers with officials at the National Union, Mr. Petersen never exhausted the available internal union remedies for the national officers' election. Therefore, the Secretary did not act arbitrarily and capriciously in dismissing his complaint. The decision of the district court is

*Affirmed.*

---

### THIRD-PARTY SUITS
(Cont'd. from p. 633)

turn filed a third-party complaint against Superior. It is not contested that the action was brought more than six months after Cunningham had accepted compensation under the DOES order of April 17, 1986, covering temporary disability benefits. The trial court granted summary judgment in favor of Hyman and Superior on December 6, 1990, holding that the Act barred Cunningham from seeking damages of any kind from a third party because he had failed to institute suit within six months after receiving compensation pursuant to an award governing any part of his disability.

In doing so, the trial court rejected Cunningham's argument that the six-month period should not begin to run until the worker accepts a final and comprehensive award for disability compensable under the Act and that the DOES order of April 17, 1986, which addressed only temporary disability, was insufficient in scope to trigger the statute of limitations in his case. In the alternative, appellant also argued that, even if any third-party claim with respect to temporary disability were time-barred, nevertheless a distinct claim with respect to damages for permanent disability, not the subject of the first award/order, would not be barred under the statute. He presents these same arguments to us for resolution on appeal.

### II
### A

We begin with an examination of the precise relevant language, mindful of the maxim that "if the words are clear and unambiguous, we must give effect to [the statute's] plain meaning." *James Parreco & Son v. District of Columbia Rental Housing Comm'n*, 567 A.2d 43, 45 (D.C. 1989). Section 36-335 of the Act provides in relevant part:

(a) If, on account of a disability or death for which compensation is payable under this chapter, the person entitled to such compensation determines that some person . . . is liable for damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) Acceptance of such compensation under an award in a compensation order filed with the Mayor shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within 6 months after such award.

A straightforward reading of this statutory language supports the conclusion that the six-month period is brought into play by acceptance of compensation under any award. Subsection (b) speaks of "an" award and "a" compensation order and provides no limiting adjective in either case. This language is in marked contrast, for example, to that used elsewhere in the statute in section 308(8), speaking of settlements which are "complete and final dispositions of the case."

The language of the statute is equally unambiguous in providing that, after the six-month period has elapsed without the commencement of a third-party claim by the worker, "all rights" to recover damages against such third party are automatically assigned to the employer. Subsection 335(a) preserves the employee's right to bring suit against a third party "on account of a disability or death for which compensation is payable under this chapter." In turn, "disability" is defined by the statute as "physical or mental incapacity because of injury which results in the loss of wages." D.C. Code §36-301(8) (1988 Repl.). Nothing suggests that the "injury" or the "disability" resulting therefrom is to be subject to temporal division for purposes of application of the assignment provision, any more than it would be in an action against the third person.

Appellant has not adduced, nor can we find, any evidence of contrary legislative intent in the materials leading to the passage of the Act in 1979. Moreover, a review of the development of the antecedent federal statute, the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), over the decades since its enactment in 1927 is informative. It reveals that the right of injured workers to elect remedies has been the subject of gradual but decidedly conservative expansion.

In *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596 (1981), the Supreme Court summarized the development to that point[.] * * *

Thus, an original provision that made the acceptance of any compensation whatever an election to limit recovery to the LHWCA had evolved by steps into a provision requiring the greater formality of acceptance of an award pursuant to an order and giving the worker a six-month period thereafter within which to pursue a third-party claim. In particular, the purpose of the 1938 amendment, requiring "an award in a compensation order filed by the deputy commissioner," was "to cause the employee to focus on the consequences of acceptance" by alerting the employee, through "some official action," to his loss of the right to bring suit against a third party. *Hernandez v. Costa Armatori, S.P.A.*, 467 F.Supp. 1064, 1066 (E.D.N.Y. 1979) (citing H.R. REPORT NO. 1945, 75th Cong., 3d Sess. (1938)); *see also Toomey v. Waterman S.S. Corp.*, 123 F.2d 718, 720-21 (2d Cir. 1941). Subsequently, the six-month period for the election of remedies was introduced. However, as the Supreme Court noted, "[n]othing in the 1959 amendments purports to preserve the employee's right to commence a third-party suit after the 6-month period expires." *Rodriguez, supra*, 451 U.S. at 611.

### B

Our case law involving this subsection of the Act also supports, if not compels, a plain meaning interpretation. * * *
* * *
* * * [I]t is a consistent reading of the statute that neither acceptance of compensation nor an underlying award order itself need be comprehensive, complete or fully dispositive of the case in order to trigger the commencement of the six-month period.

This is not to suggest that appellant's theory that a worker should be in a position to gauge the full extent of his injuries and compensation under the Act before deciding whether to proceed against a third-party is irrational. An intermediate New York court, interpreting Section 933 of the LHWCA prior to the 1984 amendment, determined that an interim award should be insufficient to trigger the running of the assignment statute because, until a final award, the worker would be "in the dark." *Gray v. Rederi A/S Myren*, 452 N.Y.S.2d 47, 49 (App. Dv. 1982). A sentence by way of dictum of the Supreme Court might be read in a manner providing support for this position. *See Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 538 (1983). Nonetheless, for the reasons discussed above, we conclude that the straightforward reading of our statute must control.

*Affirmed.*

---

### CONFLICT OF INTEREST
(Cont'd. from p. 633)

Robertson has proffered that Mr. Speaks' statements to him contradict the statements which he made before the grand jury. In Mr. McKissick's opposition to the government's motion, Mr. Robertson states that Mr. Speaks told him that he had not seen Mr. McKissick in the area before or after the shooting and knows nothing of an argument between the homicide victim and Mr. McKissick.

Mr. Robertson has informed the court that Mr. McKissick wishes for him to continue his representation and would waive his right to conflict free counsel. For the purpose of ruling on this motion, the court assumes that after an appropriate inquiry Mr. McKissick would confirm Mr. Robertson's representations in this regard.[1]

The issue presented by the government's motion, the propriety of disqualifying a defendant's counsel of choice who is alleged to have

---

**Attorney**

## Insurance Defense

# Litigation Attorney

Staff counsel office of major casualty insurance company with offices located in Rosslyn, VA seeks an attorney with 5 to 6 years of trial experience with emphasis on personal injury litigation. Applicant must be admitted in D.C. and Virginia. Heavy Virginia experience preferred.

We offer a professionally challenging legal environment with comprehensive benefits including medical, 401K plan, dental and life insurance. To apply, send resume in confidence with salary requirements to **Douglas A. Seymour, Esq., 1616 N. Fort Myer Dr., Suite 1350, Arlington, VA 22209**.

Equal Opportunity Employer M/F/D/V

---

1. The court notes that Mr. Speaks, in connection with his case, has been held to have intelligently waived his right to conflict free counsel.

a conflict of interest, is a difficult one to resolve because of several intersecting principles. The court must consider the defendant's Sixth Amendment rights to effective assistance of counsel and to be represented by the attorney of his choice. The court must be sensitive, as well, to its duty to preserve the integrity of the judicial system.

The Sixth Amendment guarantees the right to counsel, which is interpreted as the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). As a corollary to the sixth amendment right to counsel, there is a right to conflict-free counsel, *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)), to guard against the possibility that counsel will breach the duty of *loyalty* owed to a client. *Strickland*, 466 U.S. at 692; *Singley v. United States*, 548 A.2d 780, 783-84 (D.C. 1988). These principles are advanced by Rules 1.7 and 1.6 of the Rules of Professional Conduct. Rule 1.7 in pertinent part states:

> (a) [a] lawyer shall not represent a client with respect to a position to be taken in a matter if that position is adverse to a position taken or to be taken in the same matter by another client represented with respect to that position by the same lawyer.
>
> (b) ... a lawyer shall not represent a client with respect to a matter if: ... (2) such representation will be or is likely to be adversely affected by representation of another client; (3) representation of another client will be or is likely to be adversely affected by such representation ....

Rule 1.6 in pertinent part states

> (a) [e]xcept when permitted ..., a lawyer shall not knowingly:
>
> (1) reveal a confidence or secret of the lawyer's client;
>
> (2) use a confidence or secret of the lawyer's client to the disadvantage of the client;
>
> (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person.
>
> (b) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client.

Of course, every attorney in this jurisdiction is required to conduct himself in accordance with these rules.

Another right comprehended by the Sixth Amendment is the right of an accused to be represented by an attorney of his own choosing. *Powell v. Alabama*, 287 U.S. 45 (1932); *Gideon v. Wainwright*, 372 U.S. 335 (1963). In some cases, undoubtedly most, a court must defer to a defendant's knowing and intelligent waiver of his right to conflict-free assistance. *Glasser v. United States*, 315 U.S. 60, 70-71 (1942); *Douglas v. United States*, 488 A.2d 121, 136, 137 (D.C. 1985); *see also Welch v. United States*, 466 A.2d 829, 840 (D.C. 1983). Waiver, however, is not an automatic prerogative. Although there is a presumption in favor of a defendant's right to counsel of choice, that presumption may be overcome. "The essential

EXHIBIT LABELS AVAILABLE
For details call:
Washington Law Reporter Co.
(202) 331-1700

aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Childress*, 731 F.Supp. 547, 551 (D.D.C. 1990).

In addition to its duty to protect the rights guaranteed the defendant by the sixth amendment, the court must also be sensitive to its responsibility to maintain confidence in the legal profession and the integrity of the judicial system. It is axiomatic that the integrity of the judicial system and public confidence in the legal profession is diminished whenever an attorney is permitted, either knowingly or unwittingly, to violate the ethical rules which govern the practice of law. Of the several ethical rules implicated by the government's motion none is more important or fundamental than the duty of loyalty, "perhaps the most basic of counsel's duties." *Strickland v. Washington*, 466 U.S. 668, 692 (1983); *Singley v. United States*, 548 A.2d 780, 784 (D.C. 1988).[2]

In opposing the government's motion to disqualify him, Mr. Robertson undertakes an analysis of Rules 1.7 and 1.6 of the Rules of Professional Conduct in an attempt to show that, despite appearances, there is no actual conflict in his representation of both Mr. Speaks and Mr. McKissick. He also vents his displeasure with the timing of the government's pleading which informs the court of the possible conflict of interest, sixteen days before this case was first scheduled for trial, and requests an evidentiary hearing to substantiate his charge that there has been prosecutorial misconduct because, in the words of a famous bard, "there is something rotten in Denmark." Only in passing, however, does Mr. Robertson mention *Wheat v. United States*, an important Supreme Court decision which offers guidance on the factors to be considered when a court must resolve a conflict between a defendant's rights to effective assistance of counsel, counsel of choice, and principles which require courts to maintain the integrity of the judicial system.

In *Wheat*, Mark Wheat, a member of a drug distribution conspiracy, desired to be represented by Attorney Eugene Iredale. However, Attorney Iredale also represented two other persons who were charged with offenses stemming from the conspiracy. One, Gomez-Barajas, entered into a plea agreement with the government to plead guilty to certain of the charges. At the time of Wheat's trial, however, the court had not accepted that plea agreement. Another of Mr. Iredale's clients, Javier Bravo, had already pled guilty at the time of Wheat's trial. Despite Wheat's and his codefendants' willingness to waive their right to conflict-free counsel, the court denied Wheat's request to have Mr. Iredale represent him.

Referring to the difficulty presented by the question of when it is proper to decline a proffer of waiver, the court made the following observation:

> [u]nfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen

---

2. Another systemic interest is the "legitimate wish of courts that their judgments remain intact on appeal." *Wheat*, 486 U.S. at 161. Even were the court to find that Mr. McKissick waived his right to conflict-free counsel, he may still appeal on the ground that he received ineffective assistance of counsel. *See, e.g., Welch v. United States*, 466 A.2d 829, 841 (D.C. 1983).

through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.[3]

*Wheat*, 486 U.S. at 162-63. The Court held that not only actual conflicts of interest but also the potential for conflict provides a basis for a trial court's "substantial latitude" in refusing waivers of conflict of interest. The Court found it significant that the government intended to call Bravo as a witness for the prosecution at Wheat's trial. Of course, "Iredale, because of his prior representation of Bravo, would have been unable *ethically* to provide that cross of examination." *Id.* at 164 (emphasis added).

Indifferent to the Supreme Court's holding in *Wheat*, Mr. Robertson argues that the court may decline Mr. McKissick's waiver of his right to conflict-free counsel only if it is shown that his attorney has an actual conflict of interest. Moreover, Mr. Robertson proffers that when he spoke to Mr. Speaks regarding his testimony before the grand jury, he did not do so in his capacity as Speaks' lawyer, but, rather solely in his capacity as the lawyer for Mr. McKissick. In any event, the court is informed, Mr. Speaks has no objections to the disclosure of statements which contradict his testimony before the grand jury. Consequently, Mr. Robertson, with great vigor, contends that it is of no moment that he will likely be required to cross examine a current client. The following colloquy occurred at a hearing on the government's motion:

> Court: "[A]ssume ... that Mr. Speaks will testify consistent with what he testified to before the grand jury and that he takes the witness stand and says those things that he says, would you not be in a position of trying to show the jury that he was not telling the truth?"
>
> Mr. Robertson: "That is absolutely correct. And there's nothing wrong with that. That's not a conflict. I'm not able to exploit any confidential informations that he gave to me in cross—I most certainly would, to the best of my very ability. I will try to tear him apart even though I'm his lawyer in his own case. And so long as I do not exploit any confiden-

---

3. The court appreciates that *Wheat* involved the desire of a defendant to be represented by the same attorney who was representing codefendants in the same case. Moreover, most other cases in which attorneys have been disqualified from representing a defendant on conflict grounds involved the representation of codefendants in the same case. *See Wheat*, 486 U.S. at 153; *United States v. Childress*, 731 F.Supp. 547 (D.D.C. 1990) (disqualification of attorney who previously represented witness who would be a codefendant except for juvenile status); *United States v. Moscony*, 927 F.2d 742, (3rd Cir. 1991) (disqualification of attorney representing codefendants who had conveyed information meant to remain confidential where codefendant expected to testify against another codefendant); *United States v. Dempsey*, 724 F.Supp. 573 (N.D. Ill. 1989) (disqualified firm representing codefendants charged under RICO); *State v. Catanoso*, 537 A.2d 794 (N.J. Super.L. 1987) (upheld disqualification of attorney because of prior representation of state's key witness who was an indicted co-conspirator); *see also* Rules of Professional Conduct, Rule 1.7 (exhibiting caution where multiple representation of codefendants). There is no logical reason, however, to limit the decision in *Wheat* to multiple representation cases. *See United States v. Reuvald*, 889 F.2d 836, 857 (9th Cir. 1989) (*Wheat* cannot be distinguished on this ground); *People v. Holmes*, 141 Ill.2d 204, 152 Ill. Dec. 268, 565 N.E.2d 950, 960 (1990) ("find[ing] nothing in the *Wheat* opinion that indicates its holding is limited" to multiple representation cases).

tial communications that he gave me, I have a perfect right to do so."

Motions Hearing, October 18, 1991.

While Mr. Robertson may not recognize that he would violate ethical principles were he to "tear apart" a client for the benefit of another client, the court cannot sustain his willingness to do so. Unless the words "duty" and "loyalty" are given a very peculiar meaning it is not proper for a lawyer to cross examine a current client for the purpose of showing that he is not a truthful person and that he committed perjury when he gave prior testimony under oath. It is hardly comforting that Mr. Speaks now may not have an objection to Mr. Robertson's intended course of action when it is considered that but for the conflicting interest of Mr. McKissick, represented by Mr. Robertson, Mr. Speaks might never have been put in a situation in which he could be called upon to give testimony which could result in his being prosecuted.

Furthermore, it does not help Mr. Robertson's cause when he proffers that he is not aware of any information about Mr. Speaks, acquired during the course of his representation of him, which could be used to Mr. McKissick's benefit, e.g. prior bads acts, drug use, etc. In the court's view, to vigorously and effectively represent Mr. McKissick, his attorney is duty bound to seek out information which could be used to discredit Mr. Speaks should he testify consistent with his testimony before the grand jury. Obviously, Mr. Speaks' attorney is unable ethically to conduct such an investigation.

In sum, the court is of the view that there is a palpable actual conflict of interest occasioned by Mr. Robertson's representing Mr. McKissick while also in the employ of Mr. Speaks who will be called to testify against Mr. McKissick at his trial. Given the nature of the known conflict, the potential for other conflicts, and the court's obligation to maintain public confidence in the judicial system, the court has exercised its discretion to disqualify Attorney James Robertson as counsel for the defendant in the above-captioned case.[4]

---

4. The court declines Mr. Robertson's request for an evidentiary hearing. While this conflict should have been aired sooner, there is no basis for alleging that it was "manufactured." Mr. Robertson's reasoning, that the "conflict issue" was "created by the government" when it brought the matter to the attention of the court and triggered his inquiry of Mr. Speaks about his grand jury testimony, is circular in the extreme and without merit.

## LEGAL NOTICES

### GOVERNMENT

BRENDA M. SAYLES
NORMAN J. FARQUHAR
DIANE L. FARQUHAR
THREE J. REALTY, INC.
Shelley L. Madden
Assistant Corporation Counsel, D.C.
51 N Street, N.E., Room 333
Washington, D.C. 20002
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA. CIVIL DIVISION. DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT. HOMESTEAD HOUSING PRESERVATION PROGRAM. LYNN C. FRENCH, ADMINISTRATOR, c/o SHELLEY L. MADDEN, ASSISTANT CORPORATION COUNSEL, D.C., 51 N Street, N.E., Room 333, Washington, D.C. 20002 vs. BRENDA M. SAYLES, NORMAN J. FARQUHAR, DIANE L. FARQUHAR, THREE J. REALTY, INC., if living, if not, their unknown heirs, devisees, Alienees, Executors, Administrators, Personal Representatives or Assigns. Civil Action No. 92-CA003472 R.P. ORDER OF PUBLICATION ABSENT DEFENDANTS. The object of this action is to remove the cloud on the title of Lots 35 and 36 in Square 5272, more commonly known as 6013 Clay Street, N.E., situated in the District of Columbia, for purposes of conveying said property to those persons qualified pursuant to the Homestead Housing Preservation Program. This property was acquired by the District of Columbia as a result of the owners having failed to redeem the property after its 1988 and 1989 Tax Sales. The above-named defendants are listed as parties who had an interest in the subject property prior to the District's taking. Of those defendants Brenda M. Sayles, Norman J. Farquhar, Diane L. Farquhar, and Three J. Realty cannot be located after extensive effort. On the motion of plaintiff District of Columbia, it is this 9th day of March, 1992, ORDERED that the Defendants cause their appearance to be entered herein on or before the fortieth day, exclusive of Sundays and legal holidays, occurring after the day of the first publication of this order; otherwise the case will be proceeded with as a case of default, provided a copy of this Order of Publication be published at least once a week for three successive weeks in the *Washington Daily Law Reporter* and the *Washington Afro-American* newspapers.        Mar. 20, 27, Apr. 3.

MICHELLE LUKENS
Shelley L. Madden
Assistant Corporation Counsel, D.C.
51 N Street, N.E., Room 333
Washington, D.C. 20002
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA. CIVIL DIVISION. DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT. HOMESTEAD HOUSING PRESERVATION PROGRAM. LYNN C. FRENCH, ADMINISTRATOR, c/o SHELLEY L. MADDEN, ASSISTANT CORPORATION COUNSEL, D.C., 51 N Street, N.E., Room 333, Washington, D.C. 20002 vs. MICHELLE LUKENS, if living, if not, her unknown heirs, devisees, Alienees, Executors, Administrators, Personal Representatives or Assigns. Civil Action No. 92-CA003471 R.P. ORDER OF PUBLICATION ABSENT DEFENDANTS. The object of this action is to remove the cloud on the title of Lot 20 in Square 5148, more commonly known as 720 49th Street, N.E., situated in the District of Columbia, for purposes of conveying said property to those persons qualified pursuant to the Homestead Housing Preservation Program. This vacant, boarded-up property was acquired by the District of Columbia as a result of the owner failing to redeem the property after its 1988 Tax Sale. The above-named defendant is listed as a party who had an interest in the subject property prior to the District's taking. That defendant, Michelle Lukens, cannot be located after extensive effort. On the motion of plaintiff District of Columbia, it is this 9th day of March, 1992, ORDERED that the Defendant cause her appearance to be entered herein on or before the fortieth day, exclusive of Sundays and legal holidays, occurring after the day of the first publication of this order; otherwise the case will be proceeded with as a case of default, provided a copy of this Order of Publication be published at least once a week for three successive weeks in the *Washington Daily Law Reporter* and the *Washington Afro-American* newspapers.        Mar. 20, 27, Apr. 3.

### ORDER NISI

DANCY, Rufus                                Deceased
Scott P. Crampton, *Attorney*
900 Seventeenth Street, N.W., Ninth Floor
Washington, D.C. 20006
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA. OFFICE OF REGISTER OF WILLS. PROBATE DIVISION. In re: Estate of Rufus Dancy, Deceased. Admin. No. 2681-89. SECOND AMENDED ORDER NISI FOR SALE OF REALTY. It appearing to the Court that the order entered herein on January 31, 1992, should be amended to correct an erroneous address and to set a future date within which to complete publication, and that Georgia Johnson and Ethel Cannady, personal representatives of the estate of Rufus Dancy, deceased, having reported the sale of Lot 17 in Square 965, improved by premises 119 Tenth Street, N.E., Washington, D.C., to Michael D. Baker at and for the price of one hundred and nineteen thousand dollars ($119,000.00), all cash, and after considering the objections filed by the guardians *ad litem* which were thereafter withdrawn and after considering the memorandum filed herein by the personal representatives, it is by the Court this 18th day of March, 1992, ORDERED, by the Court that the offer to purchase Lot 17 in Square 965 as detailed by the personal representatives be accepted and the sale ratified and confirmed unless cause be shown to the contrary or a higher offer for said real estate acceptable to the Court be made on or before the 24th day of April, 1992, at 10:00 a.m., before the Fiduciary Judge, at which time higher offers will be considered and objections to said sale heard; provided, that a copy of this order be published once in the *Washington Law Reporter* and once in the *Washington Times*, publication to be made at least 10 days before the last-mentioned date, and it is further ORDERED, that the petitioners are excused from complying with Rule 308(c)(2) of the Court's Rules insofar as that Rule requires two additional appraisals, and it is further ORDERED, that the requirement for a bond as ordered on August 1, 1991, is superseded by this order, and petitioners, before accepting the proceeds of the sale, shall file an additional bond in an amount, equivalent to the proceeds from the sale of the real estate. /s/ E. HAMILTON, Judge. [Seal.] A True Copy. Attest: Register of Wills for the District of Columbia, Clerk of the Probate Division. By Roslyn Williams, Deputy Clerk.        Mar. 27.

WILSON, Helen Hay
William L. Farrar, Jr., *Attorney*
1225 Eye Street, N.W., Suite 900
Washington, D.C. 20005
[Filed Mar. 23, 1992. Register of Wills, Clerk of the Probate Division] SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA. PROBATE DIVISION. In the Matter of: HELEN HAY WILSON, Adult Ward. Fiduciary No. 143-89. ORDER NISI. H. George Schweitzer, as Conservator of the Estate of Helen Hay Wilson, Adult Ward, having offer for sale of Lot 16, in Square 1498, situated in the District of Columbia, improved by the premises at 4415 49th Street, N.W., Washington, D.C. to George H. Zeiner for the sum of Two Hundred Forty Five Thousand Dollars ($245,000.00), payable all in cash, in its "AS IS" condition, it is by the Court, on this 23rd day of March, 1992, ORDERED, that the Order signed February 25, 1992 is vacated, and it is FURTHER ORDERED, that the sale be ratified and confirmed by the Court, unless cause to the contrary be shown on or before 10th day of April, 1992, at 9:30 a.m. at which time higher offers will be heard before the Fiduciary Judge of this Court provided a copy of this Order be published once in the *Washington Law Reporter* and once in the *Washington Post* at least ten (10) days before said last mentioned date. /s/ E. HAMILTON, Judge. [Seal.] A True Copy. Attest: Register of Wills for the District of Columbia. Clerk of the Probate Division. By Linda Laws, Deputy Clerk.        Mar. 27.

### FIRST INSERTION

BASORA, George O.                           Deceased
Superior Court of the District of Columbia
Probate Division
Administration No. 595-92 S.E.
George O. Basora, deceased
**Notice of Appointment, Notice to Creditors
and Notice to Unknown Heirs**

Edith Hopkins, whose address is 1011 Cedar Hollow Lane, Largo, Maryland 20772, was appointed Personal Representative of the estate of George O. Basora, who died on February 27, 1992, without a Will. All unknown heirs and heirs whose whereabouts are unknown shall enter their appearance in this proceeding. Objections to such appointment shall be filed with the Register of Wills, D.C., 500 Indiana Avenue, N.W., Washington, D.C. 20001, on or before April 28, 1992. Claims against the decedent shall be presented to the undersigned with a copy to the Register of Wills or to the Register of Wills with a copy to the undersigned, on or before April 28, 1992, or be forever barred. Persons believed to be heirs or legatees of the decedent who do not receive a copy of this notice by mail within 25 days of its publication shall so inform the Register of Wills, including name, address and relationship. EDITH HOPKINS. Name of