UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v. ) | Crim. No.  05-359-1, -2, -3 (RMU) |
| ) | |
| **DOUGLAS JEMAL**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' OPPOSITION TO GOVERNMENT'S
THIRD REQUEST FOR APPROVAL TO ISSUE RULE 17(c) SUBPOENAS**

Defendants Douglas Jemal, Norman D. Jemal and Blake Esherick ("Defendants"), through counsel, hereby submit this opposition to the Government's Third Request for Approval to Issue Rule 17(c) Subpoenas ("Gov't Req."). The government's request should be denied because the information sought by the subpoenas is irrelevant and inadmissible. In addition, the late date at which the government seeks some of this information suggests that the government is attempting to distract the Defendants in the crucial weeks before trial by requiring them to conduct a time-consuming search for unnecessary documents.

**I.    INTRODUCTION**

The government has issued two document subpoenas to Douglas Development Corporation ("DDC"), one dated June 8, 2006 (the "June 8th Subpoena") and the second dated July 21, 2006 (the "July 21st Subpoena"). The June 8th Subpoena seeks the following: (1) originals of certain documents produced by DDC;[1] (2) all records relating to a check issued to

---

[1] Defendants do not object to providing the government with the originals of these documents.

Blake Esherick in 2000;[2] (3) all records itemizing or providing calculations for the additional income reported in Esherick's amended W-2s for calendar years 2001-04; (4) all records relating to three payments made to Esherick in 2005; and (5) a copy of Esherick's 2005 W-2 form.  See Attach. to July 8th Subpoena.  The July 21st Subpoena requests that DDC provide:  (1) all records relating to a check to the D.C. Treasurer; and (2) certain records relating to the draw request from MTD Real Estate Services ("MTD") to Morgan Stanley, including (a) the itemized general ledger for the 111 Massachusetts Avenue property from 2002-05; (b) any accounting records "reflecting any obligation from the 111 Massachusetts Avenue property to Douglas Jemal/Douglas Development/MTD" associated with a transfer from MTD to the 111 Massachusetts property; and (c) all records accounting for the draw from the Morgan Stanley loan as income to DDC.  See Attach. to July 21st Subpoena.

In addition, the government has issued a document subpoena to Jeffrey Hotek, DDC's outside accountant and tax-preparer, which is also dated July 21, 2006 (the "Hotek Subpoena") and seeks:  (1) all draft tax returns and work papers relating to MTD; (2) all records relating to the $430,000 December 2002 payment from Morgan Stanley and the subsequent transfer of $400,000 from MTD to a settlement company in connection with the 111 Massachusetts property; (3) all records relating to three payments made to Esherick in 2005; and (4) all records itemizing or providing calculations for the additional income reported in Esherick's amended W-2s for calendar years 2001-04.  See Attach. to Hotek Subpoena.

The requests in the three subpoenas can be grouped into four categories: (1) documents and workpapers relating to Defendant Esherick's amended W-2 forms;

---

[2] Although the subpoena as issued sought records relating to three checks, the government has now represented that it seeks information only as to the check dated June 26, 2000.  Gov't Req. at 2 n.2.

(2) documents relating to payments to Esherick outside the time period that is the subject of the Indictment; (3) documents relating to the settlement of the civil lawsuit between DDC and the District of Columbia; and (4) documents relating to MTD.

## II.    ARGUMENT

In <u>United States v. Nixon</u>, 418 U.S. 683 (1974), the Supreme Court stated that in order to require production prior to trial pursuant to Rule 17(c), the moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

<u>Id.</u> at 699-700.  The court in <u>Nixon</u> distilled these showings into the three elements often applied by courts weighing the issuance of Rule 17(c) subpoenas -- relevancy, admissibility and specificity.  <u>Id.</u> at 700.

Rule 17(c) also requires a "good-faith effort . . . to obtain evidence," because the Rule "was not intended to provide an additional means of discovery."  <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 219, 220 (1951).  Thus, "[t]he test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."  <u>United States v. Cuthbertson</u>, 630 F.2d 139, 144 (3d Cir. 1980).

In this instance, the government has not met the requirements of Rule 17(c).  The government has not even attempted to demonstrate the relevancy or admissibility of any of the documents sought by the subpoenas.  Rather, in its request to this Court, the government merely states in conclusory fashion that "[t]he <u>Nixon/Bowman</u> standards are easily met in this case

- 3 -

[because] the items are relevant and admissible and by no means constitute a forbidden 'fishing expedition.'" Gov't Req. at 7. This conclusory statement is insufficient and, as demonstrated below, incorrect. Therefore, for the reasons that follow, the Court should deny the government's request.

### A. The Government's Request for Work Papers Underlying Defendant Esherick's Amended W-2 Forms

Two of the subpoenas issued by the government inappropriately request documents relating to evidence that is the subject of a motion *in limine* pending before this Court. On July 5, 2006, Defendants filed a motion *in limine* to preclude the government from introducing evidence relating to Defendant Blake Esherick's amended tax returns and W-2 forms. See Defs.' Mot. *in Limine* to Exclude Evidence of Amended Tax Returns or W-2 Forms. Yet both the June 8th Subpoena and the Hotek Subpoena seek records relating to Esherick's amended W-2 forms.[3] These requests cannot meet the Nixon requirements of relevancy and admissibility and must be denied.

As discussed in more detail in Defendants' motion *in limine*, documents relating to Defendant Esherick's amended W-2 forms are irrelevant to establishing Defendants' intent at the time they engaged in the conduct alleged in the tax evasion counts of the Indictment because an amended tax return or other tax form is not admissible as proof of the defendant's alleged fraudulent intent in submitting the original tax return. See United States v. Dyer, 922 F.2d 105, 108 (2d Cir. 1990); see also Memorandum of Law in Support of Defs.' Mot. *in Limine* to Exclude Evidence of Amended Tax Returns or W-2 Forms and Reply Memorandum of Law for

---

[3] Notably, the government does even address the fact that Defendants have contested the admissibility of these records.

additional authority. "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted . . . ." In re Sealed Case, 121 F.3d 729, 754 (D.C. Cir. 1997). Therefore, these documents do not fall within the scope of Rule 17(c).

In addition, such documents constitute evidence of subsequent remedial measures taken by Defendants after being placed on notice of the government's investigation, and are therefore also inadmissible under Federal Rule of Evidence 407. See 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5284, at 119 (1980) (noting that, in an analogous civil context, "courts have held that where a person is charged with engaging in an intentional act alleged to violate the law, that person's subsequent decision to abandon the allegedly lawless conduct is a 'remedial measure' under [Federal Rule of Evidence] 407" and hence inadmissible) (collecting cases). Moreover, even if the documents sought by the government are relevant, they are not admissible under Federal Rule of Evidence 403 because their minimal probative value is far outweighed by the risk of unfair prejudice to the Defendants and the needless complication of the trial resulting from their admission.

In any event, the workpapers relating to Defendant Esherick's amended W-2 forms sought by the June 8th and Hotek Subpoenas are protected from disclosure by the work product doctrine.[4] The subpoenas seek "all records which itemize and/or otherwise provide the calculations for all components of the additional income reflected in the amended W-2s for Blake Esherick issued for calendar years 2001, 2002, 2003 and 2004." See Attach. to the June 8th and Hotek Subpoenas. The work papers called for by this request are clearly privileged, as they reflect the thoughts and mental impressions of counsel and were prepared at the direction of

---

[4] Defendants also noted in their motion *in limine* that counsel would assert work product protection over "the records that itemize or provide the calculations for the additional income reflected in Mr. Esherick's amended W-2s." Memorandum of Law in Support of Defs.' Mot. *in Limine* to Exclude Evidence of Amended Tax Returns or W-2 Forms at 4 n.4.

counsel in anticipation of litigation. See Hickman v. Taylor, 329 U.S. 495, 511 (1947) (attorney work product may be reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"). It is well-established that the interests which the work product privilege seeks to protect are present in both criminal and civil cases. See In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). In fact, as the Supreme Court has stated:

> Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

United States v. Nobles, 422 U.S. 225, 238 (1975).

In approximately early-fall 2003, the law firm of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), which represents Douglas Jemal and DDC, hired a forensic accountant, Paul Dopp, of the CPA firm Tauber & Balser, P.C., to work with them in evaluating potential tax and accounting issues anticipated to be at issue in ongoing government investigations. Subsequently, Akin Gump directed Mr. Dopp to work with Jeff Hotek and others at DDC's independent accounting firm, Grossberg Company, LLP, to develop the tax schedules that were ultimately used to prepare Esherick's amended W-2 forms. Lawyers from Akin Gump, along with Esherick's counsel, worked very closely with the accountants, and were involved in substantive discussions and decisions relating to the preparation of the forms. The documents and workpapers prepared in connection with this process were marked "Privileged & Confidential" and "Attorney/Client Work Product." Under these circumstances, there can be no doubt that the accountants were acting as counsel's agents and, therefore, that the work product

privilege applies to documents shared with and prepared by those agents.  See Nobles, 422 U.S. at 238-39 ("[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").

Similarly, there can be no doubt that the workpapers reflecting the deliberative process that resulted in amended W-2 forms were prepared in anticipation of litigation, as the records at issue were prepared after counsel learned of the investigation by the United States Attorney's Office.  See EEOC v. Lutheran Soc. Servs., 186 F.3d 959, 969 (D.C. Cir. 1999) (finding documents were prepared in anticipation of litigation where party hired counsel because it feared litigation and evidence suggested that litigation "lay just over the horizon"); In re Sealed Case, 146 F.3d at 886 (counsel's knowledge of investigation into illegal behavior coupled with news reports describing same provided sufficient objective support for assertion that documents were prepared in anticipation of litigation).  Moreover, the decision to amend was made, at least in part, in an effort to persuade the United States Attorney not to bring charges against the Defendants.[5]

### B. The Government's Request for Records Outside the Timeframe of the Indictment

The government also inappropriately requests that DDC and Hotek produce certain documents reflecting events that took place outside the timeframe of the conduct alleged in the Indictment, documents which are clearly inadmissible under Federal Rule of Evidence

---

[5] If the Court is inclined to grant the government's request for approval to issue the subpoenas, Defendants respectfully request that the Court allow Defendants the opportunity to supplement the record with respect to the assertion of the work product privilege, in order that Defendants might demonstrate in more detail exactly how and why these documents are covered by the privilege.

- 8 -

403. The June 8th and Hotek Subpoenas seek documents reflecting payments to Defendant Esherick from the years 2000 and 2005, which fall outside the timeframe of the tax evasion counts of the Indictment.[6]

        Documents reflecting payments made to Defendant Esherick in years prior and subsequent to the tax years charged in the Indictment are inadmissible under Rule 403 because their introduction would result in undue delay, waste of time and needless presentation of cumulative evidence.  The government will be able to present substantial evidence of payments from DDC to Esherick during the charged tax years -- 2001, 2002 and 2003.  Therefore, the presentation of additional evidence regarding payments to Esherick in uncharged years has little probative value.  Whatever probative value such evidence possesses is substantially outweighed by the waste of time and delay that would result from the presentation of such cumulative evidence.  The government, therefore, has not satisfied the standards of Rule 17(c) with respect to these requests.  See United States v. North, 708 F. Supp. 402, 404 (D.D.C. 1989) (denying government's request for issuance of Rule 17(c) subpoena for failure to demonstrate that "the standards of relevance, materiality and necessity . . . will be satisfied, and [because] the massive documentation in the case suggests that further data would be superfluous").

---

[6] Defendants moved to exclude evidence that similarly related to conduct in years prior and subsequent to those at issue in the tax evasion counts of the Indictment in Defendants' Motion *in Limine* to Exclude Evidence Alleged in Government's Notice of Intent to Introduce 404(b) Evidence.  At the initial motions hearing in this case, the Court deferred ruling on Defendants' Motion *in Limine* to exclude such evidence.

C.  **The Government's Request for Documents Relating to DDC's Settlement of a Lawsuit with the DC Government**

The government seeks documents directly relating to another subject of a motion *in limine* by Defendants that is pending before this Court, that is, DDC's settlement of a lawsuit with the District of Columbia. On July 5, 2006, Defendants filed a motion *in limine* to exclude any evidence relating to this lawsuit and/or the settlement agreement reached by the parties. See Defs.' Mot. *in Limine* to Exclude Evidence of Prior Related Civil Lawsuit and Settlement. Yet the July 21st Subpoena to DDC requests "all records, to include check stubs, check request forms, and copies (front and back) and any accompanying correspondence or other records related to the delivery of [a] check" dated November 12, 2003 made payable to the DC Treasurer in the amount of $42,159.67.[7] See Attach. to July 21st Subpoena.

This check represents the amount paid to the District of Columbia by DDC as part of the settlement agreement between the parties resolving the District's 2003 civil lawsuit against Defendants Douglas Jemal and Blake Esherick, DDC and other entities owned by Mr. Jemal. Paragraph 11 of the settlement agreement provides: "DDC paid to the District on November 13, 2003, and the District has accepted, Forty Two Thousand One Hundred Fifty Nine and 67/100 Dollars ($42,159.67) to reimburse the District for excess payments for improvements at 4800 Addison Road." See Settlement Agreement and Mutual Release (dated Dec. 12, 2003) (attached as Ex. A).

Documents relating to the amount paid by DDC to settle the lawsuit are not admissible pursuant to Federal Rule of Evidence 408, which prohibits the admission of evidence relating to the compromising of a claim "which was disputed as to either validity or amount" in

---

[7] Once again, the government makes no mention of the fact that this request seeks documents that are the subject of a motion *in limine* by Defendants.

order "to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408; see also United States v. Graham, 91 F.3d 213, 218 (D.C. Cir. 1996) ("[t]he subject of [Rule 408] is the admissibility of evidence (*in a civil or criminal case*) of negotiations undertaken to 'compromise a claim' in a civil action") (citation omitted) (emphasis added). Documents relating to the amount of the settlement payment itself are clearly proscribed by the Rule's scope, and cannot be admitted at trial. See Kennon v. Slipstreamer, Inc., 794 F.2d 1067, 1070 (5th Cir. 1986) (even where fact of settlement was properly disclosed to avoid jury confusion, disclosing amount of settlement had no proper purpose and violated Rule 408). The only conceivable purpose for which the government would offer such evidence at trial would be to prove DDC's liability for that amount, because the government wishes the jury to draw the inference that DDC acknowledged some purported wrongdoing in connection with the 4800 Addison Road property. This is not permissible under Rule 408. Moreover, the settlement agreement itself expressly provides that no party has admitted any liability or wrongdoing. See Ex. A ¶ 12 ("This Agreement and Release does not constitute an admission by the Jemal Parties or by the District of any liability or wrongful action or violation of any statute, regulation, or common law right.").

Furthermore, documents relating to the settlement payment should be excluded pursuant to Rule 403 because any minimal probative value the evidence may have is substantially outweighed by the unfair prejudice the Defendants will suffer if it is presented at trial. In the context of Rule 408, courts have found that the potentially devastating prejudice to a criminal defendant resulting from the admission of an earlier civil settlement clearly weighs in favor of excluding such evidence. See Hays, 872 F.2d at 589 ("It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back."); Arias, 431 F.3d at 1337

("permitting the admission of civil settlement offers in subsequent criminal prosecutions actually compromises the accuracy of the jury's determination"). The fact that DDC agreed to pay a certain amount to the District as part of the settlement of the lawsuit is not probative of the charges in this case, and can only serve the purpose of prejudicing Defendants in the eyes of the jury.

    **D.**    **The Government's Request for Documents Relating to MTD Real Estate Services**

The July 21st Subpoena and the Hotek Subpoena contain a series of broad requests for documents relating to MTD Real Estate Services, including "all draft tax returns, including all versions of the draft returns, and all documents and work papers," "any and all records and/or other documents" relating to the December 2002 payment of $430,000 from Morgan Stanley to MTD and the transfer of $400,000 from MTD to a settlement company, the itemized general ledger for the 111 Massachusetts Avenue property from 2002-05, and "all records that account for the draw of $430,000 to MTD from the Morgan Stanley loan as income to Douglas Development." See Attach. to July 21st and Hotek Subpoenas. The government's request for documents relating to MTD should be denied because the government has made no attempt to demonstrate the relevance of these documents, and the categories of documents sought by the government are overbroad and do not focus on specific, known documents, as required under Rule 17(c).

First, the government has not even attempted to show that these MTD-related documents are relevant to the wire fraud offense charged in Count Five of the Indictment. In a footnote, the government states that "the relevance of the internal documents of Douglas Development and its outside accountant, Jeffrey Hotek . . . as to [the MTD] transaction [alleged

in Count Five] is obvious." Gov't Req. at 4 n.6.  But the government provides no further discussion as to why the broad categories of documents sought by the subpoenas are relevant, other than asserting that Defendants plan to present expert testimony on the tax accounting for this transaction, which somehow makes their relevance "obvious."  In fact, the only thing that is obvious is that the government's proffer is insufficient to meet the requirements of Rule 17(c), which "precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted . . . ."  In re Sealed Case, 121 F.3d at 754; see also United States v. Dale, Crim. No. 94-469 (GK), 1995 WL 495995, at *2 (D.D.C. Aug. 7, 1995) (denying request to issue Rule 17(c) subpoenas where defendant failed to establish that "any of the materials sought will be material, admissible, or relevant to what are the central issues in this case"); North, 708 F. Supp. at 404 (denying government's request for issuance of Rule 17(c) subpoena for failure to demonstrate that "the standards of relevance, materiality and necessity . . . will be satisfied").

        Second, the government has drafted extremely broad requests, seeking "all draft tax returns," "all documents and work papers," "any and all records and/or other documents," and "all accounting records" relating to MTD.  Rule 17(c) requires that the documents sought be described with specificity, so that it is clear the subpoena seeks discrete categories of known documents that have evidentiary value.  In addition, Rule 17(c) subpoenas must be issued in good faith, and cannot be used as a "general 'fishing expedition.'"  Nixon, 418 U.S. at 700; Cuthbertson, 630 F.2d at 144.  The government's requests are overbroad and bear a striking resemblance to requests found in a grand jury subpoena rather than a properly framed Rule 17(c) subpoena.

### III.  CONCLUSION

    For the foregoing reasons, the Court should deny the government's request for approval to issue these subpoenas pursuant to Rule 17(c).

                Respectfully submitted,

                /s/
                _____
                Reid H. Weingarten (D.C. Bar #365893)
                Brian M. Heberlig (D.C. Bar #455381)
                Steptoe & Johnson LLP
                1330 Connecticut Avenue, N.W.
                Washington, D.C.  20036-1795
                 (202) 429-3000

                Michele A. Roberts
                Akin Gump Strauss Hauer & Feld LLP
                1333 New Hampshire Avenue, N.W.
                Washington, D.C.  20036
                (202) 887-4306

                Christopher B. Mead
                London & Mead
                1225 19th Street, N.W.
                Suite 320
                Washington, D.C.  20036
                (202) 331-3334

                Counsel for Douglas Jemal


                Stanley M. Brand
                Ross Nabatoff
                The Brand Law Group
                923 Fifteenth Street, N.W.
                Washington, D.C.  20005
                (202) 662-9700

                Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: August 4, 2006