UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. 05-359 (RMU) |
| | : | |
| DOUGLAS JEMAL ET AL. | : | |

**REPLY IN SUPPORT OF GOVERNMENT'S MOTION FOR PRETRIAL RULING ON ADMISSIBILITY OF BUSINESS RECORDS AND <u>AUTHENTICITY OF DOUGLAS DEVELOPMENT RECORDS</u>**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply in support of its motion for a pretrial ruling on (1) the admissibility of certain records the Court has already ruled are authentic business records and (2) the authenticity of documents produced by Douglas Development Corporation. As shown below, the Court should grant the government's motion because the documents on which it seeks a pretrial admissibility ruling are both relevant and non-prejudicial.

As to defendants' willingness to stipulate to the authenticity of Douglas Development records with a Bates number, see Defs. Opp. at 2, the government respectfully submits that, in a few instances, Douglas Development produced through counsel records that did not have Bates numbers. Thus the government requests that the Court grant its motion and find that all the Douglas Development records listed on Attachment B are authentic.

## INTRODUCTION

The non-controversial nature of the government's request is reflected in defendants' concession that the following exhibits are, in their entirety, relevant business records: Government Exhibit Nos. 14 (Boot Barn, cowboy boots), 16 (Domain Home Fashions, furniture), 17 (HBL, Audi repairs), and 54-55 (MTD Real Estate). See Defs. Opp. at 8-9. The defendants also concede the relevance of the portions of Government Exhibit Nos. 13 (J. Brown Jewelers, Rolex watch) and 18 (Sabra Gould Amex statements), on which the government seeks a pretrial admissibility ruling. See Defs. Opp. at 8, 5 n.4. The defendants offer no objections to the admissibility of these seven documents other than that "there is reason [sic] to deviate from standard trial procedure and admit the record prior to trial." Id. at 8-9.[1]

The purpose of the government's request is to streamline the introduction of evidence in this document-intensive trial. The government requests a ruling that the documents are admissible; it would move the documents into evidence formally after opening statements; and defendants have presented no persuasive reasons why the Court should delay its ruling on the admissibility of these concededly relevant business records.

---

[1] The defendants again contend that they do not know for certain the government's theory of the case. See Defs. Opp. at 2; see also Defendants' Motion to Compel the Government to Produce a Witness List and All Jencks Materials Immediately, at 3. The government respectfully submits that the experienced attorneys on the defense team have gained a more than adequate understanding of the government's theory of the case from (a) the 39-page Indictment; (b) the government's responses to the defendants' letters and subsequent motion for a bill of particulars; (c) the "tens and thousands of pages in discovery," see Reply Mem. in Support of Defendants' Motion to Compel the Government to Produce a Witness List and All Jencks Materials Immediate, at 1, including the government's Brady and Giglio disclosures; and (d) the vast and detailed scope of the pretrial litigation in this case.

The reasonableness of the government's request is also reflected in defendants' agreement that many, if not all, pages in the following documents are relevant: Government Exhibit Nos. 60 (Douglas Jemal Amex statements),[2] 65-66 (Norman Jemal Amex statements),[3] 62 (Norman Jemal bank statements and checks),[4] 36, 37, 38, 38B, 38D, 39, 40, 41, 42, 43, 44, and 58 (Blake Esherick financial documents),[5] and 91, 92, 93, and 6 (W-2s for Douglas Development employees).[6]

Thus, the primary disagreement—other than when to introduce the admittedly relevant business records or portions thereof—concerns portions of documents that reflect defendants' spending habits. The government respectfully submits that its aim is not solely, primarily, or even secondarily to "make this a trial about the Defendants' lifestyles and spending habits." See Defs. Opp. at 1. There are places in the documents, however, where evidence that reflects defendants' lifestyles _is_ relevant to the facts alleged in the Indictment. Thus, for example, the Bellagio Hotel has a reputation as one of the most expensive and luxurious hotels in Las Vegas. It _is_ relevant that the defendants took a city official to such a hotel. Similarly, the Capital Grille is considered a fancy restaurant in the District of Columbia. That Douglas Jemal regularly

---

[2] See Defs. Opp. at 4.

[3] Id. at 5.

[4] Id.

[5] See id. at 6.

[6] Id. at 7.

bought dinner for a city official at such a restaurant is relevant.[7] Just because relevant evidence might also show the spending habits of the defendants does not make it irrelevant or unduly prejudicial—especially because evidence of spending habits in financial crime trials is admissible to show motive. See, e.g., United States v. Jackson-Randolph, 282 F.3d 369, 376-80 (6th Cir. 2002) (affirming trial court's admission of evidence of defendant's purchases and lifestyle in fraud trial to show motive to commit crimes).

Perhaps more importantly, however, the government does not believe the records in question tar defendants with an unfairly prejudicial brush of financial profligacy.[8] Thus, for example, the government is not seeking to introduce evidence of defendants' expenditures to find or bring to the jury's attention potentially prejudicial expenditures on activities like gambling or visiting strip clubs. See United States v. Cooper, 286 F. Supp. 2d 1283, 1290-91 (D.Kan. 2003) (granting defendants' motion to exclude evidence of their personal expenditures on gambling and strip clubs). Indeed, defendants have failed to identify any particular part of any particular exhibit or document they object to on Rule 403 grounds. That is significant because the defense team has had the vast majority of these business records for nearly a year. If there were

---

[7] The government also disagrees with defendants' contention that evidence of Douglas Jemal's regular dinners at the Capital Grille is relevant if and only if Michael Lorusso can point to specific meals where Douglas Jemal picked up his tab. See Defs. Opp. at 4 n.3. The government expects that Mr. Lorusso will testify that he was a frequent guest of Mr. Jemal at the Capital Grille and other restaurants. Evidence of Mr. Jemal's regular expenditures at, for example, the Capital Grille, will corroborate Lorusso's testimony and is relevant because it makes "the existence of [the fact of Mr. Lorusso's regular free meals at the Capital Grille on Mr. Jemal's tab] * * * more probable * * * than it would be without the evidence." See Fed. R. Evid. 401.

[8] Thus, this case will not be at all like the Tyco trial, where the jury heard evidence of extravagant purchases, e.g., a $15,000 umbrella stand and a $6,000 shower curtain, and viewed a video of a company-sponsored lavish birthday party in Sardinia for the wife of one of the defendants. See Attachment A.

something truly prejudicial in the documents, the defense team would have brought it to the Court's attention in its opposition or in a motion in limine. Broad, unsupported claims of prejudice should not suffice.

## DISCUSSION

Given the absence of any defense objections other than as to timing, the government respectfully requests that the Court rule that Government Exhibit Nos. 13, 14, 16, 17, 18,[9] 54, and 55 are admissible. As to the remaining documents on Attachment E, the government requests that the Court rule as follows:

1.   Government Exhibit No. 5

One of the bases of the tax evasion charges is the allegation that Douglas Jemal provided Blake Esherick free housing in a property owned jointly by Douglas Jemal and Norman Jemal in Bethesda, Maryland. The government's evidence will demonstrate that Norman Jemal made the monthly mortgage payments on this home. Government's Exhibit No. 5 consists of the loan file obtained from Fidelity Bank related to this property. As may be expected, the loan file contains a host of documents relevant to ownership and title, a matter of vital concern to the lender. It includes the following, relevant documents: (a) the loan payment history (which, in turn, corresponds to the monthly payments made by Norman Jemal); (b) loan documents and a deed of trust; (c) insurance documents; and (d) other public records reflecting that the property at issue was owned jointly by Douglas Jemal and Norman Jemal, and that the obligors on the mortgage loan were Douglas Jemal and Norman Jemal (jointly). The defendants have failed to identify

---

[9]   As noted in Attachment E, the government seeks a pretrial admissibility ruling as to the October 1, 2001, Amex statement, November 1, 2001, statement, December 2, 2001, statement, and January 1, 2002, statement.

which portions of the documents in Government Exhibit No. 5 they contend are unreliable hearsay-within-hearsay, a particularly significant omission given that almost all the documents in this Exhibit were signed by Douglas Jemal and Norman Jemal.

However, to address the defendants' concerns, the government narrows its request for a pretrial ruling as to Government Exhibit No. 5, and will not seek at this time to admit the last ten pages of this Exhibit (starting with the mortgage application for $199,700 and ending with a 1993 W-2 for Douglas Jemal).

2.   Government Exhibit Nos. 6, 7, 91, 92, and 93

Defendants acknowledge the relevance of these Douglas Development W-2s but urge that "a representative sample [of Douglas Development employees] would suffice * * *." See Defs. Opp. at 7. In an effort to accommodate the defendants' objection, the government narrows its request for an admissibility ruling to the specific records in Governments Exhibit Nos. 6, 7, 91, 92, and 93 that relate to Douglas Development employees earning over $40,000 per year; those records will provide a fair comparison to Blake Esherick.

3.   Government Exhibit Nos. 10, 11, and 15

The defendants concede that portions of these records of expenditures at the Bellagio Hotel in 2001 and 2002 and at the Barbary Coast Hotel in 2002 are relevant to showing things of value provided to Michael Lorusso but contend that pages showing purchases not directly for Lorusso are not relevant. See Defs. Opp. at 8. The government submits that the entire non-voluminous set of these records is relevant to provide a full account of what occurred during the two trips Michael Lorusso took to Las Vegas on the defendants' dime, including drinks for

Lorusso at the Bellagio Hotel bar in 2002, when Lorusso was put up by the defendants at the Barbary Coast hotel.

    4.    <u>Government Exhibit Nos. 36, 37, 38, 38B, 38D, 39, 40, 41, 42, 43, 44, and 58</u>.

These various exhibits constitute Blake Esherick's financial records. The government bears the burden of proving beyond a reasonable doubt, for example, that Mr. Esherick made no mortgage payments or property tax payments—payments for which he claimed deductions on his various tax returns. Unless the government can show the full scope of Mr. Esherick's expenditures, it will be severely hampered in its ability to prove his non-payment of those claimed expenditure, nor any payments for utilities. The financial records also corroborate evidence of the income Mr. Esherick did receive, and that he depended on unreported income to maintain his standard of living. Given that Mr. Esherick is charged with tax evasion for 2001, 2002, and 2003, and that defendants point to no particular pages in these Exhibits that would prejudice Mr. Esherick or Douglas Jemal, the Court should rule that all the documents in these exhibits are relevant and admissible business records.

    5.    <u>Government Exhibit Nos. 62, 65, and 66</u>

These exhibits pertain to Norman Jemal's Amex statements (Nos. 65-66) and personal bank statements and cancelled checks (No. 62) just for the period 2001-2002. The government submits that Government Exhibit Nos. 65-66 are relevant to show purchases for things of value to Michael Lorusso, and that any page not specifically showing such a purchase is relevant to put the Lorusso purchases in context and, in any event, not prejudicial to Norman Jemal or any other defendant. Government Exhibit No. 62 is relevant to show, among other things, payments to Amex and payments on the home in which Blake Esherick lived for free. Similarly, any

-7-

particular pages in Government Exhibit No. 62 that do not specifically relate to such payments are still relevant to put the payments into context and, in any event, are not unfairly prejudicial.

6. <u>Government Exhibit No. 68</u>.

The government respectfully withdraws its request for a pretrial ruling on the admissibility of this exhibit.

## CONCLUSION

The government's motion should be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
D.C. Bar No. 451058
UNITED STATES ATTORNEY

By: _____
Mark H. Dubester, D.C. Bar No. 339655
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 23rd day of August, 2006, I caused to be served by electronic filing a copy of the foregoing reply to:

Michele A. Roberts, Esquire
Jeffery M. King, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney