

U.S. Department of Justice

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

July 10, 2006

Michele A. Roberts, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC  20036

Reid H. Weingarten, Esquire
Brian M. Heberlig, Esquire
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795

Stanley M. Brand, Esquire
Ross A. Nabatoff, Esquire
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C.  20005

Paul F. Kemp, Esquire
Carol Elder Bruce, Esquire
Venable LLP
575 7th Street, N.W.
Washington D.C.  20004

> Discovery Letter #11
> <u>Materials Related to Lorusso</u>

Dear Counsel:

  Please be aware of the following:

  1) Grace Carr contradicted Mr. Lorusso as to the amount of money he paid her in 2001. Ms. Carr stated she received an amount materially less than the amount Lorusso has stated he provided her.

2)      A construction contractor, Barbara Turner, stated that she met with Mr. Lorusso to inquire if there was an opportunity for her to obtain construction work with the DC Government. She stated that Mr. Lorusso made statements she understood as requesting a bribe from her. Ms. Turner stated she is willing to meet with counsel, but she specifically requested that a representative of the government be present.

3)(a)   Lorusso's association with Charles Dyer and Resource F. In late 1998, Lorusso began working for Charles Dyer and did real estate related work and some computer and bookkeeping work for Dyer's investment companies, including an entity called "Resource F." Dyer, in turn, through Resource F, affiliated himself with Voldemar VonStrasdas, and VonStrasdas, in turn had a relationship with Eric Resteiner, located in the Bahamas. Dyer and VonStrasdas raised money from investors into Resource F. This money was then transferred to Resteiner, who controlled the Bahamas bank account into which the monies were deposited.

In late 1999 early 2000, Lorusso received $100,000 from Deborah Koepper of Palm Beach, Florida, for investment. Koepper was a personal acquaintance and a "friend of a friend" of Lorusso's. The Government has not found evidence Lorusso personally benefitted from this transaction or believed he was participating in a fraud on Koepper or any other investors. Lorusso has stated that he thought and intended at the time that he was putting Koepper in a good investment, sought to impress her by doing so, and had no intent to defraud her.

Koepper gave Lorusso some of the money – believed to be approximately $45,000 out of the approximate $100,000 investment – in cash. Lorusso deposited these funds in personal accounts in Boston in amounts less than $10,000 before transferring these funds to "Wall Street South" (believed to be account controlled by VonStrasdas) in the Bahamas. We have provided the bank statements that reflect this transfer of $45,000 in January 2000.

In 2001, the SEC determined that Resteiner was running a Ponzi scheme and took enforcement action Resteiner, VonStrasdas, Dyer, and various entities.

The SEC deposed Lorusso twice as part of its investigation. We have provided the deposition transcripts. The SEC brought securities charges against Resteiner, VonStrasdas and Dyer, and certain of their entities, including Resource F. The SEC, having deposed Lorusso, did not bring securities charges against him.

In March 2004, Resteiner was indicted in Massachusetts. He has since pleaded guilty and is awaiting sentencing. We have provided the Resteiner Indictment. Neither VonStradas nor Dyer was indicted.

3)(b) <u>Lorusso's Involvement with Dexter Wadsworth</u>. Also starting in late 1999 and into early 2000, Lorusso sought and obtained investors into a different investment program – not involving Dyer or Resource F – through Dexter Wadsworth, an attorney in New York. This program promised returns of about 5% per month. Lorusso opened accounts in the name of "Global ROI" and "Global ROI Offshore" at Boston Private Bank. After depositing some investor money into his personal accounts, he moved the monies into the Global ROI accounts. After the money accumulated in the Global ROI accounts, Lorusso wired the funds to Wadsworth. Lorusso collected and invested $170,000 of funds in March 2000 with Wadsworth, as reflected in the following table:

### Lorusso's February-March 2000 $170,000 Investment Sources

| Source | Amount |
|---|---|
| Adrea Foster (Lorusso's girlfriend) | $6,000 |
| Marjorie Foster (Lorusso's girlfriend's mother) | $6,000 |
| B.Adam Morris (college friend) | $10,000 |
| Rocco Zagarella/Antonetta Zagarella (Lorusso's Boston friends) | $100,000 |
| Deborah Koepper (Lorusso's friend) | $20,000 |
| Lorusso (personally) | $8,000 |
| Chris Chemlen (Lorusso's Boston friend) | $20,000 |
| Total | $170,000 |

The Zagarellas gave Lorusso cash. In early 2000, Lorusso made a series of cash deposits of amounts less that $10,000 (from the Zagarellas) into personal accounts in the Boston area before aggregating the funds into a single account for transfer to Wadsworth. In one instance he gave Adrea Foster cash to deposit in her account, and she wrote him a check to deposit. He provided Foster a share certificate.

This investment did not produce the returns that were expected. In March of 2001, Lorusso received the return of the $170,000. He repaid all the above investors prior to the commencement of the investigation with the exception of Koepper. Nearly all the funds were disbursed upon his receipt of the monies in 2001. (He repaid the Zagarellas $90,000 of the $100,000, and Morris $10,000 in late 2002 or early 2003.) As part of the plea agreement in his criminal case, Lorusso repaid Koepper $20,000.

In addition, in early 2000, an individual, Brian Nelson, associated with an entity "Longview Capital" provided $35,000 to Lorusso for investment with Wadsworth. According to

3

Lorusso, Nelson received the return of this amount.

Lorusso has stated he believed at the time that the Wadsworth investments were good investments and this is why he invested his own money and as well as money from personal friends and persons he would not wish to alienate (such as his girlfriend and her mother). The $170,000 and $35,000 was in fact returned to Lorusso and, with the exceptions noted above, the investors were repaid. We have provided the Global ROI and Global ROI Offshore bank statements.

In addition, Lorusso performed some office functions for Wadsworth involving keeping track of other investors who had provided funds directly to Wadsworth for investment with him.

4) Lorusso has stated that used his DC Government credit card to purchase a "settee" piece of furniture from IKEA for an acquaintance, Mary Myers. He also has stated that he used the Government credit card to purchase pens from Fahrney's pens and at Eatzi's in Rockville. Lorusso also gave Ms. Myers some DC Government furniture he described as surplus or damaged. He also used the Government credit card to purchase numerous items of computer equipment and electronic good, some of which he gave to Douglas Jemal and Blake Esherick. Lorusso also had access to a "travel card" which was to be used for certain travel expenses. We have attached the travel card statements for his use of this card.

5) At Lorusso's request, Mr. Villegas purchased several laptop computers. These were distributed among various individuals, including Villegas, Sean Frazier, Scott Frankel, Faith Scott, others involved in the 441 Fourth Street renovation project and Lorusso's attorney, Phil Murray. When Lorusso left the D.C. Government, he kept one of the laptop computers. The computer was recovered by the FBI in the search of Lorusso's Boston apartment with the serial number plate removed.

6) Shortly after Lorusso left the DC Government, in late January or early February of 2003, Tim Dimond returned to the D.C. Government items of electronic goods that had been in the possession of Lorusso. We have provided an inventory of the electronic goods that were received by the DC Government from Dimond.

7) Lorusso gave Douglas Jemal and Blake Esherick computers and computer-related accessories (as noted above). He gave Douglas Jemal and Blake Esherick blue tinted eyeglasses. He gave Douglas Jemal "Tommy Bahamas" shirts, barber chairs, and a mailbox. He caused Villegas to install a wall unit at Esherick's house.

Sincerely,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: _____
Mark H. Dubester
Timothy G. Lynch
Assistant United States Attorneys