UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Action No. 05-359 (RMU) |
| : | |
| DOUGLAS JEMAL ET AL. : | |

GOVERNMENT'S MOTION FOR
MISCELLANEOUS RELIEF

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully requests the Court grant the following requests related to the witnesses the government expects to call during the week of Tuesday, October 10, 2006.

Request to Call Saul Goldfarb For 10 Minutes of Testimony

The jury has now heard that Michael Lorusso agreed to a rental rate of $2.75 a square foot for $1 million per year at Addison Road. The Government previously called Mark Loesberg to testify that he offered Norman Jemal $3500 per month ($42,000 per year) for about three acres at Addison Road for use as an auto auction yard.

Saul Goldfarb, Loesberg's agent, will testify that in December 2000, less than six months prior to the May 2001 letter of intent signed by Lorusso on behalf of the D.C. Government, Norman Jemal responded to Loesberg's offer by way of a counter-offer of $7,000 per month ($84,000 per year, not the $1 million per year paid by the District of Columbia), or a rate of about $.64 a square foot (not $2.75 per square foot agreed to by Lorusso). This evidence goes to the heart of the defendants' motives to bribe Lorusso by demonstrating the value they sought to obtain and did obtain from him.

This Court has previously excluded Mr. Goldfarb's testimony as cumulative. The government submits the following:   First, the cross-examination of Loesberg consisted primarily

of an attempt by the defense counsel to demonstrate that Loesberg was not personally knowledgeable of the counter-offer and that only Mr. Goldfarb could testify to the counter-offer.[1] In this regard, the cross-examination, consisting of one page of transcript, contained the following exchange:

> Q. [Heberlig]: So we're clear, do I understand correctly that you never met or spoke with anyone at Douglas Development about this deal?
>
> A. [Loesberg]: That's correct.
>
> Q. All these negotiations went through this Mr. Goldfarb?
>
> A. That's correct.
>
> Q. And everything you know about the negotiations was information you learned from him?
>
> A. Yes.
>
> * * *
>
> Q. You didn't receive any written counter-proposal from Douglas Development, did you?
>
> A. No.

United States v. Jemal, Crim. No. 05-359 (RMU), September 27, 2006 Tr. at 2445. The government should be permitted under these circumstances to complete the story by calling Mr. Goldfarb to testify to the oral counter-offer. 2) Previously, the government informed the Court that the witness testimony on this topic would be less than 20 minutes per witness – a promise the government kept. We represent that we can complete Mr. Goldfarb's direct

---

[1] The testimony and cross-examination of Mr. Loesberg is attached as Exhibit 1.

testimony in less than **10 minutes**.

In light of the increased attention to this factual issue, the importance of this testimony and the minimal burden it will place on the trial, we request this one additional witness on this topic be allowed.

Government's Request to Seek Admission of Specific Search Documents

Agent Thomas Chadwick identified a series of documents recovered in the search of Douglas Development offices. The defense has indicated there is no dispute as to the authenticity of the documents. The government seeks admission of the following:

GX 239 - Correspondence from the Boot Barn. This exhibit, consisting of correspondence from the Boot Barn, corroborates Lorusso's testimony that Douglas Jemal shopped at the Boot Barn.

GX 243 - List of Financings and Refinancings. This document makes clear that the 77 P Street refinancing was the single most significant financing of Douglas Jemal/Douglas Development in 2002, and thus corroborates the government's theory on motive. There is sufficient basis to conclude the document is reliable: it was found in the search, it contains text of the sort that would be carefully prepared, it refers to properties known to be owned by the Douglas Jemal (including 77 P Street, as well as other properties that are consistent with the testimony in this case, such as properties on F Street and in Chinatown) and includes information that is known to be accurate, such as the $67 million refinancing of 77 P Street in November of 2002. Any objections can only go to weight, not admissibility.

GX 247 - File Relating to Lease Efforts at 4800 Addison Road. This file contains an offer by a prospective tenant to lease 4800 Addison Road in April 2001 - just one month prior to

the May letter of intent at issue in this case – at a rate substantially below the price negotiated by Lorusso. The document is relevant to support the government's theory that the defendants were unable to lease 4800 Addison Road at anywhere near the prices they obtained from Lorusso. We note that as to this particular company, the government seeks to introduce the document alone and will not seek to call as a witness the representative of the company. Thus, there are no trial resource issues associated with the admission of this document.[2]

### Request to Limit Cross-Examination of Summary Witness, IRS Special Agent Charles Jones, to Scope of Direct

The Government intends on calling an IRS Special Agent, Charles Jones, on several "summary" type topics, including having him total certain categories of benefits provided by Douglas Jemal to Blake Esherick; that is, he will testify to the total dollar amount of DDC checks to Barbara Gill, the dollar amount of DDC checks directly to Esherick, the dollar amount of DDC checks for his auto payments, and certain approximations of fair rental value of 7804 Radnor Road and 6001 Nevada Avenue–houses owned by Douglas Jemal and Norman Jemal in which Esherick lived rent-free. He will identify certain documents and spread sheets that in a very straight-forward way account for these calculations.

Agent Jones will <u>not</u> be asked to render an opinion as to whether he believes these amounts were intended as compensation from Mr. Jemal to Mr. Esherick and will <u>not</u> opine on direct examination whether he believes these various categories of benefits constitute income. The determination as to the definition of compensation is for the <u>Court</u>; the determination as to

---

[2]    The three exhibits are collectively attached as Exhibit 2.

the facts, including the defendants' intents, is for the jury.[3]

Notwithstanding the government's repeated representations that it will not seek to elicit from Agent Jones any opinions or conclusion as to whether these items constitute reportable income, defense counsel (for Esherick at least) has insisted that counsel has a right to engage him in a debate on this proposition. Mr. Esherick's counsel has clearly stated that counsel is not required to heed the narrow scope of direct examination on this topic and, notwithstanding the government's insistence that cross not exceed the scope of direct, counsel has specifically announced an intent to cross-examine Agent Jones on a host of topics far outside his direct testimony. Though the government has not been specifically informed of the line of examination, the government anticipates questioning such as: isn't it true that some companies don't have formal loan agreements? isn't it true that you don't know what the intent of the parties was? isn't it true that housing could be considered a gift? isn't it true that you don't know if there were oral lease agreements? isn't it true that companies with sloppy bookkeeping make tax mistakes? did you consider this fact? did you consider this other fact?, and so forth.

There are numerous significant problems with this line of cross-examination. First and foremost, Agent Jones's personal belief as to whether the various categories of DDC/Douglas Jemal expenditures on Esherick's behalf constitute income to Esherick is irrelevant, and, accordingly, as noted, the government will not (and indeed could not) elicit from Agent Jones his beliefs. In this regard, the government could no more elicit Agent Jones's "opinion" as to the defendants' intent in handling Esherick's compensation and taxes than it could elicit from an FBI

---

[3] Agent Jones will also testify as to certain other "summary" type conclusions as a result of his review of Esherick's bank records; this aspect of his testimony is not likely to be controversial. He will also testify as to an approximate fair rental value for 7804 Radnor Road.

agent the agent's "opinion" as to the defendants' intent in providing things of value to Lorusso. Simply put, Agent Jones is not being called to render either an expert or lay opinion as to what is meant by income (legal issue) or the defendants' intent (jury issue), for which such cross-examination would be arguably appropriate.

Second, such questioning cannot assist the jury. The investigation by Agent Jones is not at issue in this case. The charges have been properly brought by a grand jury–not by Agent Jones--and whether the charges in the Indictment have been proven beyond a reasonable doubt is for this jury to decide. Accordingly, asking Agent Jones what he did or did not do or what he considered or did not consider is pointless and cannot possibly assist the jury.

Third, if Agent Jones is challenged as to any aspects of his mental processes in a manner so as to suggest that he inadequately failed to consider or give appropriate weight to certain facts, the defendants will almost certainly open the door to significant evidence that is in fact <u>known</u> by Agent Jones though so far not in evidence. Thus, for example, Agent Jones <u>does know</u> that subsequent to the commencement of the tax investigation, Esherick filed amended returns declaring additional income for calendar years 2001 and 2002, in which Esherick declared the value of the housing to be income. Agent Jones also knows that, in 2004, the DDC checks to Esherick recorded as loans increased to over $100,000 (with his salary remaining at $66,000 per year) and that in 2005, after the criminal investigation commenced, Esherick's salary increased to over $350,000 per year.[4]

In this regard, the defense cannot be permitted to mislead the jury by suggesting in cross-examination of Agent Jones that there are issues as to whether given items constitute

---

[4] Esherick's reported W-2 wages for 2005 were over $1 million.

compensation when Agent Jones well knows that Esherick has signed amended returns declaring those items to be compensation. As but one small example, the defendants cannot cross-examine Agent Jones by asking him questions that, in substance, attempt to make the following point: you don't really know whether item X was compensation or not, do you? – when, in fact, Agent Jones <u>does</u> have a solid basis to consider X to be compensation because Esherick represented under oath in his amended return that very fact.

The defendants could not be on more clear notice as to the dangerous waters in which they seek to tread. This Court has already ruled that the 2004 and 2005 conduct of Douglas Jemal and Esherick–conduct that involves filing amended returns, paying back "loans," increasing salary, Esherick's commencement of payments to his ex-wife, and the changes in financial relationships—may be introduced "in impeachment, in rebuttal, or if the door is otherwise opened by the defendants." <u>Order</u> of August 23, 2006, <u>United States v. Jemal, et al</u>, Crim. No. 05-359 (Document No. 122).[5] The defendants cannot be permitted to ask questions to which a full, complete and truthful answer and response would involve eliciting such evidence. In any event, even putting aside the "opening the door" risk of such examination, the examination is improper for the reasons already discussed.

We take the opportunity in this pleading to note that the government cannot anticipate all the ways that the defendants may stray into the post-2003 time frame in cross-examining Agent Jones. We note that the more aggressive the defendants go in cross-examination, by using or alluding to documents, facts and circumstances that imply the inadequacy of the investigation, or by eliciting a subset of facts known to Jones to have been rebutted, explained or put into context

---

[5] A copy of this Order is attached as "Exhibit 3."

by the defendants' post-2003 conduct, the more certain it is they will open the door to the government's right and need to respond by proof or testimony about the defendants' post-2003 activities.

To the same end, the government respectfully alerts the Court to the fact that the defendants have raised a <u>Bruton</u> issue associated with the government's use of certain transcript testimony of Esherick in his 2004 custody hearing. The government has stayed away from that, and notes that the defense cannot elicit self-serving hearsay of Esherick in any event. However, if the defense attempts to (improperly) elicit self-serving hearsay of Esherick from the transcript, it is near certain they will "open the door" to the complete relevant transcript.

For all these reasons, we urge the Court to strictly enforce the "scope of direct" of Agent Jones and not let the defendants debate him as to matters not within the scope of his direct testimony.

### Government's Notice of Intent to Pose Leading Questions as to Basis for Approximation of Fair Rental Value of 6001 Nevada Avenue

One aspect of Agent Jones's testimony will be to assign an approximate rental value to the accommodations provided by Douglas Jemal to Esherick at 6001 Nevada Avenue. Esherick paid no "rent" to Douglas Jemal in 2003 or 2004 (when he was received a purported salary of $66,000) per year; however, starting in 2005–after Jemal increased Esherick's salary to $300,000–Esherick started paying monthly rental checks to Douglas Jemal of $3,000 per month. This $3,000 amount is consistent with an undated lease that was located in the search calling for monthly rental payments in the amount of $3,000. Accordingly, the government intends to use $3000 per month to approximate the fair market rental value of 6001 Nevada Avenue.

This Court has excluded the evidence of certain "transactional" conduct of the defendants subsequent to 2003. The government thus seeks to elicit the $3000 per month rental value figure as follows:

> Q. Agent Jones, did you locate any checks payable from Esherick to Douglas Jemal in 2003 that would correspond to rent for 6001 Nevada Avenue?
>
> A. No.
>
> Q. On the basis of all the facts and circumstances, did you conclude that an approximate rental value to Mr. Esherick of 6001 Nevada Avenue in 2003 was approximately $3000 per month?
>
> A. Yes.

We note that if the defendants cross-examine this dollar figure, the government would be in its rights to elicit the more detailed evidentiary picture discussed above, including the fact that the $3000 amount was used because it corresponds to a 2005 (post-investigation) check from Esherick to Jemal. In the "meet and confer" held Monday, October 9, defense counsel appeared to agree in principle to this proposal. Nonetheless, because this implicates the "door opening" issues alluded to previously in this pleading, the government brings this issue to the Court's attention.

WHEREFORE, we request the Government's Motion be GRANTED.

By:

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____
Mark H. Dubester, D.C. Bar No. 339655
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 9th day of October, 2006, I caused to be served by electronic filing a copy of the foregoing motion to:

Michele A. Roberts, Esquire
Jeffery M. King, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_/s/ Mark H. Dubester_
Mark H. Dubester
Assistant United States Attorney