UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| v. | ) Crim. No. 05-359-1, -2, -3 (RMU) |
| DOUGLAS JEMAL, ET AL., | ) |
| Defendants. | ) |

**DEFENDANTS' RULE 29 MOTION TO DISMISS THE SCHEME
TO DEFRAUD THE DC GOVERNMENT OF MONEY ALLEGED IN COUNT THREE**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick, through counsel, hereby move this Court, pursuant to Federal Rule of Criminal Procedure 29(a), for a judgment of acquittal on the portion of Count Three of the Indictment alleging a scheme to deprive the DC Government of money. Defendants respectfully request oral argument on this motion. A proposed Order is attached.

Respectfully submitted,

Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

Michele A. Roberts
Jeffrey M. King
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: October 14, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No.  05-359-1, -2, -3 (RMU) |
| | ) | |
| DOUGLAS JEMAL, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RULE 29 MOTION TO DISMISS THE SCHEME TO DEFRAUD THE DC
GOVERNMENT OF MONEY ALLEGED IN COUNT THREE**

The government has charged that all of the transactions between Douglas Development Corporation ("DDC") alleged as "official acts" in its public corruption charges were also part of a mail fraud scheme to defraud the DC Government of money. The evidence is insufficient to sustain this charge. Specifically, the government failed to introduce evidence of any false representations in connection with the initial Addison Road lease or the 77 P Street leases. It also failed to prove that the leases at 77 P Street were above market. The leases thus cannot be part of a scheme to defraud the District of money. Michael Lorusso conceded that Douglas and Norman Jemal were not part of his so-called "special projects fund" related to allegedly false invoices, and the government produced no evidence that the Jemals knew about any alleged false invoices. Lorusso conceded that the two Addison Road invoices were not part of any scheme he had with Esherick, and the government failed to prove that those invoices were false, that the Jemals had any knowledge of the invoices, or that Esherick participated in creating any of the line items in the February 2002 Addison Road invoice that the government claims were in violation of the lease agreement. The government failed to prove any false

representations in connection with alleged delays in reimbursing the District for payments out of the tenant commission pool.

I. **COUNT THREE**

Count Three of the Indictment alleges that the Defendants engaged in a mail fraud scheme to obtain money from the DC Government. Indictment at 16 (¶ 2). Count Three does not allege any material false or fraudulent representations. Under the "description of the scheme" portion of the charge, Count Three incorporates by reference paragraphs fifteen and sixteen of Count One -- the paragraphs of the Bribery Conspiracy charge alleging the official acts and things of value at issue. Id. at 16-17 (¶ 4). Paragraph 16 of Count One lists the following official acts: (a) the initial Addison Road lease; (b) the attempted purchase of Addison Road; (c) attempting to purchase an abandoned firehouse (the government apparently abandoned this allegation, because it introduced no evidence related to this transaction); (d) 77 P Street leases; (e) four 77 P Street invoices and two Addison Road invoices; (f) causing payments from the commission pool for vendors at 77 P Street; and (g) taking steps to benefit Douglas Development in connection with routine issues (presumably the prosecution would agree that these steps did not include a loss of money to the DC Government, and thus are not part of the mail fraud scheme alleged in Count Three).

II. **ARGUMENT**

Count Three charges the Defendants with violating the federal mail fraud statute, which prohibits "devis[ing] or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . . 18 U.S.C. § 1341 (emphasis added). Count Three fails to specify any material false representations in connection with any of the official acts imported from Count One. The

government must allege and prove material falsehoods as essential elements of any mail fraud charge. Neder v. United States, 527 U.S. 1, 25 (1999). Accordingly, the Court should enter a judgment of acquittal on Count Three because the government has failed to prove essential elements of the offense.

It is well-settled that an indictment must set forth the essential elements of the offense and the factual allegations supporting those elements. See United States v. Pickett, 353 F.3d 62, 66 (D.C. Cir. 2004) ("[I]t is accepted law that an indictment 'must contain[] the elements of the offense intended to be charged.'") (quoting Russell v. United States, 369 U.S. 749, 763 (1962)); Williams v. District of Columbia, 419 F.2d 638, 648 (D.C. Cir. 1969) ("It is elementary that an indictment must set forth the elements of the offense to be charged, and if it does not a conviction based thereon cannot stand.") (quoting Walker v. United States, 342 F.2d 22, 26 (5th Cir. 1965) (quotation marks omitted)); United States v. Conlon, 481 F. Supp. 654, 669 (D.D.C. 1979) ("It is clear that to be sufficient, an indictment must set out the material elements of the offense, and the factual allegations supporting them.") (citations omitted). Moreover, "[w]hile an indictment or information which follows the language of the statute defining the offense is ordinarily sufficient, this is not the case if an essential element of the offense is not contained in the statutory language." Williams, 419 F.2d at 647.

In addition, as detailed below, the government has failed to prove that Defendants Douglas Jemal or Norman Jemal had knowledge of, or participated in, any potential false representations related to the official acts imported from Count One, and has failed to prove that certain other official acts involved any potential loss of money to the District.

    A.    **The Government Neither Alleged Nor Proved Any False Representations In Connection With The Addison Road Lease Or The 77 P Street Leases**

Defendants offered written lease documents to the DC Government to lease space at 77 P Street and Addison Road. The prosecution did not allege, or prove, that the Defendants made any false representations to the DC Government in connection with the leases. There was nothing false in the leases themselves, nothing hidden about their terms. Without material false representations, the leases cannot be part of a mail fraud scheme, and paragraphs 16(a) and 16(d) imported from Count One should be stricken from the scheme to defraud the DC Government of money alleged in Count Three.

    B.    **The Government Failed To Prove That The 77 P Street Leases Were Above Market Value**

Lorusso admitted that he did not negotiate the terms of the master lease at 77 P Street that became the economic template for subsequent leases at the property, that he did not negotiate the first Addendum to the master lease, and that the leases he did negotiate at 77 P Street were at similar, or perhaps better terms, than what the Staubach Company had negotiated as the tenant representative for the District:

> 23 Q. Okay. Now, is there a question in your mind when you were
> 24 negotiating with Blake for these leases that you were acting in
> 25 the interest of the District? I mean, were you selling the
> 1 District out in connection with these addenda?
> 2 A. No. The requirement was to place District agencies in
> 3 space.
> 4 Q. And you accomplished that, didn't you?
> 5 A. Yes.
> 6 Q. And you accomplished that at a minimum at terms either
> 7 similar or, perhaps, even a little better than Staubach terms?
> 8 A. That's correct. The reason for that was in order to be
> 9 followed by -- the contract to be valid through the master
> 10 lease the terms had to be substantially similar.

Tr. At 3467-68.  Without proof of above-market terms, the 77 P Street leases cannot be part of a mail fraud scheme to deprive the DC Government of money.

      **C.**    **Lorusso Testified That Douglas And Norman Jemal Were Not Part Of The Alleged Conspiracy To Submit False Invoices In Connection With The So-Called "Special Projects Fund"**

Paragraph 16(e) of Count One alleges that six different invoices were "fraudulent, excessive, duplicative, irregular, and otherwise unsupported."  Four of those invoices were for work at 77 P Street.  Lorusso contended that he conspired with Defendant Esherick to submit false invoices as part of his "special projects fund," but also conceded that Douglas and Norman Jemal had nothing to do with those invoices or the "special projects fund."

On cross-examination, Lorusso specifically testified that the only conspiracy in which he participated was the so-called "special projects fund" conspiracy with Blake Esherick.  Tr. 3350-51.  Although this story was completely implausible, it certainly had nothing to do with Douglas and Norman Jemal.  Indeed, Lorusso conceded that this so-called conspiracy was utterly inconsistent with the interests of Douglas Development, and therefore necessarily inconsistent with the interests of Douglas and Norman Jemal.  Tr. 3352-53.

Based on this testimony, no reasonable juror could conclude that Douglas and Norman Jemal entered into a scheme to defraud the DC Government of money in connection with any purportedly fraudulent invoices.  The government failed to introduce evidence that Douglas or Norman Jemal reviewed invoices as a general practice.  Indeed, the government failed to produce evidence that Douglas Jemal knew about, or participated in the creation of, a single invoice -- let alone these allegedly fraudulent invoices.

**D. Lorusso Conceded That The Addison Road Invoices Were Not Part Of An Attempt To Defraud, And The Government Did Not Prove That Any Of The Defendants Participated In Creating False Invoices**

The remaining two invoices identified in Paragraph 16(e) of Count One as "fraudulent, excessive, duplicative, irregular, and otherwise unsupported" were for work at Addison Road. Lorusso conceded that the Addison Road invoices were not part of any scheme to defraud the District:

> Q. Now, I believe in your direct testimony with the
> 17 prosecutor you were shown some invoices that reflect work that
> 18 was done at Addison Road.
> 19 Do you recall that?
> 20 A. Yes.
> 21 Q. Now, you have no personal knowledge whether or not those
> 22 invoices are accurate or not, do you?
> 23 A. No. I didn't personally receive them, I didn't think, nor
> 24 did I go and verify them.
> 25 Q. And certainly consistent with your testimony, the invoices
> 1 relating to the work at Addison Road were in no way, shape or
> 2 form part of any agreement on your part to defraud the District
> 3 of Columbia? 4
> A. I did not think that they were an effort to defraud, no.
> 5 Q. And you certainly were not participating with those
> 6 invoices in any effort to defraud the District of Columbia,
> 7 were you?
> 8 A. Not on those invoices, no.

Tr. 3459-60.

The government did not introduce any independent evidence that those invoices were intentionally fraudulent. The government suggested that the invoices charged for fencing that the landlord should have paid for under the lease, and charged for minor areas of patch paving on a section of the property that might not have been part of the District's rented area. However, the government introduced no evidence that any of the Defendants participated in the preparation of the invoice that charged for fencing or brick removal, and failed to produce any evidence that the

invoices were submitted intentionally to overcharge the District for this work.  Accordingly, the Addison Road invoices cannot be part of any scheme to defraud the DC Government of money.

      **E.**      **There Were No False Representations In Connection With Payments From The Tenant Commission Pool**

Both Ken Kauffman and Michael Lorusso testified that it was Kauffman, not any one at Douglas Development, who pushed to have 77 P Street vendors paid from Staubach's tenant representation pool.  Dave Medding testified that Blake Esherick always intended to repay the district.  Tr. 936.  There is no evidence of any false representations in connection with the commission pool payments.  Accordingly, the commission pool payments cannot be part of a scheme to defraud the DC Government of money.

**III.   CONCLUSION**

For the foregoing reasons, the Court should enter a judgment of acquittal on scheme to defraud the DC Government of money in Count Three of the Indictment.

      Respectfully submitted,

      _____
      Reid H. Weingarten (D.C. Bar #365893)
      Brian M. Heberlig (D.C. Bar #455381)
      Steptoe & Johnson LLP
      1330 Connecticut Avenue, N.W.
      Washington, D.C.  20036-1795
      (202) 429-3000

      Michele A. Roberts
      Jeffrey M. King
      Akin Gump Strauss Hauer & Feld LLP
      1333 New Hampshire Avenue, N.W.
      Washington, D.C.  20036
      (202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: October 14, 2006