UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES, ) | |
| ) | |
| v. ) | Crim. No. 05-359-1, -2, -3 (RMU) |
| ) | |
| DOUGLAS JEMAL, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO STRIKE TESTIMONY SUGGESTING
THAT SEC DETERMINED LORUSSO HAD NOT BROKEN THE LAW,
AND TO PROHIBIT SUCH ARGUMENT IN GOVERNMENT'S REBUTTAL**

After cross examination demonstrating that Michael Lorusso had defrauded investors and committed perjury before the SEC, Government counsel began redirect examination with a series of questions designed to create the inaccurate impression that the SEC had concluded that Lorusso had not committed securities fraud:

> REDIRECT EXAMINATION BY MR. LYNCH:
>
> 25 Q. Good morning, Mr. Lorusso.
>
> 3601
>
> 1 A. Good morning, sir.
> 2 Q. Do you recall we spent a considerable amount of time
> 3 talking about Resource F and Dexter Wadsworth?
> 4 A. Yes.
> 5 Q. In fact, it seemed like two days.
> 6 A. Yes.
> 7 Q. I want to talk to you about that a little bit. First of
> 8 all, the lawyers, you were interviewed by SEC attorneys; is that
> 9 correct?
> 10 A. That is correct.
> 11 Q. They seemed competent to you?

12 A. Yes.
13 Q. They knew the facts?
14 A. Yes.
15 Q. In fact, they knew the documents?
16 A. Yes
17 Q. In fact, they knew, at least in the first deposition, they
18 knew even better than you, is that fair to say?
19 A. That's fair to say.
20 Q. And the SEC is the Securities & Exchange Commission; is
21 that right?
22 A. That's correct.
23 Q. And they're the folks with expertise in securities law?
24 A. Far greater than mine.
25 MR. WEINGARTEN: A little less leading, please.

3602

1 THE COURT: Try not to lead too much, Mr. Lynch.
2 BY MR. LYNCH:
3 Q. Are you aware of some of the powers that the SEC has to
4 bring civil suits or administrative actions?
5 A. Yes.
6 Q. Okay. And are you aware of the SEC's power to bar someone
7 from the securities business, doing any work in connection with
8 securities work?
9 A. Yes, I am.
10 Q. And are you aware of the SEC's powers to seek civil fines
11 from people the SEC believes have violated securities laws?
12 A. Yes, I am.
13 Q. And how many times were you deposed by lawyers from the
14 SEC?
15 A. Twice. Once in Boston, and once in Washington, D.C. at the
16 headquarters.
17 Q. At the headquarters in Washington, D.C.?
18 A. Yes.
19 Q. Did the SEC ever ask to depose you again, a third time?
20 A. No, they did not.
21 Q. Did the SEC ever ask you to provide any additional
22 documents to help them understand what if anything you had done?
23 A. No. Their records seemed quite complete. They did not
24 make that request.
25 Q. Okay, Mr. Lorusso. How many times did the SEC file a civil

```
       3603

       1 suit against you for violating securities laws?
       2 A. None was ever filed that I'm aware of.
       3 Q. Well, surely they must have brought an administrative
       4 action against you to bar you from the securities business?
       5 MR. KEMP: Objection to the form of the question.
       6 THE COURT: Sustained.
       7 BY MR. LYNCH:
       8 Q. How many times did the SEC bring an action against you to
       9 bar you from doing any work in securities business?
       10 A. That never occurred.
       11 Q. How many times did the SEC seek fines against you for all
       12 of these violations of the securities laws?
       13 A. There were no violations that I was aware of.
```

Tr. 3600-03.

      This redirect examination improperly suggested that the SEC and its attorneys had fully investigated Lorusso's dealings with investors, and had concluded that he committed no wrong. In effect, the Government introduced hearsay testimony through this line of questioning. Lorusso's testimony was tantamount to saying: "the SEC attorneys who investigated me told me that I had done nothing wrong."

      Not only was this testimony inadmissible hearsay, it was factually inaccurate, and Government counsel should have known it. In truth, Lorusso lied to the SEC, denied under oath his business relationship with Dexter Wadsworth, and never revealed that he had sent $20,000 from Deborah Koepper and hundreds of thousands of dollars from other investors to a Swiss bank account. There is nothing in the transcripts of Lorusso's SEC testimony to suggest that SEC counsel knew the full scope of his criminal conduct. In addition, the transcript of his second SEC deposition strongly suggests that the SEC attorney questioning him believed Lorusso was lying.

SEC attorney Stephen Y. Quintero first deposed Lorusso on March 23, 2001. Quintero's focus was on Lorusso's employer, Charles Dyer, and a fund Dyer was running with Valdemar VonStrasdas called "Resource F." Quintero asked Lorusso about a meeting with Dexter Wadsworth attended by Lorusso and Dyer in October, 1999. Lorusso lied to Quintero, denying that Wadsworth was running a fund, and denying that there was ever any "consummation" with Wadsworth:

> Was there any discussion of a fund that Mr. Wadsworth was starting up?
> A. **Mr. Wadsworth doesn't have a fund** but there was some discussions with regards to Mr. Bathhurst directing money for some investment but there was no consummation or . . .
> Q. How do you know there was no consummation?
> A. There was no consummation with regards to Dexter.
> Q. And how do you know that?
> A. Because he kept calling, saying, you know, they would–
> Q. Mr. Wadsworth kept calling?
> A. Yes.
> Q. Okay, and where was the money supposed to go?
> A. I don't know.[1]

There is nothing in Lorusso's SEC deposition transcripts to indicate that Lorusso ever produced to the SEC emails from his D.C. Government computer that proved Lorusso "consummated" his relationship with Wadsworth by channeling hundreds of thousands of dollars to a Swiss bank account.

During that first deposition, Lorusso lied repeatedly in an attempt to conceal that he had entered a direct relationship with investor Deborah Koepper independent of his employment relationship with Dyer. At the time of his first SEC testimony, Deborah Koepper was threatening

---

[1] Testimony of Michael Lorusso, March 23, 2001, at 27-28 (emphasis added), attached as Exhibit 1.


to go to federal authorities, and Lorusso was lulling her with false promises that he would repay her. When confronted with a wire transfer from his personal bank account to an entity named Wall Street South associated with VonStrasdas, Lorusso first claimed that he could not remember the transaction and did not remember who controlled Wall Street South:

> Q. Do you routinely forget what you did with 45,000?
> A. No I don't.
> Q. What was the purpose of wiring it, then, to Wall Street South?
> A. Again, I don't recollect, I would have to review my records. . . . In my opinion, this is not a Resource F transaction and I am not prepared at this time to speak to that.[2]

For over ten pages of the transcript, Lorusso claimed that he did not remember who he wired $45,000 to:

> I have no knowledge of whose control Resource F South–Wall Street South is. I'm sorry."
> Q. Do you make it a practice of wiring funds to accounts which you don't know who it belongs to.?
> A. That's a flip answer and no, I don't.[3]

Confronted with a document that showed VonStrasdas controlled Wall Street South, Lorusso suddenly offered "conjecture" that he wired the $45,000 after conversations with VonStrasdas. "I think it was derived from discussions with VonStrasdas, again, particular to the winding down of the Dyer fund but that would be conjecture."[4]

---

[2] Lorusso Testimony 3/23/01 at 148, attached as Exhibit 1.

[3] Lorusso Testimony 3/23/01 at 151, 147-159, attached as Exhibit 1.

[4] Lorusso Testimony 3/23/01 at 160-61, attached as Exhibit 1.

Lorusso then said that the $45,000 was his own money, and claimed that he had been embarrassed that he had made a $45,000 investment, because he had lost the money. "I have to also state that my hesitation is more of embarrassment than it is of trying to provide obstacles to you in your investigation of Mr. Dyer."[5]

On June 21, 2002, Lorusso gave deposition testimony again, in connection with an SEC enforcement proceeding against Dyer, Eric Resteiner (who pled guilty to running a Ponzi scheme with money he received from Dyer and VonStrasdas), and others. Forced to admit that he had received the $45,000 from Deborah Koepper, Lorusso stuck to a perjurious story that he had forgotten that the $45,000 he wired from his personal bank account in January, 2000, was money that belonged to Deborah Koepper:

> Since that time, I've been able to discern that it was not in fact my personal money, but it was money given to me by Deb Koepper.[6] . . .
>
> [A]t the time I believed, again, without the benefit of my records, it was my personal money.
> Q. What type of investments do you have–did you have at that time, Mr. Lorusso?
> A. I don't have any investments.
> Q. So a 45,000-dollar investment would have been somewhat unusual for you; is that correct?
> A. Yes.[7] . . .

---

[5]Lorusso Testimony 3/23/01 at 160, 164, attached as Exhibit 1.

[6]Lorusso Testimony 6/21/02 at 109, attached as Exhibit 2.

[7]Lorusso Testimony 6/21/02 at 110-11, attached as Exhibit 2.

Q. At the time of the deposition in March of 2001, had you forgotten about Deborah Koepper?
A. Define, forgot.[8] . . . .

---

[8]Lorusso Testimony 6/21/02 at 114, attached as Exhibit 2.

> It was the end of a long deposition. There was [sic] many discussions where I asked for time to relax and think about this. I was denied the ability to look at my records, which were not there. I have subsequently recalled that this is Deborah Koepper's money.[9]

Because Lorusso had concealed his relationship with Wadsworth in his first SEC testimony, and because the SEC apparently did not know about Lorusso's investing hundreds of thousands of dollars of other people's money in a scheme independent of Dyer and VonStrasdas, Lorusso was not questioned by the SEC about stealing $10,000 out of the $100,000 he had received from the Zagarellas. The SEC did not ask him about failing to repay Koepper her additional $20,000 investment that he wired to Switzerland.

Defense counsel does not currently know whether SEC counsel did not pursue Lorusso because they did not know the extent of his criminal conduct, because they thought he was a small fish, or because they thought the U.S. Attorney's Office for the District of Columbia would hold him responsible for his Ponzi scheme and perjury. But two things are certain: first, there is no basis in the record of Lorusso's testimony to believe that SEC counsel knew the full extent of his crimes, or believed that he was telling truth; and second, this Court cannot allow an Assistant U.S. Attorney to vouch for the credibility of Lorusso's SEC testimony in this courthouse.

Accordingly, Defendants ask the Court to strike Lorusso's testimony at Transcript 3601:2-3603:13. Defendants ask that the Court give the following supplemental instruction with the final instructions to the jury:

> Ladies and gentlemen, government counsel asked Mr. Lorusso a series of
> questions about the fact that the Securities and Exchange commission had not

---

[9] Lorusso Testimony 6/21/02 at 116, attached as Exhibit 2.

>brought any enforcement actions against him. I have stricken that testimony from the record, and I instruct you to disregard it.

Defendants also ask that the Court forbid Government counsel in rebuttal close from vouching for the truthfulness of Lorusso's SEC testimony, or arguing that the SEC did not bring any proceedings against him.

        Respectfully submitted,

        Reid H. Weingarten (D.C. Bar #365893)
        Brian M. Heberlig (D.C. Bar #455381)
        Steptoe & Johnson LLP
        1330 Connecticut Avenue, N.W.
        Washington, D.C. 20036-1795
        (202) 429-3000

        Michele A. Roberts
        Jeffrey M. King
        Akin Gump Strauss Hauer & Feld LLP
        1333 New Hampshire Avenue, N.W.
        Washington, D.C. 20036
        (202) 887-4306

        Christopher B. Mead
        London & Mead
        1225 19th Street, N.W.
        Suite 320
        Washington, D.C. 20036
        (202) 331-3334

| Counsel for | | Counsel for |
|---|---|---|
| Douglas Jemal | | Stanley M. Ross |
| Brand Nabatoff Law Group | | The Brand 923 Fifteenth Street, N.W. |

| | |
|---|---|
| D.C. 20005 | Washington, |
| 9700 | (202) 662- |
| Norman Jemal | Counsel for |

Paul Kemp
Carol Elder

Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Bruce

Blake Esherick

Dated: October 20, 2006