## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.  05-0359-1, -3 (RMU)** |
| | ) | |
| **DOUGLAS JEMAL**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |

## DEFENDANTS' MOTION FOR A
## <u>NEW TRIAL ON COUNT FOUR OF THE INDICTMENT</u>

Defendants Douglas Jemal and Blake Esherick ("Defendants"), through counsel, hereby move this Court, pursuant to Federal Rule of Criminal Procedure 33, for an order setting aside the verdict and granting Defendants a new trial in the interest of justice on Count Four of the Indictment.  Defendants respectfully request oral argument on this motion.  A proposed Order is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Jeffrey M. King
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  November 15, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
UNITED STATES                        )
                                     )
        v.                           )        Crim. No.  05-359-1, -3 (RMU)
                                     )
DOUGLAS JEMAL, *et al.*,             )
                                     )
        Defendants.                  )
_____ )

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR A NEW TRIAL ON COUNT FOUR OF THE INDICTMENT

Reid H. Weingarten
Brian M. Heberlig
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Jeffrey M. King
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Paul Kemp                        Christopher B. Mead
Carol Elder Bruce                London & Mead
Venable LLP                      1225 19th Street, N.W., Suite 320
575 7th Street, N.W.             Washington, D.C.  20036
Washington, D.C.  20004          (202) 331-3334
(202) 344-4400

Counsel for Blake Esherick       Counsel for Douglas Jemal

Dated:  November 15, 2006

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT ................................................................................................1

    A.    Applicable Legal Standard........................................................................1

    B.    The Erroneous "Claim of Right" Jury Instruction Requires A New Trial...............2

        1.    Background ...........................................................................3

        2.    A New Trial Is The Proper Remedy To Cure Erroneous Jury Instructions...............................................................................6

        3.    The "Claim Of Right" Instruction Was Unsupported By The Evidence...............................................................................7

        4.    The Written "Claim Of Right" Instruction Contained An Erroneous Statement Of Law That Substantially Undermined The Defense...............8

    C.    The Prosecutor's Improper Propensity Argument Requires A New Trial............12

        1.    Background ...........................................................................13

        2.    The Prosecutor's Propensity Argument In Rebuttal Was Severe Misconduct That Caused Substantial Prejudice.........................16

III.  CONCLUSION..............................................................................................20

I.     **INTRODUCTION**

The Court should set aside the verdict and grant Defendants Douglas Jemal and Blake Esherick ("Defendants") a new trial in the interest of justice.  First, the "claim of right" instruction was unsupported by the evidence and interjected a confusing issue that should not have been before the jury.  This error was compounded by the fact that the written "claim of right" instruction inadvertently contained a paragraph that the parties had agreed was an erroneous statement of law, which completely undermined Defendants' theory of defense on Count Four.  Second, despite a pretrial warning from the Court, the prosecutor made an improper propensity argument in his rebuttal summation that invited the jury to cumulate the evidence on all three sets of counts and convict Defendants of the MTD wire fraud count if it concluded that Mr. Esherick falsified his tax returns.  The prosecutor's argument was severe misconduct that caused substantial prejudice to Defendants given the weakness of the evidence on Count Four.  Either of these errors, as well as the fact that the verdict was against the weight of the evidence (see accompanying motion), warrants a new trial in this case.  Considered together, they demonstrate conclusively that a new trial is required to prevent a serious miscarriage of justice.

II.     **ARGUMENT**

A.     **Applicable Legal Standard**

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  It is within the trial court's sound discretion whether to grant a motion for a new trial.  See United States v. Dale, 991 F.2d 819, 838 (D.C. Cir. 1993).  The standard for granting a new trial is less stringent than the standard for a judgment of acquittal under Rule 29, where the court must view the evidence "'in the light most favorable to the prosecution' and determine 'whether [it] could

reasonably support a finding of guilt beyond a reasonable doubt.'" <u>United States v. Rogers</u>, 918

F.2d 207, 213 (D.C. Cir. 1990) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-319 (1979))

(alteration in original).  Instead, in considering a motion under Rule 33, "the power of the Court

is much broader." <u>United States v. Robinson</u>, 71 F. Supp. 9, 10 (D.D.C. 1947).  "[T]he Court

'weighs the evidence and evaluates the witnesses' credibility and decides whether a serious

miscarriage of justice may have occurred." <u>United States v. Neill</u>, 964 F. Supp. 438, 441

(D.D.C. 1997) (quoting <u>Rogers</u>, 918 F.2d at 213) (internal quotation marks omitted).  If the court

finds that the evidence "'preponderate[s] heavily against the verdict, such that it would be a

miscarriage of justice to let the verdict stand,'" a new trial must be granted.  <u>United States v.</u>

<u>Walker</u>, 899 F. Supp. 14, 15 (D.D.C. 1995) (citation omitted), <u>aff'd</u>, 99 F.3d 439 (D.C. Cir.

1996); <u>see also</u> <u>United States v. Ferguson</u>, 246 F.3d 129, 134 (2d Cir. 2001) ("The ultimate test

on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. . . .

The district court must examine the entire case, take into account all facts and circumstances, and

make an objective evaluation.").

    **B.**    <u>**The Erroneous "Claim of Right" Jury Instruction Requires A New Trial**</u>

        Defendants are entitled to a new trial because the "claim of right" instruction was

unsupported by the evidence and erroneous.  Because Defendants never pursued a "claim of

right" defense to the MTD charge, the "claim of right" instruction was confusing and interjected

an issue that should not have been before the jury.  To make matters worse, the written "claim of

right" instruction relating to Count Four inadvertently contained a paragraph that the parties had

agreed was an erroneous statement of law.  The erroneous instruction vitiated Defendants' theory

of defense by permitting a conviction even if the jury believed Defendants did not intend to harm

Joe Cayre or Morgan Stanley in connection with the MTD transaction. Accordingly, the Court should grant a new trial in the interest of justice.

### 1.    Background

The government first raised this issue in a motion in limine seeking to preclude Defendants from raising a "claim of right defense" to the fraud charges in the case. Government's Motion In Limine To Preclude Defendants From Mounting Claim-Of-Right Defense To Fraud Charges (July 10, 2006). In opposition, Defendants contended that the cases cited by the government involved situations in which defendants engaged in fraud as self-help to collect an unrelated debt or made post-hoc "set-off" claims in an effort to justify fraud -- misguided defenses that Defendants had no intention of raising in this case. Defendants' Opposition To The Governments Motion In Limine To Preclude Defendants From Mounting Claim Of Right Defense To Fraud Charges (July 17, 2006). On August 8, 2006, the Court granted the motion but stated:

> The defendants say they are not going to contend at trial that it was
> permissible to submit a fraudulent invoice on one transaction
> because the D.C. government owed DDC money from a different
> transaction. The defense insists it wants to be able to introduce
> relevant evidence and, of course, that is the defense's right. But as
> to a defense based on a claim of right, I think the defense
> understands, as does the government, that that is impermissible.

Transcript of August 8, 2006 Hearing at 18.

The government also submitted a proposed "claim of right" jury instruction with the Joint Pretrial Statement, to which Defendants objected. On August 24, 2006, the Court held: "The defendants' objection to the government's proposed instruction 6.5 [regarding claim of right] is sustained, although the court does recognize that 'claim of right' is not a defense cognizable in this case." Order at 5 (Aug. 24, 2006).

During the trial, Defendants did not pursue any "claim of right" defense. With respect to the MTD charge (Count Four), Defendants contended that they were entitled to the commission sought by the MTD invoice and merely used MTD as the vehicle to obtain the commission to avoid the historic disputes between Douglas Jemal and Joe Cayre over fees and leasing commissions. Defendants further contended that they honestly believed they were entitled to the money and that the inaccuracies were immaterial in light of Mr. Cayre's agreement to pay 6% leasing commissions on the 77 P Street project to Douglas Development or any other broker.

Nonetheless, on October 17, 2006, during the jury instructions conference, counsel learned that the Court had decided to instruct the jury on the claim of right defense. That evening, Defendants filed a pleading objecting to the claim of right instruction as unsupported by the evidence at trial. Defendants' Objection To Government's Claim Of Right Jury Instruction In Light Of Evidence At Trial, Or, In The Alternative, Motion To Amend Proposed Instructions (Oct. 17, 2006). As an alternative, and only if the Court decided to instruct on this issue, Defendants asked the Court to reject the government's proposed instruction as an incorrect statement of law and give a substitute instruction. Id. Defendants' proposed instruction contained the statement: "However, if a defendant knowingly submits an inaccurate or misleading invoice honestly believing that the inaccuracies are not material and that he would be entitled to receive the money even if the invoice was accurate, he is not guilty of wire or mail fraud." Id. at 7. On October 18, 2006, the Court held that it would instruct the jury on the "claim of right" issue using Defendants' proposed language, with the exception of the sentence quoted above -- the critical sentence from Defendants' point of view. Order (Oct. 18, 2006).

When the Court instructed the jury on October 18, 2006, the Court gave an

instruction relating to Count Four and the claim of right issue that neither party had requested or

anticipated:

> A claim of right to money or property obtained or sought to
> be obtained by fraud is not a defense to mail fraud or wire fraud;
> that is, a defendant may not resort to fraud to collect a preexisting
> debt.  Thus, even if a person or entity owes a defendant money, a
> defendant is not allowed to obtain that money in a separate
> transaction by the commission of acts that constitute mail fraud or
> wire fraud.  And, if he does so, he's guilty of those offenses
> regardless of any claim he had to the preexisting debt.  In other
> words, if a defendant believes that he is owed money from a
> company, he's not allowed to submit a fraudulent invoice to that
> company in an unconnected transaction in order to collect
> preexisting debt.  And, good faith is always a complete defense.

> *There is another consideration to bear in mind in deciding*
> *whether or not a defendant acted in good faith.  You are instructed*
> *that if the defendant participated in the scheme to defraud, then a*
> *belief by the defendant, if such belief existed, that ultimately*
> *everything would work out so that no one would lose any money*
> *does not require a finding by you that the defendant acted in good*
> *faith.  If a defendant participated in the scheme for the purpose of*
> *causing come financial or property loss to another, then no*
> *amount of honest belief on the part of the defendant that the*
> *scheme would, ultimately make a profit for the investors, will*
> *excuse fraudulent actions or false representations by him.*

Tr. 4324-25 (italicized portion not requested by parties).

At the conclusion of the Court's instructions, Defendants renewed their objection

to the claim of right instruction.  Tr. 4345.  Defendants also specifically objected to the italicized

portion of the Court's instruction as an incorrect statement of law that was held to be reversible

error in one of the leading "claim of right" cases.  See Tr. 4347-53.  Over a break, the parties

agreed upon a curative instruction.  See Tr. 4356-57.  The Court proceeded to re-read the first

paragraph, inserting the following sentence between the original fourth and fifth sentences:

"However, if a defendant knowingly submits an inaccurate or misleading document, honestly

believing that the inaccuracies are not material, and that he did not intend to defraud, as I have used that term, he is not guilty of mail or wire fraud." Tr. 4361. The Court omitted the second paragraph that had contained the erroneous statement of law.

Pursuant to its normal practice, the Court provided a written copy of the instructions to the jurors for their deliberations. See Ex. A (jury instructions relating to Count Four). Apparently through inadvertent error, the paragraph that the parties had agreed contained an erroneous statement of law was not deleted from the written instructions relating to Count Four. Specifically, after the first paragraph regarding the "claim of right" defense, the second paragraph remained, including the erroneous statements of law that (a) "a belief by the defendant . . . that ultimately everything would work out so that no one would lose any money" is not good faith, and (b) "no amount of honest belief on the part of the defendant that the scheme would (e.g., ultimately make a profit for the investors) will excuse fraudulent actions or false representations by him." Ex. A (pp. 70-72).[1]

### 2. A New Trial Is The Proper Remedy To Cure Erroneous Jury Instructions

"Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial," including erroneous instructions to the jury. 3 Charles Alan Wright et al., Federal Practice & Procedure Crim. 3d § 556 (3d ed. 2004); see also United States v. Guthrie, 814 F Supp. 942, 947 (E.D Wash. 1993) ("A district court can grant a new trial to

---

[1] Defense counsel spoke with the Court's clerks and were assured that the erroneous statement of law would be removed from the written instructions provided to the jury. Given this flurry of activity in the final days of trial, it appears that it was merely an oversight that the paragraph was not excised from the written instructions. Defendants did not discover the error until receiving a copy of the written instructions from the Court after the verdict.

cure improper instructions."), aff'd, 1996 U.S. App. LEXIS 19741 (9th Cir. Aug. 2, 1996).

Courts have granted new trials on this basis when the instructions had the potential to prejudice

the defendant or might have been confusing to the jury.  See United States v. Simms, 508 F.

Supp. 1188, 1209 (W.D. La. 1980) (granting new trial on basis that written instructions

submitted to jury may have "created a condition from which prejudice to the defendant may have

resulted"); United States v. Vicaria, 12 F.3d 195, 199 (11th Cir. 1994) (upholding district court's

order for new trial because failure to give theory of defense instruction may have confused the

jury).

            The Court should grant a new trial in this case because the "claim of right" jury

instruction was unsupported by the evidence, and the written instruction contained an erroneous

statement of law that undermined Defendants' principal defense to the MTD charge.


            3.      The "Claim Of Right" Instruction Was Unsupported By The
                    Evidence

            The Court should grant a new trial because the "claim of right" instruction was

unsupported by the evidence and confusing.  The "claim of right" cases upon which the

government based its request for the instruction involved situations where a defendant submitted

a fraudulent invoice on one transaction but argued that he was not guilty because he was owed

the money from a different transaction, or frauds perpetuated to collect otherwise uncollectible

debts.  Defendants never pursued such a "claim of right" defense.  The "claim of right"

instruction was therefore unnecessary and had significant potential to mislead and confuse the

jury about an issue that was not fairly raised by the evidence.  See United States v. Amerson, 938

F.2d 116, 119 (8th Cir. 1991) ("It is well established that an instruction should not be given if it

lacks evidentiary support.").

The text of the "claim of right" instruction stated, among other things, that (a) "a defendant may not resort to fraud to collect a pre-existing debt," (b) "if a person or entity owes a defendant money, a defendant is not allowed to obtain that money in a separate transaction" involving fraud, and (c) "if a defendant believes that he is owed money from a company, he is not allowed to submit a fraudulent invoice to that company in an unconnected transaction in order to collect the pre-existing debt." Tr. 4361. The evidence simply did not justify this instruction. With respect to the MTD transaction, Defendants consistently maintained that they were entitled to the money at issue in that transaction -- not that the MTD invoice was part of a separate transaction used to collect a pre-existing debt. For these reasons, and those set forth in Defendants' prior briefs on this issue, the Court should grant a new trial on Count Four because the "claim of right" instruction was unsupported by the evidence and interjected an issue that had the potential to confuse the jury.

### 4. The Written "Claim Of Right" Instruction Contained An Erroneous Statement Of Law That Substantially Undermined The Defense

In addition to being unsupported by the evidence, the written "claim of right" instruction related to Count Four contained an erroneous statement of law. The government conceded as much by agreeing that a curative instruction was necessary. Tr. 4357. The erroneous statement of law that inadvertently remained in the written instructions completely undermined Defendants' theory of defense, causing substantial prejudice that requires a new trial. See United States v. Wasserson, No. Crim. 03-110, 2004 WL 433824, at *2 (E.D. Pa. Jan. 12, 2004) (granting a new trial where the government submitted proposed instructions in hard copy and on disk, the parties agreed upon revisions to the hard copy version, the court made the revisions on the disk, and unbeknownst to the court and parties, the version of the instructions on

the disk omitted an important element of the offense), rev'd in part on other grounds, 418 F.3d

225 (3d Cir. 2005).

The virtually identical jury instruction was held to be reversible error in United

States v. Rossomando, 144 F.3d 197 (2d Cir. 1998).  In that case, the defendant was charged

with mail fraud based on an alleged scheme to understate his income to obtain benefits from a

pension fund to which he would not have been entitled had he accurately reported his income.

The defendant firefighter received disability payments from a pension fund that limited the

amount of outside income a recipient could earn.  The defendant intentionally understated his

outside income to the pension fund, but contended that he had completed the forms in a hurry,

and "based on his mistaken understanding of the applicable [outside income limits] -- allegedly

gained from speaking to union personnel and other Fire Department employees -- he believed

that his outside earnings did not even approach, much less exceed, the level at which the Pension

Fund would be entitled to reimbursement."  Id. at 198.

Although the jury instructions properly indicated that good faith was a complete

defense to mail fraud, the good faith instruction was qualified by the statement:

> "In considering whether or not the defendant acted in good faith,
> you are instructed that *a belief by the defendant, if such a belief
> existed, that ultimately everything would work out so that no one
> would lose any money does not require a finding by you that he
> acted in good faith.  No amount of honest belief on the part of the
> defendant that the scheme would not ultimately result in a financial
> loss to the New York City Fire Department or its Pension Fund
> will excuse fraudulent actions or false representations by him to
> obtain money*, provided, of course, that the government proves
> beyond a reasonable doubt that the defendant acted with the
> specific intent to defraud."

Id. at 199 (emphasis alteration in original) (citation omitted).  The court held that this instruction

was plain error that required a new trial.

- 9 -

The court noted that the instruction at issue should be reserved for cases like the use of a fraudulent application to obtain a loan that the defendant honestly intends to repay, where "the fact that the defendant believes (rightly or wrongly) that he will 'ultimately' be able to work things out so that the victim suffers no real loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct." Id. at 201.  In the normal case, however, the instruction created "a substantial risk that the jury could have been confused into believing that the government was not required to prove that [the defendant] intended to harm the [alleged victim]." Id. at 202.

Here, the paragraph erroneously included in the written instructions was more confusing and detrimental to Defendants' theory of the defense than the instruction held to be plain error in Rossamando.  In defense of Count Four, Defendants maintained that they were entitled to the commission at issue and submitted the invoice on MTD letterhead simply to avoid Joe Cayre hassling Douglas Development over commissions to which it was entitled. Defendants also contended that the Morgan Stanley loan agreement did not prohibit the MTD payment, and that they did not contemplate any harm to Morgan Stanley in connection with the transaction.  The curative instruction given at the close of the instructions addressed these issues by stating that "if a defendant knowingly submits an inaccurate or misleading document honestly believing that the inaccuracies are not material, and that he did not intend to defraud . . ., he is not guilty of wire fraud." Ex. A (p. 71).  Yet immediately following that statement, the written "claim of right" instruction contained a contradictory statement that "a belief by the defendant . . . that ultimately everything would work out so that no one would lose any money does not require a finding by you that the defendant acted in good faith." Id. (emphasis added).  This

instruction permitted the jury to convict Defendants without finding that they intended to harm Joe Cayre or Morgan Stanley.

The written instruction further stated: "If the defendant participated in the scheme for the purpose of causing some financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme would (e.g., ultimately make a profit for the investors) will excuse fraudulent actions or false representations by him." Ex. A (pp. 71-72). This instruction was confusing because there was never any suggestion that the alleged scheme was designed to make a profit for investors. Moreover, the instruction was worded so that making a profit for investors was merely an example -- "e.g." -- of the type of honest belief by a defendant that would not excuse fraud. The instruction essentially permitted the jury to "fill in the blank" and conclude that any honest belief by Defendants suggesting a good motive or lack of intent to harm could not excuse fraudulent actions or false statements. The jury could well have accepted that Defendants honestly believed they were entitled to the money from Joe Cayre and Morgan Stanley and did not intend to harm them, but nonetheless convicted Defendants because of the erroneous instruction that no amount of such an "honest belief" by Defendants excused a false statement.

Defendants are entitled to a new trial due to the prejudice caused by the inclusion of the erroneous instruction. The D.C. Circuit has long held that "[i]f a charge to a jury, considered in its entirety, correctly states the law, the incorrectness of one paragraph or one phrase standing alone ordinarily does not constitute reversible error; but it is otherwise if two instructions are in direct conflict and one is clearly prejudicial, for the jury might have followed the erroneous instruction." McFarland v. United States, 174 F.2d 538, 539 (D.C. Cir. 1949) (reversing defendant's conviction for making false statements in a divorce proceeding because

court gave erroneous instruction defining domicile, which contradicted the correct definition given later in the instructions) (citations omitted) (emphasis added); see also Green v. United States, 405 F.2d 1368, 1370 (D.C. Cir. 1968) (defendant's first degree murder conviction reversed due to improper malice instruction because "we cannot know whether the jury were guided by the correct or the incorrect portions of the instructions."). Other circuits have similarly held that "'[a] correct instruction does not cure the error in giving another inconsistent one'" and requires reversal of a conviction to which the instructions apply. United States v. Panter, 688 F.2d 268, 270 (5th Cir. 1982) (citation omitted); United States v. Varner, 748 F.2d 925, 927 (4th Cir. 1984) ("Where two instructions are in conflict, and one is an incorrect statement of the law and is clearly prejudicial, the charge constitutes reversible error, since the jury 'might have followed the erroneous instruction.'") (citing and quoting United States v. Walker, 677 F.2d 1014, 1016-17 n.3 (4th Cir. 1982)).

The written jury instruction undermined Defendants' theory of the defense and there is no way to conclude that the jury did not follow the erroneous written instruction on this central issue. Accordingly, the Court should grant Defendants a new trial on Count Four in the interest of justice.

C.    **The Prosecutor's Improper Propensity Argument Requires A New Trial**

The Court should also grant Defendants a new trial on Count Four because the prosecutor made an improper propensity argument in his rebuttal closing that unfairly invited the jury to cumulate the evidence on all charges to reach guilty verdicts. This misconduct was particularly egregious in this case because the Court had warned the prosecutor not to make such an argument and Defendants had consistently expressed concern that holding a single trial on the three sets of charges -- the Public Corruption Counts, Wire Fraud Count and Tax Evasion Counts

-- created a significant risk of prejudicial spillover of evidence and a compromise verdict. Moreover, the prosecutor admitted that he intended to invite the jury to convict Defendants on the Wire Fraud Count if it concluded that Mr. Esherick falsified his tax return. In light of the overall weakness of the evidence, the prosecutor's improper propensity argument caused substantial prejudice that requires a new trial on Count Four.

### 1.    Background

Prior to trial, Defendants moved to sever the Public Corruption Counts from the Tax Evasion Counts and the Wire Fraud Count for three separate trials. Defendants' principal argument under Rule 14 was that a joint trial on these three distinct sets of charges would lead to a prejudicial spillover of evidence in which the jury could well cumulate the evidence to reach guilty verdicts that it would not have reached at separate trials. See Defendants' Motion To Sever, at 8-12 (Dec. 22, 2005). In its opposition, in an argument that foreshadowed the improper argument in the prosecutor's rebuttal closing, the government contended with respect to Mr. Esherick's allegedly false tax returns:

> [T]he jury is entitled to conclude that if Esherick had criminal intent in using false documents to advance false claims on a government entity in one context [i.e. in his tax returns], it is more likely than not that he had such criminal intent involving false documents to advance false claims on a governmental entity in another context.

Government's Consolidated Opposition, at 13 (Jan. 18, 2006).

Similarly, at the pretrial motions hearing in the case, the Court asked the prosecutor to give a preview of his closing argument on some of the 404(b) issues relating to tax evasion. In response, the prosecutor stated in part:

> Ladies and gentlemen, there is not a document that defendants produced that goes to the government and any government here by

- 13 -

> persons acting on behalf of Mr. Jemal be it Mr. Millstein,
> Mr. Esherick or -- be it Mr. Esherick or Mr. Millstein, to which
> you can give any credit.  And this is the sort, that there is
> dishonesty which starts at the top and is perpetuated by those
> acting on behalf of Mr. Jemal.

Transcript of March 7, 2006 Hearing at 36.  The Court responded to this argument by stating to

the prosecutor:  "To be honest, what I heard you say there in kind of paraphrasing what you

would say to the jury came dangerously close to propensity argument and that kind of thing

won't be allowed as you know."  Id. at 50.  Lest there be any question that the government was

on notice that such argument was inappropriate, the prosecutor stated thereafter that he "got a

little carried away in the moment" and "will be much more cautious in a future arguments [sic]."

Id. at 53.

Even though he had been warned that such a propensity argument would not be

tolerated, the prosecutor went even further in his rebuttal closing.  The prosecutor first

highlighted what he deemed the "false documents" -- the five allegedly false invoices to the D.C.

government, Blake Esherick's 2001 and 2002 tax returns, and the MTD invoice.  Tr. 4780-81.

The prosecutor then argued, "[f]or every one of those documents the defendants have a very,

very elaborate explanation," Tr. 4781, and told the jury he wanted to give them a "way of

thinking about that collection of false documents."  Tr. 4782.  The prosecutor proceeded to tell

the jury about the proverbial child who repeatedly gave his teacher different excuses for why he

did not have his homework, and argued that the sheer number of excuses demonstrated their

implausibility.  Tr. 4782-83.  He further argued that "if the teacher knew for sure that some of

the stories were just false or lies, then the teacher would know that the rest of them are too,

because that's just the way we judge things."  Tr. 4785.

From this highly prejudicial hypothetical analogy, the prosecutor put the improper

argument in real terms, stating:

- 14 -

To some extent that's what we have here.  We have story after story to explain each invoice, each false invoice, convoluted, complicated stories to explain why these are mistakes or innocent intent, or you have the notion that, yes, time and time again the defendants would use false documents to get money. . . .

Well, if we had one explanation for one document, it's hard to say where we would be.  But when we hear the convoluted explanation time and time again, at some point, at some point, despite all the efforts of all the king's horses and all the king's men, to assemble those stories in seven hours of argument we submit they just fail, they collapse under their own weight of implausibility.

Tr. 4783-84.  And as if that was not bad enough, the prosecutor went on to say:

And once you understand, which we submit is obvious, that Mr. Esherick is capable and willing and calculating to bill the United States, under oath mind you, under penalties of perjury, on his tax return, why it's not difficult to get to the point that he would do that in invoices to the District of Columbia Government. . . .

[O]nce you understand that Mr. Esherick is willing and able and does that with his own taxes to get money for himself, it's certainly understandable that the same basic core conduct is going on for the invoices for Douglas Jemal and Douglas Development.

Tr. 4785-86.  At this point, the Court sustained an objection.  Tr. 4786.

At the next break, counsel requested a curative instruction.  Tr. 4813-14.  During the ensuing discussion, the prosecutor made it clear that he had intended the jury to draw precisely the propensity inference that the Court had already warned him prior to trial was improper:

I actually don't accept the premise that if the jury finds that Mr. Esherick uses -- I mean, all these counts, <u>one of the reasons they're all joined is they involve various flaws on various large entities.  And I do not accept the proposition</u> that a jury may not look at the relationship of the comment or relationship as starkly as Mr. Weingarten. . . .

But as to the fact that the jury can't draw an inference that Mr. Esherick in creating the false MTD documents, the false tax

returns and in some sense creating the false invoices, <u>to me those</u>
<u>are fair inferences that we can draw</u>.

Tr. 4814-15 (emphasis added).  Not surprisingly, the Court agreed to give a curative instruction.

Tr. 4819.  However, the Court declined to give a portion of the instruction requested by

Mr. Jemal, which would have stated:  "You are further instructed that there's no evidence that

Douglas Jemal knew about or participated in Mr. Esherick's decisions to take deductions for

mortgage interest and property tax on his tax return."  <u>See</u> Tr. 4814.

**2.    The Prosecutor's Propensity Argument In Rebuttal Was Severe
Misconduct That Caused Substantial Prejudice**

An improper argument in summation is reversible error where the statements

resulted in "substantial prejudice" to the defense.  <u>United States v. Donato</u>, 99 F.3d 426, 432

(D.C. Cir. 1996) (reversing conviction and remanding for new trial).  The D.C. Circuit has long

recognized that "'whether improper conduct of Government counsel amounts to prejudicial error

depends, in good part, on the relative strength of the Government's evidence of guilt.'"  <u>Corley</u>

<u>v. United States</u>, 365 F.2d 884, 885 (D.C. Cir. 1966) (quoting <u>Jones v. United States</u>, 338 F.2d

553, 554 n.3 (D.C. Cir. 1964)); <u>see also</u> <u>United States v. Watson</u>, 171 F.3d 695, 702 (D.C. Cir.

1999) (finding that prosecutor's improper statement was "significant" and warranted new trial

because "it went to the heart of the government's case on a matter with respect to which the

government had no other weighty evidence"); <u>United States v. Teffera</u>, 985 F.2d 1082, 1089 n.6

(D.C. Cir. 1993) (new trial appropriate because prosecutor's statement was "a key part of his

closing remarks, and the government's other evidence was weak").  In determining whether a

defendant has suffered substantial prejudice, courts consider the following three factors:  "the

severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of

- 16 -

conviction absent the improper remarks." United States v. Monaghan, 741 F.2d 1434, 1443 (D.C. Cir. 1984) (citing United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981)).

Here, the prosecutor's argument was severe misconduct that was incapable of being cured by any instruction and likely influenced the verdict. An instructive case is United States v. Rich, 326 F. Supp. 2d 670 (E.D. Pa. 2004), where the defendant was charged with three counts of possession with intent to distribute crack cocaine based on incidents that happened on three separate days, and the district court had denied a motion to sever counts to prevent a spillover of evidence. Id. at 679. In his closing statement, the prosecutor argued that "there are common threads that run through each and every one of these incidents that I just want you to consider briefly." Id. at 680. After pointing out that each incident involved crack hidden in a car that the defendant was driving while carrying large sums of cash, the prosecutor posed the rhetorical question: "'He's just so unlucky that he happens to be in three cars where things are secreted all over them that he doesn't know about, on three different occasions?'" Id.

The district court held that "[i]t is unequivocally clear that the prosecutor's remarks were improper" and "invited the jury to do precisely what the law implores them not to do: to cumulate the evidence of the individual crimes charged and to infer a criminal disposition on the part of the defendant." Id. The court ordered a new trial based in part on the fact that the evidence against the defendant "when considered separately as to each count (as we must), was not overwhelming." Id. at 682. The court reached this conclusion even though it had specifically instructed the jurors to consider the evidence of each count separately, stating that "at some point, a curative instruction cannot undo the damage of improper argument." Id.; see also Watson, 171 F.3d at 702 (noting that "there are limits" on the ameliorative effects of jury instructions and reversing for new trial); Teffera, 985 F.2d at 1089 n.6 (improper closing

- 17 -

argument warranted new trial because "a curative instruction would not have sufficed here," in part due to weak nature of government's case).

Other courts have similarly concluded that it is reversible error to ask the jury to infer guilt from evidence related to other counts at issue or from 404(b) evidence.  United States v. Sampson, 385 F.3d 183, 193 (2d Cir. 2004) (granting new trial where prosecutor "encouraged the jury to use evidence relating to the 2000 counts in considering Sampson's guilt of the 1998 counts"); United States v. Brown, 327 F.3d 867, 871 (9th Cir. 2003) (reversing and remanding for new trial based on improper propensity argument relating to 404(b) evidence, where prosecutor argued:  "'And my question to you is, if a man is willing to cheat a little bit over here, wouldn't he be willing to cheat just a little bit over here?'").

In this case, the prosecutor's argument was greater misconduct than the remarks that led to a new trial in Rich.  Whereas in Rich the prosecutor said that there were "common threads" that ran through each of the three charged counts, the prosecutor's argument here was far more explicit.  The prosecutor flat out argued that once the jury concluded that Mr. Esherick prepared a false tax return, it could infer that the other invoices at issue were fraudulent as well.  Tr. 4785-86.  He also argued that when the jury heard a purportedly "convoluted explanation time and time again" regarding the allegedly false invoices and tax returns, it could conclude that "those stories . . . just fail, they collapse under their own weight of implausibility."  Tr. 4782; compare Rich, 326 F. Supp. 2d at 680 (reversible error to contend that the defendant was "'just so unlucky that he happen[ed] to be in three cars where things are secreted all over them that he doesn't know about, on three different occasions?'").

The prosecutorial misconduct is even more significant in this case because of the repeated concerns raised by Defendants about the potential spillover of evidence between the

three distinct sets of counts and the specific warning the Court gave the prosecutor prior to trial that a propensity argument would not be tolerated.  See, e.g., Watson, 171 F.3d at 702 (finding that improper argument was misconduct requiring reversal based, in part, on the fact that prosecutor was put on notice of issue by a defense motion in limine but misquoted testimony anyway); United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005) (reversing based on improper argument that was "made even more indefensible by its repetition in the face of directions to desist").  Despite this warning, after making the propensity argument, the prosecutor continued to argue that he "[did] not accept the proposition" that the jury could not infer that Defendants were guilty of submitting false invoices if it concluded that Mr. Esherick falsified his tax returns -- stating, "to me those are fair inferences that we can draw."  Tr. 4814-15.  Under any standard, the prosecutor's argument was severe misconduct.

        Moreover, the evidence in support of Count Four, standing alone, was incredibly weak.  Both of the "victims" -- Joe Cayre and Morgan Stanley representative Benjamin Black -- testified that they lost no money as a result of the MTD transaction.  In fact, both individuals felt so "victimized" that they testified without hesitation that they would be eager to do business with Douglas Jemal and Douglas Development in the future.  Tr. 1268-69 (Black); Tr. 2181-82 (Cayre).  The weakness of the government's case demonstrates that the prosecutor's highly improper argument caused substantial prejudice to Defendants that requires a new trial.  See Donato, 99 F.3d at 433 (in reversing conviction based on improper argument, D.C. Circuit stated "this case seems close enough that we cannot say with confidence that the prosecutor's misstatement did not affect the integrity of the jury's verdict."); United States v. Richardson, 161 F.3d 728, 737 (D.C. Cir. 1998) (improper closing argument was reversible error where the evidence against the defendant was "not such that his conviction was by any means a certainty").

- 19 -

## III.    CONCLUSION

Considered separately, any one of these issues -- the prosecutor's improper argument, the erroneous "claim of right" instruction, and the weight of the evidence (see accompanying motion) -- is sufficient to require a new trial.  Taken together, their cumulative effect overwhelmingly weighs in favor of granting Defendants a new trial to prevent a serious miscarriage of justice.  See United States v. Jones, 482 F.2d 747, 749, n.2 (D.C. Cir. 1973) ("although certain errors standing alone might be insufficient to overturn a verdict, these errors may exert a cumulative effect such as to warrant reversal."); United States v. Wood, 207 F.3d 1222, 1237-38 (10th Cir. 2000) (reversing conviction because of cumulative effect of errors).

For the foregoing reasons, as well as the reasons set forth in Defendants' Motion For Judgment Of Acquittal On Count Four Of The Indictment Or, In The Alternative, For A New Trial Because The Verdict Is Against The Weight Of The Evidence, the Court should set aside the verdict and grant Defendants a new trial in the interest of justice on Count Four of the Indictment.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Jeffrey M. King
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  November 15, 2006