UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal Action No. 05-359 (RMU)** |
| | : | |
| DOUGLAS JEMAL ET AL. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION
### FOR A NEW TRIAL ON COUNT FOUR OF THE INDICTMENT

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully opposes defendants' motion for a new trial.

### INTRODUCTION

Reading their motion, one might get the impression that defendants never suggested that

they should be acquitted because they were entitled to use fraud to obtain $430,000 from Morgan

Stanley or that Morgan Stanley ultimately would not be harmed because any unspent tenant

improvement funds eventually would return to the borrowers; that defendants objected to more

than just a single sentence in the instructions; that their objections were based on good law from

the Second Circuit; and that the instruction in question was clearly erroneous under that case law.

One also might get the impression from the motion that their objection to the

government's rebuttal argument had been overruled; that they had not received a curative

instruction in the form and language they requested; that they had moved to strike the argument

and moved for a mistrial but that both requests were denied; and that the rebuttal argument

concerned an invoice submitted to Morgan Stanley.

Defendants imply all of those facts, but none of them is true.

In truth, the defendants encouraged the jury to acquit on the theory that they were entitled to use fraud to obtain money from Morgan Stanley and that Morgan Stanley ultimately would not be harmed because unspent tenant improvement funds would return to the borrower; defendants only objected to a single sentence in the instructions; the one case on which defendants exclusively rely has been severely limited and the instruction given to the jury here has been approved; and defendants cite no case from this jurisdiction suggesting that the instruction was inappropriate.

In truth, with respect to the rebuttal argument, the defendants waived any claim to a new trial when they failed to request a mistrial, let alone moved to strike the argument; defendants suffered no prejudice because the jury acquitted them on the only counts that related to the challenged argument; and the Court took affirmative and demonstrably effective steps to prevent any prejudice.

In truth, defendants not only failed to meet their burden to establish that a new trial is required in the interest of justice; their strenuous efforts to distort the record and case law prove the opposite point: neither the record nor case law provides any basis for a new trial.

In truth, defendants received a procedurally and substantively fair trial on all the counts in the Indictment; and a new trial on Count Four would not be in the interest of justice.

## **ARGUMENT**

I.    **The Jury Instruction on Claim of Right Does Not Warrant A New Trial.**

    A.    Defendants *Did* Mount A Claim-of-Right Defense.

A claim of right is an assertion that one can lie or commit fraud to obtain money to which one believes he or she is otherwise entitled or that one can lie to obtain money because, ultimately, no one would get hurt. See United States v. Gole, 158 F.3d 166, 168 (2d Cir. 1998) ("If Gole's theory of self-help were the law, anyone who believed that he was legally entitled to benefits from a pension plan, or an insurance policy, or a government program, but who was concerned that he or she might nevertheless be denied such benefits, would be given carte blanche simply to lie to obtain those benefits.") (emphasis added); see also 2 Sand et al., Modern Federal Jury Instructions  (2006), ¶ 44-5, at 44-35 ("[I]t is no defense [to wire fraud] that the defendant may have been legally entitled to the money or property if he or she used fraudulent means to insure its receipt.").

That is exactly the defense defendants presented at trial, even though they had no right to present it and promised in their pretrial submissions that they would not do so.  Defendants insisted, through counsel, that they were not guilty of wire fraud because Mr. Jemal was entitled to commissions from his partner, Joseph Cayre, and that defendants were entitled to submit a fraudulent invoice to Morgan Stanley to obtain that money.  They also sought acquittal on the ground that, ultimately, Jemal and Cayre were entitled to any unspent tenant improvement funds.

Under the circumstances here, those assertions were claim of right defenses, however mightily defendants strive to avoid that label or narrow its applicability; and it was appropriate to instruct the jury that those are not proper defenses.

Indeed, the language from <u>Gole</u> is particularly apt, for, despite their defense of entitlement and no-ultimate-loss, there were significant reasons for the defendants to "believe that [they] might nevertheless be denied" money under the loan agreement with Morgan Stanley or that no money might be left over after all the tenant improvements were complete. See <u>Gole</u>, 158 F.3d at 1689. First, Benjamin Black testified that he would not have approved a fraudulent invoice, see Tr. 1204, 1228, and that the lender wanted to have true third parties paid before any entities related to the borrower were paid, see Tr. 1234-36, because that would increase the chances that the tenant improvements would in fact be completed (which was essential for maintaining the value of Morgan Stanley's investment in the property, given that it was not fully occupied). See <u>id</u>. Indeed, Douglas Development experienced difficulties obtaining payment on an invoice submitted to Morgan Stanley in its own name and had to justify the invoice. Tr. 1231-36. Second, the money set aside for tenant improvements would only go back to the borrowers if it were not otherwise spent on tenant improvements; and, inasmuch as the jury heard evidence from which they could conclude that the defendants needed the $430,000 immediately (to obtain 111 Massachusetts Avenue), defendants could not wait on the uncertain prospect of receiving leftover funds, after all improvements were completed. Third, any unspent tenant improvement funds returned to the Cayre-Jemal partnership would likely have gone to Cayre to pay off Jemal's outstanding debts to Cayre and to their partnership—not to Jemal personally. Tr. 2145, 2148. Thus, Jemal's only hope to obtain the cash in December 2002 that he needed to purchase 111 Massachusetts Avenue was from the Morgan Stanley tenant improvement fund.

-4-

Given the defenses presented at trial, it was appropriate to instruct the jury that the defendants were not entitled to submit a fraudulent invoice to obtain funds they believed they were otherwise owed and that it did not have to find that the defendants acted in good faith if the defendants believed that ultimately Morgan Stanley or Cayre would not be harmed.

     B.     The Jury Instruction Was Correct.

          1.     The Instruction Correctly Stated The Law.

Despite the breadth and content of their motion, the only portion of the jury instruction to which defendants objected at trial—"You are instructed that if the defendant participated in the scheme to defraud, a belief held by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that the defendant acted in good faith," Tr. 4325—is correct as a matter of law.

First, contrary to the defendants' arguments, that sentence <u>did</u> require the jury to find that the defendants specifically intended to deprive another of money. The sentence itself only applied if the jury concluded that the defendant participated in a "scheme to defraud." The Court defined that term as "a plan to deprive another of money or property * * * by trick, deceit, deception, or swindle." Tr. 4312. Thus, the sentence necessarily required the jury to have concluded that the defendants <u>did</u> intend to deprive their victims of money or property.

Second, a person who believes that he will ultimately be able to repay a fraud victim, or who believes the harm or fraud will only last for a short time, or who believes that, for other reasons, the victim eventually will be made whole, is still, of course, participating in a scheme to defraud at the time he submits a fraudulent invoice. Thus, in <u>Gole</u>, the Second Circuit noted that any other interpretation of the fraud statutes would mean that people would otherwise be "given

-5-

carte blanche simply to lie" to obtain money where their entitlement to money at the time was in some doubt. See 158 F.3d at 168.

Third, the sentence at issue did not require the jury to find that the defendants lacked good faith. Instead, it only instructed the jury that they were not required to find that a defendant had good faith when he engaged in a scheme to defraud but believed his victims ultimately could be made whole. Indeed, a jury given this instruction could find that a defendant had good faith, and thus acquit him, even if it were convinced that he believed his victim would suffer a significant, temporary loss but ultimately be made whole.

Fourth, defendants have cited no case law from this jurisdiction casting any doubt on the language of the instruction given here, particularly in light of the additional instruction provided to the jury.

Fifth, and finally, the Court concluded its jury instructions by giving an extensive definition of the good faith defense that would have removed any ambiguity about the government's burden of proving criminal intent and disproving defendants' good faith. See Tr. 4340-41.

In short, the statement of law as to which the defendants complain is fair and accurate; and, on this basis alone, defendants' motion should be denied.

-6-

    2.  *Rossomando* Does Not Dictate A Different Result.

  Defendants' assertion that the instruction here was erroneous under <u>Rossomando</u> is simply false. First, defendants rely exclusively on <u>Rossomando</u> without acknowledging that it overruled an instruction materially different from the one used here. The no-ultimate-harm instruction used here was written by Judge Sand <u>after</u> the decision in <u>Rossomando</u>, and it was specifically designed to "address the concerns expressed by the Second Circuit in" that case. See 2 Sands, Modern Federal Jury Instructions at 44-34.

  Thus, the version used by the Court here started by making it clear that the jury only was to consider the absence of good faith if it first determined that the defendant "participated in the scheme to defraud." That language was not present in <u>Rossomando</u>. Moreover, the version used by the Court here concluded by reminding the jury that "to sustain the charges against the defendant, the Government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive and, nevertheless, he associated himself with the alleged fraudulent scheme for the purpose of causing some loss to another." Tr. 4325-26. The inclusion of that additional language led a post-<u>Rossomando</u> Second Circuit panel to find that the no-ultimate-harm language taken from the Sand treatise was not erroneous. See <u>Berkovich</u>, 168 F.3d at 67 ("Unlike <u>Rossomando,</u> the instruction here [which included the version from Sands used in <u>Rossomando</u> and added the paragraph just quoted above that was used by the Court here] * * * clearly informed the jury that they could not convict appellant unless he intended to cause loss to someone."); see also <u>Koh</u>, 199 F.3d at 641 (affirming mail fraud conviction that used the supplemental language used by the Court here).

-7-

Second, <u>Rossomando</u> is distinguishable because here there <u>was</u> "a sufficient predicate in the record for the 'no ultimate harm' charge." See <u>Rossomando</u>, 144 F.3d at 202. The defendants repeatedly maintained in their examinations and arguments that there would be no harm to Morgan Stanley from their fraudulent MTD invoice because, ultimately, Jemal and his partner, Joseph Cayre, would receive any unspent money held back under the tenant improvement fund. See, <u>e.g.</u>, Tr. 4626-27. Thus, the jury in <u>this</u> case was entitled to know that "it is no defense that [Douglas Jemal or Blake Esherick] believed that 'no ultimate harm' would result [to Morgan Stanley or Joseph Cayre] from [their] scheme" just because the money not spent on tenant improvements ultimately might have gone to Jemal and Cayre (particularly since it might not have gone to them if it were spent on actual tenant improvements). See <u>Rossomando</u>, 144 F.3d at 202. That is, if the defendants were not entitled to the $430,000 at the time they submitted the invoice to Morgan Stanley, they could not defend against a charge of wire fraud by contending that the money ultimately might have been given to one of the defendants (and his partner) if it was not otherwise spent on tenant improvements to 77 P Street. See <u>United States</u> v. <u>Berkovich</u>, 168 F.3d 64, 67 (2d Cir. 1999) (no-ultimate-harm instruction appropriate where mail fraud defendant argued for acquittal by contending that bank and former client would not be harmed by his scheme); see also <u>United States</u> v. <u>Koh</u>, 199 F.3d 632, 641 (2d Cir. 1999) (affirming mail fraud conviction against challenge to no-ultimate-harm jury instruction derived from the Sand treatise).

Third, unlike in <u>Rossomando</u>, where the court found it highly significant that the jury had submitted a note seeking clarification of the term "intentional," see 144 F.3d at 202-03, the jury here displayed no lack of understanding of the facts or law at trial. The lack of any jury

confusion on the issue of intent was one of the factors that led a post-<u>Rossomando</u> Second

Circuit panel to affirm a conviction that used largely the same no-ultimate-harm language used in

<u>Rossomando</u>.  See <u>Berkovich</u>, 168 F.3d at 67.

Finally, defendants never acknowledge that <u>Rossomando</u> has largely been limited to its

facts.  See <u>Gole</u>, 158 F.3d at 169 (Jacobs, J., concurring) ("<u>Rossomando</u> is thus limited to the

quite peculiar facts that compelled the <u>Rossomando</u> result under the only holding that

<u>Rossomando</u> will support:  a defendant's belief that information is immaterial to a disbursement

decision amounts to a defense to mail fraud only if the disbursement is mechanical as opposed to

discretionary, and a jury finds such a belief is reasonable * * *.") (citation omitted).[1]

      C.     <u>Defendants Only Objected To One Sentence, Not The Entire Paragraph</u>.

The Court fully complied with the defendants' requests for relief at trial, and there is no

merit to any of their present contentions to the contrary.  Thus, defendants misstate the scope of

their objections to the jury instructions, when at trial they only gave the Court an opportunity to

correct one part of the instructions to which they now object.  See Defs. Mem. at 5 ("Defendants

also specifically objected to the italicized portion of the Court's instruction as an incorrect

statement of the law * * *.") (citing Tr. 4325 and italicizing entire paragraph).  At trial,

defendants only objected to <u>one sentence</u>[2] regarding the claim of right and good faith defenses:

---

[1]     Defendants do not suggest that Morgan Stanley's decisions to pay invoices were mechanical, not discretionary—nor can they.  The evidence demonstrated that an invoice submitted in the name of Douglas Development received intense scrutiny by Morgan Stanley and Douglas Development was required to justify its entitlement to funds.

[2]     Inasmuch as all the post-<u>Rossomando</u> cases cited in the text approve not only the first sentence in the Court's instruction but the entire two paragraphs, the same result would obtain even if the defendants objected to the entire paragraph at trial.

"MR. HEBERLIG:          I believe Mr. Mead has one <u>small</u> point on this claim of right issue.

"MR. MEAD:          Your Honor, at page 51 of the instructions I think a grievous word processing error occurred.  * * *

          The <u>sentence that says</u>, ['] you are instructed that if a defendant participated in the scheme to defraud, then a belief by the defendant would work out so that no one would lose any money does not require a finding by you that the defendant acted in good faith.[']

          That is an incorrect statement of the law.  * * *  The Second Circuit found that <u>that sentence</u> was an incorrect statement of the law and gutted the defendant's right to a good faith instruction."

Tr. 4347-48 (emphasis added).

          The Court returned after the break and explained that "Mr. Mead and Mr. Dubester worked together <u>to provide a sentence that each side agrees would complete the description</u> of what claim of right is * * *." Tr. 4356 (emphasis added); the Court did <u>not</u> say the supplement would <u>replace</u> the previous definition or that any language would be deleted.  When the Court read the proposed sentence, and asked whether there were any objections to this procedure, no one answered in the affirmative: "That's agreeable. Everybody's nodding yes." Tr. 4357.  In short, defendants did not contemporaneously object to the full paragraph of the jury instructions; they only objected to one sentence.  Moreover, when the Court indicated its intent to cure the sentence by reading an additional sentence, the defendants did not raise any additional objections to the paragraph or the proposed cure.

          Equally significant, the defendants never requested on the record that the Court delete the entire paragraph.  They <u>only</u> requested a curative instruction:

-10-

"MR. MEAD:              The <u>only</u> curative instruction, Your Honor, at this
                        stage, with the confusion that has been created, is to give
                        the sentence in our proposal with respect to our proposal on
                        a claim of right defense.  <u>The sentence you omitted</u> from
                        our proposed instruction as a correct statement of law <u>is the
                        only way to correct the misunderstanding here</u>.

"THE COURT:             What is it?

"MR. MEAD:              [']If a defendant knowingly submits an inaccurate or
                        misleading invoice honestly believing that the inaccuracies are not
                        material and that we would be entitled to receive the money, even
                        if the money was accurate, he is not guilty of wire or mail fraud.[']

                        That's the holding in Rossomando.  <u>And without that
                        clarification this jury is going to be hopelessly confused.</u>

"THE COURT:             All right.  Do you have that proposed instruction?

"MR. MEAD:              I do, Your Honor, right here."

Tr. 4348-49. That was the time when it would have been appropriate to have requested that the

Court strike language from its written instructions.  Defendants never made such a request, and

the government never agreed to such a request.[3]  Defendants <u>only</u> asked for a curative instruction,

and they should not be heard to claim otherwise—in the absence of any record evidence—now.[4]

---

[3]    That the government agreed to a supplemental instruction—over the lunch hour
and shortly before closing argument—does not mean the government ever conceded that the
Court's instructions were in error.  The government negotiated with one of the defense attorneys
to craft and agree on language that would accommodate defense counsel's concerns and to allow
the process to continue without materially sacrificing its position.

[4]    Defendants contend they had an off-the-record conversation with the Court's
clerks in which, they claim, they received an assurance that an entire paragraph of the Court's
written instructions would be deleted.  See Defs. Mem. at 6 n.1.  Of course, given that neither the
oral nor the written instructions were erroneous, the provenance of the written instructions is
immaterial.

D.    <u>No New Trial Is Warranted</u>.

Finally, a new trial would be especially inappropriate here (where the instructions as

initially and subsequently given were wholly unobjectionable) because the Court provided a

supplemental instruction to the jury, at the defendants' request:

> "However, if a defendant knowingly submits an inaccurate or misleading
> document, honestly believing that the inaccuracies are not material, and that he
> did not intend to defraud, as I have used that term, he is not guilty of mail fraud.
>
>     "And as I concluded this morning, good faith is also a defense to all the charges
> contained in the indictment."

Tr. 4361. That additional, specially highlighted language, which was given to the jury orally and

in the written instructions, was taken almost verbatim from the proposal set forth by the

defendants in their opposition to a claim-of-right instruction.[5]

Given that the version of the claim-of-right instruction as initially provided to the jury

was not objectionable, its inclusion in the written version submitted to the jury could not be in

error—particularly where the jury also received the supplemental instruction set forth above.

Under these circumstances, where there was no error in the oral or written instructions, it would

not be in the interest of justice to have a new trial on Count Four on this ground. See Fed. R.

Crim. P. 33.

_____

[5]    Thus, the defendants requested that the jury be instructed as follows, if it were to
receive a claim-of-right instruction:

> "However, if a defendant knowingly submits an inaccurate or misleading invoice
> honestly believing that the inaccuracies are not material and that he would be
> entitled to receive the money even if the invoice was accurate, he is not guilty of
> wire or mail fraud. Good faith is always a complete defense."

Defendants' Objection to Government's Claim of Right Jury Instruction in Light of Evidence at
Trial, Or, in the Alternative, Motion to Amend Proposed Instruction (Oct. 17, 1996), at 7.

## II.    The Rebuttal Argument Had No Impact Whatsoever On Count Four.

The Court should reject defendants' motion for a new trial on Count Four of the

Indictment based on the government's rebuttal argument.  As an initial matter, defendants waived

any claim to a new trial by suggesting and receiving a curative instruction rather than asking the

Court to strike the argument or declare a mistrial: the defendants in no way indicated any

dissatisfaction with the Court's remedy, and they are not entitled to sit back on their hands and

ask for a new trial only when the verdict is not in their favor.

Even if the Court were to consider the defendants' motion, the government's argument

about the submission of invoices to the District of Columbia caused no prejudice, let alone

substantial prejudice, for the jury acquitted the defendants on all counts related in any way to

such invoices.  Finally, the Court's efforts in sustaining the objection and thereafter giving the

defendants' requested curative instruction further prevented any possible prejudice.

### A.    Standard

In reviewing a motion for a new trial under Rule 33 based on remarks of a prosecutor,

courts in this jurisdiction demand a showing of substantial prejudice to the defendant and have

> "generally looked to three factors in determining whether improper remarks by the
> prosecutor sufficiently prejudiced a defendant: 'the closeness of the case, the
> centrality of the issue affected by the error, and the steps taken to mitigate the
> effects of the error.'  We have also framed the test for prejudice in terms of the
> severity of the prosecutor's misconduct, the measures adopted to cure the
> misconduct, and the certainty of conviction absent the improper remarks."

United States v. Gartmon, 146 F.3d 1015, 1026 (D.C. Cir. 1999) (quoting United States v. North,

910 F.2d 843, 895 (D.C. Cir. 1990), superseded on other grounds, United States v. North, 920

F.2d 940 (D.C. Cir. 1990)); see also United States v. Perholtz, 842 F.2d 360-61 (D.C. Cir. 1988)

(A finding of error "does not terminate the inquiry, since a reviewing court must decide whether the improper remarks caused substantial prejudice to the defendant * * *."); North, 910 F.2d at 895 (Improper remarks "are cause for reversal only if they 'substantially prejudiced' the defendant.") (quoting United States v. Fowler, 608 F.2d 2, 12 (D.C. Cir. 1979)).

In practice, the standard for granting a Rule 33 motion based on remarks by a prosecutor is extraordinarily high. Thus, the D.C. Circuit has "been 'chary of reversing convictions solely on the grounds of a misstatement in a closing argument.'" United States v. Edelin, 996 F.2d 1238, 1243 (D.C. Cir. 1993) (quoting North, 910 F.2d at 897); see also United States v. Donato, 99 F.3d. 426, 432 (D.C. Cir. 1997) ("It is also clear * * * that an error in a prosecutor's summation will only rarely warrant reversal of a conviction.").

Thus, for example, a "minor aberration[ ] in a prolonged trial" does not warrant reversal. See United States v. Monaghan, 741 F.2d1434, 1443 (D.C. Cir. 1984); see also North, 910 F.2d at 897 ("Without other compelling factors, a single misstatement confined to a closing argument rarely amounts to severe misconduct.").

Moreover, a new trial is particularly inappropriate and unwarranted where the trial court gives an appropriate, timely curative instruction. See, e.g., North, 910 F.2d at 897 ("Our unwillingness to reverse a conviction has been particularly pronounced when the trial judge issues curative instructions.").

-14-

B.    Defendants Waived Any Right To Seek A New Trial On This Ground.

Here, defendants cannot seek a new trial based on the government's rebuttal because they waived any right to such relief. During the government's argument, the Court sustained an objection. Tr. 4786. Defense counsel did not move to strike the argument or seek a mistrial. See id. After the government's rebuttal argument concluded, but before the jury had been escorted out of the courtroom for the evening, defense counsel asked to approach the bench to seek further relief regarding the contested rebuttal argument. Tr. 4812-13. At the bench, counsel for Douglas Jemal urged the Court to give a supplemental curative instruction "basically responding to the specific argument * * *." Tr. 4813. Again, defense counsel did not ask that the portion of the rebuttal be stricken from the record or request a mistrial. See id. Instead, defense counsel were satisfied with the Court's decision to instruct the jury before it left for the night, using verbatim language supplied by the defendants. Compare Tr. 4813 with Tr. 4819.[6]

Now, discontent with the verdict, defendants argue that what was not sufficiently prejudicial at the time to warrant a new trial (through a motion for a mistrial) or a motion to strike is now so prejudicial that it does require a new trial. Put in those terms, it is clear defendants have waived their right to seek a new trial based on the rebuttal. Parties are required to inform the court at the time of an objection "of the action the party wishes the court to take * * *." See Fed. R. Crim. P. 51. The only action the defendants asked the Court to take was to give

_____

[6]    Defendants note that the Court did not give one sentence of their proposed supplemental instruction. See Defs. Mot. at 16; see also Tr. 4848 ("You are further instructed that there's no evidence that Douglas Jemal knew about or participated in Mr. Esherick's decisions to take deductions for mortgage interest and properly tax on his tax returns."). Mr. Esherick's counsel objected to that sentence, see Tr. 4815-16, not the government. See Tr. 4814. Mr. Jemal was not prejudiced by the Court's decision not to give his requested sentence because he was acquitted on all the tax charges.

-15-

the curative instruction actually given. When the objection was sustained, the Court had a variety of means to avoid prejudice to the defendants, from striking the argument to declaring a mistrial. Defendants evinced perfect satisfaction with the Court's decision to read their requested curative instruction and should not be heard to claim otherwise now.

        C.      Defendants Were Acquitted On The Only Relevant Counts.

If defendants' motion on this ground has not been deemed waived, their fundamental, insurmountable problem is that they cannot show any prejudice, let alone substantial prejudice: defendants were acquitted on the only counts of the indictment that could have been affected by the contested rebuttal argument.

The government argued that the jury could consider Mr. Esherick's false tax returns when determining whether there was criminal conduct in connection with the submission of invoices to the District of Columbia. See Tr. 4785-86. The District of Columbia invoices were the subject of the conspiracy count (Count One), the bribery count (Count Two), and the mail fraud count (Count Three)—all counts on which the jury acquitted the defendants. By contrast, the wire fraud count (Count Four) was concerned with an invoice submitted to Morgan Stanley and did not relate to or depend on the District of Columbia invoices.

The defendants understood at the time the rebuttal argument was made that it related strictly to District of Columbia invoices, not the wire fraud count. Thus, counsel for Douglas Jemal argued to the Court that government counsel had "argued that the jury could reasonably conclude that because Esherick submitted false tax returns * * * that the defendant submitted false invoices to the District." Tr. 4813 (emphasis added). Defense counsel reiterated this point in the strongest way possible: by requesting that the curative instruction disconnect any potential

-16-

linkage between Mr. Esherick's tax conduct and the invoices submitted to the District (not to

Morgan Stanley):

> "You heard Mr. Dubester argue, in essence, that the jury could reasonably infer if
> it concludes that Mr. Esherick's personal tax returns are false, that the invoices
> submitted to the District are false too. You are hereby instructed that you must
> consider each count on its own * * *. Even if you conclude that Mr. Esherick's
> tax returns were incorrect, you may not use that conclusion to infer that the
> invoices submitted to the District of Columbia were false."

Tr. 4813 (emphasis added). Defense counsel saw no need to request that the jury be instructed

that they should not consider Mr. Esherick's tax conduct when considering the wire fraud count.

See id. Moreover, in their prior filings, the defendants argued that the District of Columbia

invoices had no relationship with the allegations in the wire fraud count.[7] Thus, contrary to their

attempt to expand the scope of the rebuttal argument to include the wire fraud count—see Defs.

Mem. at 13, 19—the argument pertained only to the first three counts in the Indictment.

In acquitting the defendants on the only counts related to the District invoices, the jury

necessarily rejected any connection between the tax conduct and the D.C. invoices referenced in

the first three counts. In other words, the jury specifically rejected the government's argument.

Defendants therefore were not substantially prejudiced by an argument that was specifically

rejected by the jury and, in any event, unrelated to the count on which they seek a new trial.

---

[7]     See Memorandum of Law in Support of Defendants' Motion to Sever Counts
Based on Improper Joinder Under Rule 8(b) and Prejudicial Joinder Under Rule 14 (Dec. 22,
2005), at 9 ("The alleged victims of the Public Corruption Counts [Counts One through Three]
are the citizens and government of the District of Columbia * * *. The Wire Fraud Count * * *
do[es] not relate to these victims in any respect. Instead, the alleged victims of the Wire Fraud
Count are Defendant Douglas Jemal's business partner [and] Morgan Stanley * * *.").

D.    The Court Further Limited Any Potential Prejudice.

Even with all the exaggerated focus on one brief argument in a thirty-day trial, the Court took proper steps to ensure that defendants were in no way prejudiced by any minor aberration. See Monaghan, 741 F.2d at 1443. Thus, the Court instructed the jury that (a) lawyers' arguments are not evidence, see, e.g., Tr. 4273, 4362, 4487, and (b) the jury should consider each charge separately. See Tr. 4287-88. Furthermore, the Court gave a specific curative instruction shortly after the government's rebuttal argument. Tr. 4819. There, the Court, using language specifically requested by the defendants, referenced the government's rebuttal argument and the government prosecutor by name and instructed the jury that it should examine the evidence as to each count separately. Tr. 4819.

Courts presume that jurors heed all standard and curative instructions. See, e.g., United States v. Clarke, 24 F.3d 257, 270 (D.C. Cir. 1994) (affirming convictions over challenge to government's closing argument by "heed[ing] the usual assumption of the law that the jurors followed the court's instructions and disregarded the remark."); see also United States v. Gatling, 96 F.3d 1511, 1524 (D.C. Cir. 1996) (rejecting claim for new trial based on prosecutor's closing argument where jury instructed that closing arguments are not evidence and collecting cases supporting that proposition).

Here, the Court need not presume the jury followed the Court's curative instruction; it knows with certainty that the jury followed its instruction because the jury acquitted the defendants on any and all charges related to District of Columbia invoices.[8]

---

[8]    Unlike in the cases cited by the defendants, the jury rejected the government's argument, leaving defendants unprejudiced.

-18-

## CONCLUSION

Defendants' motion should be denied.

Respectfully submitted,

JEFFERY A. TAYLOR
UNITED STATES ATTORNEY

By: _____

Mark H. Dubester, D.C. Bar No. 339655
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of November, 2006, I caused to be served by electronic filing a copy of the foregoing opposition to:

Michele A. Roberts, Esquire
Jeffery M. King, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld
LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Mark H. Dubester
Assistant United States Attorney