UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES**                   )
                                    )
    v.                              )    Crim. No.  05-0359-1, -3 (RMU)
                                    )
**DOUGLAS JEMAL**, *et al.*,        )
                                    )
            **Defendants.**         )
_____)

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR A NEW TRIAL ON COUNT FOUR OF THE INDICTMENT

The Court should set aside the verdict and grant Defendants a new trial.  Contrary to the government's claim, Defendants never pursued an improper "claim of right" defense that supported the instruction.  This error was compounded by the inadvertent inclusion of an erroneous statement of law in the written instructions.  Defendants did not waive any objection to this error by supposedly objecting solely to one sentence of the erroneous instruction or failing to request its deletion from the written instructions.  Defendants objected to the instruction in its entirety and were assured, in the government's presence, that the erroneous instruction would be deleted from the instructions that went into the jury room.  Defendants also never pursued a "no ultimate harm" defense that might have conceivably justified the instruction.  The erroneous instruction substantially undermined the defense and requires a new trial.

The government does not dispute that the prosecutor's improper propensity argument in rebuttal was prosecutorial misconduct made more egregious by the fact that it occurred despite a pretrial warning from the Court.  The government also does not address Defendants' argument that this was a close case where conviction was by no means certain absent the improper argument, and instead inexplicably contends that the improper argument was

not directed at the MTD charge when the record conclusively reveals otherwise. The government's final claim that a curative instruction eliminated any prejudice is unpersuasive given the severity of the misconduct and the weakness of the evidence in support of Count Four.

## ARGUMENT

### I. The Erroneous "Claim of Right" Jury Instruction Requires A New Trial

#### A. Defendants Did Not Pursue A "Claim Of Right" Defense

The government's effort to demonstrate that Defendants pursued a "claim of right" defense at trial with respect to the MTD charge simply fails. As the extensive prior briefing on this issue has made clear, the cases holding that a "claim of right" is not a proper defense involve situations where a defendant is owed money from someone and attempts to obtain it in a separate fraudulent transaction without pursuing the pre-existing debt openly, such as through litigation. That was precisely the scenario in United States v. Gole, 158 F.3d 166 (2d Cir. 1998) -- the case upon which the government so heavily relies -- where the defendant firefighter believed that his pension fund board had improperly calculated the level of outside income that would reduce pension benefits and decided to intentionally understate his income to keep his full pension rather than challenge the board's methodology through the legal process. Id. at 167-68. Indeed, the Court's "claim of right" instruction makes clear that the improper defense is limited to situations involving "fraud to collect a pre-existing debt." Tr. 4361.

Defendants never pursued such a defense. Instead, Defendants maintained that they were entitled to the commission reflected in the MTD invoice pursuant to Joe Cayre's agreement to pay 6% in leasing commissions on the 77 P Street project -- not that Defendants decided to collect a pre-existing debt from Mr. Cayre through a separate transaction. Defendants argued that they concealed their affiliation with MTD from Mr. Cayre to avoid the historic

hassling that Mr. Cayre gave Mr. Jemal over commissions to which Douglas Development was entitled. See Tr. 4623-24. This was not an improper "claim of right" defense.[1]

In addition, contrary to the government's argument, Defendants did not seek acquittal on the ground that Morgan Stanley would not ultimately be harmed because Mr. Jemal and Mr. Cayre were entitled to unspent tenant improvement funds. New Trial Opp'n at 3. Defendants made no such argument in closing. Indeed, the defense to the MTD charge was focused on Mr. Cayre. See Tr. 4619 (Mr. Weingarten: "It is fair to conclude from the evidence that the MTD allegation is all about Joe Cayre."). Defendants consistently maintained that they were entitled to the money. That it happened to be disbursed by Morgan Stanley was inconsequential because the money had already been borrowed by the Cayre Jemal partnership. See Tr. 1279 (interest began accruing on the full loan amount from the date of closing). Defendants posed a single question to Mr. Black along these lines because the issue was relevant to whether Morgan Stanley suffered any loss -- an important sentencing issue. See Tr. 1267-68.

The government does not dispute that a jury instruction should not be given if it lacks evidentiary support. Here, the unsupported "claim of right" instruction substantially prejudiced Defendants by interjecting a confusing and potentially misleading issue.

**B.     The Erroneous Statement Of Law Inadvertently Included In The Written Instructions Substantially Undermined The Defense**

Although Defendants do not concede the accuracy of the government's assertion that the instruction "correctly stated the law," New Trial Opp'n at 5-6, even if the instruction is

---

[1] The government's complaint that Defendants pursued a claim of right defense "even though they had no right to present it and promised in their pretrial submissions that they would not do so" is specious given the government's failure to object to the defense theory at any point during the trial. See Government's Opposition To Defendant's Motion For A New Trial On Count Four Of The Indictment at 3 ("New Trial Opp'n").

appropriate in certain cases where a defendant pursues a "no ultimate harm" defense, this was not one of them.  The government's efforts to distinguish this case from Rossomondo -- a directly analogous case holding that a nearly identical jury instruction was reversible error -- are unpersuasive.  The court in Rossomondo held that the instruction is appropriate only in cases in which a defendant contends that his fraud will result in "no ultimate harm," such as submitting a false application to obtain a loan that the defendant honestly intends to repay.  144 F.3d at 201.  In fact, the instruction is bracketed in the model instructions, making clear that it is only appropriate in limited circumstances.  Sand, Modern Federal Jury Instructions, Inst. 44-5.  The instruction, and specifically its statement that "no amount of honest belief" that the alleged scheme will not cause a loss excuses a false statement, is reversible error when the defendant does not pursue a "no ultimate harm" defense but rather contends that he never intended to obtain money to which he was not entitled.  Rossomondo, 144 F.3d at 202.

The government's claim that the Second Circuit has upheld the instruction in cases following Rossomondo ignores the fact that the defendant in each of those cases pursued a "no ultimate harm" defense.  See United States v. Koh, 199 F.3d 632, 641 (2d Cir. 1999) (defendant argued that "he intended to ultimately pay back the money"); United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) (defendant argued that he believed the victim's insurance company would pay for the loss).  Apparently recognizing that the instruction is reversible error absent a "no ultimate harm" defense, the government attempts to establish that Defendants pursued such a defense here.  New Trial Opp'n at 8.  The record belies the government's claim.

Defendants did not pursue a "no ultimate harm" defense.  On the contrary, Defendants maintained that they were entitled to the funds under their agreement with Joe Cayre

that he would pay a 6% leasing commission on the 77 P Street project, and used MTD to avoid Mr. Cayre hassling them over fees and commissions to which they were otherwise entitled. Several witnesses, including Mr. Cayre himself, confirmed Mr. Cayre's historical practice of arguing with Mr. Jemal over these matters. See Tr. 2117-19 (Cayre); 864 (Medding); 1185-86 (McIlwrath). Moreover, as set forth above, Defendants did not claim that they defrauded Morgan Stanley but should be excused because ultimately Morgan Stanley would have paid them the money anyway.

Given the obvious substantial prejudice associated with the inclusion of this erroneous statement of law in the written instructions, the government strains mightily to establish that Defendants waived this argument by supposedly objecting to only one sentence of the improper instruction and not requesting that the offending language be stricken from the written instructions. The government's claims have no merit whatsoever.

Defendants objected to the entire erroneous paragraph, not merely the single erroneous sentence identified by the government. New Trial Opp'n at 9-10. At the first break after the Court read the instruction, counsel for Mr. Jemal objected that a "grievous word processing error occurred" resulting in the Court "literally quot[ing] an instruction from the District Court" in Rossomando that was held to be reversible error. Tr. 4347. Although counsel subsequently identified one sentence of that instruction as erroneous, Tr. 4348, it is obvious from the context of the entire discussion -- including the conference in chambers between the Court, Mr. Dubester and Mr. Mead -- that Defendants objected to the entire erroneous instruction. Declaration of Christopher B. Mead ¶¶ 10-12 (Dec. 4, 2006) ("Mead Decl.") (Exhibit A).

Similarly, the government's claim that Defendants somehow waived the issue by failing to request on the record that the erroneous statement of law be deleted from the written

- 5 -

instructions is incorrect. Both parties agreed that a curative instruction was necessary to clarify the issue for the jury and attempt to cure the prejudice associated with the improper statement of law. When the Court gave the curative "claim of right" instruction to the jury, it omitted the erroneous statement of law. Tr. 4361. The government's contention that after objecting to the erroneous instruction and preparing a curative instruction, Defendants wanted the Court to keep the incorrect statement of law in the written instructions makes absolutely no sense.

The government's waiver claim also ignores the fact that counsel for Defendants -- in the presence of and without objection from AUSA Dubester -- specifically requested and received confirmation from the Court's clerks that the erroneous statement of law would be deleted from the written instructions. Mead Decl. ¶ 8. In fact, when counsel for Mr. Jemal suggested that the Court should specifically inform the jury that the paragraph at issue was incorrect, the Court's clerks <u>and government counsel</u> stated that "correcting the written instructions that went back to the jury during their deliberations would be sufficient." Mead Decl. ¶ 8. While that conversation may not have been on the record, the government does not dispute it and is disingenuous in contending that Defendants waived this issue. At a minimum, the Court should resolve any ambiguity as to whether Defendants requested that the erroneous language be deleted from the written instructions in Defendants' favor in light of the specific off-the-record request for that precise relief. <u>See generally</u> Mead Decl. ¶¶ 8-13.

Finally, the government contends that no new trial is warranted because the Court provided a supplemental instruction on the claim of right issue at Defendants' request. New Trial Opp'n at 12. Had the Court only given oral instructions, the supplemental instruction might have sufficed to cure the prejudice. However, the Court provided the jury with written instructions. The supplemental instruction does not cure the prejudice associated with the fact

that the supplemental instruction was immediately followed and directly contradicted by the erroneous statement of law that inadvertently remained in the written instructions.  Moreover, the government completely ignores settled law from the D.C. Circuit, holding that the inclusion in a jury charge of two instructions in direct conflict, where one is prejudicial to the defendant, is reversible error.  See McFarland v. United States, 174 F.2d 538, 539 (D.C. Cir. 1949); Green v. United States, 405 F.2d 1368, 1370 (D.C. Cir. 1968).  Thus, if the Court concludes that the written instruction was erroneous and undermined Defendants' theory of defense -- as Defendants submit it must -- a new trial is required under controlling precedent.

**II.     The Prosecutor's Improper Propensity Argument Requires A New Trial**

The government nowhere disputes that the prosecutor's argument in rebuttal, in which he invited the jury to cumulate all of the evidence on the distinct sets of charges together to reach convictions, was prosecutorial misconduct.  Nor could it.  The prosecutor's propensity argument was severe misconduct that occurred despite the fact that the Court specifically warned the prosecutor at a pre-trial hearing not to make a milder version of the same argument.  Even after the Court sustained an objection to the argument, the prosecutor persisted in claiming that his argument was entirely appropriate.  Tr. 4814-15.  Tellingly, the government makes no such claim in its opposition.  Therefore, the first of the three factors determining whether an improper argument in summation caused substantial prejudice to a defendant requiring a new trial -- the severity of the misconduct -- weighs heavily in Defendants' favor.

The government also fails to address the second relevant factor -- the strength of the government's evidence or the certainty of conviction absent the misconduct.  By any standard, the evidence in support of the MTD charge was incredibly weak.  Given the closeness of the case, there is no way to conclude that conviction was a certainty absent the improper argument.  Therefore, this factor also weighs heavily in Defendants' favor.

The government rests its entire opposition on the third factor -- measures taken to cure the misconduct -- contending that the Court's jury instructions eliminated any prejudice caused by the improper argument. The government also claims that the improper propensity argument did not relate to the MTD charge, but rather to the public corruption charges of which Defendants were acquitted. Neither claim has merit.

### A. The Prosecutor's Improper Argument Was Directed At The MTD Charge

The government's claim that the improper argument "related strictly to District of Columbia invoices" is frivolous. New Trial Opp'n at 16. The prosecutor specifically identified the MTD invoice, the MTD lien release, and the MTD wiring instructions as among "all those false documents" for which "the defense has put together very, very elaborate explanations." Tr. 4780. The same MTD-related documents were among the "collection of false documents" with elaborate explanations that the prosecutor asked the jury to think of as similar to the excuses of the proverbial child who repeatedly failed to do his homework. Tr. 4782. The MTD invoice was also among the invoices encompassed by the prosecutor's argument that "once you understand that Mr. Esherick is willing and able and does that with his own taxes to get money for himself, it's certainly understandable that the same basic core conduct is going on for the invoices for Douglas Jemal and Douglas Development." Tr. 4786.

Defendants do not dispute that the improper argument was also directed at the D.C. invoices. And given the fact that the public corruption charges to which those invoices related were the most serious charges in the case, it is no surprise that counsel for defendants focused their objection on the D.C. invoices. See, e.g., Tr. 4813. There is simply no question, however, that the prosecutor also directed his improper argument squarely at the MTD charge.

### B. Defendants Did Not Waive Their Ability To Seek A New Trial Based On The Irreparable Prejudice Caused By Improper Argument

Defendants did not waive their ability to seek a new trial based on the prosecutor's improper argument by not moving for a mistrial. New Trial Opp'n at 15-16. Most obviously, the government ignores the fact that defendants can obtain new trials on appeal even where they did not contemporaneously object to an improper argument as long as the argument was plain error that caused substantial prejudice to the defendant. See, e.g., United States v. Carter, 236 F.3d 777, 782-83 (6th Cir. 2001) (defendant granted new trial, despite failing to object to prosecutor's improper argument during rebuttal, because "'prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it.'") (citation omitted); United States v. Garber, 471 F.2d 212, 216-17 (5th Cir. 1972) (granting new trial based on prosecutor's improper argument in summation even though defense counsel did not object).

In this case, however, Defendants did contemporaneously object to the prosecutor's improper argument. Tr. 4786. In so doing, Defendants preserved the ability to seek relief on the basis of the improper argument. The government fails to cite a single case in which a defendant who contemporaneously objected to an improper argument in summation was held to have waived his ability to seek a new trial by not seeking an immediate mistrial. In fact, in United States v. Rich, 326 F. Supp. 670, 680-82 (E.D. Pa. 2004), a case squarely on point that the government fails to address in its opposition, the district court granted a new trial based on a prosecutor's improper propensity argument even though the defendant did not seek a mistrial, but rather merely renewed his severance motion.

Finally, the government does not dispute that several courts, including the D.C. Circuit, have held that there are instances in which the prejudice caused by an improper

argument cannot be cured by jury instructions.  <u>See</u> Memorandum of Law in Support of Defendants' Motion for a New Trial on Count Four of the Indictment at 17-18.  The government merely states that unlike those case cited by Defendants, there was no prejudice here because the jury rejected the government's argument by acquitting Defendants on the public corruption counts.  New Trial Opp'n at 18 n.8.  That conclusory response depends entirely on the government's unpersuasive claim that the improper argument did not relate to the MTD charge.

Given the severity of the prosecutor's conduct and the weakness of the evidence on the MTD charge, the prejudice caused by the prosecutor's improper argument was not cured by the Court's instructions and a new trial is warranted.

## CONCLUSION

For the foregoing reasons, the Court should set aside the verdict and grant Defendants a new trial in the interest of justice on Count Four of the Indictment.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Jeffrey M. King
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

        Christopher B. Mead
        London & Mead
        1225 19th Street, N.W.
        Suite 320
        Washington, D.C.  20036
        (202) 331-3334

        Counsel for Douglas Jemal


        Paul Kemp
        Carol Elder Bruce
        Venable LLP
        575 7th Street, N.W.
        Washington, D.C.  20004
        (202) 344-4400

        Counsel for Blake Esherick

Dated:  December 6, 2006