*PROSPECTUS SUPPLEMENT*
*(To Prospectus dated November 22, 2002)*

# $834,596,000 (Approximate)
## Morgan Stanley Dean Witter Capital I Trust 2002-IQ3
### as Issuer
## Morgan Stanley Dean Witter Capital I Inc.
### as Depositor

## Morgan Stanley Dean Witter Mortgage Capital Inc.
## The Union Central Life Insurance Company
## Prudential Mortgage Capital Funding, LLC
## National Consumer Cooperative Bank
## NCB, FSB
## Principal Commercial Funding, LLC
## Teachers Insurance and Annuity Association of America
## Nationwide Life Insurance Company
### as Mortgage Loan Sellers

### COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-IQ3

Morgan Stanley Dean Witter Capital I Inc. is offering selected classes of its Series 2002-IQ3 Commercial Mortgage Pass-Through Certificates, which represent beneficial ownership interests in a trust. The trust's assets will primarily be 239 seasoned and newly originated mortgage loans secured by first mortgage liens on commercial and multifamily properties. The Series 2002-IQ3 Certificates are not obligations of Morgan Stanley Dean Witter Capital I Inc., the sellers of the mortgage loans or any of their affiliates, and neither the certificates nor the underlying mortgage loans are insured or guaranteed by any governmental agency or private insurer.

"IQ" is a service mark of Morgan Stanley representing financial investment in the field of commercial mortgage-backed securities collateralized by "institutional quality" whole loans.

Investing in the certificates offered to you involves risks. See "Risk Factors" beginning on page S-29 of this prospectus supplement and page 9 of the prospectus.

Characteristics of the certificates offered to you include:

| Class | Approximate Initial Certificate Balance | Initial Pass-Through Rate | Pass-Through Rate Description | Ratings (Moody's/S&P) |
|---|---|---|---|---|
| Class A-1 | $ 81,000,000 | 3.48% | Fixed | Aaa/AAA |
| Class A-2 | $125,000,000 | 4.39% | Fixed | Aaa/AAA |
| Class A-3 | $ 90,019,000 | 4.80% | Fixed | Aaa/AAA |
| Class A-4 | $482,862,000 | 5.08% | Fixed | Aaa/AAA |
| Class B | $ 26,152,000 | 5.24% | Fixed | Aa2/AA |
| Class C | $ 27,289,000 | 5.41% | Fixed | A2/A |
| Class D | $ 2,274,000 | 5.55% | Fixed | A3/A– |

The certificate balances are approximate and may vary by up to 5%.

The Securities and Exchange Commission and state securities regulators have not approved or disapproved the certificates offered to you or determined if this prospectus supplement or the accompanying prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

Morgan Stanley & Co. Incorporated will act as sole lead manager and sole bookrunner and Merrill Lynch & Co. and Lehman Brothers Inc. will act as co-managers with respect to the offered certificates. Morgan Stanley & Co. Incorporated, Merrill Lynch & Co. and Lehman Brothers Inc., the underwriters, will purchase the certificates offered to you from Morgan Stanley Dean Witter Capital I Inc. and will offer them to the public at negotiated prices determined at the time of sale. The underwriters expect to deliver the certificates to purchasers on or about December 17, 2002. Morgan Stanley Dean Witter Capital I Inc. expects to receive from this offering approximately $838,465,840, plus accrued interest from the cut-off date, before deducting expenses payable by Morgan Stanley Dean Witter Capital I Inc.

## MORGAN STANLEY

**MERRILL LYNCH & CO.**                                    **LEHMAN BROTHERS**

December 5, 2002

# MORGAN STANLEY DEAN WITTER CAPITAL I INC.

## Commercial Mortgage Pass-Through Certificates, Series 2002-IQ3
### Geographic Overview of Mortgage Pool

**Legend:**
- < 1.0% of Cut-Off Date Balance
- 1.0% - 5.0% of Cut-Off Date Balance
- 5.1% - 10.0% of Cut-Off Date Balance
- > 10.0% of Cut-Off Date Balance

**Maine**
1 property
$1,084,473
0.1% of total

**Massachusetts**
4 properties
$43,062,582
4.7% of total

**Connecticut**
1 property
$2,978,897
0.3% of total

**Maryland**
5 properties
$29,938,971
3.3% of total

**New Hampshire**
2 properties
$1,585,245
0.2% of total

**New Jersey**
1 property
$19,910,528
2.2% of total

**New York**
45 properties
$193,550,558
21.3% of total

**District of Columbia**
4 properties
$70,176,777
7.7% of total

**Virginia**
2 properties
$1,347,335
0.1% of total

**Pennsylvania**
2 properties
$9,878,394
1.1% of total

**North Carolina**
5 properties
$3,795,166
0.4% of total

**South Carolina**
2 properties
$17,970,399
2.0% of total

**Florida**
12 properties
$29,583,697
3.3% of total

**Ohio**
7 properties
$23,406,403
2.6% of total

**Georgia**
3 properties
$5,885,963
0.6% of total

**Michigan**
11 properties
$38,228,364
4.2% of total

**Alabama**
2 properties
$4,867,346
0.5% of total

**Indiana**
3 properties
$3,883,144
0.4% of total

**Tennessee**
3 properties
$3,821,088
0.4% of total

**Kentucky**
2 properties
$1,739,951
0.2% of total

**Illinois**
2 properties
$15,162,763
1.7% of total

**Minnesota**
10 properties
$13,841,967
1.5% of total

**Iowa**
6 properties
$16,772,513
1.8% of total

**Missouri**
1 property
$4,690,162
0.5% of total

**Louisiana**
1 property
$9,890,768
1.1% of total

**Oklahoma**
1 property
$29,905,326
3.3% of total

**Kansas**
1 property
$3,389,673
0.4% of total

**Texas**
22 properties
$57,053,964
6.3% of total

**Nebraska**
2 properties
$1,731,061
0.2% of total

**Idaho**
5 properties
$4,506,998
0.5% of total

**New Mexico**
12 properties
$18,442,053
2.0% of total

**Colorado**
2 properties
$2,846,726
0.3% of total

**Arizona**
7 properties
$12,497,431
1.4% of total

**Washington**
5 properties
$33,541,283
3.7% of total

**Utah**
5 properties
$9,023,034
1.0% of total

**Oregon**
8 properties
$29,535,561
3.2% of total

**Nevada**
2 properties
$3,980,843
0.4% of total

**Northern California**
7 properties
$40,211,580
4.4% of total

**Southern California**
31 properties
$92,851,380
10.2% of total

**Alaska**
1 property
$2,225,729
0.2% of total



**77 P Street Office,** Washington, D.C.



**One Seaport Plaza,** New York, NY

**The Richards Building,** Cambridge, MA



**Tulsa Distribution Center,** Tulsa, OK



Northwestern Corporate Center, Southfield, MI



2731 San Tomas Expressway, Santa Clara, CA



125 Delawanna Avenue, Clifton, NJ



Evergreen Plaza, Staten Island, NY



Plantation Villa Apartments, Frisco, TX



Riverland Woods Apartments, Charleston, SC

## EXECUTIVE SUMMARY

This Executive Summary highlights selected information regarding the certificates. It does not contain all of the information you need to consider in making your investment decision. **To understand all of the terms of this offering and the underlying mortgage loans, you should read this entire prospectus supplement and the accompanying prospectus carefully.**

### Certificate Structure

| Approximate Credit Support | Class | Approximate Initial Certificate Balance | Approximate Initial Pass-Through Rate | Ratings (Moody's/S&P) | Approximate Percent of Total Certificates | Weighted Average Life (Yrs.) | Principal Window (months) |
|---|---|---|---|---|---|---|---|
| 14.375% | Class A-1 | $81,000,000 | 3.48% | Aaa/AAA | 8.9% | 3.41 | 1-73 |
| 14.375% | Class A-2 | $125,000,000 | 4.39% | Aaa/AAA | 13.7% | 5.70 | 73-110 |
| 14.375% | Class A-3 | $90,019,000 | 4.80% | Aaa/AAA | 9.9% | 7.76 | 73-110 |
| 14.375% | Class A-4 | $482,862,000 | 5.08% | Aaa/AAA | 53.1% | 9.65 | 110-120 |
| 11.500% | Class B | $26,152,000 | 5.24% | Aa2/AA | 2.9% | 9.99 | 120-120 |
| 8.500% | Class C | $27,289,000 | 5.41% | A2/A | 3.0% | 10.17 | 120-128 |
| 8.250% | Class D | $2,274,000 | 5.55% | A3/A- | 0.3% | 10.73 | 128-129 |
| 6.750% | Class E | $13,645,000 | 5.98% | Baa1/BBB+ | 1.5% | 10.87 | 129-135 |
| 5.625% | Class F | $10,233,000 | 6.08% | Baa2/BBB | 1.1% | 11.63 | 135-142 |
| 4.875% | Class G | $6,823,000 | 6.51% | Baa3/BBB- | 0.8% | 12.14 | 142-150 |
| --- | Classes H-O | $44,345,278 | --- | | | | |
| --- | Class X-1 | --- | --- | Aaa/AAA | --- | --- | --- |
| --- | Class X-2 | --- | --- | Aaa/AAA | --- | --- | --- |
| --- | Class X-Y | --- | --- | Aaa/AAA | | | |

- The notional amount of the Class X-1 Certificates initially will be $909,642,278, the notional amount of the Class X-2 Certificates initially will be $824,775,000 and the notional amount of the Class X-Y Certificates initially will be $87,981,643.

- The percentages indicated under the column "Approximate Credit Support" with respect to the Class A-1, Class A-2, Class A-3 and Class A-4 Certificates represent the approximate credit support for the Class A-1, Class A-2, Class A-3 and Class A-4 Certificates in the aggregate.

- The initial certificate balance may vary by up to 5%.

- The Class X-1 Certificates, the Class X-2 Certificates and the Class X–Y Certificates (together, the "Class X Certificates") and the Class E, Class F, Class G, Class H, Class J, Class K, Class L, Class M, Class N and Class O Certificates are not offered pursuant to this prospectus supplement.

- The pass-through rates for the Class A-1, Class A-2, Class A-3, Class A-4, Class B, Class C and Class D Certificates presented in the table are fixed at their respective per annum rates set forth above.

- The principal window is expressed in months following the closing date and reflects the period during which distributions of principal would be received under the assumptions set forth in the following sentence. The Weighted Average Life and principal window figures set forth above are based on the following assumptions, among others: (i) no losses on the underlying mortgage loans; (ii) no extensions of the maturity dates of the underlying mortgage loans that do not have anticipated repayment dates and (iii) payment in full on the "anticipated repayment date" or stated maturity date of each underlying mortgage loan. See the assumptions set forth under "Yield, Prepayment and Maturity Considerations" in this prospectus supplement.

- Each Class X-1 and Class X-2 Certificate is an investment unit consisting of multiple REMIC regular interests.

- Each Class EI Certificate represents beneficial ownership of certain excess interest in respect of mortgage loans having a hyper-amortization feature.

- The Class R-I, R-II and R-III Certificates also represent ownership interests in the trust. These certificates are not represented in this table and are not offered pursuant to this prospectus supplement.

☐ Offered certificates.
▨ Certificates not offered pursuant to this prospectus supplement.

## RISK FACTORS

You should carefully consider the risks involved in owning a certificate before purchasing a certificate. Among other risks, the timing of payments and payments you receive on your certificates will depend on payments received on and other recoveries with respect to the mortgage loans. Therefore, you should carefully consider both the risk factors relating to the mortgage loans and the mortgaged properties and the other risks relating to the certificates.

The risks and uncertainties described in this section, together with those risks described in the prospectus under "Risk Factors," summarize the material risks relating to your certificates. Your investment could be materially and adversely affected by the actual and potential circumstances that we describe in those sections.

**Your Investment Is Not Insured Or Guaranteed And Your Source For Repayments Is Limited To Payments Under The Mortgage Loans**

The certificates are not insured or guaranteed by any governmental entity or insurer. Accordingly, the sources for repayment of your certificates are limited to amounts due with respect to the mortgage loans. Payments under the mortgage loans are not insured or guaranteed by any governmental entity or mortgage insurer.

You should consider all of the mortgage loans to be nonrecourse loans. Even in those cases where recourse to a borrower or guarantor is permitted under the related mortgage loan documents, we have not necessarily undertaken an evaluation of the financial condition of any of these persons. If a default occurs, the lender's remedies generally are limited to foreclosing against the specific properties and other assets that have been pledged to secure the mortgage loan. Such remedies may be insufficient to provide a full return on your investment. Payment of amounts due under a mortgage loan prior to its maturity or anticipated repayment date is primarily dependent on the sufficiency of the net operating income of the related mortgaged property. Payment of the balloon payment of a mortgage loan that is a balloon loan at its maturity, or on its anticipated repayment date, is primarily dependent upon the borrower's ability to sell or refinance the mortgaged property for an amount sufficient to repay the mortgage loan.

In limited circumstances, Morgan Stanley Dean Witter Mortgage Capital Inc., The Union Central Life Insurance Company, Prudential Mortgage Capital Funding, LLC, National Consumer Cooperative Bank, NCB, FSB, Principal Commercial Funding, LLC, Teachers Insurance and Annuity Association of America and Nationwide Life Insurance Company, each as a seller, may be obligated to repurchase or replace a mortgage loan that it sold to us if its representations and warranties concerning that mortgage loan are materially breached or if there are material defects in the documentation for that mortgage loan. However, there can be no assurance that any of these entities will be in a financial position to effect a repurchase or substitution. The representations and warranties address certain characteristics of the mortgage loans and mortgaged properties as of the date of issuance of the certificates. They do not relieve you or the trust of the risk of defaults and losses on the mortgage loans.

insurance. Any losses incurred with respect to mortgage loans due to uninsured risks, including earthquakes, mudflows and floods, or insufficient hazard insurance proceeds may adversely affect payments to Certificateholders. The special servicers will have the right, but not the obligation, at the expense of the trust, to obtain earthquake insurance on any mortgaged property securing a Specially Serviced Mortgage Loan and/or any REO Property for which it is acting as special servicer so long as such insurance is available at commercially reasonable rates. See "Risk Factors—The Absence Of Or Inadequacy Of Insurance Coverage On The Property May Adversely Affect Payments On Your Certificates" and "—Certain Other Risks Related to Casualty and Casualty Insurance" in this prospectus supplement.

**The Sellers**

*Morgan Stanley Dean Witter Mortgage Capital Inc.*

MSDWMC, a subsidiary of Morgan Stanley and an affiliate of Morgan Stanley & Co. Incorporated, one of the underwriters, was formed as a New York corporation to originate and acquire loans secured by mortgages on commercial and multifamily real estate. Each of the MSDWMC Loans was originated or purchased by MSDWMC, and all of the MSDWMC Loans were underwritten by MSDWMC underwriters. The principal offices of MSDWMC are located at 1585 Broadway, New York, New York 10036. MSDWMC's telephone number is (212) 761-4700.

*The Union Central Life Insurance Company*

Founded in 1867 in Cincinnati, Ohio, The Union Central Life Insurance Company was the first domestic life insurance company licensed in the state of Ohio. The Union Central Life Insurance Company has become one of the 15 largest mutual insurance companies in the nation with over $5.5 billion in assets and licenses to conduct business in all 50 states and the District of Columbia. The Union Central Life Insurance Company wholly owns Summit Investment Partners, Inc., the Primary Servicer with respect to the loans transferred to the trust by The Union Central Life Insurance Company. The principal offices of The Union Central Life Insurance Company are located at 1876 Waycross Road, P.O. Box 40888, Cincinnati, Ohio 45240. The Union Central Life Insurance Company's telephone number is (800) 825-1551. The pooled mortgage loans for which The Union Central Life Insurance Company is the applicable mortgage loan seller were originated or acquired by The Union Central Life Insurance Company.

*Prudential Mortgage Capital Funding, LLC*

Prudential Mortgage Capital Funding, LLC is a limited liability company organized under the laws of the State of Delaware. Prudential Mortgage Capital Funding, LLC is a wholly owned, limited purpose, subsidiary of Prudential Mortgage Capital Company, LLC. Prudential Mortgage Capital Company, LLC is a real estate financial services company which originates commercial and multifamily real estate loans throughout the United States. Prudential Mortgage Capital Funding, LLC was organized for the purpose of acquiring loans originated by Prudential Mortgage Capital Company, LLC and holding them pending securitization or other disposition. Prudential Mortgage Capital Company, LLC has primary offices in Atlanta, Chicago, San Francisco and Newark. The principal offices of Prudential Mortgage Capital Company, LLC are located at 4 Gateway Center, 8th Floor, 100 Mulberry Street, Newark, New Jersey 07102. The pooled mortgage loans for which Prudential Mortgage Capital Funding, LLC is the applicable mortgage loan seller were originated by Prudential Mortgage Capital Company, LLC (or a wholly-owned subsidiary of Prudential Mortgage Capital Company, LLC) or, in 1 case, acquired by Prudential Mortgage Capital Funding, LLC from a third party.

*National Consumer Cooperative Bank*

National Consumer Cooperative Bank was chartered by an act of Congress in 1978 for the purpose of providing loans and other financial services to cooperatively owned and organized entities throughout the United States. By Congressional amendments in 1981, NCB was converted to a private institution owned by its member cooperative customers, including certain of the borrowers. It is one of the special servicers and wholly owns NCB, FSB, one of the master servicers and one of the mortgage loan sellers. National Consumer Cooperative Bank and its

Nationwide's Real Estate Investment Department originated $2.1 billion in commercial mortgage loans in 2001 and has averaged over $1.2 billion in originations per year over the past 5 years. The Real Estate Investment Department originated all of the Nationwide Life mortgage loans in this transaction and currently manages over $9.6 billion of mortgage loans for Nationwide Life, its affiliates, and third party participants.

Nationwide Life's headquarters are in Columbus, Ohio, where the company was founded in 1929. Nationwide Life has financial strength ratings from A.M. Best "A+," Moody's "Aa3," and S&P "AA-." Nationwide's main telephone number is (614) 249-7111.

## Sale of the Mortgage Loans

On the Closing Date, each seller will sell its mortgage loans, without recourse, to Morgan Stanley Dean Witter Capital I Inc., and Morgan Stanley Dean Witter Capital I Inc., in turn, will sell all of the mortgage loans, without recourse and will assign the representations and warranties made by each seller in respect of the mortgage loans and the related remedies for breach thereof, to the trustee for the benefit of the Certificateholders. In connection with such assignments, each seller is required in accordance with the related Mortgage Loan Purchase Agreement to deliver the Mortgage File, with respect to each mortgage loan so assigned by it, to the trustee or its designee.

The trustee will be required to review the documents delivered by each seller with respect to its mortgage loans within 120 days following the Closing Date, and the trustee will hold the related documents in trust. Within 60 days following the Closing Date, the assignments with respect to each mortgage loan and any related assignment of rents and leases, as described in the "Glossary of Terms" under the term "Mortgage File," are to be completed in the name of the trustee, if delivered in blank.

## Representations and Warranties

In each Mortgage Loan Purchase Agreement, the related seller has represented and warranted with respect to each of its mortgage loans, subject to certain specified exceptions set forth therein, as of the Closing Date or as of such other date specifically provided in the representation and warranty, among other things, generally to the effect that:

(1)     the information presented in the schedule of the mortgage loans attached to the related Mortgage Loan Purchase Agreement is complete, true and correct in all material respects;

(2)     such seller owns the mortgage loan free and clear of any and all pledges, liens and/or other encumbrances;

(3)     no scheduled payment of principal and interest under the mortgage loan was 30 days or more past due as of the Cut-off Date, and the mortgage loan has not been 30 days or more delinquent in the 12-month period immediately preceding the Cut-off Date;

(4)     the related mortgage constitutes a valid and, subject to certain creditors' rights exceptions, enforceable first priority mortgage lien, subject to certain permitted encumbrances, upon the related mortgaged property;

(5)     the assignment of the related mortgage in favor of the trustee constitutes a legal, valid and binding assignment;

(6)     the related assignment of leases establishes and creates a valid and, subject to certain creditor's rights exceptions, enforceable first priority lien in or assignment of the related borrower's interest in all leases of the mortgaged property;

(7)     the mortgage has not been satisfied, cancelled, rescinded or subordinated in whole or in part, and the related mortgaged property has not been released from the lien of such mortgage, in whole or in part in any manner that materially and adversely affects the value thereof;

# APPENDIX III
## SIGNIFICANT LOAN SUMMARIES

| Mortgage Loan No. 1 – 77 P Street Office |
| --- |

| Loan Information | | Property Information | | | |
| --- | --- | --- | --- | --- | --- |
| Original Balance: | $67,000,000 | Single Asset/Portfolio: | Single Asset | | |
| Cut-off Date Balance: | $67,000,000 | Property Type: | Office | | |
| First Payment Date: | 01/01/2003 | Property Sub-type: | Urban | | |
| Interest Rate: | 6.100% | Location: | Washington, DC | | |
| Amortization: | 360 months | Year Built/Renovated: | 2000-2002/NAP | | |
| ARD: | NAP | Occupancy[6]: | 96.5% | | |
| Hyperamortization: | NAP | Square Footage: | 341,701 | | |
| Maturity Date: | 12/01/2012 | The Collateral: | Six story office building | | |
| Expected Maturity Balance: | $57,108,699 | Ownership Interest[7]: | Fee | | |
| Sponsor(s): | Douglas Jemal and Joseph Cayre | | | | |
| Interest Calculation: | Actual/360 | **Major Tenants** | **%NSF** | **Rent PSF** | **Lease Expiration** |
| Call Protection: | Lockout until the earlier of the 5th anniversary of the closing date or 2 years after the REMIC startup date, with US Treasury defeasance thereafter. The loan is prepayable without premium within three months prior to the maturity date. | Department of Employment Services | 30.9% | $33.66 | 06/30/2011 |
| | | Department of Mental Health Services | 19.9% | $36.07 | 06/30/2011 |
| | | Department of Human Services | 15.5% | $34.00 | 06/30/2011 |
| Loan per SF: | $196.08 | | | | |
| Up-front Reserves: | Insurance: $15,596 | | | | |
| | Completion Holdback[1]: $19,000,000 | Property Management: | Douglas Development Corporation | | |
| | Rollover Holdback[2]: $6,505,193 | U/W Net Op. Income: | $7,738,866 | | |
| | Debt Service[3]: $345,417 | U/W Net Cash Flow: | $6,963,205 | | |
| Ongoing Reserves: | RE Tax: $73,988 | Appraised Value: | $96,000,000 | | |
| | Insurance: $7,798 | Cut-off Date LTV: | 69.8% | | |
| | Replacements: $5,695 | Maturity Date LTV: | 59.5% | | |
| | Rollover Costs[4]: $49,831 | DSCR: | 1.43x | | |
| Lockbox[5]: | Hard | DSCR @8% Constant: | 1.30x | | |

(1)    $19,000,000 of the loan was held back and deposited with the lender in an interest bearing escrow account. The borrower has the right to receive funds from this account at any time prior to May 31, 2004, subject to the satisfaction of the following conditions: (i) delivery of an estoppel letter from one or more of the Department of Human Services, the Department of Health, the Department of Transportation, N. Capital Hospitality and/or the New Economy Act Agency stating that such party has taken occupancy of its premises; (ii) the borrower has provided certain financial reports; (iii) the debt service coverage ratio of the entire loan is not less than 1.43x; (iv) the lender has received an endorsement to the title policy indicating that the property is free from all liens, claims and other encumbrances other than those permitted by the loan documents, (v) the occupancy of the property and the financial condition of the borrower, its principals, the property, any tenant and any guarantor of any lease of space at the property shall not have suffered any material adverse change and no bankruptcy has been filed by or against any such person, (vi) no tenant of the property has ceased business operations or provided notice of its intent to discontinue or possibly discontinue operations at the property and (vii) no event of default or event which, with notice, the passage of time, or both would constitute an event of default under the loan documents has occurred. If the above conditions are not satisfied by May 31, 2004, the lender may apply any funds remaining to payment of the outstanding principal balance of the loan. In addition, within 5 days after demand by the lender, the borrower must pay the yield maintenance premium attributable to any such prepayment.

(2)    $6,505,193 of the loan was held back in connection with certain tenant improvements. Subject to certain conditions contained in the loan documents, the funds are to be disbursed by the lender directly to third party vendors and/or contractors that provide invoices, receipts and other similar written documents which evidence that such tenant improvements have been completed.

(3)    $345,417 of the loan was held back and deposited with the lender in an interest bearing escrow account. The lender has the right to apply any of the funds in such account for any monthly payment of principal and interest due under the loan. If the lender uses such funds to pay for any monthly payment of principal and interest due under the loan, the borrower is obligated to deposit with the lender an amount sufficient to restore the funds in the account to its original amount with 5 days of the lender's demand. The borrower does not have the right to receive any of the funds in such account until all of the funds in the Completion Holdback have been disbursed to the borrower.

(4)    In addition to the monthly rollover escrow collections, the lender will sweep all free cash flow beginning October 1, 2010, if the tenant has not renewed by that date.

(5)    Revenue from the related mortgaged property is paid directly by the tenants and other payees to an account controlled by the applicable master servicer on behalf of the trust fund. The revenue from the related mortgaged property is applied by the master servicer on behalf of the trust fund to sums payable under the related mortgage loan and, in certain transactions, to pay expenses at the related mortgaged property.

(6)    As of an October 29, 2002 rent roll.

(7)    The collateral is subject to a ground lease; however, the fee owner is affiliated with the borrower and has pledged its fee interest as additional collateral for the loan. Upon foreclosure, the ground lease is extinguished. As such, the loan is disclosed as a fee loan.

### The 77 P Street Loan

**The Loan.** The largest loan (the "77 P Street Loan") as evidenced by the promissory note (the "77 P Street Note") is secured by a first priority Mortgage (the "77 P Street Mortgage") encumbering an office building containing 341,701 square feet of space in Washington, DC (the "77 P Street Property"). The 77 P Street Loan was originated on November 19, 2002 by Morgan Stanley Dean Witter Mortgage Capital Inc., or an affiliate thereof.

**The Borrower.** The borrower is Cayre Jemal's Gateway Holdings LLC (the "77 P Street Borrower") that owns no material asset other than the 77 P Street Property and related interests. The 77 P Street Borrower is a single purpose entity. The 77 P Street Borrower is controlled by Douglas Jemal and Joseph Cayre.

**The Property.** The 77 P Street Property, located in Washington, DC, was originally constructed in 1906, but underwent a complete reconstruction in 2000 – 2002, and is essentially a new physical plant. The 77 P Street Property consists of an office building containing 341,701 square feet of space, primarily occupied by five separate agencies of the District of Columbia government. The District of Columbia has general obligation credit ratings of BBB+ (S&P) and Baa1 (Moody's), as of November 19, 2002. The property is located within the Capitol Hill office sub-market and is across the street from the future ATF headquarters campus and a District of Columbia Metro Station scheduled to open in 2005. The property has 350 on-site parking spaces, which are primarily leased to property tenants.

| | | | | Lease Rollover Schedule | | |
|---|---|---|---|---|---|---|
| Year | # of Leases Rolling | Average Base Rent per SF Rolling | % of Total Square Feet Rolling | Cumulative % of SF Rolling | % of Total Base Rental Revenues Rolling | Cumulative % of Total Base Rental Revenues Rolling |
| Vacant | 1 | $20.00 | 4% | 4% | 2% | 2% |
| 2002 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2003 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2004 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2005 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2006 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2007 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2008 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2009 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2010 | 0 | $0.00 | 0% | 4% | 0% | 2% |
| 2011 & Beyond | 10 | $33.08 | 96% | 100% | 98% | 100% |

**Property Management.** Douglas Development Corporation

**Mezzanine Loan and Preferred Equity Interest.** Not allowed.

**Additional Indebtedness.** Not allowed.

**Release of Parcels.** Not allowed.

Certain additional information regarding the 77 P Street Loan and the 77 P Street Property is set forth on Appendix II hereto.

Douglas Development Corp.

Transaction Report

01/01/2003 to 12/31/2003

| Accounting Date | Ref1 | Job | Invoice | Description | Beginning Balance | Debit | Credit | End Balance |
|---|---|---|---|---|---|---|---|---|
| 080-00-17300 Tenant Lease Costs - Constrctn | | | | | | | | |
| 01/01/2003 | DAVIS | | | Record TI Draw #1 | | 2,917,297.00 | | |
| 01/01/2003 | FOX | | | Record TI Draw #1 | | 93,789.54 | | |
| 01/01/2003 | DDC | | | Record TI Draw #1 | | 140,600.00 | | |
| 01/03/2003 | | 080-01-002 | | PR Post checks summary | | 616.43 | | |
| 01/14/2003 | DAVIS | | | Record TI Draw #2 | | 1,745,075.00 | | |
| 01/14/2003 | CORE GRP | | | Record TI Draw #2 | | 92,469.43 | | |
| 01/14/2003 | FOX | | | Record TI Draw #2 | | 46,018.51 | | |
| 01/14/2003 | GRP GOETZ | | | Record TI Draw #2 | | 3,167.78 | | |
| 01/14/2003 | INTL BLDRS | | | Record TI Draw #2 | | 803,390.00 | | |
| 01/14/2003 | | | | Record 1/14 reserve draw | | 12,145.45 | | |
| 01/16/2003 | | 080-01-002 | 02-12151 | 77 P ST | | 1,076.00 | | |
| 01/17/2003 | | 080-01-004 | 3100-01-01b | 77 P ST REIMB R. REA | | 34,000.00 | | |
| 01/17/2003 | | 080-01-004 | 3100-01-01b | (Rev)77 P ST REIMB R. REA | | 34,000.00- | | |
| 01/17/2003 | | 080-01-004 | 3100-01-01 | 77 P Street - D.Dot | | 34,000.00 | | |
| 01/17/2003 | | 080-01-002 | | PR Post checks summary | | 1,103.46 | | |
| 01/21/2003 | | | 165994 | 77 P ST | | 68,897.08 | | |
| 01/22/2003 | | 080-01-005 | 112894 | 571l Sarvis Ave-Crestwood | | 58.80 | | |
| 01/22/2003 | | 080-01-005 | 112906 | 77 P - New Economy | | 43.57 | | |
| 01/22/2003 | | 080-01-005 | 113762 | 77 P - 1st & 5th Floors | | 29.82 | | |
| 01/22/2003 | | 080-01-005 | 112894 | (Rev)Doc Imaging.Com Inc | | 58.80- | | |
| 01/23/2003 | | 080-01-002 | 910919 | 920 RHODE ISLAND | | 419.91 | | |
| 01/23/2003 | | 080-01-002 | 1879525-00 | Cafe X - 77 P Street | | 2,889.35 | | |
| 01/23/2003 | | 080-01-002 | 1887090-00 | Cafe X - 77 P Street | | 2,369.16 | | |
| 01/24/2003 | | 080-01-002 | 1855 | 77 P ST | | 12,490.00 | | |
| 01/24/2003 | | 080-01-005 | 111858 | | | 23.27 | | |
| 01/24/2003 | | 080-01-005 | 111858 | (Rev) | | 23.27- | | |
| 01/24/2003 | | 080-01-002 | | PR Post checks summary | | 27.37 | | |
| 01/28/2003 | | 080-01-002 | 12/31-1/27/0 | DOUGLAS DEVELOPMENT | | 220.00 | | |
| 01/31/2003 | | 080-01-002 | 287495 | 77 P ST | | 684.20 | | |
| 01/31/2003 | | 080-01-002 | 9574075-00 | 77 P ST | | 211.17 | | |
| 02/04/2003 | | 080-01-002 | 157311 | 77 P ST | | 326.47 | | |
| 02/05/2003 | | 080-01-002 | 1884387-00 | 77 P ST | | 654.65 | | |
| 02/05/2003 | | 080-01-002 | 1884514-00 | 77 P ST | | 106.29 | | |
| 02/05/2003 | | 080-01-002 | 1887090-01 | 77 P ST | | 183.93 | | |
| 02/05/2003 | | 080-01-002 | 1888246-00 | 77 P ST | | 232.08 | | |
| 02/05/2003 | | 080-01-002 | 1888692-00 | 77 P ST | | 212.68 | | |
| 02/05/2003 | | 080-01-002 | 1888741-00 | 77 P ST | | 63.58 | | |
| 02/05/2003 | | 080-01-002 | 1889867-00 | 77 P ST | | 870.47 | | |
| 02/05/2003 | | 080-01-002 | 1889881-00 | 77 P ST | | 116.80 | | |
| 02/05/2003 | | 080-01-002 | 1890484-00 | 77 P ST | | 1,542.25 | | |
| 02/05/2003 | | 080-01-002 | 1890577-00 | 77 P ST | | 124.24 | | |
| 02/06/2003 | | 080-01-003 | 030102 | 77 P Street | | 510.00 | | |
| 02/06/2003 | | 080-01-006 | 030102 | 77 P Street | | 505.00 | | |
| 02/06/2003 | | 080-01-004 | 030102 | 77 P Street | | 426.00 | | |
| 02/06/2003 | | 080-01-005 | 030102 | 77 P Street | | 387.00 | | |
| 02/07/2003 | 105540 | | | To correct Accrual To Cash | | 2,750.00 | | |
| 02/07/2003 | 105540 | | | To correct Accrual To Cash | | 2,750.00 | | |
| 02/07/2003 | 105540 | | | To correct Accrual To Cash | | 150.00 | | |
| 02/07/2003 | 105540 | | | To correct Accrual To Cash | | 150.00 | | |
| 02/07/2003 | | | | To correct accrual books | | | 5,800.00- | |
| 02/11/2003 | | | | To correct accrual to cash | | 326.47 | | |
| 02/14/2003 | | 080-01-002 | | PR Post checks summary | | 91.65 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 1,380.00 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 5,800.00 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 5,800.00 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 513.15 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 23.27 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 656.56 | | |
| 02/15/2003 | | | | To correct accrual ledger | | 243.10 | | |
| 02/15/2003 | | | | | | | 326.47- | |
| 02/15/2003 | | | | | | | 5,800.00- | |
| 02/20/2003 | | 080-01-003 | 114015 | 77 P Street | | 153.71 | | |
| 02/21/2003 | | 080-01-002 | | PR Post checks summary | | 1,372.46 | | |
| 02/24/2003 | | 080-01-002 | 1898284-00 | 77 P ST | | 1,163.27 | | |
| 02/24/2003 | | 080-01-002 | 1898442-01 | 77 P ST | | 569.76 | | |
| 02/24/2003 | | 080-01-002 | 1899270-00 | 77 P ST | | 418.19 | | |
| 02/26/2003 | | 080-01-002 | 908596 | 77 P ST | | 402.57 | | |
| 02/27/2003 | | 080-01-002 | 09668-01240 | 77 P ST | | 3,750.00 | | |
| 02/27/2003 | | 080-01-002 | 09668-02110 | 77 P ST | | 1,624.00 | | |
| 02/27/2003 | | | | BL  summary | | | 964,740.10- | |
| 02/27/2003 | | | | AR Adjust receivables summary | | | 964,740.10 | |
| 02/28/2003 | | | | BL  summary | | | 357,913.03- | |
| 02/28/2003 | | | | AR Adjust receivables summary | | | 357,913.03 | |
| 02/28/2003 | | 080-01-002 | | PR Post checks summary | | 195.79 | | |

Douglas Development Corp.

Transaction Report

Page 2
System Date: 01/08/07
System Time:  3:48 pm

01/01/2003 to 12/31/2003

| Accounting Date | Ref1 | Job | Invoice | Description | Beginning Balance | Debit | Credit | End Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | **080-00-17300 Tenant Lease Costs - Constrctn** | | | | |
| 03/03/2003 | 080-01-004 | | 113624 | 77 P Street - DDOT | | 58.69 | | |
| 03/03/2003 | 080-01-004 | | 113641 | 77 P Street - DDOT | | 43.62 | | |
| 03/03/2003 | 080-01-005 | | 113968 | 77 P Street - | | 41.03 | | |
| 03/03/2003 | 080-01-005 | | 114007 | 77 P Street - New Eco. | | 76.93 | | |
| 03/03/2003 | 080-01-004 | | 114021 | 77 P Street - DDOT | | 74.87 | | |
| 03/03/2003 | 080-01-004 | | 114032 | 77 P Street | | 41.24 | | |
| 03/03/2003 | 080-01-005 | | 114061 | 77 P Street | | 93.75 | | |
| 03/03/2003 | 080-01-005 | | 114062 | 77 P Street | | 98.35 | | |
| 03/03/2003 | 080-01-005 | | 114157 | 77 P St - New Economy | | 35.96 | | |
| 03/03/2003 | 080-01-004 | | 030303-080 | PERMIT-DDOT | | 4,300.00 | | |
| 03/05/2003 | 080-01-004 | | 03/102 | 77 P St | | 66,511.00 | | |
| 03/10/2003 | | | 01166917 | 77 P ST | | 38,707.56 | | |
| 03/10/2003 | 080-01-002 | | 1889881-01 | 77 P ST | | 1,355.58 | | |
| 03/10/2003 | 080-01-002 | | 1889881-50 | 77 P ST | | 22.24 | | |
| 03/10/2003 | 080-01-002 | | 1896269-00 | 1817 M ST | | 34.11 | | |
| 03/10/2003 | 080-01-002 | | 1897222-00 | 77 P ST | | 299.42 | | |
| 03/10/2003 | 080-01-002 | | 1897222-01 | 77 P ST | | 104.98 | | |
| 03/10/2003 | 080-01-002 | | 1898442-00 | 77 P ST | | 22.73 | | |
| 03/10/2003 | 080-01-002 | | 1896269-00 | (Rev)1817 M ST | | 34.11- | | |
| 03/13/2003 | 080-01-004 | | 3/10/03OVR | E. Lopez - 77 P OVR | | 580.00 | | |
| 03/13/2003 | 080-01-004 | | 3/10/03OVR | S. Perez - 77 P OVR | | 348.00 | | |
| 03/13/2003 | 080-01-004 | | 3/10/03OVR | D. Vasquez - 77 P OVR | | 348.00 | | |
| 03/13/2003 | 080-01-004 | | 3/10/03OVR | V. Gomez - 77 P OVR | | 348.00 | | |
| 03/13/2003 | 080-01-004 | | 3/10/03OVR | M. Perez - 77 P OVR | | 348.00 | | |
| 03/13/2003 | 080-01-004 | | 3/10/03OVR | A. Sajche - 77 P OVR | | 348.00 | | |
| 03/13/2003 | 080-01-004 | | 3/3-3/9/03 | Miguel Vasquez 3/3-3/9/03 | | 402.00 | | |
| 03/13/2003 | 080-01-004 | | 3/3-9/03 | Juan Gomez - 77 P St 3/3-9/03 | | 756.00 | | |
| 03/13/2003 | 080-01-004 | | 3/3-9/03b | 77 P St - Samuel Lopez Perez | | 498.00 | | |
| 03/13/2003 | 080-01-004 | | 3/3-9/03c | 77 P Street - German Cabrera | | 144.00 | | |
| 03/14/2003 | 080-01-004 | | | PR Post checks summary | | 1,721.84 | | |
| 03/14/2003 | 080-01-002 | | | PR Post checks summary | | 115.66 | | |
| 03/18/2003 | 080-01-002 | | 9578889-00 | 77 P ST | | 337.89 | | |
| 03/21/2003 | 080-01-004 | | | PR Post checks summary | | 3,887.48 | | |
| 03/21/2003 | 080-01-002 | | | PR Post checks summary | | 169.57 | | |
| 03/24/2003 | 080-01-004 | | 2/11-3/8/03 | 77 P ST | | 235.23 | | |
| 03/26/2003 | 080-01-004 | | 1-1149841 | 77 P ST | | 1,410.09 | | |
| 03/26/2003 | 080-01-004 | | 1-1149842 | 77 P ST | | 1,194.37 | | |
| 03/26/2003 | 080-01-002 | | 1897222-50 | 77 P ST | | 35.58 | | |
| 03/26/2003 | 080-01-002 | | 1898442-02 | 77 P ST | | 269.99 | | |
| 03/26/2003 | 080-01-002 | | 1898442-50 | 77 P ST | | 22.24 | | |
| 03/26/2003 | 080-01-002 | | 1901618-00 | 77 P ST | | 121.37 | | |
| 03/26/2003 | 080-01-002 | | 1901725-00 | 77 P ST | | 35.56 | | |
| 03/26/2003 | 080-01-002 | | CAFE X-PRESS | 77 P ST | | 13,050.00 | | |
| 03/26/2003 | 080-01-004 | | 291565 | 77 P ST | | 201.33 | | |
| 03/27/2003 | 080-01-002 | | | PR Post checks summary | | 756.94 | | |
| 03/31/2003 | 080-01-002 | | 9578986-00 | 77 P ST | | 389.13 | | |
| 04/02/2003 | 080-01-004 | | 15549 | 77 P Street - DOT | | 39,099.33 | | |
| 04/02/2003 | 080-01-004 | | 15561 | 77 P Street - DOT | | 26,508.70 | | |
| 04/02/2003 | 080-01-004 | | 15602 | 77 P Street - DOT | | 8,797.05 | | |
| 04/03/2003 | 080-01-004 | | 0000139782 | Northrop Grumman Cop. | | 159,935.25 | | |
| 04/03/2003 | 080-01-004 | | 3100-01-02 | R. Rea Corporation | | 58,845.00 | | |
| 04/03/2003 | 080-01-004 | | 3100-01-03 | R. Rea Corporation | | 37,033.88 | | |
| 04/07/2003 | 080-01-002 | | 160361 | Ernest Maier Block Co., Inc. | | 40.08 | | |
| 04/07/2003 | 080-01-002 | | 160367 | Ernest Maier Block Co., Inc. | | 44.80 | | |
| 04/07/2003 | 080-01-002 | | 1909969-00 | Maurice Electrical Sply Co Inc | | 91.76 | | |
| 04/09/2003 | 080-01-003 | | 202-00012-1 | Global Furniture Resources LLC | | 318,078.35 | | |
| 04/09/2003 | 080-01-003 | | 202-00012-2 | Global Furniture Resources LLC | | 190,847.01 | | |
| 04/09/2003 | 080-01-003 | | 202-00012-3 | Global Furniture Resources LLC | | 127,231.34 | | |
| 04/09/2003 | 080-01-003 | | S0307-75B | James G. Davis Construction | | 66,125.00 | | |
| 04/09/2003 | 080-01-003 | | S0307-75C | James G. Davis Construction | | 909,600.00 | | |
| 04/09/2003 | 080-01-004 | | S0307-75F | James G. Davis Construction | | 76,000.00 | | |
| 04/09/2003 | 080-01-004 | | S0307-75H | James G. Davis Construction | | 225,000.00 | | |
| 04/09/2003 | 080-01-003 | | S0307-75B | (Rev)James G. Davis Constructi | | 66,125.00- | | |
| 04/09/2003 | 080-01-003 | | 61-2040-2B | James G. Davis Construction | | 66,125.00 | | |
| 04/09/2003 | 080-01-003 | | S0307-75C | (Rev)James G. Davis Constructi | | 909,600.00- | | |
| 04/09/2003 | 080-01-003 | | 61-2040-2C | James G. Davis Construction | | 909,600.00 | | |
| 04/09/2003 | 080-01-004 | | S0307-75F | (Rev)James G. Davis Constructi | | 76,000.00- | | |
| 04/09/2003 | 080-01-004 | | 61-2040-2F | James G. Davis Construction | | 76,000.00 | | |
| 04/09/2003 | 080-01-004 | | S0307-75H | (Rev)James G. Davis Constructi | | 225,000.00- | | |
| 04/09/2003 | 080-01-004 | | 61-2040-2-H | James G. Davis Construction | | 225,000.00 | | |
| 04/09/2003 | 080-01-004 | | 61-2040-2H | (Rev)James G. Davis Constructi | | 225,000.00- | | |
| 04/09/2003 | 080-01-004 | | 61-2040-2H | James G. Davis Construction | | 225,000.00 | | |
| 04/09/2003 | | | 01267950 | American Office | | 71,921.99 | | |
| 04/09/2003 | | | 01267998 | American Office | | 8,838.77 | | |

Douglas Development Corp.

Transaction Report

01/01/2003 to 12/31/2003

| Accounting Date | Ref1 | Job | Invoice | Description | Beginning Balance | Debit | Credit | End Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | **080-00-17300 Tenant Lease Costs - Constrctn** | | | | |
| 04/09/2003 | | | 01268033 | American Office | | 4,837.43 | | |
| 04/09/2003 | | | 01268158 | American Office | | 27,743.94 | | |
| 04/09/2003 | | | 01268159 | American Office | | 33,877.11 | | |
| 04/09/2003 | | | 01268300 | American Office | | 10,410.00 | | |
| 04/09/2003 | | | 01268309 | American Office | | 6,443.80 | | |
| 04/09/2003 | | | 01268368 | American Office | | 28,824.86 | | |
| 04/09/2003 | | | 01268485 | American Office | | 29,470.88 | | |
| 04/09/2003 | | | 01268486 | American Office | | 5,488.86 | | |
| 04/09/2003 | | | 01268508 | American Office | | 20,646.84 | | |
| 04/09/2003 | | | 01268609 | American Office | | 662.31 | | |
| 04/09/2003 | | | 01268627 | American Office | | 2,137.50 | | |
| 04/09/2003 | | | 01268680 | American Office | | 48,968.84 | | |
| 04/09/2003 | | | 01269124 | American Office | | 62,495.59 | | |
| 04/09/2003 | | | 2630 | Schwartz Engineering, Inc. | | 34,923.00 | | |
| 04/09/2003 | | | 2639 | Schwartz Engineering, Inc. | | 27,649.75 | | |
| 04/09/2003 | | 080-01-005 | 2211040 | Group Goetz Architects, Pc | | 5,893.23 | | |
| 04/09/2003 | | 080-01-003 | 202-00012-2 | (Rev)Global Furniture Resource | | 190,847.01- | | |
| 04/09/2003 | | 080-01-003 | 202-00012-3 | (Rev)Global Furniture Resource | | 127,231.34- | | |
| 04/10/2003 | | 080-01-005 | 113761 | Doc Imaging.Com Inc | | 26.65 | | |
| 04/11/2003 | | 080-01-002 | 3/3-9/03 | Ruben Lopez | | 2,437.50 | | |
| 04/11/2003 | | 080-01-002 | 5313-REIMB | Douglas Development | | 4,425.00 | | |
| 04/11/2003 | | 080-01-002 | 5313 | William Dorsey & Associates | | 4,425.00 | | |
| 04/11/2003 | | 080-01-002 | 5313-REIMB | (Rev)Douglas Development | | 4,425.00- | | |
| 04/14/2003 | | 080-01-004 | 3/10-16/03 | Ruben Lopez | | 975.00 | | |
| 04/18/2003 | | 080-01-002 | | PR Post checks summary | | 298.21 | | |
| 04/24/2003 | | 080-01-006 | 948660 | Federal Network Services, Inc. | | 1,300.00 | | |
| 04/24/2003 | | 080-01-006 | 948676 | Federal Network Services, Inc. | | 3,200.00 | | |
| 04/24/2003 | | 080-01-006 | 948692 | Federal Network Services, Inc. | | 148,774.50 | | |
| 04/24/2003 | | 080-01-006 | 948713 | Federal Network Services, Inc. | | 13,710.80 | | |
| 04/24/2003 | | 080-01-006 | 948893 | Federal Network Services, Inc. | | 6,000.00 | | |
| 04/25/2003 | | 080-01-004 | 5 | Core Group | | 4,968.04 | | |
| 04/25/2003 | | 080-01-002 | | PR Post checks summary | | 229.93 | | |
| 04/28/2003 | | 080-01-002 | 03-03315 | Ace Corporation | | 1,720.00 | | |
| 04/28/2003 | | 080-01-002 | 913022 | Builders Hardware Corp. | | 215.50 | | |
| 04/29/2003 | | | | BL  summary | | | 2,681.97- | |
| 05/01/2003 | | 080-01-004 | 3100-01-04 | R. Rea Corporation | | 3,692.00 | | |
| 05/01/2003 | | 080-01-004 | 02040.00-5 | Core Group | | 559.12 | | |
| 05/01/2003 | | 080-01-004 | 02040.50-1 | Core Group | | 812.50 | | |
| 05/01/2003 | | 080-01-004 | 02040.50-3 | Core Group | | 10,804.80 | | |
| 05/01/2003 | | 080-01-004 | 02040.50-4 | Core Group | | 7,226.87 | | |
| 05/01/2003 | | 080-01-004 | 02040.60-1 | Core Group | | 16,773.91 | | |
| 05/05/2003 | | 080-01-002 | 1911112-00 | Maurice Electrical Sply Co Inc | | 317.08 | | |
| 05/05/2003 | | 080-01-002 | 1911477-00 | Maurice Electrical Sply Co Inc | | 153.69 | | |
| 05/05/2003 | | 080-01-002 | 1911579-00 | Maurice Electrical Sply Co Inc | | 393.02 | | |
| 05/05/2003 | | 080-01-002 | 725721-00 | Maurice Electrical Sply Co Inc | | 311.50- | | |
| 05/05/2003 | | 080-01-004 | 0000141056 | Logicon FDC/DPC | | 20,612.79 | | |
| 05/05/2003 | | 080-01-004 | 000014I550 | Logicon FDC/DPC | | 2,745.27 | | |
| 05/05/2003 | | 080-01-004 | 0000141056 | (Rev)Logicon FDC/DPC | | 20,612.79- | | |
| 05/06/2003 | | | 2666 | Schwartz Engineering, Inc. | | 10.50 | | |
| 05/06/2003 | | | 2692 | Schwartz Engineering, Inc. | | 20.50 | | |
| 05/06/2003 | | | 2716 | Schwartz Engineering, Inc. | | 34,648.00 | | |
| 05/06/2003 | | | 2717 | Schwartz Engineering, Inc. | | 12,845.00 | | |
| 05/07/2003 | | 080-01-002 | 1995 | Three Way Mechanical Corp. | | 2,195.00 | | |
| 05/07/2003 | | | 2792 | Schwartz Engineering, Inc. | | 9,500.00 | | |
| 05/07/2003 | | | 2793 | Schwartz Engineering, Inc. | | 16,900.00 | | |
| 05/07/2003 | | | 2794 | Schwartz Engineering, Inc. | | 14,000.00 | | |
| 05/07/2003 | | | 2795 | Schwartz Engineering, Inc. | | 21,300.00 | | |
| 05/07/2003 | | | 2796 | Schwartz Engineering, Inc. | | 9,500.00 | | |
| 05/07/2003 | | 080-01-005 | J3656-4/5 | American Mechanical Services | | 58,408.56 | | |
| 05/07/2003 | | 080-01-005 | J3657-4/5 | American Mechanical Services | | 23,069.12 | | |
| 05/09/2003 | | 080-01-004 | 0000140292 | Logicon FDC/DPC | | 16,153.32 | | |
| 05/09/2003 | | 080-01-006 | PSI0837085 | Daly Computers | | 53,478.65 | | |
| 05/09/2003 | | 080-01-004 | 0000140188 | Logicon FDC/DPC | | 16,480.08 | | |
| 05/09/2003 | | 080-01-004 | 0000140811 | Logicon FDC/DPC | | 10,998.00 | | |
| 05/15/2003 | | 080-01-006 | CI-4173 | Stultz Air Technology Systems | | 12,120.00 | | |
| 05/15/2003 | | 080-01-006 | CI-4175 | Stultz Air Technology Systems | | 12,764.00 | | |
| 05/15/2003 | | 080-01-006 | CI-4182 | Stultz Air Technology Systems | | 9,721.00 | | |
| 05/22/2003 | | 080-01-004 | 40980 | Remco Business Systems | | 3,824.38 | | |
| 05/30/2003 | | | | BL  summary | | | 317,467.00- | |
| 05/30/2003 | | | | BL  summary | | | 317,467.00- | |
| 05/30/2003 | | | | AR Adjust receivables summary | | | 317,467.00 | |
| 06/06/2003 | | 080-01-006 | 00020723 | Lee Technologies Group | | 29,455.61 | | |
| 06/06/2003 | | 080-01-006 | 00020724 | Lee Technologies Group | | 14,276.25 | | |
| 06/06/2003 | | 080-01-006 | 00020725 | Lee Technologies Group | | 3,965.63 | | |

Douglas Development Corp.                                          Transaction Report                                          Page 4
                                                                                                          System Date: 01/08/07
                                                                                                          System Time:  3:48 pm


01/01/2003 to 12/31/2003

| Accounting Date | Ref1 | Job | Invoice | Description | Beginning Balance | Debit | Credit | End Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | 080-00-17300 Tenant Lease Costs - Constrctn | | | | |
| 06/06/2003 | | 080-01-002 | S1003542.001 | Maurice Electrical Sply Co Inc | | 285.57 | | |
| 06/16/2003 | | | | BL summary | | | 3,696,863.38- | |
| 06/17/2003 | | | 01269121 | American Office | | 51,797.38 | | |
| 06/17/2003 | | | 01269122 | American Office | | 12,973.36 | | |
| 06/17/2003 | | | 01269201 | American Office | | 720.00 | | |
| 06/17/2003 | | | 01269213 | American Office | | 253.62 | | |
| 06/17/2003 | | | 01269298 | American Office | | 5,781.12 | | |
| 06/17/2003 | | | 01269325 | American Office | | 71,595.66 | | |
| 06/17/2003 | | | 061703-080 | American Office | | 93.37- | | |
| 06/18/2003 | | 080-01-004 | 1187027 | Cort Furniture | | 616.45 | | |
| 06/19/2003 | | | | BL summary | | | 345,426.71- | |
| 06/26/2003 | | 080-01-006 | 000273 | Doc Imaging.Com Inc | | 33.31 | | |
| 06/26/2003 | | 080-01-004 | 200265 | Doc Imaging.Com Inc | | 171.16 | | |
| 06/30/2003 | | | 02041.02-001 | Hickok Warner Fox Archtects | | 1,750.00 | | |
| 06/30/2003 | | | 02041.03-01 | Hickok Warner Fox Archtects | | 397.00 | | |
| 06/30/2003 | | | 02041.05-01 | Hickok Warner Fox Archtects | | 7,880.00 | | |
| 06/30/2003 | | | 02041.05-02 | Hickok Warner Fox Archtects | | 1,020.00 | | |
| 06/30/2003 | | | 02041.00-04 | Hickok Warner Fox Archtects | | 3,425.99 | | |
| 06/30/2003 | | | 02041.00-03 | Hickok Warner Fox Archtects | | 10,981.72 | | |
| 06/30/2003 | | | 02041.00-05 | Hickok Warner Fox Archtects | | 551.21 | | |
| 06/30/2003 | | | 02041.00-06 | Hickok Warner Fox Archtects | | 133.60 | | |
| 06/30/2003 | | | 02041.04-01 | Hickok Warner Fox Archtects | | 7,800.00 | | |
| 06/30/2003 | | | 02066.00-03 | Hickok Warner Cole Archtects | | 4,398.27 | | |
| 06/30/2003 | | | 02066.00-03 | (Rev)Hickok Warner Cole Archte | | 4,398.27- | | |
| 06/30/2003 | | | | AR Adjust receivables summary | | | 396,368.61 | |
| 06/30/2003 | | | | AR Adjust receivables summary | | | 3,645,921.48 | |
| 07/02/2003 | | 080-01-002 | 1910119-00 | Maurice Electrical Sply Co Inc | | 230.41 | | |
| 07/02/2003 | | 080-01-002 | 0105F28 | Natelco Corporation | | 753.00 | | |
| 07/15/2003 | | 080-01-002 | 1911210-00 | Maurice Electrical Sply Co Inc | | 212.13 | | |
| 07/21/2003 | | | S0310-37 | James G. Davis Construction | | 365,428.00 | | |
| 07/21/2003 | | | S0310-38 | James G. Davis Construction | | 578,223.00 | | |
| 07/21/2003 | | | S0310-39 | James G. Davis Construction | | 184,657.00 | | |
| 07/21/2003 | | | S0402-37 | James G. Davis Construction | | 85,304.00 | | |
| 07/21/2003 | | | 28102 | Hellmuth, Obata & Kassabaum | | 9,199.40 | | |
| 08/27/2003 | | | | BL summary | | | 50,941.90- | |
| 08/27/2003 | | | | BL summary | | | 3,991,348.19- | |
| 08/27/2003 | | | | AR Adjust receivables summary | | | 4,042,290.09 | |
| 09/03/2003 | | 080-01-003 | 02037.00-04 | Hickok Warner Fox Archtects | | 36.94 | | |
| 09/03/2003 | | 080-01-003 | 02037.00-05 | Hickok Warner Fox Archtects | | 153.01 | | |
| 09/03/2003 | | 080-01-003 | 02037.00-06 | Hickok Warner Fox Archtects | | 366.33 | | |
| 09/03/2003 | | 080-01-003 | 02037.00-07 | Hickok Warner Fox Archtects | | 31.45 | | |
| 09/03/2003 | | 080-01-003 | 02037.00-08 | Hickok Warner Fox Archtects | | 53.10 | | |
| 09/15/2003 | | 080-01-002 | 10 | Quality Services, Inc | | 2,300.00 | | |
| 10/17/2003 | | 080-01-006 | 00020723 | (Rev)Lee Technologies Group | | 29,455.61- | | |
| 10/17/2003 | | 080-01-006 | 00020724 | (Rev)Lee Technologies Group | | 14,276.25- | | |
| 10/17/2003 | | 080-01-006 | 00020725 | (Rev)Lee Technologies Group | | 3,965.63- | | |
| 10/17/2003 | | 080-01-006 | CI-4173 | (Rev)Stultz Air Technology Sys | | 12,120.00- | | |
| 10/17/2003 | | 080-01-006 | CI-4175 | (Rev)Stultz Air Technology Sys | | 12,764.00- | | |
| 10/17/2003 | | 080-01-006 | CI-4182 | (Rev)Stultz Air Technology Sys | | 9,721.00- | | |
| 10/17/2003 | | 080-01-004 | 40980 | (Rev)Remco Business Systems | | 3,824.38- | | |
| 10/21/2003 | | | | void ck#2849 | | | 1,549.52- | |
| 10/31/2003 | | | | Void Ck #2552 | | | 97,161.50- | |
| 10/31/2003 | | | | Void Ck #2553 | | | 97,203.74- | |
| 12/18/2003 | | | | AR Adjust receivables summary | | | 317,467.00 | |

Account Totals for Tenant Lease Costs - Construction          .00     10,448,459.91*          210,523.20-*10,237,936.71

Report Totals:                                                .00*    10,448,459.91*          210,523.20-*10,237,936.71*

Douglas Development Corp.                                    Transaction Report                                    Page 22
                                                                                                 System Date: 01/09/07
                                                                                                 System Time:  3:43 pm


01/01/2003  to  12/31/2003

| Accounting Date | Ref1 | Ref2 | Job | Description | Beginning Balance | Debit | Credit | End Balance |
|---|---|---|---|---|---|---|---|---|
| | | | 080-00-17300 Tenant Lease Costs - Constrctn | | | | | |
| 10/08/2003 | 3296 | 200265 | 080-01-004 | Doc Imaging.Com Inc | | 171.16 | | |
| 10/17/2003 | 3230 | 00020723 | 080-01-006 | (Rev)Lee Technologies Group | | 29,455.61- | | |
| 10/17/2003 | 3230 | 00020724 | 080-01-006 | (Rev)Lee Technologies Group | | 14,276.25- | | |
| 10/17/2003 | 3219 | 00020725 | 080-01-006 | (Rev)Lee Technologies Group | | 3,965.63- | | |
| 10/17/2003 | 3116 | CI-4173 | 080-01-006 | (Rev)Stultz Air Technology Sys | | 12,120.00- | | |
| 10/17/2003 | 3116 | CI-4175 | 080-01-006 | (Rev)Stultz Air Technology Sys | | 12,764.00- | | |
| 10/17/2003 | 3116 | CI-4182 | 080-01-006 | (Rev)Stultz Air Technology Sys | | 9,721.00- | | |
| 10/17/2003 | 3154 | 40980 | 080-01-004 | (Rev)Remco Business Systems | | 3,824.38- | | |
| 10/21/2003 | | | | Void ck#2849 | | | 1,549.52- | |
| 10/31/2003 | | | | Void Ck #2552 | | | 97,161.50- | |
| 10/31/2003 | | | | Void Ck #2553 | | | 97,203.74- | |
| 11/06/2003 | 3323 | 10 | 080-01-002 | Quality Services, Inc | | 2,300.00 | | |
| 11/06/2003 | 3323 | | 080-01-002 | (Rev)Quality Services, Inc | | 2,300.00- | | |
| 11/06/2003 | 9993323 | | 080-01-002 | Quality Services, Inc | | 2,300.00 | | |
| 11/20/2003 | 3339 | 113761 | 080-01-005 | Doc Imaging.Com Inc | | 26.65 | | |
| | | | Account Totals for 0800017300 Tenant Lease Costs - Construction | | .00 | 10,436,290.34* | 195,914.76-* | 10,240,375.58 |
| | | | 080-00-17350 Tenant Lease Costs - Commiss | | | | | |
| 01/01/2003 | STAUBACH | | | Record TI Draw #1 | | 221,776.00 | | |
| 01/01/2003 | MTD | | | Record TI Draw #1 | | 430,039.08 | | |
| 04/30/2003 | 3077 | GSA LSNGS- | | Boland Smart Associates, Inc. | | 19,990.58 | | |
| 04/30/2003 | 3077 | GSA LSNGS- | | (Rev)Boland Smart Associates, | | 19,990.58- | | |
| | | | Account Totals for 0800017350 Tenant Lease Costs - Commission | | 5,189,760.06 | 651,815.08* | .00* | 5,841,575.14 |
| | | | 080-00-17399 Accum Depreciation - TLC | | | | | |
| 12/31/2003 | | | | Record yr 2003 l/h amort expen | | | 471,798.00- | |
| | | | Account Totals for 0800017399 Accum Depreciation - TLC | | 425,695.34- | .00* | 471,798.00-* | 897,493.34- |
| | | | 080-00-17400 Loan Fees | | | | | |
| 01/01/2003 | | | | Record escrow/reserve activity | | 6,729.00 | | |
| 04/25/2003 | | | | Midtown Equities | | 670,000.00 | | |
| | | | Account Totals for 0800017400 Loan Fees | | 384,413.00 | 676,729.00* | .00* | 1,061,142.00 |
| | | | 080-00-17499 Accum Amortization - Loan Fees | | | | | |
| 12/31/2003 | | | | Record yr 2003 loan fee amort | | | 106,683.00- | |
| | | | Account Totals for 0800017499 Accum Amortization - Loan Fees | | 4,805.00- | .00* | 106,683.00-* | 111,488.00- |
| | | | 080-00-17600 Equipment | | | | | |
| 03/14/2003 | 2967 | 2/17/03 | | 77 P ST | | 1,981.09 | | |
| 10/21/2003 | 2967 | 2/17/03 | | (Rev)Paul Millstein | | 1,981.09- | | |
| | | | Account Totals for 0800017600 Equipment | | 5,980,640.92 | .00* | .00* | 5,980,640.92 |
| | | | 080-00-17699 Accum Depreciation - Equipment | | | | | |
| 12/31/2003 | | | | Record yr 2003 depreciation | | | 2,465,580.00- | |
| | | | Account Totals for 0800017699 Accum Depreciation - Equipment | | 2,107,885.00- | .00* | 2,465,580.00-* | 4,573,465.00- |
| | | | 080-00-19550 Utility Deposit | | | | | |
| | | | Account Totals for 0800019550 Utility Deposit | | .00 | .00* | .00* | .00 |
| | | | 080-00-19900 Settlement Funds Clearng Accnt | | | | | |
| 01/01/2003 | | | | Reclass 11/02 settlmt diff | | 14,591.33 | | |
| | | | Account Totals for 0800019900 Settlement Funds Clearing Account | | .00 | 14,591.33* | .00* | 14,591.33 |
| | | | 080-00-21100 Tenant Deposit - Security | | | | | |
| | | | Account Totals for 0800021100 Tenant Deposit - Security | | 3,266.00- | .00* | .00* | 3,266.00- |
| | | | 080-00-21200 Tenant Deposit - Advance Rent | | | | | |
| 08/01/2003 | 080-01 | | | North Capitol Hospitality | | 3,266.00 | | |
| | | | Account Totals for 0800021200 Tenant Deposit - Advance Rent | | .00 | 3,266.00* | .00* | 3,266.00 |

77 P Street - Application 1 - Tenant Improvements Commissions

| TENANT IMPROVEMENTS | Invoice # | Inv Date | Amount | Total |
|---|---|---|---|---|
| **Department of Transportation - 1st Floor** | | | | |
| James G. Davis Construction | S030711G | 11/20/02 | $240,000.00 | |
| James G. Davis Construction | S030711H | 11/20/02 | $75,000.00 | |
| Douglas Development | 80001-02 | 11/21/02 | $30,000.00 | |
| | | | | |
| **Department of Mental Health - 1st Floor** | | | | |
| James G. Davis Construction | S030711E | 11/20/02 | $76,000.00 | |
| James G. Davis Construction | S030711F | 11/20/02 | $19,000.00 | |
| Douglas Development | 80001-02 | 11/21/02 | $9,500.00 | |
| | | | | |
| **Department of Mental Health - 5th Floor** | | | | |
| James G. Davis Construction | S030711C | 11/20/02 | $303,200.00 | |
| James G. Davis Construction | S030711D | 11/20/02 | $47,375.00 | |
| James G. Davis Construction | S03069 | 10/31/02 | $471,321.00 | |
| James G. Davis Construction | S030416 | 08/31/02 | $140,176.00 | |
| Douglas Development | 80001-02 | 11/21/02 | $37,900.00 | |
| | | | | |
| **Department of Human Services - 6th Floor** | | | | |
| James G. Davis Construction | S030711A | 11/20/02 | $1,269,600.00 | |
| James G. Davis Construction | S030711B | 11/20/02 | $198,375.00 | |
| Hickok Warner Fox | 02037.00-01 | 09/13/02 | $23,273.14 | |
| Hickok Warner Fox | 02037.00-02 | 10/03/02 | $70,816.40 | |
| Douglas Development | 80001-02 | 11/21/02 | $52,900.00 | |
| | | | | |
| **Department of Transportation - Basement** | | | | |
| James G. Davis Construction | S030711I | 11/20/02 | $51,500.00 | |
| James G. Davis Construction | S030711J | 11/20/02 | $25,750.00 | |
| Douglas Development | 80001-02 | 11/21/02 | $10,300.00 | |
| | | | | |
| **Total Tenant Improvements** | | | | $3,151,986.54 |

## COMMISSIONS

| | | | | |
|---|---|---|---|---|
| **Department of Mental Health, 1st and 5th floors** | | | | |
| Staubach | 7114-1860-25101 | 09/04/02 | $221,776.00 | |
| | | | | |
| **Department of Transportation, 1st and Basement** | | | | |
| MTD Real Estate Services | 100089 | 11/01/02 | $430,039.08 | |
| | | | | |
| **Total Commissions** | | | | 651,815.08 |

| Total Request | | | | 3,803,801.62 |
|---|---|---|---|---|

*Deposit Account Status*
*Beginning Deposit Balance*                6,505,192.83
*Current Draw*                             (3,803,801.62)
*Ending Deposit Balance*                    2,701,391.21

MORGAN STANLEY
CONFIDENTIAL

MS 01133

411-0002



*Cayre Jemal's Peoples LLC*

| DATE | INVOICE NO | DESCRIPTION | INVOICE AMOUNT |
|---|---|---|---|
| 12-09-02 | 61-2040-2B 77 P ST | | 080-00-17300 | 66125.00 |

James G. Davis Construction

| CHECK DATE | CHECK NUMBER | | TOTAL > | | 66125.00 |
|---|---|---|---|---|---|
| 4-09-03 | 3024 | | | | |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*

C/O Douglas Development Corp
702 H Street, NW Suite 400
Washington, DC 20001
202-638-6300

HSBC Bank USA

| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| April 9, 2003 | 3024 | $*****66,125.00 |

Pay: *********Sixty-six thousand one hundred twenty-five dollars and no cents

1-108
—————
210

Accounting Copy

PAY
TO THE
ORDER OF
James G. Davis Construction
12500 Parklawn Drive
Rockville, MD 20852

** VOID * VOID * VOID **

**** NOT NEGOTIABLE ****

**JAMES G DAVIS CONSTRUCTION CORP**

77 P STREET - DEPT OF HUMAN SERVICES - 6TH FLOOR - OWNER ITEMS
52,900sf @ 5.00/sf
080-01-003

| | | | |
|---|---|---|---|
| Original Contract Amount | | | $ 264,500.00 |
| Change Orders | | | 0.00 |
| Total Contract | | | 264,500.00 |

Payment History:

| Check# | Invoice # | DATE | Amount |
|---|---|---|---|
| WIRE | S030711B | Oct-02 | (198,375.00) |
| 3024 | S0307-75B | 4/9/2003 | (66,125.00) |

| | |
|---|---|
| Total | (264,500.00) |

| | |
|---|---|
| Balance Remaining | 0.00 |

4/9/03

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702

| | INVOICE # S0307-75B |
|---|---|
| | JOB # 61-2040 |

TO: Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

FROM: JAMES G. DAVIS CONST. CORPORATION    VIA (ARCHITECT):
12500 Parklawn Drive
Rockville, Maryland 20852

PROJECT: 6th Floor- Owner Furnished Items
77 'P' Street NE
Washington DC

APPLICATION NO.: TWO
PERIOD TO: 9-Dec-02
PROJECT NO: 61-2040
CONTRACT DATE: 1-Oct-02

PAGE ONE OF THREE PAGES

Distribution to:
X  ARCHITECT (1) copy
X  CONTRACTOR
X  OWNER (5) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

### CHANGE ORDER SUMMARY

| Change Orders approved in previous months by Owner | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Number | | |
| | | |
| Approved this month | | |
| TOTALS | $0 | $0 |
| TOTAL | $0 | $0 |
| | $0.00 | $0.00 |
| Net change by Change Orders | $0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:
JAMES G. DAVIS CONSTRUCTION CORPORATION
Dominic Machion, Assistant Project Manager

By: _____    Date: December 09, 2002

1. ORIGINAL CONTRACT SUM ................................. $ 264,500
2. Net change by Change Orders ........................ 0
3. CONTRACT SUM TO DATE(Line 1+2) .............. $ 264,500
4. TOTAL COMPLETED & STORED TO DATE ......... $ 264,500
   (Column G on G703)
5. RETAINAGE:
   a. 10% of Completed Work
      (Column D + E on G703)      $    0
   b. 10% of Stored Material
      (Column F on G703)          $    0
   Total Retainage (Line 5a + 5b or
   Total in Column I og G703) ...................... $ 0
6. TOTAL EARNED LESS RETAINAGE ................... $ 264,500
   (Line 4 less Line 5 total)
7. LESS PREVIOUS CERTIFICATES FOR
   PAYMENT (Line 6 from prior Certificate) ......... $ 198,375
8. CURRENT PAYMENT DUE ............................... $ 66,125
9. BALANCE TO FINISH, PLUS RETAINAGE ............ $ 0
   (Line 3 less Line 6)

State of: VA        County of: FLEX
Subscribed and sworn to before me this 10th day of December, 2002
Notary Public: _____
My Commission expires: 10-31-2002

### ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .............................................. $
(Attach explanation if amount certified differs from amount applied for.)
ARCHITECT:
By: _____    Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 · APPLICATION AND CERTIFICATE FOR PAYMENT · MAY 1983 EDITION · AIA® 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

DOUGLAS DEVELOPMENT
040-01 - 003
OK 01 00/
66,125.00
V/9 /03

# SUMMARY SHEET, TOTAL

## AIA DOCUMENT G703

(Instructions on reverse)

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

PAGE TWO OF TWO PAGES

APPLICATION NO: TEO
APPLICATION DATE: 9-Dec-02
PERIOD TO: 9-Dec-02
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 09250 | Thoon - Perimeter Drywall | $16,200 | $16,200 | $0 | $0 | $16,200 | 100% | $0 | $0 |
| 09250 | Thoon - Interior Corridor | $19,800 | $19,800 | $0 | $0 | $19,800 | 100% | $0 | $0 |
| 12,500 | All Blinds Inc. | $3,500 | $0 | $3,500 | $0 | $3,500 | 100% | $0 | $0 |
| 08900 | Herson Glass | $1,200 | $1,200 | $0 | $0 | $1,200 | 100% | $0 | $0 |
| 15300 | Fire Watch- Interior Corridor | $3,950 | $3,950 | $0 | $0 | $3,950 | 100% | $0 | $0 |
| 16000 | Natelco- VAV Power | $2,899 | $2,725 | $174 | $0 | $2,899 | 100% | $0 | $0 |
| 16000 | Natelco- Interior Corridor | $11,951 | $11,951 | $0 | $0 | $11,951 | 100% | $0 | $0 |
| 15,000 | American Mechanical Services | $180,000 | $133,000 | $47,000 | $0 | $180,000 | 100% | $0 | $0 |
| | General Conditions | $10,000 | $4,000 | $6,000 | $0 | $10,000 | 100% | $0 | $0 |
| | Fee | $15,000 | $5,549 | $9,451 | $0 | $15,000 | 100% | $0 | $0 |
| | SUBTOTAL | $264,500 | $198,375 | $66,125 | $0 | $264,500 | 100% | $0 | $0 |

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702 (Instructions on reverse)

PAGE ONE OF THREE PAGES

**TO:**
Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001

**FROM:**
JAMES G. DAVIS CONST. CORPORATION   VIA (ARCHITECT):
12500 Parklawn Drive
Rockville, Maryland 20852

**PROJECT:** 6th Floor- Owner Furnished Items
77 "P" Street NE
Washington DC

**APPLICATION NO:** ONE

**PERIOD TO:** 20-Nov-02

**PROJECT NO:**

**CONTRACT DATE:** 1-Oct-02

Distribution to:
☒ ARCHITECT (1) copy
☒ CONTRACTOR
☒ OWNER (5) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | $ |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | | 264,500 |
| 2. Net change by Change Orders | | 0 |
| 3. CONTRACT SUM TO DATE(Line 1+2) | | 264,500 |
| 4. TOTAL COMPLETED & STORED TO DATE | | 198,375 |
| (Column G on G703) | | |
| 5. RETAINAGE: | | |
| a. 10% of Completed Work | $ 0 | |
| (Column D + E on G703) | | |
| b. 10% of Stored Material | $ 0 | |
| (Column F on G703) | | |
| Total Retainage (Line 5a + 5b or | | |
| Total in Column I og G703) | | 0 |
| 6. TOTAL EARNED LESS RETAINAGE | | 198,375 |
| (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR | | 0 |
| PAYMENT (Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE | | 198,375 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | $ | 66,125 |
| (Line 3 less Line 6) | | |

### CHANGE ORDER SUMMARY

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in previous months by Owner | | |
| TOTAL | $0 | $0 |
| Approved this month | | |
| Number | | |
| | | |
| TOTALS | $0.00 | $0.00 |
| Net change by Change Orders | $0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:
JAMES G. DAVIS CONSTRUCTION CORPORATION

By: _(signature)_
Kevin Clark, Project Manager
Date: November 20, 2002

State of: VA   County of: FAIRFAX
Subscribed and sworn to before me this 20th day of November 2002
Notary Public: _(signature)_
My Commission expires: 6/30/06

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

**AMOUNT CERTIFIED** ........................................... $ _____
(Attach explanation if amount certified differs from amount applied for.)
ARCHITECT:

By: _____  Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA - 1983
THE AMERICAN INSTITUTE OF ARCHITECT, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL

**AIA DOCUMENT G703**

(Instructions on reverse)

PAGE TWO OF TWO PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

APPLICATION NO: ONE
APPLICATION DATE: 20-Nov-02
PERIOD TO: 20-Nov-02
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 09250 | Tricon: Perimeter Drywall | $16,200 | $0 | $16,200 | $0 | $16,200 | 100% | $0 | $0 |
| 09250 | Tricon: Interior Corridor | $19,800 | $0 | $19,800 | $0 | $19,800 | 100% | $0 | $0 |
| 12,500 | All Blinds Inc. | $3,500 | $0 | $0 | $0 | $0 | 0% | $3,500 | $0 |
| 08800 | Herson Glass | $1,200 | $0 | $1,200 | $0 | $1,200 | 100% | $0 | $0 |
| 15300 | Fire Watch: Interior Corridor | $3,950 | $0 | $3,950 | $0 | $3,950 | 100% | $0 | $0 |
| 16000 | Natelco: VAV Power | $2,899 | $0 | $2,725 | $0 | $2,725 | 94% | $174 | $0 |
| 16000 | Natelco: Interior Corridor | $11,951 | $0 | $11,951 | $0 | $11,951 | 100% | $0 | $0 |
| 15,000 | American Mechanical Services | $180,000 | $0 | $133,000 | $0 | $133,000 | 74% | $47,000 | $0 |
| | General Conditions | $10,000 | $0 | $4,000 | $0 | $4,000 | 40% | $6,000 | $0 |
| | Fee | $15,000 | $0 | $5,549 | $0 | $5,549 | 37% | $9,451 | $0 |
| | SUBTOTAL | $264,500 | $0 | $198,375 | $0 | $198,375 | 75% | $66,125 | $0 |

*Cayre Jemal's Peoples LLC*

James G. Davis Construction

| CHECK DATE | INVOICE NO | DESCRIPTION | INVOICE AMOUNT |
|---|---|---|---|
| 12-09-02 | 61-2040-2C 77 P ST | | 080-00-17300 |
| | | | 909600.00 |

| CHECK DATE | CHECK NUMBER | | TOTAL > | |
|---|---|---|---|---|
| 4-09-03 | 3025 | | | 909600.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*

C/O Douglas Development Corp
702 H Street, NW Suite 400
Washington, DC 20001
202-638-6300

James G. Davis Construction
12500 Parklawn Drive
Rockville, MD 20852

PAY
TO THE
ORDER OF

Pay: **************Nine hundred nine thousand six hundred dollars and no cents

HSBC Bank USA

Accounting Copy
** VOID * VOID * VOID **

**** NOT NEGOTIABLE ****

| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| April 9, 2003 | 3025 | $*****909,600.00 |

1-108
210

| JAMES G DAVIS CONSTRUCTION CORP |
|---|

77 P STREET - DEPT OF MENTAL HEALTH 5TH FL. - TENANT CONSTRUCTION
37,900sf @ 32.00/sf
080-01-003

| | | | |
|---|---|---|---|
| Original Contract Amount | | $ | 1,212,800.00 |
| Change Orders | | | 0.00 |
| Total Contract | | | 1,212,800.00 |

Payment History:

| Check# | Invoice # | DATE | Amount |
|---|---|---|---|
| WIRE | S030711C | Oct-02 | (303,200.00) |
| 3025 | S030711C | 4/9/2003 | (909,600.00) |

| Total | (1,212,800.00) |
|---|---|

| Balance Remaining | 0.00 |
|---|---|

# APPLICATION AND CERTIFICATE FOR PAYMENT

INVOICE  # S0307-75 C

AIA DOCUMENT G702

PAGE ONE OF THREE PAGES

JOB # 61-2040

TO: Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: DOH 5th Floor- Tenant Construction
77 "P" Street NE
Washington DC

APPLICATION NO.: TWO

PERIOD TO: 9-Dec-02

Distribution to:
× ☐ OWNER
× ☐ ARCHITECT (1) copy
× ☐ CONTRACTOR

FROM:  JAMES G. DAVIS CONST. CORPORATION
12500 Parklawn Drive
Rockville, Maryland 20852

VIA (ARCHITECT): Hickok Warner Fox
1023 31st Street, NW
Washington, DC 20007

PROJECT NO.: 61-2040
CONTRACT DATE: 1-Oct-01

CONTRACT FOR: 3rd Floor Tenant Construction

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| 1. ORIGINAL CONTRACT SUM | $ | 1,212,800 |
| 2. Net change by Change Orders | $ | 0 |
| 3. CONTRACT SUM TO DATE(Line 1±2) | $ | 1,212,800 |
| 4. TOTAL COMPLETED & STORED TO DATE | $ | 1,212,800 |

5. RETAINAGE:
a. 10% of Completed Work
(Column D + E on G703)     $        0
b. 10% of Stored Material
(Column F on G703)     $        0

Total Retainage (Line 5a + 5b or
Total in Column I og G703)

| 6. TOTAL EARNED LESS RETAINAGE | $ | 1,212,800 |
| (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR | $ | 909,600 |
| PAYMENT (Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE | $ | 303,200 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | $ | 0 |
| (Line 3 less Line 6) | | |

### CHANGE ORDER SUMMARY

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in previous months by Owner | | |
| Approved this month | | |
| Number | | |
| | | |
| TOTALS | $0.00 | $0.00 |
| Net change by Change Orders | $0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:
JAMES G. DAVIS CONSTRUCTION CORPORATION

By: [signature]
Dominic Machion, Assistant Project Manager
Date: December 09th, 2002

State of: VA
Subscribed and sworn to before me this
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .......................... $
(Attach explanation if amount certified differs from amount applied for.)

ARCHITECT:

By: [signature]   Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

DOUGLAS DEVELOPMENT
080-01-003
909-01-001
909,600.00
909,600 69

# SUMMARY SHEET, TOTAL

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703                           (Instructions on reverse)

PAGE TWO OF TWO PAGES

APPLICATION NO: ONE
APPLICATION DATE: 20-Nov-02
PERIOD TO: 20-Nov-02
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 01700 | Final Cleaning | $15,050 | $0 | $15,050 | $0 | $15,050 | 100% | $0 | $0 |
| 01712 | Dumpsters | $11,250 | $5,625 | $5,625 | $0 | $11,250 | 100% | $0 | $0 |
| 03300 | Concrete | $14,000 | $14,000 | $0 | $0 | $14,000 | 100% | $0 | $0 |
| 06001 | Rough Carpentry | $35,000 | $35,000 | $0 | $0 | $35,000 | 100% | $0 | $0 |
| 06400 | Millwork | $22,000 | $14,200 | $7,800 | $0 | $22,000 | 100% | $0 | $0 |
| 08110 | Doors/Frames/Hardware | $75,000 | $0 | $75,000 | $0 | $75,000 | 100% | $0 | $0 |
| 08114 | Doors/Frames/Hardware-installation | $10,000 | $0 | $10,000 | $0 | $10,000 | 100% | $0 | $0 |
| 08800 | Glass & Glazing | $5,000 | $0 | $5,000 | $0 | $5,000 | 100% | $0 | $0 |
| 09250 | Drywall | $220,000 | $89,200 | $130,800 | $0 | $220,000 | 100% | $0 | $0 |
| 09250 | Ceiling Removal & Replacement | $5,000 | $0 | $5,000 | $0 | $5,000 | 100% | $0 | $0 |
| 09680 | Carpet/VCT | $170,000 | $0 | $170,000 | $0 | $170,000 | 100% | $0 | $0 |
| 09900 | Painting/Wall Covering | $50,000 | $0 | $50,000 | $0 | $50,000 | 100% | $0 | $0 |
| 15000 | Mechanical/HVAC/ Plumbing | $165,000 | $18,000 | $147,000 | $0 | $165,000 | 100% | $0 | $0 |
| 15300 | Fire Protection | $46,500 | $12,000 | $34,500 | $0 | $46,500 | 100% | $0 | $0 |
| 16000 | Electrical | $255,000 | $85,000 | $170,000 | $0 | $255,000 | 100% | $0 | $0 |
| | **SUBTOTAL** | $1,212,800 | $303,200 | $909,600 | $0 | $1,212,800 | 100% | $0 | $0 |
| | Overtime Allowance | $30,000 | $9,175 | $20,825 | $0 | $30,000 | 100% | $0 | $0 |
| | General Conditions | $42,000 | $10,500 | $31,500 | $0 | $42,000 | 100% | $0 | $0 |
| | Fee | $42,000 | $10,500 | $31,500 | $0 | $42,000 | 100% | $0 | $0 |
| | **SUBTOTAL** | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |

AIA DOCUMENT G702 · CONTINUATION SHEET · MAY 1983 EDITION · AIA · 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1725 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

# APPLICATION AND CERTIFICATE FOR PAYMENT

INVOICE    # S0307-11 ©

JOB # 61-2040

PAGE ONE OF THREE PAGES

TO: Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

FROM: JAMES G. DAVIS CONST. CORPORATION
12500 Parklawn Drive
Rockville, Maryland 20852

CONTRACT FOR: 3rd Floor Tenant Construction

PROJECT: DOH 5th Floor- Tenant Construction
77 "P" Street NE
Washington DC

VIA (ARCHITECT): Hickok Warner Fox
1023 31st Street, NW
Washington, DC 20007

AIA DOCUMENT G702

APPLICATION NO:  ONE

PERIOD TO:  20-Nov-02

PROJECT NO:  61-2040
CONTRACT DATE:  1-Oct-01

Distribution to:
x ARCHITECT (1) copy
x CONTRACTOR
x OWNER (S) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in previous months by Owner | | |
| Number | | |
| Approved this month | | |
| | | |
| TOTAL | $0 | $0 |
| Net change by Change Orders | $0.00 | $0.00 |
| | $0.00 | |
| TOTALS | $0.00 | $0.00 |

1. ORIGINAL CONTRACT SUM .................................. $  1,212,800
2. Net change by Change Orders ........................ $  0
3. CONTRACT SUM TO DATE(Line 1±2) ............ $  1,212,800
4. TOTAL COMPLETED & STORED TO DATE ..... $  303,200
   (Column G on G703)
5. RETAINAGE:
   a.  10% of Completed Work        $  0
       (Column D + E on G703)
   b.  10% of Stored Material        $
       (Column F on G703)
   Total Retainage (Line 5a + 5b or
   Total in Column I on G703) ............................ $  0
6. TOTAL EARNED LESS RETAINAGE .............. $  303,200
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR
   PAYMENT (Line 6 from prior Certificate) ...... $  0
8. CURRENT PAYMENT DUE ............................. $  303,200
9. BALANCE TO FINISH, PLUS RETAINAGE ...... $  909,600
   (Line 3 less Line 6)

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been
paid by the Contractor for Work for which previous Certificates for Payment were
issued and payments received from the Owner, and that current payment shown
herein is now due.

CONTRACTOR: JAMES G. DAVIS CONSTRUCTION CORPORATION

By: _____    Kevin Clark, Project Manager
Date: November 20th, 2002

State of _____    County of Montgomery County
Subscribed and sworn to before me this  20th  day of November 2002
Notary Public: FAIR FAX
My Commision expires:  6/30/06

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the
data comprising the above application, the Architect certifies to the Owner that to the
best of the Architect's knowledge, information and belief the Work has progressed as
indicated, the quality of the Work is in accordance with the Contract Documents, and
the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .................................. $
(Attach explanation if amount certified differs from amount applied for.)

ARCHITECT:
By: _____    Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the
Contractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA - 1983
THE AMERICAN INSTITUTE OF ARCHITECT, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL

## AIA DOCUMENT G703

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

(Instructions on reverse)

PAGE TWO OF TWO PAGES

APPLICATION NO: ONE
APPLICATION DATE: 20-Nov-02
PERIOD TO: 20-Nov-02
DAVIS PROJECT NO: 61-2040

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | WORK COMPLETE THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G / C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| 01700 | Final Cleaning | $15,050 | $0 | $0 | $0 | $0 | 0% | $15,050 | $0 |
| 01712 | Dumpsters | $11,250 | $0 | $5,625 | $0 | $5,625 | 100% | $5,625 | $0 |
| 03300 | Concrete | $14,000 | $0 | $14,000 | $0 | $14,000 | 100% | $0 | $0 |
| 06001 | Rough Carpentry | $35,000 | $0 | $35,000 | $0 | $35,000 | 100% | $0 | $0 |
| 06400 | Millwork | $22,000 | $0 | $14,200 | $0 | $14,200 | 65% | $7,800 | $0 |
| 08110 | Doors/Frames/Hardware | $75,000 | $0 | $0 | $0 | $0 | 0% | $75,000 | $0 |
| 08114 | Doors/Frames/Hardware-installation | $10,000 | $0 | $0 | $0 | $0 | 0% | $10,000 | $0 |
| 08800 | Glass & Glazing | $5,000 | $0 | $0 | $0 | $0 | 0% | $5,000 | $0 |
| 09250 | Drywall | $220,000 | $0 | $89,200 | $0 | $89,200 | 41% | $130,800 | $0 |
| 09250 | Ceiling Removal & Replacement | $5,000 | $0 | $0 | $0 | $0 | 0% | $5,000 | $0 |
| 09680 | Carpet/VCT | $170,000 | $0 | $0 | $0 | $0 | 0% | $170,000 | $0 |
| 09900 | Painting/Wall Covering | $50,000 | $0 | $0 | $0 | $0 | 0% | $50,000 | $0 |
| 15000 | Mechanical/HVAC/Plumbing | $165,000 | $0 | $18,000 | $0 | $18,000 | 11% | $147,000 | $0 |
| 15300 | Fire Protection | $46,500 | $0 | $12,000 | $0 | $12,000 | 26% | $34,500 | $0 |
| 16000 | Electrical | $255,000 | $0 | $85,000 | $0 | $85,000 | 33% | $170,000 | $0 |
| | Overtime Allowance | $30,000 | $0 | $9,175 | $0 | $9,175 | 31% | $20,825 | $0 |
| | General Conditions | $42,000 | $0 | $10,500 | $0 | $10,500 | 25% | $31,500 | $0 |
| | Fee | $42,000 | $0 | $10,500 | $0 | $10,500 | 25% | $31,500 | $0 |
| | SUBTOTAL | $1,212,800 | $0 | $303,200 | $0 | $303,200 | 25% | $909,600 | $0 |
| | | | $0 | $0 | $0 | $0 | | $0 | $0 |

AIA DOCUMENT G702 · CONTINUATION SHEET · MAY 1983 EDITION · AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

*Cayre Jemal's Peoples LLC*                                                    James G. Davis Construction

| DATE | INVOICE NO. | | DESCRIPTION | | INVOICE AMOUNT |
|------|-------------|---|-------------|---|----------------|
| 12.09-02 | 61-2040-2F 77 P ST | | | 080-00-17300 | 76000.00 |

| CHECK DATE | | CHECK NUMBER | | |
|------------|---|--------------|---|---|
| 4-09-03 | 3026 | TOTAL > | | 76000.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*

C/O Douglas Development Corp
702 H Street, NW. Suite 400
Washington, DC 20001
202-638-6300

HSBC Bank USA

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| April 9, 2003 | 3026 | $*****76,000.00 |

1-108
210

Accounting Copy

** VOID * VOID * VOID **

Pay: ***********************Seventy-six thousand dollars and no cents

PAY
TO THE
ORDER OF

James G. Davis Construction
12500 Parklawn Drive
Rockville, MD 20852

**** NOT NEGOTIABLE ****

| JAMES G DAVIS CONSTRUCTION CORP |
| --- |

77 P STREET - DEPT OF ~~MENTAL~~ HEALTH 1ST FL. - OWNER ITEMS
9500 sf @ $10.00/SF
080-01-004

| | | | |
| --- | --- | --- | --- |
| Original Contract Amount | $ | | 95,000.00 |
| Change Orders | | | 0.00 |
| Total Contract | | | 95,000.00 |

Payment History:

| Check# | Invoice # | DATE | Amount |
| --- | --- | --- | --- |
| WIRE | S03071IF | Oct-02 | (19,000.00) |
| 3026 | S0307-75F | 4/9/2003 | (76,000.00) |

Total                                    (95,000.00)

Balance Remaining                                    0.00

# APPLICATION AND CERTIFICATE FOR PAYMENT

**AIA DOCUMENT G702** (Instructions on reverse)

INVOICE  # S0307-75F

JOB # 61-2040

PAGE ONE OF THREE PAGES

TO: Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: 1st DOH Floor- Owner Furnished Items
77 "P" Street NE
Washington DC

FROM: JAMES G. DAVIS CONST. CORPORATION    VIA (ARCHITECT):
12500 Parklawn Drive
Rockville, Maryland 20852

APPLICATION NO.: TWO
PERIOD TO: 9-Dec-02
PROJECT NO:
CONTRACT DATE: 20-Nov-02

Distribution to:
X   ARCHITECT (1) copy
X   CONTRACTOR
X   OWNER (5) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . . . . . . . $   95,000
2. Net change by Change Orders . . . . . . . . . . . . . . . . $   0
3. CONTRACT SUM TO DATE (line 1+2) . . . . . . . . . . $   95,000
4. TOTAL COMPLETED & STORED TO DATE . . . . . . $   95,000
   (Column G on G703)
5. RETAINAGE:
   a. 10% of Completed Work . . . . . . . $   0
      (Column D + E on G703)
   b. 10% of Stored Material . . . . . . . $   0
      (Column F on G703)
   Total Retainage (Line 5a + 5b or
   Total in Column I on G703)
6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . $   95,000
   (Line 4 less Line 5 total)
7. LESS PREVIOUS CERTIFICATES FOR . . . . . . . . . $   0
   PAYMENT (Line 6 from prior Certificate)
8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . . . . . . $   19,000
9. BALANCE TO FINISH, PLUS RETAINAGE . . . . . . $   76,000
   (Line 3 less Line 6)

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in previous months by Owner | | |
| TOTAL | $0 | $0 |
| Approved this month | | |
| Number | | |
| | $0 | $0 |
| TOTALS | $0.00 | $0.00 |
| Net change by Change Orders | $0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: JAMES G. DAVIS CONSTRUCTION CORPORATION
Dominic Machion, Assistant Project Manager
BY: _____
Date: December 09, 2002

State of: VA
County of:
Subscribed and sworn to before me this 09th
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . $
(Attach explanation if amount certified differs from amount applied for.)
ARCHITECT:
By: _____ Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

DOUGLAS DEVELOPMENT
CODE APPROVED
APPROVED
080-01-004
04-01-004
76,000.00
REVIEWED BY

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA- 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL

*AIA DOCUMENT G703*

PAGE TWO OF TWO PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

(Instructions on reverse)

APPLICATION NO: TWO
APPLICATION DATE: 9-Dec-02
PERIOD TO: 9-Dec-02
DAVIS PROJECT NO: 61-2040

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | WORK COMPLETED THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| 09250 | Tricon: Perimeter Drywall | $12,000 | $6,500 | $5,500 | $0 | $12,000 | 100% | $0 | $0 |
| 12,500 | All Blinds Inc. | $2,500 | $0 | $2,500 | $0 | $2,500 | 100% | $0 | $0 |
| 08800 | Herson Glass | $1,200 | $1,000 | $200 | $0 | $1,200 | 100% | $0 | $0 |
| 15300 | Fire Watch: Interior Corridor | $3,650 | $0 | $3,650 | $0 | $3,650 | 100% | $0 | $0 |
| 16000 | Nataloo: VAV Power | $2,650 | $1,500 | $1,150 | $0 | $2,650 | 100% | $0 | $0 |
| 15,000 | American Mechanical Services | $65,000 | $10,000 | $55,000 | $0 | $65,000 | 100% | $0 | $0 |
| | General Conditions | $4,000 | $0 | $4,000 | $0 | $4,000 | 100% | $0 | $0 |
| | Fee | $4,000 | $0 | $4,000 | $0 | $4,000 | 100% | $0 | $0 |
| | SUBTOTAL | $95,000 | $19,000 | $76,000 | $0 | $95,000 | 100% | $0 | $0 |
| | | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |

# APPLICATION AND CERTIFICATE FOR PAYMENT

INVOICE   # S0307-11B

*AIA DOCUMENT G702*   (Instructions on reverse)

JOB # 61-2040

PAGE ONE OF THREE PAGES

TO:   Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: 1st DOH Floor- Owner Furnished Items

77 "P" Street NE
Washington DC

Distribution to:

| | |
|---|---|
| x | **ARCHITECT** (1) copy |
| x | **CONTRACTOR** |
| X | **OWNER** (S) copies |

APPLICATION NO.   ONE

PERIOD TO:   20-Nov-02

FROM:   JAMES G. DAVIS CONST. CORPORATION     VIA (ARCHITECT):
12500 Parklawn Drive
Rockville, Maryland 20852

PROJECT NO:   61-2040
CONTRACT DATE:   20-Nov-02

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

**CHANGE ORDER SUMMARY**

| Change Orders approved in previous months by Owner | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Number | | |
| Approved this month | | |
| Number | | |
| TOTALS | $0 | $0 |
| | $0 | $0 |

Net change by Change Orders   $0.00

1. ORIGINAL CONTRACT SUM ............................................ $   95,000
2. Net change by Change Orders ...................................... $   0
3. CONTRACT SUM TO DATE(Line 1+2) ........................... $   95,000
4. TOTAL COMPLETED & STORED TO DATE ................... $   19,000
   (Column G on G703)
5. RETAINAGE:
   a. 10% of Completed Work   $   0
      (Column D + E on G703)
   b. 10% of Stored Material   $   0
      (Column F on G703)
   Total Retainage (Line 5a + 5b or
   Total in Column I on G703)
6. TOTAL EARNED LESS RETAINAGE ........................... $   19,000
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR
   PAYMENT (Line 6 from prior Certificate) ............... $   0
8. CURRENT PAYMENT DUE .......................................... $   19,000
9. BALANCE TO FINISH, PLUS RETAINAGE ................ $   76,000
   (Line 3 less Line 6)

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:   JAMES G. DAVIS CONSTRUCTION CORPORATION

By:   Kevin Clark, Project Manager
Date:   November 20, 2002

State of:   VA   County of:   FAIRFAX
Subscribed and sworn to before me this
20th   day of November 2002
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .................................................... $
(Attach explanation if amount certified differs from amount applied for.)
ARCHITECT:

By:   Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA - 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**SUMMARY SHEET, TOTAL**

AIA DOCUMENT G703

(Instructions on reverse)

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification is attached.

In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

PAGE TWO OF TWO PAGES
APPLICATION NO: ONE
APPLICATION DATE: 20-Nov-02
PERIOD TO: 20-Nov-02
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 09250 | Trion: Perimeter Drywall | $12,000 | $0 | $6,500 | $0 | $6,500 | 100% | $5,500 | $0 |
| 12,500 | All Blinds Inc. | $2,500 | $0 | $0 | $0 | $0 | 0% | $2,500 | $0 |
| 08800 | Herson Glass | $1,200 | $0 | $1,000 | $0 | $1,000 | 83% | $200 | $0 |
| 15300 | Fire Watch: Interior Corridor | $3,650 | $0 | $0 | $0 | $0 | 0% | $3,650 | $0 |
| 16000 | Natelco: VAV Power | $2,650 | $0 | $1,500 | $0 | $1,500 | 57% | $1,150 | $0 |
| 15,000 | American Mechanical Services | $65,000 | $0 | $10,000 | $0 | $10,000 | 15% | $55,000 | $0 |
| | General Conditions | $4,000 | $0 | $0 | $0 | $0 | 0% | $4,000 | $0 |
| | Fee | $4,000 | $0 | $0 | $0 | $0 | 0% | $4,000 | $0 |
| | SUBTOTAL | $95,000 | $0 | $19,000 | $0 | $19,000 | 20% | $76,000 | $0 |

AIA DOCUMENT G702 · CONTINUATION SHEET · MAY 1983 EDITION · AIA · 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)



*Cayre Jemal's Peoples LLC*

James G. Davis Construction

| DATE | INVOICE NO | DESCRIPTION | INVOICE AMOUNT |
|------|-----------|-------------|----------------|
| 12-09-02 | 61-2040-2H 77 P ST | | 080-00-17300 225000.00 |

| CHECK DATE | CHECK NUMBER | TOTAL > |
|-----------|--------------|---------|
| 4-09-03 | 3027 | 225000.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*

C/O Douglas Development Corp
702 H Street, NW Suite 400
Washington, DC 20001
202-638-6300

HSBC Bank USA

Pay: ********************Two hundred twenty-five thousand dollars and no cents

Accounting Copy

** VOID * VOID * VOID **

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| April 9, 2003 | 3027 | $****225,000.00 |

PAY
TO THE
ORDER OF

James G. Davis Construction
12500 Parklawn Drive
Rockville, MD 20852

1-1/08
210

**** NOT NEGOTIABLE ****

**JAMES G DAVIS CONSTRUCTION CORP**

77 P STREET - D.DOT 1ST FL - OWNER ITEMS
30,000 sf @ $10.00/SF
080-01-004

| | |
|---|---|
| Original Contract Amount | **$ 300,000.00** |
| Change Orders | **0.00** |
| Total Contract | **300,000.00** |

Payment History:

| Check# | Invoice # | DATE | Amount |
|---|---|---|---|
| WIRE | S030711H | Oct-02 | (75,000.00) |
| 3027 | S0307-75H | 4/9/2003 | (225,000.00) |
| Total | | | (300,000.00) |

Balance Remaining **0.00**

4/9/03

# APPLICATION AND CERTIFICATE FOR PAYMENT

**AIA DOCUMENT G702**

INVOICE   # S0307-75H

JOB # 61-2040

TO:
Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: 1st D.DOT Floor- Owner Furnished Items
77 "P" Street NE
Washington DC

APPLICATION NO:   TWO

PERIOD TO:   9-Dec-02

FROM:
JAMES G. DAVIS CONST. CORPORATION   VIA (ARCHITECT):
12500 Parklawn Drive
Rockville, Maryland 20852

PROJECT NO:   61-2040
CONTRACT DATE:   20-Nov-02

(instructions on reverse)

PAGE ONE OF THREE PAGES

Distribution to:
X   ARCHITECT (1) copy
X   CONTRACTOR
X   OWNER (5) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in previous months by Owner | | |
| Approved this month | | |
| Number | | |
| | | |
| TOTALS | $0.00 | $0.00 |
| | $0.00 | $0.00 |

Net change by Change Orders

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 300,000 |
| 2. Net change by Change Orders | | 0 |
| 3. CONTRACT SUM TO DATE(Line 1±2) | $ | 300,000 |
| 4. TOTAL COMPLETED & STORED TO DATE | $ | 300,000 |
| (Column G on G703) | | |
| 5. RETAINAGE: | | |
| a. 10% of Completed Work | $ | 0 |
| (Column D + E on G703) | | |
| b. 10% of Stored Material | $ | 0 |
| (Column F on G703) | | |
| Total Retainage (Line 5a + 5b or | | |
| Total in Column I og G703) | | |
| 6. TOTAL EARNED LESS RETAINAGE | $ | 300,000 |
| (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR | $ | 225,000 |
| PAYMENT (Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE | $ | 75,000 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | $ | 0 |
| (Line 3 less Line 6) | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:
JAMES G. DAVIS CONSTRUCTION CORPORATION
Dominic Machion, Assistant Project Manager
Date: December 09, 2002

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .....................
(Attach explanation if amount certified differs from amount applied for)
ARCHITECT:
By:                                    Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

State of   VA
County of   MONTGOMERY
Subscribed and sworn to before me this
Notary Public:
My Commission expires:

DOUGLAS DEVELOPMENT
INVOICE TOTAL   225,000
DATE
AMT

# SUMMARY SHEET, TOTAL

### AIA DOCUMENT G703

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

(Instructions on reverse)

PAGE TWO OF TWO PAGES
APPLICATION NO: TWO
APPLICATION DATE: 9-Dec-02
PERIOD TO: 9-Dec-02
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 09250 | Tricon - Perimeter - Drywall | $18,000 | $12,000 | $6,000 | $0 | $18,000 | 100% | $0 | $0 |
| 12,500 | All Blinds Inc. | $2,500 | $0 | $2,500 | $0 | $2,500 | 100% | $0 | $0 |
| 08800 | Herson Glass | $1,200 | $1,000 | $200 | $0 | $1,200 | 100% | $0 | $0 |
| 15360 | Fire Watch - Interior Corridor | $3,650 | $0 | $3,650 | $0 | $3,650 | 100% | $0 | $0 |
| 16000 | Natelco - VaV Power | $2,650 | $1,500 | $1,150 | $0 | $2,650 | 100% | $0 | $0 |
| 15,000 | American Mechanical Services | $252,000 | $55,000 | $197,000 | $0 | $252,000 | 100% | $0 | $0 |
| | General Conditions | $10,000 | $3,000 | $7,000 | $0 | $10,000 | 100% | $0 | $0 |
| | Fee | $10,000 | $2,500 | $7,500 | $0 | $10,000 | 100% | $0 | $0 |
| | SUBTOTAL | $300,000 | $75,000 | $225,000 | $0 | $300,000 | 100% | $0 | $0 |

AIA DOCUMENT G702 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

# APPLICATION AND CERTIFICATE FOR PAYMENT

INVOICE   # S0307-11H

AIA DOCUMENT G702   (Instructions on reverse)

JOB # 61-2040

PAGE ONE OF THREE PAGES

TO:
Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: 1st D.DOT Floor- Owner Furnished Items
77 "P" Street NE
Washington DC

APPLICATION NO.   ONE

PERIOD TO:   20-Nov-02

Distribution to:
X   ARCHITECT (1) copy
X   CONTRACTOR
X   OWNER (S) copies

FROM:
JAMES G. DAVIS CONST. CORPORATION   VIA (ARCHITECT):
12500 Parklawn Drive
Rockville, Maryland 20852

PROJECT NO:   61-2040
CONTRACT DATE:   20-Nov-02

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

## CONTRACTOR'S APPLICATION FOR PAYMENT

CHANGE ORDER SUMMARY

| Change Orders approved in previous months by Owner | ADDITIONS | DEDUCTIONS |
|---|---|---|
| TOTAL | $0 | $0 |
| Approved this month | | |
| Number | | |
| | | |
| TOTALS | $0.00 | $0.00 |
| Net change by Change Orders | $0.00 | |

1. ORIGINAL CONTRACT SUM ... $ 300,000
2. Net change by Change Orders ... $ 0
3. CONTRACT SUM TO DATE (Line 1+2) ... $ 300,000
4. TOTAL COMPLETED & STORED TO DATE ... $ 75,000
   (Column G on G703)
5. RETAINAGE:
   a. 10% of Completed Work $ 0
   (Column D + E on G703)
   b. 10% of Stored Material $ 0
   (Column F on G703)
   Total Retainage (Line 5a + 5b or
   Total in Column I og G703) ... $ 0
6. TOTAL EARNED LESS RETAINAGE ... $ 75,000
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR
   PAYMENT (Line 6 from prior Certificate) ... $ 0
8. CURRENT PAYMENT DUE ... $ 75,000
9. BALANCE TO FINISH, PLUS RETAINAGE ... $ 225,000
   (Line 3 less Line 6)

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: JAMES G. DAVIS CONSTRUCTION CORPORATION
By: [signature]   Kevin Clark, Project Manager
Date: November 20, 2002

State of: VA   County of: FAIRFAX
Subscribed and sworn to before me this 20th day of November, 2002
Notary Public:
My Commission expires: 6/30/06

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ... $
(Attach explanation if amount certified differs from amount applied for.)
ARCHITECT:
By:   Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 · APPLICATION AND CERTIFICATE FOR PAYMENT · MAY 1983 EDITION · AIA · 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703    (Instructions on reverse)

PAGE TWO OF TWO PAGES
APPLICATION NO:         ONE
APPLICATION DATE:
PERIOD TO:        20-Nov-02
                 20-Nov-02
DAVIS PROJECT NO:      61-2040

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G / C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| 09250 | Tricon · Perimeter Drywall | $18,000 | $0 | $12,000 | $0 | $12,000 | 100% | $6,000 | $0 |
| 12,500 | All Blinds Inc. | $2,500 | $0 | $0 | $0 | $0 | 0% | $2,500 | $0 |
| 08800 | Herson Glass | $1,200 | $0 | $1,000 | $0 | $1,000 | 83% | $200 | $0 |
| 15300 | Fire Watch · Interior Corridor | $3,650 | $0 | $0 | $0 | $3,650 | 0% | $3,650 | $0 |
| 16000 | Natelco · VAV Power | $2,650 | $0 | $1,500 | $0 | $1,500 | 57% | $1,150 | $0 |
| 15,000 | American Mechanical Services | $252,000 | $0 | $55,000 | $0 | $55,000 | 22% | $197,000 | $0 |
| | General Conditions | $10,000 | $0 | $3,000 | $0 | $3,000 | 30% | $7,000 | $0 |
| | Fee | $10,000 | $0 | $2,500 | $0 | $2,500 | 25% | $7,500 | $0 |
| | **SUBTOTAL** | $300,000 | $0 | $75,000 | $0 | $75,000 | 25% | $225,000 | $0 |

**Cayre Jemal's Peoples LLC**

**James G. Davis Construction**

| CHECK DATE | INVOICE NO. | DESCRIPTION | | INVOICE AMOUNT |
|---|---|---|---|---|
| 2-28-03 | S0310-37 | 77 P ST (61-2040-4) | 080-00-17300 | 365428.00 |

| CHECK DATE | CHECK NUMBER | TOTAL > | |
|---|---|---|---|
| 7-21-03 | 3222 | | 365428.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

**Cayre Jemal's Peoples LLC**

C/O Douglas Development Corp
702 H Street, NW Suite 400 ·.
Washington, DC 20001
202-638-6300

HSBC Bank USA

Pay: *****Three hundred sixty-five thousand four hundred twenty-eight dollars
*******************************************************and no cents

| | DATE | CHECK NO. | |
|---|---|---|---|
| | July 21, 2003 | 3222 | |

Accounting Copy

** VOID * VOID * VOID **

1-108
210

AMOUNT
$****365,428.00

PAY
TO THE
ORDER OF

James G. Davis Construction
12500 Parklawn Drive
Rockville, MD 20852

**** NOT NEGOTIABLE ****

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702

INVOICE # S0310-37

# 61-2051

PAGE ONE OF THREE PAGES

TO: Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

FROM: JAMES G. DAVIS CONST. CORPORATION
12500 Parklawn Drive
Rockville, Maryland 20852

CONTRACT FOR: 3rd Floor Tenant Construction

PROJECT: D.DOT 1st Floor- Tenant Construction
77 "P" Street NE
Washington DC

VIA (ARCHITECT): Hickok Warner Fox
1023 31st Street, NW
Washington, DC 20007

APPLICATION NO: FOUR

PERIOD TO: 28-Feb-03

PROJECT NO.: 61-2051

CONTRACT DATE: 1-Oct-01

Distribution to:
X ARCHITECT (1) copy
X CONTRACTOR
X OWNER (5) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| 1. ORIGINAL CONTRACT SUM | $ | 1,671,499 |
| 2. Net change by Change Orders | | 262,929 |
| 3. CONTRACT SUM TO DATE(Line 1+2) | $ | 1,934,428 |
| 4. TOTAL COMPLETED & STORED TO DATE | $ | 1,934,428 |
| (Column G on G703) | | |
| 5. RETAINAGE: | | |
| a. 10% of Completed Work | | |
| (Column D + E on G703) | $ | 0 |
| b. 10% of Stored Material | | |
| (Column F on G703) | | |
| Total Retainage (Line 5a + 5b or | $ | 0 |
| Total in Column I og G703) | | |
| 6. TOTAL EARNED LESS RETAINAGE | $ | 1,934,428 |
| (Line 4 less Line 5 Total) | | |
| 7. LESS TENANT IMPROVEMENT ALLOWANCE | $ | 1,569,000 |
| funded By DDC | | |
| 8. CURRENT PAYMENT DUE | $ | 365,428 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | $ | 0 |
| (Line 3 less Line 6) | | |

### CHANGE ORDER SUMMARY

| Change Orders approved in previous months by Owner | ADDITIONS | DEDUCTIONS |
|---|---|---|
| TOTAL | $0 | $0 |
| Approved this month | | |
| Number | | |
| 3, 05, 08, 10, 11, 12 | $223,126.00 | $0 |
| #20, 21, 28 | $39,803.00 | $0 |
| TOTALS | $262,929.00 | $0.00 |
| Net change by Change Orders | $262,929.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: JAMES G. DAVIS CONSTRUCTION CORPORATION

By: Kevin Clark, Project Manager    Date: February 28, 2003

State of: Virginia
County of: Alexandria

Subscribed and sworn to before me this 28th day of February 2003
Notary Public: Susan Peery
My commission expires: 10/31/2006

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ...... $
(Attach explanation if amount certified differs from amount applied for.)

ARCHITECT:
By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

DOUGLAS DEVELOPMENT
COST CODE
NOT APPROVED

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION -'AIA- 1983
THE AMERICAN INSTITUTE OF ARCHITECT, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL

**AIA DOCUMENT G703** (Instructions on reverse)

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

PAGE TWO OF TWO PAGES
APPLICATION NO: FOUR
APPLICATION DATE: 28-Feb-03
PERIOD TO: 28-Feb-03
DAVIS PROJECT NO: 61-2051

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 01700 | Final Cleaning | $15,050 | $0 | $15,050 | $0 | $15,050 | 100% | $0 | $0 |
| 01712 | Dumpsters | $11,250 | $0 | $11,250 | $0 | $11,250 | 100% | $0 | $0 |
| 03300 | Concrete repair | $14,000 | $0 | $14,000 | $0 | $14,000 | 100% | $0 | $0 |
| 02700 | Concrete cutting | $15,000 | $0 | $15,000 | $0 | $15,000 | 100% | $0 | $0 |
|  | Structural Steel & Misc. Metals | $95,000 | $0 | $95,000 | $0 | $95,000 | 100% | $0 | $0 |
| 06001 | Rough Carpentry | $35,000 | $0 | $35,000 | $0 | $35,000 | 100% | $0 | $0 |
| 06400 | Millwork | $72,147 | $0 | $72,147 | $0 | $72,147 | 100% | $0 | $0 |
| 08110 | Doors/Frames/Hardware | $19,442 | $0 | $19,442 | $0 | $19,442 | 100% | $0 | $0 |
| 08114 | Doors/Frames/Hardware-installation | $6,500 | $0 | $6,500 | $0 | $6,500 | 100% | $0 | $0 |
| 08800 | Glass & Glazing | $28,900 | $0 | $28,900 | $0 | $28,900 | 100% | $0 | $0 |
| 09250 | Drywall | $151,500 | $0 | $151,500 | $0 | $151,500 | 100% | $0 | $0 |
| 09900 | Carpet/VCT | $145,211 | $0 | $145,211 | $0 | $145,211 | 100% | $0 | $0 |
| 09680 | Painting/Wall Covering | $44,600 | $0 | $44,600 | $0 | $44,600 | 100% | $0 | $0 |
| 15000 | Appliances | $5,000 | $0 | $5,000 | $0 | $5,000 | 100% | $0 | $0 |
|  | Ductwork | $167,980 | $0 | $167,980 | $0 | $167,980 | 100% | $0 | $0 |
| 15000 | HVAC | $30,000 | $0 | $30,000 | $0 | $30,000 | 100% | $0 | $0 |
|  | Plumbing | $16,972 | $0 | $16,972 | $0 | $16,972 | 100% | $0 | $0 |
| 15500 | Controls & VAV's | $150,603 | $0 | $150,603 | $0 | $150,603 | 100% | $0 | $0 |
| 15300 | Fire Protection | $44,837 | $0 | $44,837 | $0 | $44,837 | 100% | $0 | $0 |
| 16000 | Electrical | $435,000 | $0 | $435,000 | $0 | $435,000 | 100% | $0 | $0 |
| **SUBTOTAL** |  | **$1,671,499** | **$0** | **$1,671,499** | **$0** | **$1,671,499** | **100%** | **$0** | **$0** |
|  | Acceleration | $15,000 | $0 | $15,000 | $0 | $15,000 | 100% | $0 | $0 |
|  | General Conditions | $75,950 | $0 | $75,950 | $0 | $75,950 | 100% | $0 | $0 |
|  | Fee | $76,557 | $0 | $76,557 | $0 | $76,557 | 100% | $0 | $0 |

AIA DOCUMENT G702 · CONTINUATION SHEET · MAY 1983 EDITION · AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

# CHANGE ORDER, SHEET 1

*AIA DOCUMENT G703*

(Instructions on reverse)

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| | Carried From Page Two | $1,671,499 | $0 | $1,671,499 | $0 | $1,671,499 | 1 | $0 | $0 |
| | APPROVED CHANGE ORDERS | | | | | | | | |
| | Change Order No.3 | $50,131 | $0 | $50,131 | $0 | $50,131 | 100% | $0 | $0 |
| | Change Order No.5 | $103,474 | $0 | $103,474 | $0 | $103,474 | 100% | $0 | $0 |
| | Change Order No.8 | $37,794 | $0 | $37,794 | $0 | $37,794 | 100% | $0 | $0 |
| | Change Order No.10 | $11,098 | $0 | $11,098 | $0 | $11,098 | 100% | $0 | $0 |
| | Change Order No.11 | $5,464 | $0 | $5,464 | $0 | $5,464 | 100% | $0 | $0 |
| | Change Order No.12 | $15,165 | $0 | $15,165 | $0 | $15,165 | 100% | $0 | $0 |
| | Change Order No.20 | $29,665 | $0 | $29,665 | $0 | $29,665 | 100% | $0 | $0 |
| | Change Order No.21 | $6,470 | $0 | $6,470 | $0 | $6,470 | 100% | $0 | $0 |
| | Change Order No.28 | $3,668 | $0 | $3,668 | $0 | $3,668 | 100% | $0 | $0 |
| | TOTAL | $1,934,428 | $0 | $1,934,428 | $0 | $1,934,428 | 100% | $0 | $0 |

AIA DOCUMENT G702 · CONTINUATION SHEET · MAY 1983 EDITION · AIA · 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

*Cayre Jemal's Peoples LLC*

James G. Davis Construction

| CHECK DATE | INVOICE NO. | DESCRIPTION | INVOICE AMOUNT |
|---|---|---|---|
| 2-28-03 | S0310-38 | 77 P ST (61-2040-4) | 080-00-17300 | 578223.00 |

| CHECK DATE | CHECK NUMBER | | |
|---|---|---|---|
| 7-21-03 | 3223 | TOTAL > | 578223.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*

C/O Douglas Development Corp
702 H Street, NW Suite 400 ~.
Washington, DC 20001
202-638-6300

HSBC Bank USA

| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| July 21, 2003 | 3223 | $****578,223.00 |

1-108
210

Pay: ****Five hundred seventy-eight thousand two hundred twenty-three dollars
***************************************************************and no cents

Accounting Copy
** VOID * VOID * VOID **

PAY
TO THE
ORDER OF

James G. Davis Construction
12500 Parklawn Drive
Rockville, MD 20852

**** NOT NEGOTIABLE ****

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702

INVOICE  # S0310-38

PAGE ONE OF THREE PAGES

TO:  Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: DHS 6th Floor - Tenant Construction
77 "P" Street NE
Washington DC

APPLICATION NO:   FOUR

PERIOD TO:   28-Feb-03

Distribution to:
X   ARCHITECT (1) copy
X   CONTRACTOR
X   OWNER (5) copies

FROM:  JAMES G. DAVIS CONST. CORPORATION
12500 Parklawn Drive
Rockville, Maryland 20852

VIA (ARCHITECT): Hickok Warner Fox
1023 31st Street, NW
Washington, DC 20007

PROJECT NO:   61-2040
CONTRACT DATE:   1-Oct-01

CONTRACT FOR: 3rd Floor Tenant Construction

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM | $   2,175,902 |
| 2. Net change by Change Orders | $   359,621 |
| 3. CONTRACT SUM TO DATE(Line 1+2) | $   2,535,523 |
| 4. TOTAL COMPLETED & STORED TO DATE | $   2,535,523 |
| (Column G on G703) | |
| 5. RETAINAGE: | |
| a.  10% of Completed Work | |
| (Column D + E on G703) | $            0 |
| b.  10% of Stored Material | |
| (Column F on G703) | $            0 |
| Total Retainage (Line 5a + 5b)or | |
| Total in Column I on G703) | $            0 |
| 6. TOTAL EARNED LESS RETAINAGE | $   2,535,523 |
| (Line 4 less Line 5 Total) | |
| 7. LESS TENANT IMPROVEMENT ALLOWANCE | 0 |
| 8. Funded By DDC | $   1,957,300 |
| 9. CURRENT PAYMENT DUE | $     578,223 |
| BALANCE TO FINISH, PLUS RETAINAGE | $            0 |
| (Line 3 less Line 6) | |

### CHANGE ORDER SUMMARY

| Change Orders Approved in | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Previous months by Owner | | |
| TOTAL | $343,980.00 | $0 |
| Approved this month | | |
| Number | | |
| 2, 04, 09, 15, 17, 18 | $15,641.00 | $0 |
| #19, 22 | | |
| TOTALS | $359,621.00 | $0 |
| Net change by Change Orders | $359,621.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been
paid by the Contractor for Work for which previous Certificates for Payment were
issued and payments received from the Owner, and that current payment shown
herein is now due.

CONTRACTOR:  JAMES G DAVIS CONSTRUCTION CORPORATION

By: _____   Date: February 28, 2003
Kevin __ Project Manager

## ARCHITECT'S CERTIFICATE FOR PAYMENT

AMOUNT CERTIFIED ........................................ $ _____

(Attach explanation if amount certified differs from amount applied for.)

ARCHITECT:

By: _____   Date: 7/4/03

In accordance with the Contract Documents, based on on-site observations and the
data comprising the above application, the Architect certifies to the Owner that to the
best of the Architect's knowledge, information and belief the Work has progressed as
indicated, the quality of the Work is in accordance with the Contract Documents, and
the Contractor is entitled to payment of the AMOUNT CERTIFIED.

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the
Contractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

DOUGLAS DEVELOPMENT

State of: Virginia
County of: Alexandria
Subscribed and sworn to before me this 28th
day of February 2003
Notary Public: Susan Peery
My Commission expires: 10/31/2006

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA - 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL

## AIA DOCUMENT G703

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

(Instructions on reverse)

PAGE TWO OF TWO PAGES

APPLICATION NO: FOUR
APPLICATION DATE: 28-Feb-03
PERIOD TO: 28-Feb-03
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 01700 | Final Cleaning | $15,050 | $0 | $15,050 | $0 | $15,050 | 100% | $0 | $0 |
| 01712 | Dumpsters | $11,250 | $0 | $11,250 | $0 | $11,250 | 100% | $0 | $0 |
| 03300 | Concrete repair | $14,000 | $0 | $14,000 | $0 | $14,000 | 100% | $0 | $0 |
| 16001 | Rough Carpentry | $35,000 | $0 | $35,000 | $0 | $35,000 | 100% | $0 | $0 |
| 06400 | Millwork | $45,650 | $0 | $45,650 | $0 | $45,650 | 100% | $0 | $0 |
| 08110 | Doors/Frames/Hardware | $89,887 | $0 | $89,887 | $0 | $89,887 | 100% | $0 | $0 |
| 08114 | Doors/Frames/Hardware-installation | $21,500 | $0 | $21,500 | $0 | $21,500 | 100% | $0 | $0 |
| 08800 | Glass & Glazing | $88,300 | $0 | $88,300 | $0 | $88,300 | 100% | $0 | $0 |
| 08800 | Remove Window for stocking material | $5,000 | $0 | $5,000 | $0 | $5,000 | 100% | $0 | $0 |
| 09250 | Drywall | $321,200 | $0 | $321,200 | $0 | $321,200 | 100% | $0 | $0 |
| 09250 | Ceiling Removal & Replacement | $5,000 | $0 | $5,000 | $0 | $5,000 | 100% | $0 | $0 |
| 09680 | Carpet/VCT | $210,922 | $0 | $210,922 | $0 | $210,922 | 100% | $0 | $0 |
| 09900 | Painting/Wall Covering | $70,800 | $0 | $70,800 | $0 | $70,800 | 100% | $0 | $0 |
| | Spray Fire Proofing | $10,000 | $0 | $10,000 | $0 | $10,000 | 100% | $0 | $0 |
| | Appliances | $3,500 | $0 | $3,500 | $0 | $3,500 | 100% | $0 | $0 |
| | Window Blinds | $8,560 | $0 | $8,560 | $0 | $8,560 | 100% | $0 | $0 |
| 15000 | HVAC | $480,474 | $0 | $480,474 | $0 | $480,474 | 100% | $0 | $0 |
| 15300 | Fire Protection | $63,480 | $0 | $63,480 | $0 | $63,480 | 100% | $0 | $0 |
| 16000 | Electrical | $477,800 | $0 | $477,800 | $0 | $477,800 | 100% | $0 | $0 |
| | SUBTOTAL | $2,175,902 | $0 | $2,175,902 | $0 | $2,175,902 | 100% | $0 | $0 |
| | General Conditions | $98,869 | $0 | $98,869 | $0 | $98,869 | 100% | $0 | $0 |
| | Fee | $99,660 | $0 | $99,660 | $0 | $99,660 | 100% | $0 | $0 |
| | | | | | | | | $0 | $0 |

AIA DOCUMENT G702 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

# CHANGE ORDER, SHEET 1

**AIA DOCUMENT G703** (Instructions on reverse)

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

PAGE THREE OF THREE PAGES
APPLICATION NO: FOUR
APPLICATION DATE: 28-Feb-03
PERIOD TO: 28-Feb-03
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| | Carried From Page Two | $2,175,902 | $0 | $2,175,902 | $0 | $2,175,902 | 1 | $0 | $0 |
| | APPROVED CHANGE ORDERS | | | | | | | | |
| | Change Order No.2 | $134,034 | $0 | $134,034 | $0 | $134,034 | 100% | $0 | $0 |
| | Change Order No.4 | $74,067 | $0 | $74,067 | $0 | $74,067 | 100% | $0 | $0 |
| | Change Order No.9 | $103,777 | $0 | $103,777 | $0 | $103,777 | 100% | $0 | $0 |
| | Change Order No.15 | $8,975 | $0 | $8,975 | $0 | $8,975 | 100% | $0 | $0 |
| | Change Order No.17 | $10,079 | $0 | $10,079 | $0 | $10,079 | 100% | $0 | $0 |
| | Change Order No.18 | $13,048 | $0 | $13,048 | $0 | $13,048 | 100% | $0 | $0 |
| | Change Order No.19 | $10,475 | $0 | $10,475 | $0 | $10,475 | 100% | $0 | $0 |
| | Change Order No.22 | $5,166 | $0 | $5,166 | $0 | $5,166 | 100% | $0 | $0 |
| | TOTAL | $2,535,523 | $0 | $2,535,523 | $0 | $2,535,523 | 100% | $0 | $0 |

AIA DOCUMENT G702 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

*Cayre Jemal's Peoples LLC*                                    James G. Davis Construction

| CHECK DATE | INVOICE NO | DESCRIPTION | INVOICE AMOUNT |
|---|---|---|---|
| 6-15-03 | S0402-37 | 77 P ST (61-2051-5) | 080-00-17300 | 85304.00 |

| CHECK DATE | 7-21-03 | CHECK NUMBER | 3225 | TOTAL > | 85304.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*
C/O Douglas Development Corp
702 H Street, NW  Suite 400
Washington, DC 20001
202-638-6300

HSBC Bank USA

DATE
July 21, 2003

CHECK NO.
3225

1:108
210

AMOUNT
$*****85,304.00

Accounting Copy

** VOID * VOID * VOID **

Pay: ***********Eighty-five thousand three hundred four dollars and no cents

PAY
TO THE
ORDER OF     James G. Davis Construction
             12500 Parklawn Drive
             Rockville, MD  20852

**** NOT NEGOTIABLE ****

# APPLICATION AND CERTIFICATE FOR PAYMENT

INVOICE  # S0402-37

JOB # 61-2051

PAGE ONE OF THREE PAGES

*AIA DOCUMENT G702*

TO : Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: D.DOT 1st Floor- Tenant Construction
77 "P" Street NE
Washington DC

FROM : JAMES G. DAVIS CONST. CORPORATION
12500 ParkIawn Drive
Rockville, Maryland 20852

VIA (ARCHITECT) : Hickok Warner Fox
1023 31st Street, NW
Washington, DC 20007

CONTRACT FOR: 3rd Floor Tenant Construction

| | |
|---|---|
| APPLICATION NO: | FIVE |
| PERIOD TO: | 15-Jun-03 |
| PROJECT NO: | 61-2051 |
| CONTRACT DATE: | 31-Dec-02 |

Distribution to:
x    ARCHITECT (1) copy
x    CONTRACTOR
x    OWNER (5) copies

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 1,671,499.00 |
| 2. Net change by Change Orders | $ | 348,233 |
| 3. CONTRACT SUM TO DATE(Line 1+2) | $ | 2,019,732 |
| 4. TOTAL COMPLETED & STORED TO DATE | $ | 2,019,732 |
|     (Column G on G703) | | |
| 5. RETAINAGE: | | |
|   a. 10% of Completed Work | $ | 0 |
|     (Column D + E on G703) | | |
|   b. 10% of Stored Material | $ | 0 |
|     (Column F on G703) | | |
|   Total Retainage (Line 5a + 5b or | | |
|   Total in Column I og G703) | | |
| 6. TOTAL EARNED LESS RETAINAGE | $ | 2,019,732 |
|   (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR | | |
|   PAYMENT (Line 6 from prior Certificate) | $ | 1,934,428 |
| 8. CURRENT PAYMENT DUE | $ | 85,304 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | | |
|   (Line 3 less Line 6) | $ | 0 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in | | |
| previous months by Owner | $262,929 | $0 |
| TOTAL | $262,929 | $0 |
| Approved this month | | |
| Number | | |
| Error in CO No.20 | | ($2,766.00) |
| Change Order No.30 | $88,070.00 | |
| TOTALS | $88,070.00 | ($2,766.00) |
| Net change by Change Orders | $348,233.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been
paid by the Contractor for Work for which previous Certificates for Payment were
issued and payments received from the Owner, and that current payment shown
herein is now due.

CONTRACTOR : JAMES G. DAVIS CONSTRUCTION CORPORATION

By: Kevin Clark, Senior Project Manager    Date:Aug 15, 2003

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with Contract Documents, based on on-site observations and the
data comprising the above application, the Architect certifies to the Owner that to the
best of the Architect's knowledge, information and belief the Work has progressed as
indicated, the quality of the Work is in accordance with the Contract Documents, and
the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .......................    $
*(Attach explanation if amount certified differs from amount applied for.)*
ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable.  The AMOUNT CERTIFIED is payable only to the
Contractor named herein.  Issuance and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

State of:    Virginia    County of:    Alexandria
Subscribed and sworn to before me this    16th    day of June 2003
Notary Public:  Susan Peery    *[signature]*
My Commission expires:    10/31/2006

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA- 1983
THE AMERICAN INSTITUTE OF ARCHITECT, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL — AIA DOCUMENT G703 (Instructions on reverse) — PAGE TWO OF TWO PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: Five
APPLICATION DATE: 15-Jun-03
PERIOD TO: 15-Jun-03
DAVIS PROJECT NO: 61-2051

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 01700 | Final Cleaning | $15,050 | $15,050 | $0 | $0 | $15,050 | 100% | | $0 |
| 01712 | Dumpsters | $11,250 | $11,250 | $0 | $0 | $11,250 | 100% | | $0 |
| 03300 | Concrete repair | $14,000 | $14,000 | $0 | $0 | $14,000 | 100% | | $0 |
| 02700 | Concrete cutting | $15,000 | $15,000 | $0 | $0 | $15,000 | 100% | | $0 |
| | Structural Steel & Misc. Metals | $95,000 | $95,000 | $0 | $0 | $95,000 | 100% | | $0 |
| 06001 | Rough Carpentry | $35,000 | $35,000 | $0 | $0 | $35,000 | 100% | | $0 |
| 06400 | Millwork | $72,147 | $72,147 | $0 | $0 | $72,147 | 100% | | $0 |
| 08110 | Doors/Frames/Hardware | $19,442 | $19,442 | $0 | $0 | $19,442 | 100% | | $0 |
| 08114 | Doors/Frames/Hardware-installation | $6,500 | $6,500 | $0 | $0 | $6,500 | 100% | | $0 |
| 08800 | Glass & Glazing | $28,900 | $28,900 | $0 | $0 | $28,900 | 100% | | $0 |
| 09250 | Drywall | $151,500 | $151,500 | $0 | $0 | $151,500 | 100% | | $0 |
| 09680 | Carpet/VCT | $145,211 | $145,211 | $0 | $0 | $145,211 | 100% | | $0 |
| 09900 | Painting/Wall Covering | $44,600 | $44,600 | $0 | $0 | $44,600 | 100% | | $0 |
| | Appliances | $5,000 | $5,000 | $0 | $0 | $5,000 | 100% | | $0 |
| 15000 | Ductwork | $167,980 | $167,980 | $0 | $0 | $167,980 | 100% | | $0 |
| | HVAC | $30,000 | $30,000 | $0 | $0 | $30,000 | 100% | | $0 |
| 15000 | Plumbing | $16,972 | $16,972 | $0 | $0 | $16,972 | 100% | | $0 |
| 15500 | Controls & VAV's | $150,603 | $150,603 | $0 | $0 | $150,603 | 100% | | $0 |
| 15300 | Fire Protection | $44,837 | $44,837 | $0 | $0 | $44,837 | 100% | | $0 |
| 16000 | Electrical | $435,000 | $435,000 | $0 | $0 | $435,000 | 100% | | $0 |
| | Accelleration | $15,000 | $15,000 | $0 | $0 | $15,000 | 100% | | $0 |
| | General Conditions | $75,950 | $75,950 | $0 | $0 | $75,950 | 100% | | $0 |
| | Fee | $76,557 | $76,557 | $0 | $0 | $76,557 | 100% | | $0 |
| | SUBTOTAL | $1,671,499 | $1,671,499 | | $0 | $1,671,499 | 100% | | $0 |

AIA DOCUMENT G702 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

# CHANGE ORDER, SHEET 1

AIA DOCUMENT G703    (Instructions on reverse)    PAGE THREE OF THREE PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: FIVE
APPLICATION DATE: 15-Jun-03
PERIOD TO: 15-Jun-03
DAVIS PROJECT NO: 61-2051

| A | B | C | D | E | F | G | % | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | WORK COMPLETE THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| | Carried From Page Two | $1,671,499 | $1,671,499 | | $0 | $1,671,499 | 1 | $0 | $0 |
| | APPROVED CHANGE ORDERS | | | | | | | | |
| | Change Order No.3 | $50,131 | $50,131 | $0 | $0 | $50,131 | 100% | $0 | $0 |
| | Change Order No.5 | $103,474 | $103,474 | $0 | $0 | $103,474 | 100% | $0 | $0 |
| | Change Order No.8 | $37,794 | $37,794 | $0 | $0 | $37,794 | 100% | $0 | $0 |
| | Change Order No.10 | $11,098 | $11,098 | $0 | $0 | $11,098 | 100% | $0 | $0 |
| | Change Order No.11 | $5,464 | $5,464 | $0 | $0 | $5,464 | 100% | $0 | $0 |
| | Change Order No.12 | $15,165 | $15,165 | $0 | $0 | $15,165 | 100% | $0 | $0 |
| | Change Order No.20 | $29,665 | $29,665 | $0 | $0 | $29,665 | 100% | $0 | $0 |
| | Change Order No.21 | $6,470 | $6,470 | $0 | $0 | $6,470 | 100% | $0 | $0 |
| | Change Order No.28 | $3,668 | $3,668 | $0 | $0 | $3,668 | 100% | $0 | $0 |
| | Error in CO No.20 | -$2,766 | $0 | -$2,766 | $0 | -$2,766 | 100% | $0 | $0 |
| | Change Order No.30 | $88,070 | $0 | $88,070 | $0 | $88,070 | 100% | $0 | $0 |
| | TOTAL | $2,019,732 | $1,934,428 | $85,304 | $0 | $2,019,732 | 100% | $0 | $0 |

AIA DOCUMENT G702 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

*Cayre Jemal's Peoples LLC*

James G. Davis Construction

| DATE | INVOICE NO | DESCRIPTION | INVOICE AMOUNT |
|---|---|---|---|
| 2-28-03 | S0310-39 | 77 P ST (61-2040-4) | 080-00-17300 | 184657.00 |

| CHECK DATE | 7-21-03 | CHECK NUMBER | 3224 | TOTAL > | | 184657.00 |

PLEASE DETACH AND RETAIN FOR YOUR RECORDS

*Cayre Jemal's Peoples LLC*

C/O Douglas Development Corp
702 H Street, NW Suite 400
Washington, DC 20001
202-638-6300

HSBC Bank USA

DATE
July 21, 2003

CHECK NO.
3224

1-08
210

AMOUNT
$****184,657.00

Pay: *******One hundred eighty-four thousand six hundred fifty-seven dollars
*****************************************and no cents

| PAY TO THE ORDER OF | James G. Davis Construction
12500 Parklawn Drive
Rockville, MD  20852 |

Accounting Copy

** VOID * VOID * VOID **

**** NOT NEGOTIABLE ****

# APPLICATION AND CERTIFICATE FOR PAYMENT

INVOICE # S0310-39

AIA DOCUMENT G702

OB # 61-2040

PAGE ONE OF THREE PAGES

Distribution to:

x  ARCHITECT (1) copy
x  CONTRACTOR
x  OWNER (5) copies

TO:
Douglas Development Corporation
702 "H" Street, NW
Washington DC 20001
Paul Millstein

PROJECT: DOH 5th Floor- Tenant Construction
77 "P" Street NE
Washington DC

APPLICATION NO:  FOUR
PERIOD TO:  28-Feb-03

FROM: JAMES G. DAVIS CONST. CORPORATION
12500 Parklawn Drive
Rockville, Maryland 20852

VIA (ARCHITECT): Hickok Warner Fox
1023 31st Street, NW
Washington, DC 20007

PROJECT NO:  61-2040
CONTRACT DATE:  1-Oct-01

CONTRACT FOR: 3rd Floor Tenant Construction

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in accordance with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | | |
|---|---|---|---|
| 1. ORIGINAL CONTRACT SUM | | $ | 1,833,531 |
| 2. Net change by Change Orders | | $ | 152,422 |
| 3. CONTRACT SUM TO DATE(Line 1+2) | | $ | 1,985,957 |
| 4. TOTAL COMPLETED & STORED TO DATE | | $ | 1,985,957 |
|    (Column G on G703) | | | |
| 5. RETAINAGE: | | | |
|    a. 10% of Completed Work | $ 0 | | |
|       (Column D + E on G703) | | | |
|    b. 10% of Stored Material | $ 0 | | |
|       (Column F on G703) | | | |
|    Total Retainage (Line 5a + 5b or | | | |
|    Total in Column I og G703) | | | |
| 6. TOTAL EARNED LESS RETAINAGE | | $ | 1,985,957 |
|    (Line 4 less Line 5 Total) | | | |
| 7. LESS TENANT IMPROVEMENT ALLOWANCE | | $ | 1,801,30 |
|    Funded By DDC | | $ | 184,65 |
| 8. CURRENT PAYMENT DUE | | $ | |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | | $ | |
|    (Line 3 less Line 6) | | | |

DOUGLAS DEVELOPMENT

### CHANGE ORDER SUMMARY

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in | | |
| previous months by Owner | $0 | $0 |
| TOTAL | $0 | $0 |
| Approved this month | | |
| 1, 06, 07, 13, 14, 15 | $151,025.00 | |
| #23 | $1,399.00 | |
| TOTALS | $152,424.00 | $0.00 |

Net change by Change Orders  $152,424.00

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been
paid by the Contractor for Work for which previous Certificates for Payment were
issued and payments received from the Owner, and that current payment shown
herein is now due.

CONTRACTOR: JAMES G. DAVIS CONSTRUCTION CORPORATION

Kevin _____ Project Manager

Date: February 28, 2003

#3224
7/21/03

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the
data comprising the above application, the Architect certifies to the Owner that to the
best of the Architect's knowledge, information and belief the Work has progressed as
indicated, the quality of the Work is in accordance with the Contract Documents, and
the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ........................  $
(Attach explanation if amount certified differs from amount applied for.)

ARCHITECT

By: _____  Date: 7/16/03

This Certificate is not negotiable.  The AMOUNT CERTIFIED is payable only to the
Contractor named herein.  Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

State of Virginia  County of: Alexandria
Subscribed and sworn to before me this 28th day of February 2003
Notary Public: Susan Peery
My Commission expires:  10/31/2006

AIA DOCUMENT G702 - APPLICATION AND CERTIFICATE FOR PAYMENT - MAY 1983 EDITION - AIA - 1983
THE AMERICAN INSTITUTE OF ARCHITECT, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

# SUMMARY SHEET, TOTAL    AIA DOCUMENT G703    (Instructions on reverse)

PAGE TWO OF TWO PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: FOUR
APPLICATION DATE: 28-Feb-03
PERIOD TO: 28-Feb-03
DAVIS PROJECT NO: 61-2040

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETE THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 01700 | Final Cleaning | $15,050 | $0 | $15,050 | $0 | $15,050 | 100% | | $0 |
| 01712 | Dumpsters | $11,250 | $0 | $11,250 | $0 | $11,250 | 100% | | $0 |
| 03300 | Concrete repair | $14,000 | $0 | $14,000 | $0 | $14,000 | 100% | | $0 |
| 06001 | Rough Carpentry | $35,000 | $0 | $35,000 | $0 | $35,000 | 100% | | $0 |
| 06400 | Millwork | $45,650 | $0 | $45,650 | $0 | $45,650 | 100% | | $0 |
| 08110 | Doors/Frames/Hardware | $74,000 | $0 | $74,000 | $0 | $74,000 | 100% | | $0 |
| 08114 | Doors/Frames/Hardware-installation | $21,500 | $0 | $21,500 | $0 | $21,500 | 100% | | $0 |
| 08800 | Glass & Glazing | $56,600 | $0 | $56,600 | $0 | $56,600 | 100% | | $0 |
| 08800 | Remove Window for stocking material | $5,000 | $0 | $5,000 | $0 | $5,000 | 100% | | $0 |
| 09250 | Drywall | $302,900 | $0 | $302,900 | $0 | $302,900 | 100% | | $0 |
| 09250 | Ceiling Removal & Replacement | $12,500 | $0 | $12,500 | $0 | $12,500 | 100% | | $0 |
| 09680 | Carpet/VCT | $165,419 | $0 | $165,419 | $0 | $165,419 | 100% | | $0 |
| 09900 | Painting/Wall Covering | $46,500 | $0 | $46,500 | $0 | $46,500 | 100% | | $0 |
| | Raised Access Flooring | $40,000 | $0 | $40,000 | $0 | $40,000 | 100% | | $0 |
| | Appliances | $3,500 | $0 | $3,500 | $0 | $3,500 | 100% | | $0 |
| | Window Blinds | $39,164 | $0 | $39,164 | $0 | $39,164 | 100% | | $0 |
| 15000 | Ductwork | $150,000 | $0 | $150,000 | $0 | $150,000 | 100% | | $0 |
| 15000 | Plumbing | $65,000 | $0 | $65,000 | $0 | $65,000 | 100% | | $0 |
| 15000 | HVAC Controls & VAV's | $125,300 | $0 | $125,300 | $0 | $125,300 | 100% | | $0 |
| 15300 | Fire Protection | $58,109 | $0 | $58,109 | $0 | $58,109 | 100% | | $0 |
| 16000 | Electrical | $329,800 | $0 | $329,800 | $0 | $329,800 | 100% | | $0 |
| | | | | | | | | | |
| | Overtime | $50,000 | $0 | $50,000 | $0 | $50,000 | 100% | | $0 |
| | General Conditions | $83,312 | $0 | $83,312 | $0 | $83,312 | 100% | | $0 |
| | Fee | $83,979 | $0 | $83,979 | $0 | $83,979 | 100% | | $0 |
| | SUBTOTAL | $1,833,533 | $0 | $1,833,533 | $0 | $1,833,533 | 100% | | $0 |

AIA DOCUMENT G703 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)

# CHANGE ORDER, SHEET 1

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703      (Instructions on reverse)

PAGE THREE OF THREE PAGES
APPLICATION NO: FOUR
APPLICATION DATE: 28-Feb-03
PERIOD TO: 28-Feb-03
DAVIS PROJECT NO: 61-2040

| A | B | C | D | E | F | G | % | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETE FROM PREVIOUS APPLICATION (D+E) | WORK COMPLETE THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| | Carried From Page Two | $1,833,533 | $0 | $1,833,533 | $0 | $1,833,533 | 1 | $0 | $0 |
| | | | | | | | | | |
| | APPROVED CHANGE ORDERS | | | | | | | | |
| | Change Order No.1 | $74,859 | | $74,859 | $0 | $74,859 | 100% | $0 | $0 |
| | Change Order No.6 | $10,919 | | $10,919 | $0 | $10,919 | 100% | $0 | $0 |
| | Change Order No.7 | $21,294 | | $21,294 | $0 | $21,294 | 100% | $0 | $0 |
| | Change Order No.13 | $21,398 | | $21,398 | $0 | $21,398 | 100% | $0 | $0 |
| | Change Order No.14 | $7,726 | | $7,726 | $0 | $7,726 | 100% | $0 | $0 |
| | Change Order No.16 | $14,829 | | $14,829 | $0 | $14,829 | 100% | $0 | $0 |
| | Change Order No.23 | $1,399 | | $1,399 | $0 | $1,399 | 100% | $0 | $0 |
| | TOTAL | $1,985,957 | $0 | $1,985,957 | $0 | $1,985,957 | 100% | $0 | $0 |

AIA DOCUMENT G702- G703 - CONTINUATION SHEET - MAY 1983 EDITION - AIA 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON D.C. 20006 (Reproduced by permission of the Copyright Holder)



ALEXANDER, MONTROSE, RITTENBERG
Commercial Real Estate Brokerage

February 6, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

**Re: Blake Esherick**

Dear Judge Urbina:

I have had the privilege of knowing Blake Esherick for over 25 years. I first met Blake when we were opponents in a high school football game in 1980. I still remember his good sportsmanship and sense of fair play. I reconnected with Blake in the business world in 1988, and his friendly, outgoing personality, coupled with his integrity, honesty and character, have been the hallmark of numerous business transactions on which we have worked over the past 19 years.

I also have had the privilege to see Blake as a father at B-CC baseball games and Maplewood Football games. He is a true role model for not only his son Douglas but also for the other parents on the sidelines with his positive behavior.

I was saddened to hear of the verdict in his trial and hope this brief letter helps you understand what a great man Blake Esherick is and how respected he is in the business community, Little League sports community and by his longtime friends. I am happy to answer any questions you may have about Blake.

Best Regards,

**AMR Commercial, LLC**

John C. Alexander

President



ALEXANDER, MONTROSE, RITTENBERG
Commercial Real Estate Brokerage

February 6, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

**Re: Blake Esherick**

Dear Judge Urbina:

I would like to take this opportunity to express my hope that you will be lenient in the sentencing of Blake Esherick.

I have known Blake since we attended Springbrook High School in Silver Spring, MD together in the early 1980s. Blake was two class years above me, however, my class (1982) and his were close.

Blake and I crossed paths again in the early 1990s when working on an office leasing transaction in Rockville. He was with Douglas Development and I with my new firm, AMR Commercial, LLC, representing a start-up mortgage company who needed 2,000 square feet. Blake was willing to work with us when others would not even return my phone calls.

Since then I have worked on numerous successful leasing transactions with Blake. Furthermore, I encourage my agents to bring business to Blake since I have found his character to be highly ethical and very professional. Blake and Douglas Development have a reputation for being fair, savvy dealmakers with a willingness to take risks with tenants and properties that most other developers will not. Blake and Douglas filled the void that led to the recovery of several blighted D.C. neighborhoods.

Blake's success came from a commitment to good business practices and friendships that last after the deals are done. A harsh sentence for Blake will leave our business community without one of its brightest, most ethical and hardworking good guys.

Thank you for your time and consideration.

Respectfully,

AMR Commercial, LLC

William K. Montrose
Principal

7900 Wisconsin Avenue, Suite 202
Bethesda, Maryland 20814-3601
TEL (301) 961-9696 ♦ FAX (301) 656-7551
www.amrcommercial.com

February 5, 2007

The Honorable Ricardo M. Urbina
United States District Court for the
District of Columbia
333 Constitution Avenue, NW
Washington, D.C. 20001

Dear Honorable Ricardo M. Urbina,

I have worked with Blake Esherick for the past six years at Douglas Development Corporation and am aware of the charges brought against him. I am writing this letter with hopes of leniency.

Over the past years working with Blake I have seen first hand what a dedicated person he is to his family, his work and his friends. I know for me personally he has always kept an open door for me to come in and discuss any problems or questions that I might have. He is always willing to help employees with any situation that may arise or to contribute to fund raisers that the children of employees may have. He is always pleasant and treats everyone with respect. I have seen him with his children on several occasions and know that he is a loving father who actively participates in their everyday lives.

I know this is a difficult time for him but he continues to show and maintain his professionalism and always has a smile for who ever he greets.

Sincerely,

Darlene Brown
Darlene Brown

Darrell W. Clark
Yves-Marie R. Clark
3728 Jocelyn Street, NW
Washington, DC 20015

February 6, 2007

Hon. Ricardo M. Urbina
United States District Judge
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Re:    **Letter of Support for Blake Esherick**

Dear Judge Urbina:

We are writing to advise you of our support for Blake Esherick and to offer our thoughts concerning his upcoming sentencing. Unlike other letters you might receive concerning Blake, we have no family, business or long-standing social relationship with Blake or his family. Instead we know Blake for one reason: he is the father of Grayson ("Gracie") Esherick and of two older children, Douglas and Taylor Esherick.

Our oldest daughter attends school with Gracie. We met Blake at a preschool parents' night several years ago. Since that time we have interacted with Blake at school functions, father/daughter school events, parent pot luck suppers, birthday parties, and play dates. Blake is an active and enthusiastic participant in Gracie's education and social life. We have seen him at teacher meetings, participating in parent/child art projects, cheering Gracie along at the school Christmas pageant, and drying the occasional tear. We know that Blake's non-work hours are often filled with parenting activities for all of his children.

We have come to know Blake as a genuinely nice person. He is a loving, supportive and kind father and a doting husband. He is a generous person, and he is a humble person.

We understand that in considering a criminal sentence you have a number of factors to evaluate. One fact that we want you to reflect upon is that Gracie (as well as Douglas and Taylor) will suffer from any incarceration imposed on their Dad. Gracie, in particular, is our concern. She is four years old. She is at an age where she needs her two parents more than ever. Gracie has never signed a tax return, and she is certainly not part of Blake's criminal case. Yet it is Gracie who will suffer the most if her father is incarcerated.

Blake is a good father. He is involved in the lives of his children and serves as a positive influence in their lives. Please finds a means to bring about a resolution to Blake's sentencing that does not result in punishing his children.

Thank you very much for your consideration of this letter.

Very truly yours,

Darrell W. Clark

Yves-Marie R. Clark

February 6, 2007

The Honorable Ricardo M. Urbina
United States District Court
For the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Dear Judge Urbina:

I am writing to you on behalf of Blake Esherick, a close friend of mine for over 20 years, who was convicted of wire fraud and tax evasion this past October. Although I do not know the details of the conviction, I do know Blake very well and would like to give you some personal insight into the character of my good friend of 20 years.

Blake and I met in 1985 at Price Waterhouse in Washington, D.C. We were both staff accountants at the time and worked on several Price Waterhouse clients together. Blake was very bright and enthusiastic on the job, a pleasure to work with. He was also a team player who helped others in whatever capacity was needed to complete the job. Blake and I left Price Waterhouse after a few years; I became a Financial Consultant with Merrill Lynch and Blake started a career in real estate. Blake and I have referred business to each other over the last 15 years and every referral has enjoyed Blake's professionalism and integrity.

Blake and I became parents around the same time and our friendship was bound in the most personal way. We are raising our kids with the same parental principals: work hard, play hard, be respectful of others and love your family. I am proud to say that Blake's kids reflect these principals and have grown to be outstanding youths. I know Blake places no greater responsibility on himself than the upbringing of his children. In the last 5 years, most of our social time together is with our children, which is the best way to see the love and care Blake has for his family.

I appreciate your time and consideration regarding my friend, Blake Esherick. As noted, I am unfamiliar with all the details of his trial and conviction, but I am very familiar with the character of Blake and I am proud to call him my good friend yesterday, today and all the tomorrows that follow.

Very truly yours,

Kevin Connelly

February 5, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Dear Honorable Judge Ricardo Urbina:

I am writing to you in support of Blake Esherick. I have known Blake
professionally and personally for almost nine years. As a former assistant to
Blake at Douglas Development Corp., I am well aware of his values and his
commitment to his family and friends. Over the years, Blake has been very
supportive of me in times of hardship and in times of joy. We have spent a great
deal of time together and Blake is a true friend, outstanding father and wonderful
to his coworkers.

Blake has played an integral role in Douglas Development with the revitalization
of Washington, DC. With his skills, the company relied on him to execute
transactions, manage personnel and help run the business overall, which in turn,
made for a better city.

In the past, I have babysat for Blake's children and gone on outings with Blake
and the children, and I must say, he is a spectacular father. Blake has always
made himself available to them whenever they have needed him. It is imperative
that Blake remains available to these three beautiful children.

I have prepared this letter to help you understand the impact Blake has on his
surroundings and I hope I have accomplished that in some capacity. I am aware
of the conviction that has come about from the proceedings; Blake is a very fair,
understanding and compassionate person. I do hope the same values are used
in determining his sentencing.

Please feel free to contact me with any questions. Thank you for your time.

Sincerely,

Sabra J. Quinn

February 4, 2007


The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.,
Washington, D. C. 20001

Dear Judge Urbina,


I am writing this letter to you in connection with the recent conviction of Blake Esherick. I have known Blake for over 10 years and know him as an honest and giving individual. I met Blake when he was getting started in the real estate business. Blake has always treated the people he has come in contact with respect and fairness. Blake has also looked for ways to reach out to the community and help others less fortunate then himself. At Douglas Development he with others helped shaped the cities new vitality and luster and along the way has given not only money but inspiration and support to causes that help others reach their goals. A few examples of those efforts are the rebuilding of a Synagogue on 6th Street or giving time to the Salvation Army during the holidays. The list of individuals and groups he has helped is long and broad. His foundation is set in the belief that the greatest gift of all is in giving people hope. In closing, the District is a better place because of Blake. I only hope is that he is given a chance to remain in the community with his wife and children to continue to make it a better place to live and work. Thank you for taking the time to listen to my thoughts.


Sincerely,

William M. Collins
2001 Pennsylvania Ave, NW
Washington, DC  20006

# TSC
Real Estate Services

The Honorable Ricardo M. Urbania
United States District Court for the District of Columbia
333 Constitution Ave., NW
Washington, DC 20001

February 1, 2007

Re:  Blake Esherick

Dear Honorable Ricardo M. Urbania,

I have known Blake in a personal and business capacity for the past 7 years.  As a friend he has always been a phone call away if I needed to discuss whatever issue I have personally. He would always be upfront and realistic about what I needed to do.  His guidance has always been something I could rely on whenever I picked up the phone or stopped by his office no matter how busy he was.  His honesty and integrity is always something I admired in the cut throat world of commercial real estate.  Over the years as Principal of TSC Realty Services, LLC.  I have worked with Blake on many confidential high level transactions and he has always proved to me that he is a man of his word.  In the real estate business this is somewhat of an anomaly.

I respect Blake as a friend and a business colleague and will continue a great friendship and working relationship.

Cordially,

Victor M. D'Ambrosia
Principal
TSC Realty Services, LLC.

4733 BETHESDA AVENUE, SUITE 520, BETHESDA, MD 20814 TEL. 301-657-6216  FAX 301 657 6226 WWW.TSCREALTY.COM
10015 OLD COLUMBIA ROAD, SUITE B215, COLUMBIA, MD 21046 TEL. 410-312-5455  FAX 443-583-2359

• Investment Sales   • Land Sales   • Landlord Representation • Development Consulting   • Tenant Representation   • Corporate Advisory

January 30, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, N. W.
Washington, DC  20001

Dear Judge Urbina,

This letter is in reference to my long time friend Mr. Blake Esherick.  I am aware that Blake has been convicted of a crime by the District of Columbia court of law as I followed the court proceedings very closely.  I want this letter to be a true representation of Blake's character and person, as we have known each other now for 38 years.

Blake Esherick in my opinion is a quality person of the highest standard.  I can honestly say that in my lifetime I have not had a better friend.  Define friendship and all that it encompasses and you define a big part of who Blake is.  His sincere concern of other people and their happiness makes him truly a person anyone would want to call a friend.  His loyalty and work ethic puts him in a very special category and one that deserves to be recognized.  Though everyone makes mistakes, I am here to vouch for Blake's true character, his core, of someone who is honest, trustworthy and dependable, compassionate and caring.   All one has to do is look at his devotion to his family, the love he shows them goes far and beyond the standards that we need for our children to have a safe and secure environment to be raised.  He loves his children and loves being a father to them. No one can dispute that along with the fact that they need him in their lives.

Blake's dedication to helping other people was very evident when we worked together at Marymount University.  As my assistant basketball coach, he loved being in the gym, helping develop a team atmosphere and being apart of the student/athletes lives.  He was always working with them extra on developing their game and helping them in other areas of their lives outside of athletics.  He truly developed a sincere bond with each member of the team and was very committed to what we were trying to achieve.  He did all this as a volunteer assistant.

Blake loves his job, loves his career, his Company, the District of Columbia and all that goes into helping develop the area. It is more than just a job to him it is his passion. In all the year's I have known Blake, not once has he ever spoke about his job in terms of how much money can be made. Rather, it is always in reference to the difference they can make to the growth and development of the city. Be it a low income, underdeveloped area that desperately needs change, or an already developed area that with their work can revitalize and bring life and people to that area. It really doesn't matter what the case is, Blake loves to see these things through and the effect it can have on the community and the peoples' lives that it will effect.

Life for Blake has not been all that easy. I was with him through the death of his father and actually lived with him as he went through a very tough divorce. Blake loved his Dad and his family. Losing both was tough and Blake dealt with that mostly by himself. As usual he was more concerned about other people  and there feelings, most importantly his children. I know he kept a lot of his feelings to himself, but through it all was always there for me.

I am fortunate to have a friend in Blake, and all the qualities that he brings to a friendship. Bake and I have worked together, lived together, gone to school together, and raised our children together and most importantly grown as men together. I can honestly say that Blake Esherick is a good man, father, friend, employee and solid citizen who genuinely cares about other people and the community he lives in. His future is bright, his children are lucky to have him and so is anyone fortunate enough to have had or will have him as a FRIEND!

Sincerely,

Chuck Driesell



# OURISMAN AUTOMOTIVE

Ourisman's Rockmont Chevrolet • 15301 Frederick Road, Rockville, Maryland 20855 / (301) 424-5900
Ourisman's Wheaton Plaza Chevrolet • 11180 Veirs Mill Road, Wheaton, Maryland 20902 / (301) 946-0001
Ourisman Ford Montgomery Mall • 10401 Motor City Drive, Bethesda, Maryland 20817 / (301) 469-8800
Ourisman's Warsaw CPJ, Inc. • 12430 Auto Drive, Clarksville, Maryland 21029 / (301) 596-9990

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001


I am writing this letter on behalf of my friend Blake Esherick as a character reference.

I met Blake 4 years ago through my wife who has been friends with Stephanie Esherick

for about 15 years. I am aware of the conviction against him and would like to say that

Blake is one of the finest people I have ever met. Whether it be spending Christmas day

with his wife and three kids helping prepare food for the homeless in the District or

lending a helping hand moving some furniture, Blake truly is a good person. I think

his genuine love of his family, friends and community should strongly be considered

when his sentence is handed down. We have done business together in the past, but first

and foremost we are good friends.

Thank you in advance for your consideration during sentencing that Blake is a wonderful

Husband, father, pillar in his community and most of all a friend.


Thank You ,



James L. Elliott, Jr.

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

My name is Stefanie Esherick, my husband is Blake Esherick. I am writing this letter on his behalf for your consideration at his sentencing on March 15, 2007. I am not quite certain how to put my feelings and thoughts onto paper in a way that would make sense to anyone, and I have been working on this letter for some time now. I begin to cry thinking about the uncertainty of our future.

I met Blake in 1999. He was working for Douglas Development and living in Bethesda with his co-worker. Once we began dating, I learned on a deeper level what a wonderful man he is. One night, we were walking to dinner and passed a homeless man that others ignored. As we were finishing our meal, Blake ordered the man a prime rib dinner and delivered it to the homeless man. He told me that the man "deserved to eat as well as I do." He still often gives food to homeless men and women. When his oldest daughter's school needed help transporting students, most parents did not offer to help. Blake rented a bus to provide the transportation for the school. When it snows, he shovels some of the older neighbors' sidewalks. He has donated both his time and his money to various charities. He patronizes merchants and restaurants in the city that he shared a vision and was instrumental in helping to revitalize, and make it the great city it is today.

Blake is also an exceptional father. He works as hard and long as he does for his family and still cooks us all breakfast every weekend. He has heart-to-heart talks with his thirteen year old daughter about the trials and tribulations of adolescence. He volunteered to coach his son's football team and takes his 4 year old daughter to gymnastics every Saturday morning. Blake makes the time to foster an independent relationship with each child, doing various things whether it is playing one-on-one in basketball, or "date night" (taking one of the girls to dinner). His shares a tremendous bond with his children and I would hate for him to be absent from their lives for even a day.

Blake is my life. He is my best friend. He is the one who knows all my secrets. He has seen me at my worst and makes me want to be a better person. He makes me want to get up in the morning and do it all over again tomorrow.

Of course, I am aware of the conviction that my husband is facing. I survived an FBI raid on my home, including being searched by agents and having everything we own handled by strangers. I attended the nearly eight-week trial daily. Blake recognizes that he has made some mistakes with regard to his mortgage deductions and I know he has learned from those mistakes. He realizes that the way he handled his tax situation put his family in jeopardy and the trial was an experience that will forever influence his future decisions. It was difficult for all involved, but being a husband and a father trying to protect his family while trying to defend himself was extremely hard on Blake. I ask that you consider everyone involved when sentencing my husband.

Sincerely,

Stefanie Esherick

February 1st, 2007

The Honorable Ricardo M Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Re: Blake C. Esherick

Dear Honorable Judge Urbina:

I am an employee of Douglas Development Corporation and personal assistant to Blake
Esherick for three (3) years. I am aware of the charges brought against Mr. Esherick and
hope that there may be lenience towards him.  While working for Blake he has taught me
so much about the Leasing portion of Real Estate.  He is patient and always willing to
teach me the ropes.

For the three years I have worked for Blake I have not only developed a professional
relationship but a friendship with him and his family as well.  He is generous and
thoughtful and very much a family man.  He is completely dedicated to his work and
takes pride in what he does; in no means would he betray anyone.  Here at Douglas
Development we are all part of a team (like one big family).

On several occasions he has participated in my daughter's fund raising events throughout
the year, giving much more then expected.  No matter if it be Personal Assistant Day,
Birthday or Christmas Blake always presents me with a card and present to indicate how
appreciative he is of me.  This has been a rough time for Blake however he seems to
maintain his upbeat attitude.

Blake is truly a giving and hard working family man please accept this letter as a heartfelt
plea of leniency.

Respectfully Yours,

Jolie Figueroa



January 30, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

**RE: Blake Esherick**

Your Honor:

I know that you will soon pass sentence on Blake Esherick. I would like to take this
opportunity to state that I have known Blake for over 10 years in a business and social
capacity.

Blake is highly respected in the brokerage community. I know him to be a very ethical
individual that has dealt with me and my clients in a fair, open and professional manner.

We have socialized on occasion and I know him to be a very caring person. I have a
business partner who is dying of cancer and Blake *always* makes asking about his welfare
a priority at our meetings.

The charges held against Blake are out of his character; however, people do make
mistakes in life. In my opinion, in Blake's case, anything other than an extremely lenient
penalty would not serve the good of the community.

Thank you for your support.

Sincerely,

Earl Goodman
Principal



DIVARIS REAL ESTATE, INC.
www.divaris.com



Washington, D.C. • 11300 Rockville Pike, Suite 704 • Rockville, MD 20852 • 301-231-4877 • FAX: 301-231-5854
Headquarters • One Columbus Center, Suite 700 • Virginia Beach, VA 23462-6760 • 757-497-2113 • FAX: 757-497-1338 • washdc@divaris.com
Offices in: Chesapeake, Newport News, Richmond, VA; Charlotte, NC; Atlanta, GA; Johannesburg, Cape Town, South Africa



*Office Movers, Inc. • Office Archives, LLC • Office Installers, Inc. • Kane 3PL, LLC*

January 30, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Dear Judge Urbina:

I am writing to you on behalf of Blake Esherick. Please consider my reference letter when you are determining his sentence.

Blake Esherick and his development company have been vital to the growth of the Washington, D.C. area. Although, the court has ruled that Blake used poor judgment in some of his business dealings, I believe he had the interest of the community at heart. While Blake was not as visionary as his partner, Douglas Jemal, he was very vital in the redevelopment of the Chinatown section of the District. This has not only led to growth in Washington, D. C., but to jobs as well.

As a member of the business community I have known Blake for eight years. I am aware of his conviction, but I ask that you take into consideration Blake's commitment to his family and his community when you make your ruling. Blake is a very hands-on partner. It is very vital that he be available to run the day-to-day operation of Douglas Development. If this company were to fail because of his absence, the ripple effect would be great. It would not only impact the families of the persons who work directly for the company, but all the trades people who depend on his organization for their livelihood. Judge Urbina, I would ask that you take this into consideration.

Thank you for your attention to this matter.

Sincerely,

John M. Kane
President and CEO

JMK:jrf



MARINERS' CHURCH

January 31, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW, Washington, DC 20001

Your Honor,

My association with Blake Esherick began in the parking lot of the Bay 50 shopping
center located in Annapolis Maryland, May of 2001. Mariners' Church had been holding
church services at Broadneck High School, and we were in the process of finding a
permanent place for our worship center. During that meeting we were able to tell Blake
of our church's mission. We understood often times churches do not make the best
tenants. Blake was interested in our church, its mission and where we wanted to go.
That day began a business relationship that has blessed our church, and turned into a
true friendship.

We have expanded our physical space in the shopping center five times. With each and
every transaction, Blake was willing and surely able to assist our church. During
Mariners' largest expansion, Blake repeatedly was willing to share his expertise with us,
saving countless hours, and significant monetary errors. This is the time I "got to know"
Blake in a personal way. There was never a time he was unwilling to meet, and
everything Blake told us he would do, he did. He was a model of integrity. It was such a
blessing to our church to have Blake to deal with.

In my forty years of business experience, both in and out of the church, the way we have
been treated by Blake stands out as the best of relationships. I have found Blake to be a
generous, honorable man. I count it a blessing to have him as a friend. While mistakes
are made, and lessons learned, I believe it to be in Mariners' Church best interest for
Blake to remain an active member of our society; he has a lot to give. He is a good man,
and I am proud to have him as a friend.

Count it all Joy!

Robert J. Knight
Executive Pastor
Mariners' Church

159 2 Whitehall Road, Annapolis, MD 21409 phone: 410.757.6064 fax: 410.757.6065 e-mail: info@marinerschurch.com web: www.marinerschurch.com

LAW OFFICES

## GROSSBERG, YOCHELSON, FOX & BEYDA, LLP

2000 L STREET, NW

SUITE 675

WASHINGTON, D.C. 20036-4907

January 30, 2007

C. RICHARD BEYDA
LAWRENCE A. MILLER
GERALD P. GROSSBERG
STEVEN G. FRIEDMAN
RICHARD F. LEVIN
LINTON W. HENGERER
BRETT D. ORLOVE
MICHAEL D. RAVITCH
GAL N. KAUFMAN
BARBARA L. PORTMAN
EVAN D. HARMS

TELEPHONE
202 296-9696

FACSIMILE
202 296-7777

WEBSITE
www.gyfb.com

SOLOMON GROSSBERG (1905-1994)
IRVING B. YOCHELSON (1906-1983)

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C, 20001

Re:        Blake Esherick

Dear Judge Urbina:

I am aware that you are presently considering the sentencing of Blake Esherick with regard to the two tax evasion and single fraud counts for which he was convicted. Having dealt with Blake on practically a daily basis for over six years, I wanted to write personally to advise you of my thoughts regarding Blake and request that you consider in your decision his devotion to his family and friends, his strong work ethic and his great interest in both civic and charitable institutions, including specifically the Battered Women and Children group. Moreover, I also want you to consider his honest and forthright character that I have found consistently throughout my dealings with him.

Blake's love for his children, and desire to remain a part of their lives notwithstanding his separation from their mother, was of utmost import to him. Having dealt with Blake I do not believe that he ever intended to willfully defraud any party or evade any tax. In all of my dealings with Blake, he has and remains a man of his word.

Please consider these factors in your sentencing decision. I will be pleased to offer additional information regarding Blake's many accomplishments if requested.

Sincerely,

Richard F. Levin

RFL/sp



MARINERS' CHURCH

1 February 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Your Honor,

I am writing this letter on behalf of Blake Esherick. I am aware of the verdict in his court case. I write to give you a glimpse of his character from my perspective as a friend for now almost six years. I am the Senior Pastor of Mariners' Church in Annapolis, Maryland. We are a church that is now a little over nine years old. After our third year we were growing quickly and needed a place to become our permanent home. We had almost run out of hope of finding a place in Annapolis until we met Blake Esherick. I met Blake with some other church leaders at the Bay 50 shopping center and felt an immediate kinship with him. I sensed immediately that for Blake this meeting was not just about a business deal. When he found out that we were a church and our mission was to help people for time and eternity, he wanted to help. It became apparent that day, and on many others since that, Blake Esherick cares about people. He has cared about me, about us and about people who help others.

Blake opened up for us on that first day the opportunity to house Mariners' Church at the Bay 50 Shopping Center in Annapolis. He has consistently been an encourager and a support to us, helping us again and again to make the dream of Mariners' Church a reality. He allowed us to get into a small part of the shopping center initially and then opened up more space as we grew. In 2003 when we had a vision to expand our worship space to seat 800 people, Blake helped us work on a plan to make that a reality. The plan involved yielding more space to us at a bargain rate when he probably could have gotten much more for it. He also helped by lending the services of his company's architect and various helpful considerations along the way.

I have found Blake to be a man who values people, family, and relationships. I have found him to be a man of honor. He has always kept his word to us. He is a man who loves family. He is a man of compassion and concern for other people. One of the greatest marks of a man is humility, a willingness to admit when mistakes have been made. Blake Esherick is such a man. I am convinced that he has learned from his mistakes. It is my opinion that it would be in the best interests of society for Blake to remain active in his role as a husband, a father, a friend and a business leader.

Very Respectfully,

William L. McKinney
Senior Pastor
Mariners' Church

1592 Whitehall Road, Annapolis, MD 21409 *phone:* 410.757.6064 *fax:* 410.757.6065 *e-mail:* info@marinerschurch.com *web:* www.marinerschurch.com



February 1, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

Dear Judge Urbina,

I write to ask then when considering the charges against Blake Esherick, that you take into account the very positive relations he has had with us our non-profit organization over the past 7 years.

Blake is the person we have worked with at Douglas Development since we moved to our offices at 1328 Florida Avenue. From the time we first looked at the space until now he has responded to all of our questions and concerns and tried to provide the best lease possible for us given our limited finances. At the end of our first lease we had considered moving and he spent time showing us other properties and even working with an architect to come up with space designs. When we decided to stay here, he worked with us to make a number of improvements to this location.

In all of our dealings with him he has been prompt and made every attempt to help us achieve what is best for our organization. He seems genuinely considered about addressing our needs as tenants in this building.

Please do not hesitate to contact me if you would like any further information or to discuss any items from this letter.

Sincerely,

Deborah Menkart
Executive Director

www.teachingforchange.org
PO Box 73038
Washington, DC 20056
800-763-9131  202-588-7205

# The Booker T. Washington Public Charter School For Technical Arts

February 1, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
323 Constitution Avenue, NW
 Washington, DC 20001

Dear Judge Urbina:

For almost ten years, I have known Blake Esherick, Senior Leasing Agent, with the Douglas Development Corporation.

Specifically, Blake was my leasing agent for property at 1346 Florida Avenue, NW occupied by the Booker T. Washington Public Charter School.

This business relationship has grown over these years. He has demonstrated a love for my school and the students and is always available to provide assistance as requested on real estate and business matters.

Blake is the father of three children and like other members of his nuclear family, has demonstrated a keen interest in the lives and well being of youth in the District of Columbia.

Blake is promising, young, energetic and a family man. These energies have been devoted to the expansion, meteoric rise, and contributions of the Douglas Development Company to the City of Washington.

Sincerely,

Edward Pinkard
Founder and Executive Director
Booker T. Washington Public Charter School



1346 Florida Avenue NW
Washington, DC  20009

Tel:  202-232-6090
Fax: 202-232-6282

# Tobin
# O'Connor
# Ewing &
# Richard

Attorneys at Law
*A Partnership of Professional Corporations*

*Practicality in Practice*

David C. Tobin
Direct Dial (202) 362-5903
dctobin@tobinoconnor.com

January 24, 2007

Mr. Paul F. Kemp
One Church Street
Fifth Floor
Rockville, MD  20850

**RE:**     <u>United States v. Blake C. Esherick, Docket No. CR-05-359-03</u>

Dear Mr. Kemp:

This firm previously represented Blake C. Esherick in connection with the above-referenced matter.

As you may be aware, during the course of that representation, and in connection therewith, I advised Mr. Esherick to file amended tax returns, Form 502X's, for a number of years that were the subject of the government's investigation.  Based on my advice, Mr. Esherick did so.

At the time those returns were filed, we included a notice with each return that identified the subject area of the amendments, so that the government would have full disclosure of the nature of the amendments.  This was done in an effort to address any civil claims that might have arisen against Mr. Esherick, regardless of the merits of those claims.  The filing of these amended returns was a good faith effort to resolve any tax-related issues with the government, and was not intended to be an admission of civil tax deficiency or guilt on criminal tax-evasion charges.

If my memory serves me correctly, no indictment had been returned at the time the amended returns were filed.  Indeed, on or about August 15, 2005, I sent a letter to Ms. Rosemary E. Paguni, Esq., Chief of the Northern Division Criminal Enforcement Section, Tax Division, U.S. Department of Justice, requesting a conference with that office <u>before</u> any decision to bring any tax charges against Mr. Esherick was reached.  By letter dated August 18, 2005, the Tax Division denied my request, and referred me back to the United States Attorney for the District of Columbia.  I will be happy to provide you with copies of these letters if you wish.

5335 Wisconsin Avenue, NW     Phone  202-362-5900
Suite 700                              Fax  202-362-5901
Washington, DC 20015              www.tobinoconnor.com

Mr. Paul F. Kemp
January 24, 2007
Page 2


        Needless to say, in light of the Tax Division's refusal to confer, I never had the
opportunity to discuss the merits <u>vel non</u> of any particular item on Mr. Esherick's returns.
Nor for that matter do I recall ever discussing the factual or legal merits of any item on
Mr. Esherick's returns during informal discussions with Mr. Dubester, the Assistant
United States Attorney who was the lead prosecutor on the case.

        Please let me know if I can be of any further assistance.

                                        Sincerely,

                                        David C. Tobin

5335 Wisconsin Avenue, NW          Phone  202-362-5900
Suite 700                          Fax  202-362-5901
Washington, DC 20015               www.tobinoconnor.com

February 6, 2007

To: The Honorable Ricardo M. Urbina
    United States District Court for the District of Columbia
    333 Constitution Ave., N.W.
    Washington, DC 20001

From: Heather Waters
    16205 Brookmead Ct.
    Upper Marlboro, MD 20772

Dear Judge Urbina,

My name is Heather Waters and I am writing this letter on behalf of my brother-in-law, Blake Esherick. During Blake's 8 week long trial, I drove from my house in Upper Marlboro, MD to his house in the District every morning to take care of my four year old niece. This was especially hard on my family. My husband is a police officer and I have four children. Regardless of how difficult it was for all of us, it was something that my family didn't mind my doing. The reason is because we all knew that if the situation were reversed, that Blake would do the same thing for us because that is the type of person that he is.

I have known Blake since the summer of 2000. After our first meeting, I felt like I had known him for years. He is a warm, caring person and makes anyone he meets feel welcomed. My children instantly fell in love with him, and he welcomed them with open arms. Although it wasn't "official", he was known from there on out as Uncle Blake, and didn't mind a bit. It made my children smile and feel at ease, and as long as they were happy, that was fine with him.

Blake is someone very rare that you come across in life. He prides himself on the joy of helping others and making sure that everyone around him is happy. He will open up his home and his heart up to you whether you are a friend, family member or someone he meets on the street. He does things for people because he wants to, without expecting or wanting anything in return. He invited my children and I along on a family vacation to the beach simply because he knew they had never been and he wanted them to know what the beach was like. He gives everyone around him a sense of belonging. He doesn't judge people on what they have or don't have. He believes that everyone is equal, no matter who you are or where you come from. He donates to the homeless year

round and has been known to gather up blankets to take to a homeless man that he passes on a daily basis. In the blink of an eye, he can go from making my two teenagers realize that being brothers is more important than the video game they are fighting over to jumping around on the floor with his dog so that his four year old daughter and nephew start giggling and laughing and forget that they had just bumped heads moments earlier.

Blake Esherick is the kindest, warmest, most giving person I know. He puts everyone's thoughts and feeling before his own and is completely fair in every decision that he makes. I hope that you will take all of this into consideration when sentencing my brother-in-law, and are as fair to him as he is to others.

Sincerely,

Heather Waters



10212 Southard Drive
Beltsville, Maryland 20705
Tel: 301.937.0030, Fax: 301.937.3676

February 1, 2007

The Honorable Ricardo M Urbina
United States District Court for
The District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20005

Re: Blake Esherick

Dear Judge Urbina:

Soon you will be deciding the final outcome of the future of Blake Esherick as his trial and sentencing comes to a close. It is my hope, and that of my family and associates, that you take into consideration Blake's many virtues and true character.

In the mid 1960's I first met Blake's family through our community church, Saint John the Baptist Catholic Church in Silver Spring, Maryland. Throughout the next fifteen years I became best friends with Blake's older brother Doug, who subsequently died an unexpected death in 1983. Because of this relationship with his brother, I was able to watch a young Blake develop through his formidable years. He became a very good athlete in junior high, high school, and then college. As the youngest of five children, it was rewarding to watch him become successful in his athletics, his studies and then in his professional career, especially after losing both his brother and father in such a short period of time.

I have also witnessed Blake's growth as family man. While his first marriage ended in divorce, I was able to observe him in what was, for a long time, a successful marriage. He became a devoted father and husband. In his second marriage to Stephanie, and in the subsequent birth of his third child, Blake has again been a good family man while maintaining the responsibilities to his older children. His children are at the center of his attention at all times and I have seen first hand how he instills good values and a work ethic in them. In addition, Blake still maintains a healthy relationship with his elderly mother and takes the time to visit her frequently in Florida. She is a dear woman and I know that past year has been very troubling to her.

Honorable Judge Urbina

Page 2

In his work with Douglas Development, Blake has proven to be a hard working associate who has put in the long hours that are required to help build and maintain a diverse property portfolio that has been their hallmark. There are many times when I have called him well into the night to find him still working on projects that require his attention and expertise. I would be very happy to find just one person with his work ethic to work in my business.

In closing, I would ask that you find leniency and an understanding of Blake's true character prior to making the decision on his sentencing. He is truly a good father, husband, and businessman who I know will come out of this situation a better person for having been through it.

Sincerely,

Kurt L. Zanelotti
President
Contract Carpet Systems, Inc.