**VENABLE**LLP   575 7th Street, NW   Telephone 202-344-4000   www.venable.com
Washington, DC 20004-1601   Facsimile 202-344-8300

Paul F. Kemp   301.217.5664   pfkemp@venable.com

January 24, 2007

**FILED**

MAR 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Renee L. Moses-Gregory
United States Probation Officer
United States Courthouse
333 Constitution Avenue, N.W.
Washington, D.C. 20001-2866

RE: United States v. Blake C. Esherick
Criminal No. 05-359-03

Dear Ms. Moses-Gregory:

Thank you for your draft of the Presentence Investigation Report prepared in the above-referenced case. I appreciate your taking the time to meet with us and with Mr. Esherick in the preparation of this report. I write to offer corrections of certain inaccuracies that appear in your draft Report and to note objections to certain portions thereof.

Description of the Offense Conduct – Wire Fraud

Paragraphs 7 through 18 purport to describe generally the facts underlying the conviction for Wire Fraud. It should be noted that, while Mr. Esherick was an employee of Douglas Development Corporation, the financial transaction underlying Count 4 concerned primarily Cayre Jemal Gateway Holdings (CJG). Your report notes in Paragraph 12, "At the time of the loan [November 2002] substantial portions of the building were vacant [77 P Street]." That statement is incorrect. At the relevant time, nearly 75% of 77 P Street had been leased and the balance was leased shortly thereafter, making it virtually fully occupied. No testimony at trial suggested that, at the time of the loan, substantial portions of the building were vacant.

Mr. Esherick is personally unaware of the actual distribution of funds resulting from the loan, as he was not involved in the negotiations of the terms of the loan or the negotiations between Mr. Jemal and Mr. Cayre. The trial was replete with testimony, however, that Mr. Jemal and Douglas Development Corporation were entitled to the $430,000.00 in question. This testimony was not rebutted by the government. Mr. Black, on behalf of Morgan Stanley, testified to this point. We respectfully suggest that the Presentence Investigation Report should at least reference this fact, as it directly affects the amount of "intended loss under 2B1.1, Application Note 2(A)." Mr. Cayre and Mr. Black both assured the jury that they had closely reviewed all of the circumstances leading up to the deduction of the $430,000.00, were

# VENABLE<sub>LLP</sub>

Renee L. Moses-Gregory
January 24, 2007
Page 2

fully satisfied that Douglas Development Corporation ultimately would have been entitled to that money upon the eventual payout of the Tenant Improvement Reserve, and that in their view, no loss occurred. The entire transaction, according to the trial testimony, was traceable in the books of Douglas Development Corporation or its related limited liability corporations, and there simply is no basis for the conclusion that Mr. Jemal "intended" any financial loss whatsoever to Mr. Cayre, let alone to Morgan Stanley. Of course Mr. Esherick was not privy to the financial circumstances of this loan transaction and could not have intended anything with respect to the disposition of this sum of $430,000.00.

Description of the Offense Conduct – Tax Evasion

We respectfully note that your description of the offense conduct in Paragraphs 19 through 23, related to tax evasion, is improper given the United States Supreme Court's decision on Monday in *Cunningham v. California*, 549 U.S. __ (2007).

First, you state that the criminal conduct for which Mr. Esherick was convicted lasted from January 1, 2001 through March 23, 2003. This statement is incorrect. The jury acquitted Mr. Esherick of Count 7 (Tax Evasion for 2003), which necessarily includes the period of January 1, 2003 through March 23, 2003.

Second, as we set forth in our letters to you dated December 26, 2006, and January 11, 2007, the jury's acquittal of Mr. Jemal on Counts 5 and 6; the acquittal of Mr. Esherick on Count 7, the year in which he did not take tax deductions for mortgage interest payments and real property tax payments; and the comments by at least eight juror after the verdict that the only basis for which they convicted Mr. Esherick in Counts 5 and 6 were the improperly claimed deductions for mortgage interest and real property taxes, indicate that the jury only convicted Mr. Esherick in Counts 5 and 6 (Tax Evasion for 2001 and 2002) for that conduct which Mr. Esherick admitted, through counsel, he was guilty of – namely, taking false tax deductions for mortgage interest payments and real property tax payments for 2001 and 2002.

As the Supreme Court reiterated in *Cunningham*, a defendant's sentence can only be based on conduct determined by a jury beyond a reasonable doubt. As such, Mr. Esherick's sentence cannot be based on any conduct that occurred in 2003, as the jury acquitted him of that conduct. Further, Mr. Esherick's sentence cannot be based on any of the disguised income categories outlined in Paragraphs 20, 22 and 23 of your report, as no jury has found beyond a reasonable doubt that Mr. Esherick received such income.

# VENABLE LLP

Renee L. Moses-Gregory
January 24, 2007
Page 3

      I also note that which we previously have mentioned: the Government admits in a pleading filed in Mr. Brownell's case (Criminal No. 06-077-01) that it is questionable whether the sums attributed to "disguised income" in Paragraphs 20, 22, and 23 of your report couldn't be considered income, noting that "as far as Douglas Development Corporation was concerned, Esherick owed DDC the amounts of the loan."

      In sum, only the tax loss that the jury determined occurred beyond a reasonable doubt – the false deductions for mortgage interest and real estate tax in 2001 (Count 5) and 2002 (Count 6) – can be considered in calculating Mr. Esherick's sentence. The inclusion of any other sums in the calculation of tax loss under 2T4.1 would violate the explicit holding of *Cunningham v. California*.

<u>Paragraph 86</u>

      You note in Paragraph 86 as follows:

> The Defendant's income tax returns (original filed and amended) were the subject of the instant offense.

In fact, the amended returns were never introduced during the trial. As such, the amended returns were not the subject of any determinations of the jury, much less determinations beyond a reasonable doubt as to Counts 5 and 6.

<u>Paragraph 109</u>

      I appreciate your noting in Paragraph 109 that the Court may determine, under 18 U.S.C. § 3553(a) that the nature and circumstances of these offenses are such that there was no intended loss in the wire fraud. As you correctly point out, that would reduce the Sentencing Guideline under that offense to a Level 6. If the court were to compute the tax losses that we have suggested and which we believe are required by *Cunningham*, then under 2T4.1(d) and 2T1.1, the tax due and owing would be more than $12,500.00, but less than $30,000.00, computing at an offense Level 12, for the two years of conviction. We continue to assert, based on the transcript references suggested to you in our previous communications, that Mr. Esherick fully accepted responsibility in front of the jury for the improper tax deductions (mortgage interest and real property taxes). The case law we cited allows for a determination of Acceptance of Responsibility under 3E1.1. Further, Application Note 123E.1.1 to the Guidelines states:

# VENABLE LLP

Renee L. Moses-Gregory
January 24, 2007
Page 4

> Note that a Defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under Subsection (a). A Defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this Subsection.

As we have noted above and previously, the entire tenor of Mr. Esherick's defense was to admit that which he was convicted of and deny that which he and Mr. Jemal were acquitted of (the disguised income categories). We therefore object to your statement in Paragraph 30 of the report that since the Defendant "put the government to its burden of proving their case, therefore, an adjustment for Acceptance of Responsibility is not warranted in this case."

Calculation of Offense Level

We contend that under U.S.S.G. § 3D1.4, therefore, the proper grouping of offenses allows for an adjusted offense level in Count 4 of 6 and an adjusted offense level in Counts 5 and 6 of 12. The greater offense level is 12 under U.S.S.G. § 3D1.4, if the wire fraud count is scored as a offense level 6, that is calculated as only one half unit as it is 5 to 8 levels less than Counts 5 and 6, for Tax Evasion. Accordingly, only one level would be added to the most serious offense level (Tax Evasion). Therefore, the combined adjusted offense level would be 12 + 1 or 13. Allowing the Defendant a 2 level adjustment for Acceptance of Responsibility, the resulting total offense level would be 11.

Incorporation of Statement On Behalf of Mr. Jemal

I am aware that Mr. Jemal's counsel is submitting a lengthy statement to you concerning the various allegations relating to the wire fraud Count. We specifically rely on the representations made therein and would ask to incorporate them by reference in our objections to the Presentence Report.

Letter from Mr. Esherick's Former Counsel

Finally, I am enclosing a letter from David Tobin, Esq., former counsel to Mr. Esherick. In his letter, Mr. Tobin explains the circumstances under which Mr. Esherick filed the amended tax returns. Notably, Mr. Tobin states that Mr. Esherick filed the amended tax returns on the advice of counsel. Moreover, Mr. Tobin writes that Mr. Esherick filed the amended tax returns in an effort to address any civil claims that might have arisen against him,

# VENABLE LLP

Renee L. Moses-Gregory
January 24, 2007
Page 5

regardless of the merits of those claims. "The filing of these amended returns was a good faith effort to resolve any tax-related issues with the government, and was not intended to be an admission of civil tax deficiency or guilt on criminal tax-evasion charges."

Once again, thank you for your courtesy in dealing with us throughout the preparation of this Report.

Very truly yours,

Paul Kemp/MBZ.

Paul F. Kemp

Encl.

||  Tobin
||  O'Connor
||  Ewing &
||  Richard

|| Attorneys at Law
|| A Partnership of Professional Corporations

*Practicality in Practice*

David C. Tobin
Direct Dial (202) 362-5903
dctobin@tobinoconnor.com

January 24, 2007

Mr. Paul F. Kemp
One Church Street
Fifth Floor
Rockville, MD 20850

    RE:    <u>**United States v. Blake C. Esherick, Docket No. CR-05-359-03**</u>

Dear Mr. Kemp:

    This firm previously represented Blake C. Esherick in connection with the above-referenced matter.

    As you may be aware, during the course of that representation, and in connection therewith, I advised Mr. Esherick to file amended tax returns, Form 502X's, for a number of years that were the subject of the government's investigation. Based on my advice, Mr. Esherick did so.

    At the time those returns were filed, we included a notice with each return that identified the subject area of the amendments, so that the government would have full disclosure of the nature of the amendments. This was done in an effort to address any civil claims that might have arisen against Mr. Esherick, regardless of the merits of those claims. The filing of these amended returns was a good faith effort to resolve any tax-related issues with the government, and was not intended to be an admission of civil tax deficiency or guilt on criminal tax-evasion charges.

    If my memory serves me correctly, no indictment had been returned at the time the amended returns were filed. Indeed, on or about August 15, 2005, I sent a letter to Ms. Rosemary E. Paguni, Esq., Chief of the Northern Division Criminal Enforcement Section, Tax Division, U.S. Department of Justice, requesting a conference with that office <u>before</u> any decision to bring any tax charges against Mr. Esherick was reached. By letter dated August 18, 2005, the Tax Division denied my request, and referred me back to the United States Attorney for the District of Columbia. I will be happy to provide you with copies of these letters if you wish.

5335 Wisconsin Avenue, NW
Suite 700
Washington, DC 20015

Phone  202-362-5900
Fax  202-362-5901
www.tobinoconnor.com

Mr. Paul F. Kemp
January 24, 2007
Page 2

    Needless to say, in light of the Tax Division's refusal to confer, I never had the opportunity to discuss the merits <u>vel non</u> of any particular item on Mr. Esherick's returns. Nor for that matter do I recall ever discussing the factual or legal merits of any item on Mr. Esherick's returns during informal discussions with Mr. Dubester, the Assistant United States Attorney who was the lead prosecutor on the case.

    Please let me know if I can be of any further assistance.

Sincerely,

David C. Tobin

5335 Wisconsin Avenue, NW
Suite 700
Washington, DC 20015

Phone 202-362-5900
Fax 202-362-5901
www.tobinoconnor.com