UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA              :
                                      :
v.                                    :   Criminal Action No.: 05-0359
                                      :
DOUGLAS JEMAL, *et al.*               :
                                      :
        Defendants.                   :

## MOTION FOR COURT RECOMMENDATION
## OF COMMUNITY CONFINEMENT

COMES NOW, the Defendant, BLAKE C. ESHERICK, by and through counsel, PAUL F. KEMP, CAROL E. BRUCE, MARA B. ZUSMAN and VENABLE, LLP, and hereby moves that this Honorable Court recommend that the Bureau of Prisons make available a sentence of work release or community confinement. In lieu thereof, the Defendant respectfully requests that this Honorable Court recommend to the Bureau of Prisons a designation at the Federal Prison Camp, located at Pensacola, Florida. In support thereof, the defendant respectfully submits the attached Memorandum.

Respectfully submitted,

_____
PAUL F. KEMP #28858
CAROL ELDER-BRUCE
MARA B. ZUSMAN #491833
Venable LLP
One Church Street
5th Floor
Rockville, Maryland 20850
(301) 217-5600
(301) 217-5617 (Facsimile)

*Attorneys for Defendant Blake C. Esherick*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Criminal Action No.: 05-0359 |
| | : |
| DOUGLAS JEMAL, *et al.* | : |
| | : |
| Defendants. | : |

**MEMORANDUM IN SUPPORT OF MOTION FOR COURT
RECOMMENDATION OF COMMUNITY CONFINEMENT**

**COMES NOW**, the Defendant, **BLAKE C. ESHERICK**, by and through counsel, **PAUL F. KEMP**, **CAROL E. BRUCE**, **MARA B. ZUSMAN** and **VENABLE, LLP**, and in support of his Motion for Court Recommendation of Community Confinement, respectfully submits the attached Memorandum:

**I.    PROCEDURAL HISTORY**

Blake C. Esherick was sentenced by this Court on March 15, 2007 for his convictions for one count of Wire Fraud, and two counts of Tax Evasion. In essence, the sentence of the Court was that the Defendant serve 8 months on each of Counts 4, 5 and 6, followed by a term of supervised release of 3 years, to include 12 months of home electronic monitoring during supervised release.

At sentencing, the Court made specific inquiries about the very subject raised by this Motion. Indeed, on its own, the Court took a recess to explore "whether or not the Bureau of Prisons could make available a sentence of work release…" (Transcript 3/15/07, p. 69) As a result of its inquiries off the record, the Court learned from a Bureau of Prisons representative that the answer to the Court's inquiry was "no" (Transcript p. 70).

Subsequent to sentencing, undersigned counsel has had the opportunity to research the very issue raised by the Court and urges that the Court revisit the issue of recommendation of work release or community confinement, as the appropriate form of service of Mr. Esherick's sentence.

## II. BUREAU OF PRISONS POLICY – 28 CODE OF FEDERAL REGULATIONS SECTION 570.21

This Motion requests that the Court amend the Judgment in the above-captioned matter and include an Order or recommendation that the Bureau of Prisons (BOP) designate Mr. Esherick to a place of community confinement to satisfy the incarceration portion of the sentence, without regard to its unlawful policy of implementing the so-called "10% rule" (28 C.F.R. § 570.21) and an express recommendation from the Court for Mr. Esherick's direct commitment to a Community Correction Center (CCC).

As the Court is aware, Mr. Esherick is the type of defendant whom the Bureau of Prisons (BOP) would have historically considered for direct CCC placement. Indeed, the Bureau provided courts a profile of the type of offender who would receive such consideration:

- Ordinarily sentenced to 6 months or less.[1]
- Not involved in large-scale drug or property offenses.
- Has no detainers or pending charges.
- Has no history of serious violent behavior or firearms offenses.
- Has no history of sex crimes.
- No medical or mental disorder requiring ongoing treatment.
- Is not a deportable alien.
- Has no history of threats against government officials.

---

[1] In furtherance of our representation of Mr. Esherick, we have consulted with Joel Sickler, a criminologist who formerly served as Director of Client Services for the National Center on Institutions and Alternatives (NCIA). Mr. Sickler has interacted with the BOP on behalf of criminal defendants, sentenced prisoners and their attorneys for more than two decades. In Mr. Sickler's experience, the "6 month" incarceration figure is properly seen as reflecting an average sentence length, and the high end of the sentence range under which inmates were commonly designated to CCCs was 12 months and one day. In one extraordinary case with which Mr. Sickler was directly involved, the BOP designated a federal offender sentenced to 18 months' imprisonment to the Baltimore (MD) Comprehensive Sanction Center to serve the imprisonment portion of his sentence.

> - Has no known memberships with disruptive groups or affiliations with major organized criminal enterprises.

USDOJ-FBOP, A Judicial Resource Guide to the Federal Bureau of Prisons, 15- 16 (2000)[2]; see USDOJ-BOP Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedures (1998).

### III.   18 U.S.C. § 3621(b)

In December 2002, the BOP departed unexpectedly from 30-plus years' practice and established an express limitation on CCC usage, restricting placement at such facilities to the final ten percent of a prisoner's time served (sentence length less good time credit, 18 U.S.C. § 3624(b)) not to exceed six months. See Culter v. United States, 241 F.Supp.2d 19 (D.D.C. 2003) (Huvelle, J.). This sudden policy shift prompted legal challenges across the country, with the majority of courts to consider the merits of the "10% Rule" invalidating it out-of-hand. See, e.g., United States v. Arthur, 367 F.3d 119 (2d Cir. 2004) ("A district court of this Circuit has recently determined that 'the vast majority' of courts to consider the matter have 'held that the new policy was unlawful'."); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004). Rather than desist, the BOP codified the rule change in February 2005. See 28 C.F.R. § 570.21. Courts have continued to reject the more recent version of the unlawful and ill-conceived policy, holding that it contravenes the plain meaning of 18 U.S.C.

---

[2] These criteria were omitted from later versions of the Guide. See USDOJ-FBOP, Legal Resource Guide to the Federal Bureau of Prisons (2003) ("The BOP cannot accommodate judicial recommendations to place inmates in community corrections centers for the imprisonment portion of their sentences..."); USDOJ-FBOP, Legal Resource Guide to the Federal Bureau of Prisons (2004) ("The BOP no longer accommodates judicial recommendations to initially place inmates in community corrections centers for the imprisonment portion of their sentences.").

§ 3621(b)[3] and effectively ignores factors that the agency is to consider whenever designating a prisoner. Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).

By exploiting its position of not being subject to the rule of nonmutual offensive collateral estoppel, the BOP has created and maintains a disparate system wherein otherwise eligible defendants sentenced in the Second, Third, Eighth and Tenth Circuits are evaluated for direct placement at a halfway house while defendants sentenced elsewhere are ineligible for such consideration.[4] See United States v. Mendoza, 464 U.S. 164 (1984); Stuart Rowles, 48 Community Update: Notes to BOP's Local Partners 2 (May 2006) (confirming return to past practices in Circuits that have struck down rule change). Particularly troubling about the Bureau's recalcitrance is that it has acknowledged, and courts have recognized, that a halfway house constitutes a "place of imprisonment" for purposes of designation under 18 U.S.C. § 3621(b). See Goldings, 383 F.3d at 26-27 ("If, as both parties agree, a CCC may be a place of imprisonment during the last ten percent of a prisoner's term of imprisonment, it would be

---

[3] In relevant part, the statute provides:

> **Place of imprisonment.**-The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence-
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > > (B) recommending a type of penal or correctional facility as appropriate; and
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economical status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

incongruous to conclude that the same CCC may not be a place of imprisonment during any portion of the first ninety percent of that term."); Elwood, 386 F.3d at 847 ("both parties agree that CCCs are places of imprisonment"); see also Reno v. Koray, 515 U.S. 50, 62 (1995) (pretrial detention in a CCC affords full credit against a later-imposed sentence); Levine, 455 F.3d at 82 n.8 ("…by promulgating 28 C.F.R. § 570.21 under the authority of § 3621(b), the BOP necessarily places CCCs within that category of institutions governed by the statute").

Aside from the suspect and vulnerable 28 C.F.R. § 570.21 (the February 2005 version of the 10% Rule), nothing in the law constrains the amount of time that a qualified prisoner may be housed at a CCC. See Goldings, supra; Elwood, 386 F.3d at 847 (holding that "§ 3621(b) gives the BOP the discretion to transfer prisoners to CCCs at any time during their incarceration"); P.S. 7310.04, supra, at 4 (BOP not restricted by 18 U.S.C. § 3624(c) in placing a prisoner at a CCC). Yet, as we understand it, Bureau officials responded to the Court's sua sponte inquiry by advising that Mr. Esherick will not be considered for direct commitment to a CCC.[5] As set forth above, such a position thwarts congressional intent, in that the agency disregards judicial statements and recommendations, and nullifies the Court's determination as to the nature and extent of incarceration for the sentence imposed. 18 U.S.C. §§ 3553(a)(2) and 3621(b)(4); see Woodall, 432 F.3d at 245-46. Accordingly, and for any other reasons that the Court may find appropriate or just, we respectfully request that Mr. Esherick's judgment be amended in three respects.

---

[4] Notably, except in case involving medical or mental health concerns, all designation determinations are made at the BOP's Designation and Sentence Computation Center in Grand Prairie, Texas.

[5] Near the end of 2005, the BOP began referring to halfway houses as Residential Reentry Centers (RRCs), though the governing program statement, which refers to them as CCCs, remains unchanged to this day. P.S. 7310.04, supra. The agency's public statements regarding the rationale for the revised nomenclature suggest an effort to shape public perception rather than a legitimate alteration in philosophy or mission. See Stuart Rowles, 47 Community Update: Notes to BOP's Local Partners 1-2 (Dec. 2005) ("We wanted to take advantage of the recent emphasis on reentry and we thought removing 'correctional' from the name might be better for our image."); Stuart Rowles, 48 Community Update: Notes to BOP's Local Partners 1 (May 2006) ("name change will not effect existing facilities").

First, we ask that the Court order the BOP to consider <u>all</u> suitable and available penal or correctional institutions as potential places of imprisonment. In this regard, it is noted that the Court could, if it were so inclined, issue a writ in the nature of mandamus pursuant to 28 U.S.C. § 1651, that is, in aid of its jurisdiction to make a recommendation that will be properly considered under 18 U.S.C. § 3621(b). Second, we ask that the Court include an express recommendation for Mr. Esherick's direct commitment to a Community Corrections Center in the Washington Metropolitan Area or, in the alternative, placement at the Federal Prison Camp in Pensacola, Florida. In this case, placement at a CCC has certain inherent utilities, such as enabling Mr. Esherick to work full-time instead of sitting idly in a prison cell and performing random, menial tasks. Finally, anticipating the BOP's response to the foregoing, we ask that the Court direct the BOP explain promptly why its refusal to consider a direct CCC placement is not unlawful. <u>See</u> USDOJ-BOP, Program Statement 5070.10, <u>Judicial Recommendations and U.S. Attorney Reports, Responses to</u> 3 (1997) (BOP responds in writing when it "determines that a different designation from the judicial recommendation is appropriate"); <u>cf.</u>, Sept. 15, 2005 Ltr. from BOP Director H. Lappin to the Federal Judiciary at 2 ("Our rate of accommodating judicial recommendations averages approximately 75 percent.").

### IV.    CONCLUSION

This Court indicated at sentencing its desire to sentence Mr. Esherick to community confinement at a CCC operated under the supervision of the BOP. That agency erroneously informed the court that such a placement was not lawful. The Circuits that have considered such a placement have uniformly held it lawful, and have held unlawful the BOP's refusal to consider such placements. We urge the Court to recommend such a placement. In the alternative, we ask for a Court recommendation by BOP to the Federal Prison Camp located in Pensacola, Florida.

Respectfully submitted,

/s/ Paul F. Kemp
PAUL F. KEMP #28858
CAROL ELDER-BRUCE
MARA B. ZUSMAN #491833
Venable LLP
One Church Street
5th Floor
Rockville, Maryland  20850
(301) 217-5600
(301) 217-5617 (Facsimile)

*Attorneys for Defendant Blake C. Esherick*